IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

Colorado Montana Wyoming
State Area Conference of the NAACP,
League of Women Voters of Colorado, and
Mi Familia Vota,

    Plaintiffs,

v.

United States Election Integrity Plan, Shawn Smith,
Ashley Epp, and Holly Kasun.

    Defendants.

## COMPLAINT

Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP ("NAACP Colorado"), League of Women Voters of Colorado ("LWVCO"), and Mi Familia Vota ("MFV") (collectively, the "Voter Organizations"), bring this action for damages and injunctive relief enjoining Defendants USEIP, Shawn Smith, Ashley Epp, and Holly Kasun, (collectively, "Defendants"), from continuing to engage in voter intimidation in violation of the Voting Rights Act and the Ku Klux Klan Act.

### INTRODUCTION

1.    United States Election Integrity Plan ("USEIP") is deploying its agents, who are sometimes armed, to go door-to-door around Colorado to intimidate voters.

2.    USEIP agents, wearing badges that identify themselves as official-sounding groups such as the "Voter Integrity Committee," and sometimes introducing themselves in ways that make

1

voters believe that they are associated with government agencies, are using public voter lists to target and intimidate voters. USEIP agents ask residents to confirm their address, question residents about their participation in the 2020 election and their method for voting, and either ask them about allegedly fraudulent ballots or accuse them of casting allegedly fraudulent ballots.

3. During their door-to-door campaigns, USEIP agents take photos of voters' residences, and the organization maintains a database of photos of voters' residences.

4. In order to threaten voters, in their own homes, with potentially violent confrontations, USEIP encourages its agents to carry weapons and has informed its canvassers that it is attempting to line up security for its door-to-door voter intimidation campaigns. In its chatroom, USEIP members regularly offer advice on effective weapons and where to purchase them. During its canvassing events, USEIP has encouraged gun-carrying members to accompany unarmed agents and offer their contact information to unarmed agents.

5. Defendants' objectives are clear. By planning to, threatening to, and actually deploying armed agents to knock on doors throughout the state of Colorado, USEIP is engaging in voter intimidation. USEIP's actions not only intimidate voters who cast ballots in the November 2020 election, but also intimidate future eligible voters, dissuading both groups from exercising their constitutional right to vote. USEIP is actively generating and spreading fear that voters can expect multiple armed and unarmed USEIP members to show up at their doors at any moment to harass and interrogate them about their voting history.

6. The fear of violence is all the more palpable given USEIP's participation in the events that unfolded at the U.S. Capitol on January 6th, 2021, its ties to QAnon, which the FBI has identified as a domestic terror threat, and its public, and sometimes violent, threats against Colorado election officials. And this fear is even more acute for Black and Latino communities

48271440v4

who have, historically, faced extensive violence and intimidation efforts, often instigated by armed individuals, to prevent their free exercise of the franchise. As USEIP's actions make plain, voter intimidation remains a reality for many voters of color, threatening their ability to exercise their right to vote freely, or feel safe from interference in their own homes.  To this end, USEIP's actions are especially drastic and alarming because, rather than confronting voters at the polls or other public places, USEIP agents are intimidating voters in the place where voters should feel safest—their own homes.

7. Defendants' canvassing has the purpose and effect of intimidating Coloradans from voting, trying to vote, helping others to vote, supporting or advocating for certain political beliefs, or exercising the right to speak, peaceably assemble, or petition the government for redress of grievances, in violation of Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b).

8. In addition, Defendants Smith, Epp, and Kasun have conspired and worked in concert with one another—namely through USEIP—to threaten to or actually show up at voters doors around Colorado, interrogating them about their voting history, and thereby intimidating voters and preventing Coloradans who are lawfully entitled to vote from giving their support or advocacy towards political candidates, in violation of the Ku Klux Klan Act, 42 U.S.C. § 1985.

9. With the 2022 elections fast-approaching,[1] Defendants' voter intimidation campaign must be stopped.

---

[1] The first registration deadlines for Colorado's 2022 Elections were in January and February, in advance of the March Party Precinct Caucuses and county assemblies. (*See* https://www.sos.state.co.us/pubs/elections/calendars/2022ElectionCalendar.pdf.)  In addition, campaigning for the June 28, 2022 Primary Election is underway in many races.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because this action arises under Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b), and the Ku Klux Klan Act, 42 U.S.C. § 1985.

11. This Court has authority to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

12. Venue in this district is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this District, and all Defendants are subject to personal jurisdiction in this District.

