IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-00581-PAB

COLORADO MONTANA WYOMING STATE AREA CONFERENCE OF THE NAACP,
LEAGUE OF WOMEN VOTERS OF COLORADO, and
MI FAMILIA VOTA,

      Plaintiffs,

v.

UNITED STATES ELECTION INTEGRITY PLAN,
SHAWN SMITH,
ASHLEY EPP, and
HOLLY KASUN,

      Defendants.

## ORDER

This matter is before the Court on the portion of plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction [Docket No. 5] that requests issuance of a temporary restraining order ("TRO") and the portion of plaintiffs' Motion for Expedited Hearing on Plaintiffs' Motion for Preliminary Injunction and Defendants' Motion to Dismiss [Docket No. 29] that requests an expedited TRO hearing. Plaintiffs also filed a brief in support of their motion for a TRO. *See* Docket No. 6. Defendants have not responded to plaintiffs' TRO motion.

## I. BACKGROUND[1]

Plaintiffs are non-profit organizations that support, among other things, "voter education, registration, and political participation and activism." *Id.* at 2. Defendant United States Election Integrity Plan ("USEIP")[2] has as a goal "to get a better understanding of what happened in the 2020 election, to find truth, expose the truth, and share the truth" and to find fraud, fix it, and hold people accountable. *Id.* at 3. Plaintiffs claim that USEIP, using voter rolls that Mr. Smith purchased from the Colorado Secretary of State, is threatening and intimidating Colorado voters by going door-to-door across the state to "interrogate" voters "under the pretense of seeking to uncover 'phantom ballots.'" *Id.* at 6, 14. Plaintiffs state that USEIP members are sometimes armed and wear badges, lending them an "appearance of government officiality." *Id.* at 6, 8. Plaintiffs claim that USEIP members or agents target high-density housing areas, where there are large numbers of registered Democrats, and ask "voters to confirm [the voters'] addresses, whether [the voters] participated in the 2020 election, and – if so – how [the voters] cast their vote[s]." *Id.* at 6. According to plaintiffs, USEIP members "tell voters . . . that their ballots were cast fraudulently or that election fraud was committed under their name or address." *Id.* at 6. Plaintiffs also

---

[1] The following background facts are taken from plaintiffs' motion. Plaintiffs' complaint is not verified, and plaintiffs have not affirmed that the factual allegations in the complaint are true. *Cf. Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1146 (10th Cir. 2013) ("given that . . . allegations were established through a verified complaint, they are deemed admitted for preliminary injunction purposes"), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014).

[2] According to the complaint, defendant Shawn Smith is a member of USEIP and was president and co-founder of the group. Docket No. 1 at 6, ¶ 17. Defendants Ashley Epp and Holly Kasun are members of USEIP. *Id.*, ¶¶ 18–19.

state that USEIP is "build[ing] a database" of photographs of voters' homes. *Id.* at 7.

Plaintiffs claim that USEIP and its agents intimidate voters who plan or had planned to vote, and voters of color particularly are intimidated because of the history of "racial and ethnic discrimination" and efforts to "suppress voters of color." *Id.* at 9. These actions, plaintiffs state, have affected plaintiffs' missions, which include "ensuring that young, new, vulnerable minority voters in Colorado are safely able to participate in the political process," because plaintiffs have had to divert their resources to counteract USEIP's efforts, instead of supporting plaintiffs' other priorities. *Id.* at 9–10.

Plaintiffs bring three claims for relief: (1) "intimidating voters and potential voters in violation of Section 11(b) of the Voting Rights Act of 1965," (2) "attempting to intimidate voters and potential voters in violation of Section 11(b) of the Voting Rights Act of 1965," and (3) "violation of the Ku Klux Klan Act (42 U.S.C. § 1985)." Docket No. 1 at 12–13, ¶¶ 39–51. Plaintiffs seek to enjoin defendants from "engaging in [defendants'] door-to-door voter intimidation campaign or from engaging in other actions that may intimidate voters or interfere with voter access to the polls." Docket No. 6 at 27.

## II. LEGAL STANDARD

To succeed on a motion for a temporary restraining order, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Res. Def.*

*Council, Inc.*, 555 US. 7, 20 (2008)); *see Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)) (internal quotation marks omitted). Granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888–89 (10th Cir. 1989), "is the exception rather than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984). The same considerations apply to the issuance of a temporary restraining order. *See Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980).

