**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-00581-PAB

Colorado Montana Wyoming
State Area Conference of the NAACP,
League of Women Voters of Colorado, and
Mi Familia Vota,

      Plaintiffs,

v.

United States Election Integrity Plan, Shawn Smith,
Ashley Epp, and Holly Kasun,

      Defendants.

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS (ECF NO. 27)**

---

## INTRODUCTION

Defendants have moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) on the grounds that Plaintiffs lack standing. That motion should be denied. Under well-settled law in this federal district and circuit, Plaintiffs here have easily cleared the bar to establish organizational and associational standing, as they have all alleged redressable injuries in fact that are fairly traceable to Defendants' misconduct.

## BACKGROUND

United States Election Integrity Plan ("USEIP") and its members, including Defendants Shawn Smith, Ashley Epp, and Holly Kasun, have "developed into a coordinated network of agents throughout Colorado that focus their energy on various activities associated with the Big

Lie," including going door-to-door interrogating voters under the pretense of seeking to uncover "phantom ballots," which they allege were the cause of former President Trump losing the 2020 presidential election. Compl. (ECF No. 1) ¶ 23. Essential to "USEIP's operation is its door-to-door voter intimidation campaign" at voters' homes, whereby "USEIP agents travel door to door, often targeting high-density housing, communities experiencing growth among racial minority voters, and communities in which a high percentage of voters supported Democratic candidates in the 2020 election." Compl. ¶ 27.

Plaintiffs are three distinct organizations, all of which have focused missions aimed at supporting their respective members through political, educational, social, and civic efforts. Compl. ¶¶ 13-15. Colorado Montana Wyoming State Area Conference of the NAACP ("NAACP Colorado") is a membership-based civil rights organization with a core mission aimed "to ensure political, educational, social, and economic equality of rights of all persons and to eliminate race-based discrimination." Compl. ¶ 13; *see also* NAACP Decl. (ECF No. 9) ¶ 2. NAACP Colorado engages in efforts—including voter outreach—aimed at protecting democracy, enhancing equity, and increasing democratic participation and civic engagement. NAACP Decl. ¶ 5. USEIP's voter intimidation practices directly harm the NAACP's ability to carry out its mission of ensuring that every American has access to free, open, equal, and protected elections. NAACP Decl. ¶ 11. NAACP Colorado ***has already exhausted resources*** actively monitoring this voter intimidation and related safety concerns and strategizing about how to combat USEIP's actions. Compl. ¶ 36 (emphasis added); *see also* NAACP Decl. ¶ 13. This diversion of resources is a distraction from key programs that NAACP Colorado would otherwise support, such as voter outreach aimed at

protecting democracy, enhancing equity, and increasing democratic participation and civic engagement. Compl. ¶ 36; *see also* NAACP Decl. ¶ 14.

League of Women Voters of Colorado ("LWVCO") is a membership-based non-profit civic engagement organization with the mission to encourage informed and active participation in government, increase understanding of major public policy issues, and influence public policy through education and advocacy. Compl. ¶ 14; *see also* LWVCO Decl. (ECF No. 8) ¶ 3. LWVCO specifically works with newly naturalized citizens and has helped register more than 400 people [to vote] every year. LWVCO Decl. ¶ 4. USEIP's intimidation practices directly harm LWVCO's mission, which is to increase voter engagement and confidence in casting a ballot. Compl. ¶ 37; *see also* LWVCO Decl. ¶ 10. USEIP's activities ***have forced Plaintiff LWVCO to divert resources*** away from its core functions to counteract USEIP's detrimental impact to current and future voters. LWCVO Decl. ¶ 11 (emphasis added).