**PARTIES**

13. Plaintiff NAACP Colorado is part of the NAACP. Founded in 1909, the NAACP is the oldest and largest civil rights organization in the United States. The NAACP's and NAACP Colorado's mission is to ensure political, educational, social, and economic equality of rights of all persons and to eliminate race-based discrimination. NAACP Colorado coordinates the civil rights activities of freedom fighters and game-changing activists in Colorado. Among other things, NAACP Colorado's work is focused on ensuring that every American will have free, open, equal, and protected access to the vote, and fair representation at all levels of the political process. Because USEIP's actions are threatening to NAACP Colorado's core mission, NAACP Colorado has diverted time and other resources from its vital civic engagement and election support programs in order to address Defendants' voter intimidation campaign.  Absent injunctive relief, NAACP Colorado will be required to further divert time and resources to address the Defendant's voter intimidation campaign.

14. Plaintiff LWVCO is a non-profit civic engagement organization with the mission to encourage informed and active participation in government, increase understanding of major public policy issues, and influence public policy through education and advocacy. LWVCO works with Coloradans to conduct state and local advocacy, voter registration and engagement, civic education, and member enrichment programs. Because voter intimidation is a vital issue of concern to LWVCO members and the public, LWVCO has diverted time and other resources from its civic engagement and election support programs in order to address Defendants' voter intimidation campaign.

15. Plaintiff MFV is a civic engagement organization that unites Latino, immigrant, and allied communities to promote social and economic justice through citizenship workshops, voter registration, and voter participation. Its mission is to build Latino political power by expanding the electorate, strengthening local infrastructures, and conducting year-round voter engagement. More specifically, MFV works with Coloradans to conduct civic engagement, voter engagement, and voter education programs through activities such as voter registration, phone banking, and door-to-door canvassing. MFV also conducts regular meetings with organizational partners, research groups, and community organizations to discuss issues relevant to the community and determine goals for the next election cycle. MFV has diverted time and other resources from its civic engagement and election support programs in order to address Defendants' voter intimidation campaign.

16. Defendant United States Election Integrity Plan ("USEIP"), by and through its founders Defendant Shawn Smith, Defendant Ashley Epp, and/or Defendant Holly Kasun, was

established in late 2020 in response to purported election fraud during the 2020 election.[2] The first USEIP chapter was established in Colorado, and USEIP is currently operating in nearly all Colorado counties. In addition, USEIP is exporting its voter intimidation campaign to other states and has since expanded to Arizona, Georgia, and New Hampshire. USEIP's Election Analytics Guide states: "It is up to patriots to take back our republic. This requires everyone, regardless of skill level, to join the fight and save our country." USEIP is an unincorporated organization and is not registered to conduct business in the State of Colorado, or any other state.

17. Defendant Shawn Smith is a member of USEIP. Upon information and belief, Mr. Smith was, at some points in time relevant to this Complaint, the President and Co-Founder of USEIP. According to public record, Mr. Smith has assisted and/or led efforts to obtain Colorado voter rolls that USEIP has used in its door-to-door voter intimidation campaign. Mr. Smith also has testified in front of the Colorado Secretary of State on alleged election fraud during a hearing held on August 3, 2021. Mr. Smith is employed and paid for his work with USEIP by Mike Lindell, CEO of My Pillow and a prominent proponent of false and disproven claims that there was massive election fraud in the 2020 presidential election. Mr. Smith is a Colorado resident.

18. Defendant Ashley Epp is a member of USEIP. According to Ms. Epp's own public statements, Ms. Epp is a Co-Founder of USEIP. Ms. Epp is employed and paid by Mr. Lindell for her work with USEIP. Ms. Epp is a Colorado resident.

19. Defendant Holly Kasun is a member of USEIP. According to Ms. Kasun's own public statements, Ms. Kasun is a Co-Founder of USEIP. Ms. Kasun is employed and paid by Mr. Lindell for her work with USEIP. Ms. Kasun is a Colorado resident.

---

[2] The allegation of election fraud during the 2020 election is rooted in unfounded allegations and theories that have been thoroughly debunked in both the courts and the court of public opinion. *See infra* ¶ 20.

**FACTS**

**USEIP Background**

20.     USEIP was formed by Defendants Shawn Smith, Ashley Epp, and Holly Kasun, among others, after the 2020 presidential election.  The primary focus of the group is to advance the false claim that former President Trump lost the 2020 election because of "blatant election fraud."  This concept has been referred to as the "Big Lie" and is predicated on false allegations that have been disproven in countless public reports and numerous lawsuits.