## III. ANALYSIS

The Local Rules require a party seeking a TRO to provide notice, or attempt to provide notice, of its motion to the opposing party. Local Rule 65.1 states, in part,

> A [TRO] shall be requested by motion filed separately from the complaint. The motion shall be accompanied by a certificate of counsel or an unrepresented party, stating: (1) that actual notice of the time of filing the motion, and copies of all pleadings and documents filed in the action to date or to be presented to the court at the hearing, have been provided to opposing counsel and any unrepresented adverse party; or (2) the efforts made by the moving party to provide the required notice and documents.

D.C.COLO.LCivR 65.1(a). Plaintiffs did not file a certificate indicating their efforts to provide notice of the motion to defendants, which Local Rule 65.1 requires.[3]

---

[3] Defendants are aware of the TRO motion and have filed a motion to dismiss plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *See generally* Docket No. 27. In that motion, defendants argue that plaintiffs have shown no injury that could confer standing under Article III of the United States Constitution. *Id.* at 2–6. Plaintiffs have not responded to the motion to dismiss; however, the injury required for a TRO or preliminary injunction is not the same as the

Although defendants have not responded to the TRO motion, the motion is deficient and will be denied. The Court begins its analysis by considering whether plaintiffs have shown irreparable harm. "[B]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a [TRO], the moving party must first demonstrate that such injury is likely before the other requirements will be considered." *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (internal quotation marks omitted). "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). The "party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (quoting *Heideman*, 348 F.3d at 1189). "Purely speculative harm will not suffice." *RoDa Drilling*, 552 F.3d at 1210; *see also* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. & Proc.* § 2948.1 ("Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant;" "a [TRO] will not be issued simply to prevent the possibility of some remote future injury."). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff

---

injury that is required for standing. *Cf. Minn. RFL Republican Farmer Lab. Caucus v. Freeman*, 486 F. Supp. 3d 1300, 1311 (D. Minn. 2020) (finding Article III standing but not irreparable injury); *Kingman Park Civic Ass'n v. Gray*, 956 F. Supp. 2d 230, 257 (D.D.C. 2013) (same).

is entitled to such relief." *Winter*, 555 U.S. at 22.

Plaintiffs have not demonstrated that they will suffer or are suffering imminent, irreparable harm resulting from defendants' actions if a TRO is not issued before the Court can hold a preliminary injunction hearing. *See Tijuanas Produce, Inc. v. Shorty's Produce, Inc.*, No. 18-cv-00587-PAB, 2018 WL 1952600, at *1 (D. Colo. Mar. 29, 2018) ("The Court finds that plaintiff has failed to show that it will suffer irreparable harm if a TRO does not issue before a preliminary injunction hearing is held."). Plaintiffs claim that they are irreparably harmed because defendants "have intimidated voters and are continuing to intimidate voters," and defendants' "misconduct has forced [p]laintiffs to divert resources." Docket No. 6 at 23.[4] This "misconduct," according to plaintiffs, is that defendants "travel door-to-door to the homes of some of Colorado's most vulnerable voters," press voters for information about the voters' participation in the 2020 election, and take photographs of the voters' homes. *Id.* at 2.

First, plaintiffs state that members of USEIP "continue to impliedly and explicitly threaten violence against individuals whom they allege were involved in election fraud – in other words, people involved in the election of candidates opposed by USEIP." *Id.* at 5. Plaintiffs, however, do not assert that "people involved in the election of candidates"

---

[4] Diversion of resources may be sufficient for Article III standing. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (holding that an organization may have standing to sue on its own to challenge action that causes it direct injury, when, for instance, a defendant's conduct makes it difficult or impossible for the organization to fulfill one of its essential purposes or goals, such as when the organization faces a drain on its resources or when the defendant's actions "have perceptively impaired" the organization's ability to carry out its mission). However, purely financial harm is insufficient to meet the irreparable harm requirement for a preliminary injunction. *See Heideman*, 348 F.3d at 1189 ("It is [] well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm.").

includes voters or members of the plaintiff organizations. *See id.* Rather, plaintiffs refer to death threats that Mr. Smith allegedly made to Colorado Secretary of State Jena Griswold. *Id.* Alleged threats to Secretary Griswold are not relevant to the purported harms that plaintiffs face.