Mi Familia Vota (MFV) is a civic engagement organization that unites Latino, immigrant, and allied communities to promote social and economic workshops, voter registration, and voter participation. Compl. ¶ 15; *see also* MFV Decl. ¶¶ 1-5. Faced with USEIP voter intimidation, MFV ***has had to reallocate resources to combat USEIP's actions***, educate voters about their rights when confronted by false accusations of voter fraud in their own homes, and develop a plan for monitoring and responding to Latino voters' safety concerns. Comp. ¶ 38. In addition, one of MFV's primary activities in pursuit of its mission is through door-to-door canvassing, in which MFV members share information about how to vote, where voters can find their closest Voter Service and Polling Center (VSPC), and the hours that the polls are open. MFV Decl ¶ 3. USEIP's door-to-door voter intimidation campaign directly harms MFV's ability to carry out MFV's

mission of voter engagement, which depends on door-to-door canvassing. MFV Decl. ¶ 9. USEIP's intimidation of voters make it less likely that Latino voters will answer the door for anyone – including for MFV staff and volunteers. MFV Decl. ¶ 9. Due to USEIP's voter intimidation campaign, MFV has been forced to actively monitor the voter intimidation in Colorado through outreach with organizational partners in the voting rights advocacy community and implementing strategies to counteract USEIP's impact on its members. Compl. ¶ 38. Rather than spend time on activities central to its core mission, USEIP's actions have caused MFV to expend time and resources to create plans to invest additional resources into counties targeted by USEIP so that voters there recognize MFV canvassers as distinct from USEIP agents. Compl. ¶ 38. The resources that MFV staff ***has and will continue to spend*** responding to USEIP's actions are resources diverted directly from MFV's core mission. Compl. ¶ 38 (emphasis added).

Plaintiffs assert that Defendants have violated the Ku Klux Klan Act, 42 U.S.C. § 1984, and Section 11(b) of the Voting Rights Act, 52 U.S. 10307(b), for intimidating and attempting to intimidate voters, and particularly voters of color, in Colorado.

## ARGUMENT

A motion to dismiss for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1) may be granted "only when 'it appears beyond doubt that the plaintiff could prove no set of facts entitling it to relief.'" *Sierra Club v. Young Life Campaign,* Inc., 176 F.Supp.2d 1070, 1083 (D. Colo. 2001) (quoting *United States v. Colo. Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996) (quoting *Ash Creek Mining v. Lujan*, 969 F.2d 868, 870 (10th Cir. 1992)). To satisfy Article III's standing requirements, a plaintiff must establish three elements: (1) it has suffered an injury in fact; (2) that was caused by the challenged act; and (3) that the injury is redressable by a

favorable decision. *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 180-81 (2000)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

"An organization has standing to sue if it can demonstrate an injury to itself and the other constitutional elements for standing." *Sierra Club*, 176 F.Supp.2d at 1084 (citing *Comm. To Save Rio Hondo v. Lucero*, 102 F.3d 445, 447 n. 3 (10th Cir. 1996)). In addition, or in the alternative, an organization has associational or representational standing to sue "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Laidlaw Environmental Servs., Inc.*, 504 U.S. at 180-81. Article III is satisfied if any one Plaintiff has standing for each claim. *Rector v. City & Cty of Denver*, 348 F.3d 935, 949-50 (10th Cir. 2003).

### A. NAACP, Mi Familia Vota, and League of Women Voters Have Organizational Standing.

All three Plaintiff organizations have established that they have organizational standing to pursue the claims they have brought against the Defendants under Section 11(b) of the Voting Rights Act and under the Ku Klux Klan Act. Plaintiffs' Complaint establishes both that they have suffered "particularized and specific injury," and that these injuries are fairly traceable to Defendants' actions. Defendants' arguments to the contrary, *see* ECF 27 at 2, 4, both fail.

First, as federal courts have consistently made clear, "[a]n organization has standing to sue on its own behalf if the 'defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts.'" *Common Cause of Co. v. Buescher*, 750 F.Supp.2d 1259, 1269 (D. Colo. 2010) (quoting *Fla. State Conference of NAACP v. Browning*, 522 F.Supp.3d 1153, 1165 (11th Cir. 2008)); *see also Scott v. Schedler*, 771 F.3d

5

831, 837 (5th Cir. 2014) (citation omitted) (same); *Pavek v. Simon*, No. 19 Civ. 3000 (SRN/DTS), 2020 WL 3183249, at *10 (D. Minn. June 15, 2020) (same); *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 464 (S.D.N.Y. 2020) (same). Likewise, "[a]n independent basis for organizational standing exists when a defendant's conduct makes it difficult or impossible for the organization to fulfill one of its essential purposes or goals." *Buescher*, 750 F. Supp. at 1269.