21.     Despite its name, the USEIP has no connection to the United States government and has not been authorized by any federal government agency or by any Colorado state or local government agency to conduct any election-related activities. Indeed, USEIP's name is seemingly designed to confuse voters into believing it is a government agency.

22.     The founders and primary members of USEIP originally met in online chatrooms and at rallies, stoking false claims of fraud related to the 2020 presidential election. After becoming acquainted with one another online, these individuals and others decided to coordinate their actions to harass and intimidate voters who did not vote for former President Trump. They formed USEIP, an organization designed to engage in voter intimidation disguised as exploring concerns of election integrity.

23.     USEIP has developed into a coordinated network of agents throughout Colorado that focus their energy on various activities associated with the "Big Lie," including going door-to-door, interrogating voters under the pretense of seeking to uncover "phantom ballots," which they allege were the cause of former President Trump losing the 2020 presidential election.

24.     One of USEIP's primary agents is Defendant Shawn Smith.  Defendant Smith is based in Colorado Springs. He  has appeared at numerous radical right events, some of which are

affiliated with groups such as QAnon, to promote the false claim that the results of the 2020 presidential election are faulty because of election fraud.

25.     Defendant Smith has also had run-ins with elected Colorado officials, publicly accusing county clerks—Democrats and Republicans alike—of failing to prevent election interference or actively participating in what USEIP and its members allege is criminal activity. At a recent public town hall meeting held in Castle Rock, Colorado, Shawn Smith publicly threatened Colorado Secretary of State Jena Griswold: "I think if you are involved in election fraud then you deserve to hang. Sometimes the old ways are the best ways."

26.     Defendant Smith, along with Defendants Ashley Epp and Holly Kasun, have made public appearances on talk shows and online programming hosted and funded by Mike Lindell. Lindell has been a vocal proponent of the "Big Lie" and has advanced its messaging at every possible turn.  While USEIP claims not to accept donations or be involved in any fundraising, it has been linked to groups such as Cause of America, an organization founded by Lindell and also designed to promote the "Big Lie."  Defendants Smith, Epp, and Kasun are employed by Cause of America, or an affiliated entity, and Cause of America is used as a fundraising mechanism for a number of groups throughout the nation that promote the "Big Lie," including USEIP.

27.     An essential part of USEIP's operation is its door-to-door voter intimidation campaign.  Using voter rolls purchased by Defendant Shawn Smith (and potentially other members), USEIP agents travel door to door, often targeting high-density housing, communities experiencing growth among racial minority voters, and communities in which a high percentage of voters supported Democratic candidates in the 2020 election.  Sometimes armed and donning badges to present an appearance of government officiality, USEIP agents interrogate voters about their addresses, whether they participated in the 2020 election, and—if so—how they cast their

vote. It is reported that multiple agents have claimed to be from "the county," and have, without any evidence, falsely accused the residents of casting fraudulent ballots.

28. USEIP's "County & Local Organizing Playbook" (the "Playbook"), which sets forth USEIP's principles and goals, makes clear that USEIP's tactics include violence and intimidation; specifically, threatening and intimidating voters in order to support debunked claims of election fraud. Drafted by founders of the group, Defendants Kasun and Epp, the Playbook is replete with incendiary language that illuminates USEIP's violent and threatening behavior. Among other things, the Playbook exclaims: "This is the fight . . . No one is coming to save us. It's time to stand up . . . . But we are not at a time of peace. And everyone who values freedom and is committed to the fight for our Republic is now needed." The Playbook also cautions USEIP volunteers to ensure that the group is not infiltrated by outsiders with ulterior motives, even pointing out how the group has altered its vetting procedures, as previous agents "had a criminal history of sexual misconduct."

29. Finally, the Playbook promotes false and disproven claims of fraud in the 2020 election and states that USEIP does "not consent to be governed by those elected through fraud."

30. News about the USEIP's door-to-door voter intimidation campaign has spread among the voting rights community in Colorado and has raised serious alarm about the impact of USEIP's intimidation actions, particular on voters of color.

31. Given the recent history of political agitation and violence, and the fast-approaching 2022 elections, Defendants' threats are objectively and imminently intimidating. And there is no question that Defendants want their actions to be well-known and intimidating to voters, as they continue to expand across Colorado and into other states and as they widely publicize their actions. USEIP's public-facing actions are a clear signal to Colorado voters—especially voters of

color—that to exercise their constitutional rights and vote in an upcoming election means facing interrogation by potentially armed and threatening USEIP agents at their doorstep.