Next, plaintiffs state that "USEIP is now taking its threatening and intimidating behavior directly to the homes of Colorado voters." *Id.* at 6. Plaintiffs rely on a declaration by one of their lawyers, Casey Breese. *Id.* (citing "Declaration of Casey Breese Ex. A.").[5] Mr. Breese's declaration, however, does not support plaintiff's statement that USEIP is currently threatening or intimidating voters. Rather, his declaration states that Mr. Breese directed a research librarian at his law firm to "obtain[] the identity of individuals who had purchased voter rolls at some point during 2021 through the Colorado Secretary of State's Election Cycle Subscription service list." Docket No. 7 at 1, ¶ 2. On December 9, 2021, according to Mr. Breese's declaration, an employee of the Secretary of State's office provided a subscription list. *Id.* at 1–2, ¶ 4. The attachment to Mr. Breese's declaration indicates that someone named "Shawn Smith" purchased the voter rolls. *See* Docket No. 7-1. Mr. Breese does not state anything about USEIP, its alleged conduct, or when that conduct may have occurred. *See generally id.*

Plaintiffs next state that "USEIP is going door-to-door across Colorado, interrogating Colorado voters under the pretense of seeking to uncover 'phantom ballots.'" Docket No. 6 at 6. For support, plaintiffs cite an article from August 17, 2021

---

[5] There is no "Ex. A" to Docket No. 6. Mr. Breese's declaration is docketed separately. *See* Docket No. 7.

by Erick Maulbetsch in the *Colorado Times Recorder*, "Colorado Election Conspiracy Group Going Door-to-Door in Search of 'Phantom Ballots,'" https://coloradotimesrecorder.com/2021/08/colorado-election-conspiracy-group-going-door-to-door-in-search-of-phantom-ballots/38866/. *Id.* Plaintiffs also rely on this article for allegations that USEIP volunteers wear badges and ask voters whether and how they cast ballots in the 2020 election. *Id.* Even assuming this article were admissible to substantiate plaintiffs' allegations of harm,[6] the article is nearly seven months old and does not indicate any "clear and present" harm, *see Schrier*, 427 F.3d at 1267, or that plaintiffs will suffer imminent, irreparable harm absent a TRO before the Court can order further relief. *See Tijuanas Produce*, 2018 WL 1952600, at *1.

Plaintiffs state that USEIP has begun to target "high-density housing" areas, where there are high numbers of registered Democrats, that "USEIP is also using its canvassing efforts to build a database of photos of voters' residences," and that USEIP's "reach" has expanded into seventeen Colorado counties. Docket No. 6 at 6–7. Again, plaintiffs rely on inadmissible articles by Mr. Maulbetsch. *See id.* (citing Erik Maulbetsch, "Colorado Election Fraud Group is Training Conspiracists in Other States

---

[6] The article is not admissible. *See, e.g.*, *Stine v. Lappin*, No. 08-cv-00164-WYD-KLM, 2009 WL 482630, at *5 (D. Colo. Feb. 25, 2009) (denying emergency injunctive relief that was requested in reliance on hearsay and holding that, "pursuant to Federal Rule of Evidence 801, hearsay, i.e., an out-of-court statement offered for its truth, is not admissible evidence. The statements contained within the article are clearly hearsay, as they are out-of-court statements offered by [p]laintiff to prove the truth of his claims, or that there is contamination of the ADX ventilation systems that is causing harm to the inmates." (citing *New Eng. Mut. Life Ins. Co. v. Anderson*, 888 F.2d 646, 650 (10th Cir. 1989) (recognizing that the trial court properly excluded statements in a newspaper article that were offered to prove the truth of the matter asserted)). None of the exceptions to hearsay appear to apply to Mr. Maulbetsch's article. *See* Fed. R. Evid. 801(d)(1), (2); Fed. R. Evid. 803.

to Knock Doors in Search of 'Phantom Ballots,'" *Colorado Times Recorder* (Oct. 1, 2021), https://coloradotimesrecorder.com/2021/10/colorado- election-fraud-group-is-training-conspiracists-in-other-states-to-knock-doors-in-search- of-phantom-ballots/39935; Eric Maulbetsch, "Election Fraud Conspiracists Still Knocking on Colorado Voters' Doors," *Colorado Times Recorder* (Nov. 23, 2021), https://colorado timesrecorder2021/11/election-fraud-conspiracists-still-knocking-on-colorado-voters-doors/41178/). Admissibility concerns aside, these articles are also months old and do not indicate any ongoing conduct by USEIP or its members justifying emergency injunctive relief. *See Tijuanas Produce*, 2018 WL 1952600, at *1.