Here, Defendants have organized and engaged in unlawful voter intimidation in the State of Colorado. They go to voters' homes, interrogate them about their addresses and method of voting, demand information about their ballot, and accuse them of committing fraud. Compl. ¶ 5, 26-27. Defendants have publicly endorsed violence—not just against Secretary of State Jena Griswold but against *anyone* Defendants accuse of voter fraud. Compl. ¶ 26. Their County Playbook endorses violence against those they accuse of voter fraud. Compl ¶ 28. And simultaneously, they are organizing door-to-door campaigns to baselessly accuse people who either live in places they do not like, or voted in ways they do not like, of voter fraud. Compl. ¶ 27. The implication for voters is clear: voting—particularly if you live in areas that tend to vote in a way Defendants do not like, or if you live in certain types of housing—now carries the risk of bringing armed USEIP agents to their doors.

All three Plaintiff groups—whose mission is to encourage voting and educate voters—have now been forced to divert resources to address this new threat to voter safety. The diversion of resources that all three Plaintiffs have been forced to undertake represent concrete and particularized injuries. NAACP Colorado ***has already exhausted resources*** actively monitoring this voter intimidation and related safety concerns and strategizing about how to combat USEIP's

6

actions. Compl. ¶ 36 (emphasis added); *see also* NAACP Decl. ¶ 13.  Likewise, USEIP's activities ***have forced Plaintiff LWVCO to divert resources*** away from its core functions to counteract USEIP's detrimental impact to current and future voters.  LWCVO Decl. ¶ 11.  And MFV ***has and will continue to spend*** resources responding to USEIP's actions, diverting resources away from MFV's core mission. Compl. ¶ 38 (emphasis added).

Simply put, contrary to Defendants' claim, these injuries are not "too speculative" to establish Article III standing. ECF 27 at 4. USEIP has already begun its door-to-door voter intimidation campaign; they are targeting actual voters in their homes; and they continue to ramp up their operations as Colorado's 2022 mid-term elections draw closer. Voters have already been intimidated not just by *prior* visits, but by the threat that voting will carry the risk of receiving such a visit in the future. And, as a result, Plaintiffs, which normally focus on encouraging voter participation and educating voters about their rights, have had to divert their resources to address this new voter intimidation campaign that is *currently affecting* members and voters in the communities they serve.

The diversion of resources has taken place; the injury has occurred and is ongoing. In this way, the facts here are clearly distinguishable from those in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), on which Defendants heavily rely. In *Clapper*, the organizational plaintiffs challenged Section 702 of the Foreign Intelligence Surveillance Act of 1978 (FISA), which permitted surveillance of individuals who are not United States persons and who are located outside the United States. The plaintiffs were United States organizations whose own communications were not subject to the law, and who acknowledged that they had no knowledge that their foreign contacts would be targeted under the law or even that the procedural safeguards

7

established under the law would authorize such surveillance. *Id.* at 410-411. The court, therefore, held that injuries were speculative and that any expenditures made by the organization to avoid that "hypothetical future harm could not be used to establish standing." *Id.* at 401-02. Here, Plaintiffs are not challenging a law subject to procedural safeguards. They are suing a private organization which has already begun to carry out the challenged actions. There is nothing speculative about the injuries asserted in Plaintiffs' complaint.

Second, Plaintiffs' concrete injuries are fairly traceable to Defendants' actions. On this front, Defendants assert – but fail to develop – an argument that Plaintiffs' injuries are attributable not to Defendants, but to the independent actions of third parties. ECF 27 at 4. But nothing in the Complaint or Plaintiffs' declarations even hints at this kind of traceability problem. To the contrary, Plaintiffs' allegations are unambiguously focused on Defendants' actions. Plaintiffs allege that Defendant USEIP, through and along with Defendants Smith, Epp, and Kasun, is deploying its agents door-to-door around Colorado to intimidate voters and prevent Coloradans from lawfully casting ballots. Compl. ¶¶ 1; 8. Plaintiffs further allege that Defendants' actions have already caused injury to Plaintiffs by forcing them to divert resources away from their core missions and that Plaintiffs will be required to further divert time and resources if Defendants' voter intimidation campaign continues. Compl. ¶¶ 13-15.