### THE VOTER ORGANIZATIONS SEEK TO ADDRESS DEFENDANTS' VOTER INTIMIDATION CAMPAIGN

32. The Voter Organizations' members and/or the community at large are being intimidated and will continue to be intimidated by Defendants' actions.

33. The prospect of visits from USEIP members, who may be armed, is particularly intimidating for members of the Black and Latino communities who are served by the Voter Organizations. That is due, in part, to the history of voter suppression these communities have had to endure. The prospect of door-to-door visits by potentially armed individuals is particularly intimidating for Black and Latino voters because of the extensive history in these communities of frequently violent, voter intimidation and vigilante interference in their own homes.

34. Black Americans seeking to exercise their right to vote have faced extensive barriers to casting their ballots. Not only did Jim Crow laws disenfranchise Black voters, but Black voters were also subject to extensive racialized violence and lynchings intended to keep Black voters from the polls and solidify the power of white Americans by targeting Black Americans and other Americans of color in their homes.

35. As a consequence of Defendants' actions, the Voter Organizations are now directing resources to address voter intimidation that could have been used elsewhere to further their missions, and they will be required to divert further resources to these efforts if Defendants' conduct is not enjoined.

36. NAACP Colorado has already exhausted resources actively monitoring this voter intimidation and related safety concerns and strategizing about how to combat Defendants' actions. In addition, NAACP Colorado anticipates having to shift both personnel and financial resources

towards combatting USEIP's voter intimidation campaign. This shift in resources is a distraction from key programs that NAACP Colorado would otherwise support, such as voter outreach aimed at protecting democracy, enhancing equity, and increasing democratic participation and civic engagement.

37. USEIP's actions also are a direct assault on LWVCO's foundational mission to help new, young, and/or newly naturalized voters exercise their rights to participate in democracy. LWVCO is concerned that new voters (such as young people, new citizens, and others who have just become eligible to vote) are especially vulnerable to this intimidation, and may opt to disengage from the voting process rather than face intimidating visits from USEIP agents. As a result of USEIP's actions, voters may question whether voting exposes them to risk of harm. This directly harms LWVCO's mission, which is to increase voter engagement and confidence in casting a ballot.

38. MFV has been actively monitoring this voter intimidation in Colorado by speaking to organizational partners in the voting rights advocacy community to understand the scope of USEIP's actions, strategizing about how to combat USEIP's actions, and monitoring safety concerns expressed by the Latino community. In particular, MFV's voter outreach strategy for 2022 has been impacted in response to USEIP's actions. For example, because there are concerns of fear stemming from USEIP's actions, MFV plans to invest additional resources into counties targeted by USEIP so that voters there recognize MFV canvassers as distinct from USEIP agents. The time that MFV staff has and will continue to spend responding to USEIP's actions is time that otherwise would have been spent on activities central to its core mission.

## CLAIM FOR RELIEF

### Count One:
### Intimidating Voters and Potential Voters in Violation of Section 11(b) of the Voting Rights Act of 1965

39. Plaintiffs reallege and incorporate by reference as if fully set forth herein each of the preceding paragraphs and allegations.

40. Section 11(b) of the Voting Rights Act of 1965 ("VRA"), 52 U.S.C. § 10307(b), prohibits voter intimidation and provides that: "No person, . . . shall intimidate, threaten, or coerce, . . . any person for voting or attempting to vote . . . ."

41. Defendants have violated Section 11(b) by their intimidating, threatening, and coercive conduct, which includes threatening to or actually showing up at voters' doors around Colorado to intimidate them and ask whether they engaged in voter fraud. Defendants' behavior has intimidated and threatened voters and potential voters, in violation of Section 11(b) of the Voting Rights Act.

42. Defendants have engaged in this conduct with the intent to threaten, intimidate, and coerce voters with the knowledge that the natural consequences of their conduct and speech will be the intimidation of such voters.

43. Defendants have violated Section 11(b) of the Voting Rights Act and will continue to do so absent judicial relief.

### Count Two:
### Attempting to Intimidate Voters and Potential Voters in Violation of Section 11(b) of the Voting Rights Act of 1965

44. Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b), prohibits voter intimidation and provides that: "No person, . . . shall . . . attempt to intimidate, threaten, or coerce" any voter. Attempts to intimidate, threaten, or coerce voters violate Section 11(b), even if such attempts are unsuccessful.