Plaintiffs' other allegations are no more convincing. *See Beltronics USA*, 562 F.3d at 1070 ("[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."). Plaintiffs state that defendants "have engaged in actions to intimidate, threaten, and coerce voters, and have publicly admitted plans to continue their door-to-door voter intimidation campaign," Docket No. 6 at 13; that "[Mr.] Smith, [Ms.] Epp, and [Ms.] Kasun have engaged in the intimidating conduct and coordinated their activities through USEIP and its agents," *id.* at 19; and that defendants "have intimidated and threatened Colorado voters, thereby preventing or hindering them from giving support or advocacy to candidates for public office," which "threaten the right to vote [and] intimidate voters." *Id.* These allegations are unsupported, and plaintiffs do not show that any of this alleged misconduct is ongoing, such that drastic, emergency relief is necessary. *See United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla.*, 883 F.2d at 888–89 (characterizing a

preliminary injunction as "drastic relief"); *GTE Corp.*, 731 F.3d at 678 (noting that emergency relief "is the exception rather than the rule").

Plaintiffs rely on declarations from (1) Beth Hendrix, Executive Director of the League of Women Voters of Colorado ("LWVCO"), *see* Docket No. 8; (2) Portia Prescott, State President of NAACP Colorado Montana Wyoming State-Area Conference of the NAACP ("NAACP Colorado"), *see* Docket No. 9; and (3) Salvador Hernandez, Colorado State Director of Mi Familia Vota ("MFV"). Docket No. 10. These declarations, however, do not establish exigency. Ms. Hendrix's declaration states that, in August 2021, LWVCO learned that USEIP "was sending its members door-to-door" and that LWVCO members "have reported that these USEIP agents are holding themselves out as part of an official government organization or audit." Docket No. 8 at 2, ¶ 5. Ms. Hendrix also states that USEIP's actions "will intimidate individuals from voting." *Id.*, ¶ 6. As a result, Ms. Hendrix asserts that "voters may question the validity of the political process." *Id.* at 3, ¶ 10. Aside from Ms. Hendrix's statement that LWVCO members have reported that USEIP agents are "holding themselves out" as government officials, which is hearsay, Ms. Hendrix does not indicate that any actions by USEIP or its agents are ongoing, or that any USEIP agent will imminently visit the home of a LWVCO member. *See RoDa Drilling*, 552 F.3d at 1210 ("Purely speculative harm will not suffice" for a preliminary injunction or TRO.). Moreover, even if that statement were admissible, it is not sufficient to establish "clear and unequivocal" entitlement to relief, *see Beltronics USA*, 562 F.3d at 1070, or imminent injury. *See Schrier*, 427 F.3d at 1267.

Ms. Prescott states in her declaration that NAACP Colorado "[r]ecently" learned that USEIP and "individuals connected to USEIP . . . were engaging in intimidating home visits to Colorado voters" and "w[ere] going door-to-door in Colorado 'looking for fraud' . . . in connection with the November 2020 election." Docket No. 9 at 2, ¶ 7. Ms. Prescott also states that USEIP agents are "showing up at the *homes* of Black and other voters." *Id.* at 3, ¶ 10. Ms. Prescott, however, does not indicate that a USEIP agent visited the home of any NAACP Colorado members or that one will do so soon. *See RoDa Drilling*, 552 F.3d at 1210. Ms. Prescott also does not provide any specific instance of USEIP agents allegedly engaging in misconduct, when that alleged misconduct occurred, or whether it is continuing. *See generally id.* Ms. Prescott's declaration, therefore, does not show that plaintiffs are clearly and unequivocally entitled to relief, *see Beltronics USA*, 562 F.3d at 1070, or that they are facing imminent harm. *See Schrier*, 427 F.3d at 1267.

Mr. Hernandez states in his declaration that, in the fall of 2021, MFV learned that USEIP and individuals connected to USEIP "were engaging in intimidating home visits to Colorado voters," which is threatening to the population MFV serves. Docket No. 10 at 2, ¶ 7. Mr. Hernandez, however, does not state that a USEIP agent visited the home of any MFV member or will soon, *see RoDa Drilling*, 552 F.3d at 1210, and he provides no specific instance of any USEIP agent engaging in misconduct, indication of when USEIP's alleged misconduct occurred, or whether it is continuing. *See generally id.* Mr. Hernandez's declaration does not show that plaintiffs are clearly and unequivocally entitled to relief, *see Beltronics USA*, 562 F.3d at 1070, or that they face imminent harm. *See Schrier*, 427 F.3d at 1267.