Crucially, even if the connections between Defendants' misconduct and Plaintiffs' injuries were somewhat attenuated (which they are not), standing would still be established. As the Tenth Circuit has explained, "Although Article III does at least require proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact,' it 'demands something less than the concept of proximate cause' found in tort law." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156

(10th Cir. 2005) (quoting *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1242 (10th Cir. 2021). The allegations here easily satisfy this standard.

### B. NAACP and League of Women Voters Also Have Associational Standing on Behalf of Their Members.

Contrary to Defendants' contention, *see* ECF 27 at 3, Plaintiffs NAACP CO and LWV CO also have alleged facts sufficient to establish associational standing. ECF 27 at 3. Associational standing is established when an organization's "members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Sierra Club*, 176 F.Supp.2d at 1084 (citing *Laidlaw Environmental Servs., Inc.*, 504 U.S. at 180-81).

Here, Plaintiffs have made clear that Defendants' door-to-door voter intimidation campaign has injured NAACP and LWVCO members. *See* NAACP Decl. ¶ 8 ("Because of the long history of racial discrimination aimed at Black Americans—including in connection with the exercise of their right to vote—this door-to-door intimidation campaign is extremely threatening to Black Coloradans, including NAACP members); LWVCO Decl. ¶ ("LWVCO members have reported concerns based on their own experiences with visits from USEIP agents . . ."). Thus, Plaintiffs' injured members have standing to sue in their own right. The requirement that the interests at stake are germane to the organizations' purposes is also satisfied, as both the NAACP and LWVCO are civic engagement organizations that seek to protect voter engagement and access to the right to vote. Compl. ¶¶ 13-14. Finally, the relief requested does not require the participation of the individual members in the lawsuit, as the harm to Plaintiffs' members will be redressed regardless of their participation in the lawsuit. *See Sierra Club*, 176 F.Supp. at 1085.

9

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.

Dated:  April 18, 2022

LATHROP GPM LLP

By /s/Amy Erickson
Casey Breese (#51448)
Casey.breese@lathropgpm.com
Jean Paul Bradshaw
Jeanpaul.bradshaw@lathropgpm.com
Dion Farganis
Dion.farganis@lathropgpm.com
Reid Day
Reid.day@lathropgpm.com
Brian A. Dillon
Brian.dillon@lathropgpm.com
Amy Erickson (#54710)
Amy.erickson@lathropgpm.com
1515 Wynkoop Street, Suite 600
Denver, CO 80202
Telephone: (720) 931-3200

Courtney Hostetler
chostetler@freespeechforpeople.org
John Bonifaz
jbonifaz@freespeechforpeople.org
Ben Clements
bclements@freespeechforpeople.org
Ron Fein
rfein@freespeechforpeople.org
FREE SPEECH FOR PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459
Telephone: (617) 249-3015

*ATTORNEYS FOR Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, and Mi Familia Vota*

# CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Amy Elizabeth Erickson | amy.erickson@lathropgpm.com, claudia.neal@lathropgpm.com |
| Ben Clements | bclements@freespeechforpeople.org |
| Brian Andrew Dillon | brian.dillon@lathropgpm.com, kristina.procai@lathropgpm.com |
| Casey Carlton Breese | casey.breese@lathropgpm.com, brandi.pruett@lathropgpm.com, cheyenne.serrano@lathropgpm.com |
| Courtney Marie Hostetler | chostetler@freespeechforpeople.org |
| Jean Paul Bradshaw | jeanpaul.bradshaw@lathropgpm.com |
| Jessica Lynn Hays | jessica@reischlawfirm.com |
| R. Scott Reisch | scott@reischlawfirm.com, cassandra@reischlawfirm.com, Matthew@reischlawfirm.com, Rob@reischlawfirm.com |
| Reid Kelly Day | reid.day@lathropgpm.com, kirsten.hollstrom@lathropgpm.com |
| Ronald Andrew Fein | rfein@freespeechforpeople.org |

s/Claudia Neal

48575053v3