12

45. Defendants have violated Section 11(b) by attempting to intimidate, threaten, or coerce voters by threatening to or actually showing up at voters' doors around Colorado to ask whether they engaged in voter fraud. Defendants' conduct and statements constitute an attempt to intimidate and threaten voters and potential voters, in violation of Section 11(b) of the Voting Rights Act.

46. Defendants have violated Section 11(b) of the Voting Rights Act and will continue to do so absent judicial relief.

## Count Three:
## Violation of the Ku Klux Klan Act (42 U.S.C. § 1985)

47. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

48. Defendants are two or more persons who have conspired to prevent Plaintiffs and others who are lawfully entitled to vote from giving their support or advocacy toward the election of electors for president, electors for vice president, and/or members of Congress.

49. Defendants have carried out this conspiracy by threatening to or actually showing up at voters' doors around Colorado to intimidate them and ask whether they engaged in voter fraud.

50. Plaintiffs and others who are lawfully entitled to vote have been injured by Defendants' behavior, which has intimidated and threatened voters and potential voters.

51. Under 42 U.S.C. § 1985(3), Plaintiffs are entitled to bring an action for recovery of damages because of Defendants' conspiratorial misconduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a.     Declare that Defendants' door-to-door campaign of voter harassment and threats of carrying out such campaigns in the future constitute unlawful voter intimidation in violation of Section 11(b) of the Voting Rights Act.

b.     Declare that Defendants' door-to-door campaign of voter harassment and threats of carrying out such campaigns in the future constitute a conspiracy in violation of Section 42 U.S.C. § 1985(3), the Ku Klux Klan Act.

c.     Order Defendants to cease and desist going uninvited to voters' homes in order to question voters or household members about mail-in ballots, alleged voter fraud, or to intimidate voters from voting (including by mail).

d.     Order Defendant USEIP to cease and desist coordinating or organizing visits to voters' homes in order to question voters or household members about mail-in ballots, alleged voter fraud, or to intimidate voters from voting (including voting by mail).

e.     Order Defendants to stop taking photographs and stop maintaining databases of voters, their residences, or their vehicles; to make no attempt to access or use their copies of existing photographs or databases of voters, their residences, or their vehicles; and to delete their copies of existing photographs or databases of voters, their residences, or their vehicles and to submit an affidavit to the Court attesting to the deletion of the same.

f.     Order Defendants to submit to the Court their original existing photographs and databases of voters, their residences, and their vehicles, and order that these photographs and databases be restricted to the Court and the parties (Level 1) pursuant to D. C., Colo. L. Civ. R. 7.2.

g.     Order Defendants who speak with voters to: (i) clearly state the organization with whom they are affiliated; (ii) inform voters that they are not required to speak with Defendants;

(iii) stop claiming that they affiliated with any government entity; (iv) not make any threat of consequences, reprisals, or criminal charges to voters; and (v) to otherwise not threaten or intimidate voters.

      h.      Order Defendants to cease and desist carrying weapons when going to voters' homes to speak with voters or household members.

      i.      Order Defendants to cease and desist instructing or encouraging anyone to carry weapons during USEIP-related interactions with voters.

      j.      Order Defendants not to engage in other actions that threaten voters for having voted in 2020 or threaten or intimidate voters from voting in future elections.

      k.      Award Plaintiffs compensatory damages.

      l.      Award Plaintiffs reasonable attorneys' fees and costs.

      m.      Retain jurisdiction to ensure Defendants' ongoing compliance with the foregoing orders.

      n.      Grant such other and further relief that this Court deems just and appropriate.

Dated: March 9, 2022                      LATHROP GPM LLP

                                      By /s/Amy Erickson
Casey Breese (#51449)
Casey.breese@lathropgpm.com
Jean Paul Bradshaw
Jeanpaul.bradshaw@lathropgpm.com
Dion Farganis (Admission Pending)
Dion.farganis@lathropgpm.com
Reid Day
Reid.day@lathropgpm.com
Brian A. Dillon
Brian.dillon@lathropgpm.com
Amy Erickson (#54710)
Amy.erickson@lathropgpm.com
1515 Wynkoop Street, Suite 600
Denver, CO 80202
Telephone: (720) 931-3200

Courtney Hostetler
chostetler@freespeechforpeople.org
John Bonifaz
jbonifaz@freespeechforpeople.org
Ben Clements
bclements@freespeechforpeople.org
Ron Fein
rfein@freespeechforpeople.org
FREE SPEECH FOR PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459
Telephone: (617) 249-3015

*ATTORNEYS FOR Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, and Mi Familia Vota*

16