The Court finds that plaintiffs have not shown that they are facing "certain, great, actual and not theoretical" or speculative injury. *See RoDa Drilling*, 552 F.3d at 1210; *Heideman*, 348 F.3d at 1189. As the Tenth Circuit has stated, the "party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Schrier*, 427 F.3d at 1267. This is "the single most important prerequisite for the issuance of a preliminary injunction." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (quoting *First W. Cap. Mgmt. Co.*, 874 F.3d at 1141). Plaintiffs have failed to carry their burden.

Moreover, "delay is an important consideration in the assessment of irreparable harm for purposes of a preliminary injunction." *GTE Corp.*, 731 F.2d at 679; *see also A.K. by & through Moyer v. Cherry Creek Sch. Dist. No. 5*, No. 20-cv-00392-PAB-NRN, 2020 WL 2197920, at *3 n.1 (D. Colo. May 6, 2020) ("[T]he Court finds that the delay in seeking injunctive relief cuts against plaintiff's assertions of imminent irreparable harm."); *Am. Ass'n of People With Disabilities v. Herrera*, 580 F. Supp. 2d 1195, 1246 (D.N.M. 2008) (finding that plaintiffs' two-week delay from filing lawsuit to seeking preliminary injunction "considerably undercut[ ] their allegation of irreparable harm"); *Heideman*, 348 F.3d at 1189 (internal quotation marks omitted) ("[T]he party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." (brackets, alterations, and emphasis in original) (citation omitted)).

Plaintiffs state in their motion that they learned about USEIP's door-to-door activities in the fall of 2021. Docket No. 6 at 8. Plaintiffs cite Mr. Breese's declaration.

12

*Id.* As the Court has noted, Mr. Breese declares that, on December 8, 2021, he directed a librarian at his law firm to request a list of all individuals who had purchased voter rolls from the Colorado Secretary of State. *See* Docket No. 7 at 1, ¶ 2. Plaintiffs also rely on the declarations that the Court considered previously. In her declaration, Ms. Hendrix states that LWVCO learned about USEIP's door-to-door activities in August 2021. *See* Docket No. 8 at 2, ¶ 5. Ms. Prescott states in her declaration that NAACP Colorado learned about USEIP's activities "[r]ecently," but she does not specify when that was. *See* Docket No. 9 at 2, ¶ 7. Mr. Hernandez states that MFV learned about USEIP in "[f]all of 2021." Docket No. 10 at 2, ¶ 7.

Plaintiffs, however, waited at least three months, from December 2021 to March 2022, to file their complaint and TRO motion.[7] *See* Docket Nos. 1, 5–6. Waiting three months to file this lawsuit and seek a TRO, however, is not consistent with plaintiffs' allegations that they are facing imminent harm. *See, e.g.*, *Found. Learning LLC v. Acad., Arts & Action Charter Acad.*, No. 17-cv-03182-RM-KLM, 2018 WL 3382933, at *3 (D. Colo. May 18, 2018) (waiting three months to file motion for emergency injunctive relief without explanation "strongly undermines plaintiff's suggestion that the moment of maximum harm is now at hand").

Because the Court finds that plaintiffs have not met their burden of demonstrating immediate irreparable harm so as to justify issuance of a temporary restraining order, the Court need not address the remaining TRO factors and will deny

---

[7] Plaintiffs' declarations indicate that they likely delayed even longer than three months, given that LWVCO and MFV learned about USEIP's alleged conduct in late summer or fall 2021. *See* Docket No. 8 at 2, ¶ 5; Docket No. 10 at 2, ¶ 7.

that portion of plaintiffs' motion. *Cf. Big O Tires, LLC v. Felix Bros., Inc.*, 724 F. Supp. 2d 1107, 1121 (D. Colo. 2010) ("The Court declines to address the remaining preliminary injunction elements, as the resolution of them will have no bearing on the outcome.").

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the portion of plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction [Docket No. 5] that requests issuance of a temporary restraining order is **DENIED**. It is further

**ORDERED** that the portion of plaintiffs' Motion for Expedited Hearing on Plaintiffs' Motion for Preliminary Injunction and Defendants' Motion to Dismiss [Docket No. 29] that requests an expedited TRO hearing is **DENIED as moot**.

DATED April 8, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge