IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-CV-00581-PAB

Colorado Montana Wyoming
State Area Conference of the NAACP,
League of Women Voters of Colorado, and
Mi Familia Vota,

    Plaintiffs,

v.

United States Election Integrity Plan, Shawn Smith,
Ashley Epp, and Holly Kasun,

    Defendants.

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (ECF. NO. 4)**

## INTRODUCTION

Defendants do not deny that they have engaged in a coordinated scheme to intimidate voters across the state of Colorado. To the contrary, Defendants have publicly boasted about the scheme in which they are engaged and threatened violence against Coloradans they baselessly accuse of voter fraud. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). Defendants' illegal voter intimidation, and the harm it continues to inflict on the most fundamental right—the right to vote—must be immediately stopped.

1

# ARGUMENT

Defendants do not deny engaging in the unlawful activity at issue in this case. Specifically, Defendants do not deny that—fueled by an irrational quest for evidence in support of the Big Lie—they have gone door-to-door to voters' homes, taken photographs of voters' residences, maintained a database of voters, carried and/or encouraged USEIP agents to carry weapons when going to voters' homes, drafted and implemented USEIP's County & Local Organizing Playbook (the "Playbook"), and engaged in other activities that threaten and intimidate Colorado voters. Defendants concede they have implemented their Playbook and engaged in this objectively intimidating conduct. Rather than defend their reprehensible canvassing activity as lawful, Defendants only argument on the merits appears to be that—upon information and belief—their post-2020 door-to-door actions allegedly have been paused. ECF No. 35 at 8, 11. But they retain their database of voters' homes. And Defendants not only continue to publicly threaten the Colorado Secretary of State but *anyone* they accuse of committing voter fraud—which appears to encompass anyone who lives in areas where Defendants' non-preferred candidates won a majority of votes.

The Defendants have *already* intimidated would-be voters in the 2022 midterms. Voters across the state now know that, based on Defendants' post-2020 intimidation campaign, voting in any subsequent contested election in Colorado carries the risk of being intimidated by USEIP agents. The preliminary injunction is necessary to ensure that voters enter this election cycle, secure in the knowledge that they need not fear harassment in their own homes for having chosen to vote. It also will protect voters from the potential misuse of Defendants' database of photographs.

Defendants likewise do not dispute making the threatening statements cited in the Complaint. Instead, Defendants argue their *own* public statements and Playbook constitute inadmissible hearsay and, therefore, Plaintiffs have not established a proper factual basis for a

2

Preliminary Injunction. Defendants' position is untenable. Defendants' statements and the Playbook are unquestionably admissible. *See* Fed. R. Ev. 801(d)(2); Fed. R. Ev. 803(6)(B).

Defendants attempt to shirk responsibility for their unlawful conduct because Plaintiffs do not support their claims, at least at this juncture, with affidavits of intimidated voters. To be clear, however, Plaintiffs have had contact with voters who were intimidated by encounters with USEIP representatives on their own doorsteps. The fact that these voters reasonably fear retaliation by USEIP if they do come forward—which is exactly the result USEIP set out to achieve—does not preclude the Court from entering the Preliminary Injunction, which simply seeks to prohibit USEIP from engaging in the unlawful conduct that USEIP itself now apparently claims has ended.[1]

In sum, Defendants do not deny engaging in the activity at issue and do not deny the activity is unlawful. Plaintiffs have demonstrated a likelihood of success on the merits and a likely threat of irreparable harm. The balance of harms therefore weighs in favor of the Preliminary Injunction, and entry of the Injunction is in the public interest. Defendants should be enjoined from further intimidating Colorado voters.

### I.   Plaintiffs Are Likely To Succeed Under the VRA and the KKK Act.

Defendants have engaged in objectively threatening or intimidating behavior in order to intimidate voters from participating in Colorado elections. Absent injunction, voters will go into the 2022 election cycle know that the decision to vote now also carries the risk of being visited by armed USEIP agents. They will know too that merely living in a certain type of housing or living in a neighborhood that does not favor Defendants' favored candidates will draw USEIP and

---

[1] If the Court seeks additional information and sworn testimony before entering a Preliminary Injunction, then Plaintiffs should be granted leave to conduct expedited discovery prior to the Preliminary Injunction hearing in order to obtain information from USEIP regarding the communities and voters who were targeted by their door-to-door voter intimidation campaign.

accusations of fraud—which Defendants have asserted is grounds for violence. Defendants' argument to the contrary—that Plaintiffs have not established any economic, legal, or physical threat to voters under the VRA—should be rejected, as it is inconsistent with the law and ignores the evidence file in support of this motion.

Section 11(b) of the VRA protects people who are "voting," "attempting to vote," or "urging or aiding any person to vote or attempt to vote." "Intimidation means putting a person in fear for the purpose of compelling or deterring his or her conduct." *League of United Latin American Citizens v. Public Interest Legal* Foundation, No. 1:18-cv-00423, 2018 WL 3848404, at \*4 (E.D. Va. 2018) (internal quotation marks and citation omitted). Thus, Section 11(b) is violated by *any actual or attempted action* by any person to instill fear in connection with one's exercise of the right to vote. *See Daschle v. Thune*, Temporary Restraining Order, Case No. 04-4177 (D.S.D Nov 2, 2004) (finding that the defendants violated Section 11(b) and objectively intimidated Native American voters by following voters from polling places, copying down voters' license plate numbers, and by recording their license plates). So long as there is a sufficient nexus between the alleged intimidation and voting-related activity, the intimidation violates Section 11(b). *See United States v. Robinson*, 813 F.3d 251, 259 (6th Cir. 2016) ("That [the victim] had desired to vote for [a different mayoral candidate] but did not leave his house because of the presence of [defendants] amounted to intentional intimidation and oppression of voting rights.").

Here, Plaintiffs have demonstrated that USEIP engaged in intimidating behavior in connection with the exercise of one's right to vote, including (among other things) showing up unannounced at voters' doorsteps with weapons; interrogating voters about their address, method of voting history, and other personal information; and taking photographs of the voters' residences. ECF No. 1 ("Compl.") ¶¶ 1-4.   Further, Defendants have publicly endorsed violence—not just

against Colorado Secretary of State Jena Griswold, but against **any voter** Defendants accuse of voter fraud. Compl. ¶ 25-26. Defendants' Playbook also endorses violence against **any** Coloradan they accuse of voter fraud. Compl. ¶ 28. In this day and age, it defies logic and credulity to suggest that this behavior is not objectively intimidating, is not an attempt to intimidate, or that a voter, and particularly a voter of color, would not feel threatened in connection with the fundamental right to vote. Courts routinely grant injunctive relief under these types of circumstances. *See, e.g.*, *Council on American-Islamic Relations—Minnesota v. Atlas Aegis, LLC*, 497 F. Supp. 3d 371, 379 (D. Minn. 2020) (granting injunctive relief and holding that the defendants' plan to staff privately hired armed agents at certain polling places allegedly to "protect the polls from 'antifa,'" was "certainly likely to intimidate voters"); *Daschle v. Thune*, Temporary Restraining Order, Case No. 04-4177 (D.S.D Nov 2, 2004) (granting injunctive relief and finding that defendants violated Section 11(b) and objectively intimidated Native American voters by following voters from polling places, copying down voters' license plate numbers, and by recording their license plates).

Notably, Defendants make no attempt to justify their conduct as lawful—instead, they argue Plaintiffs' evidence of their unlawful conduct is inadmissible hearsay. But Defendants' own statements that they founded USEIP, drafted the incendiary Playbook, and have worked in concert with USEIP to go door to door across Colorado intimidating voters, among other statements, are not hearsay or fall within an exception to the hearsay rule. *See* Fed. R. Ev. 801(d)(2); Fed. R. Ev. 803(6)(B). More specifically, Defendants statements constitute an opposing party's statement under Federal Rule of Evidence 801(d)(2) because they were made by Defendants in their individual capacity or as representatives of USEIP, and because they were made in furtherance of a conspiracy. In addition, the Playbook, and the statements therein, fall within the business records exception to the hearsay rule under Federal Rule of Evidence 803(6)(B).

In sum, there is ample evidence that Defendants have intimidated and threatened Colorado voters, thereby preventing or hindering them from giving support or advocacy to candidates for public office. While abiding by and publicly promoting a Playbook that contends, "[t]his is the fight," and encourages its readers to believe, "we are not at a time of peace," and while proactively and publicly seeking armed agents to join their door-to-door campaign, USEIP is sending its agents to voters' residences, recording their homes, interrogating voters about their votes, and accusing voters of casting fraudulent ballots. These acts threaten the right to vote, intimidate voters, and violate the VRA and KKK Act. Plaintiffs are therefore likely to succeed under the VRA and the KKK Act.

## II. Plaintiffs Face Irreparable Harm.

Plaintiffs have demonstrated a clear threat of irreparable harm sufficient to warrant the entry of a preliminary injunction. Defendants' campaign to intimidate voters who participated in the November 2020 general election will, if not enjoined, constitute intimidation and attempted intimidation of would-be voters in the 2022 election cycle and beyond, in violation of Section 11(b) of the VRA and the KKK Act. With this looming threat, Plaintiff groups will continue to have to expend resources to address USEIP's ongoing intimidation campaign.

Defendants argue (without any evidentiary support) that "upon information and belief" all door-to-door actions by USEIP agents have stopped, no member of Plaintiffs' organizations has been dissuaded from engaging in their right to vote, and Plaintiffs' delay in bringing this action undercuts their request for a preliminarily injunction. ECF No. 35 at 7-9. Defendants' position is nonsensical and should be rejected.

Preliminarily, Defendants Smith, Epp, and Kasum have publicly claimed to be the founders of USEIP, and USEIP is a named Defendant in this action. Surely Defendants know whether or

not USEIP is actively engaged in ongoing door-to-door voter intimidation. Regardless, in recent months, Defendants have publicly promoted their door-to-door voter intimidation campaign and made violent public threats against any voter they claim was involved in election fraud.

Further, Defendants' argument that, on the one hand, no voter has yet been dissuaded from exercising their right to vote in the 2022 election cycle and, on the other hand, Plaintiffs waited too long to commence this action, leaves Plaintiffs in a catch-22. Put another way, it is illogical to suggest that Plaintiffs should have waited until after a voter has actually been prevented from exercising their right to vote (i.e., after an election) to seek an injunction, while at the same time suggesting that Plaintiffs should have brought this action sooner.

A preliminarily injunction is warranted where there is a *threat* of irreparable harm and a *risk* that voters will experience harm. *See Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016) (quoting *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009)). Plaintiffs have satisfied this standard. Defendants' actions have already intimidated voters and are continuing to intimidate voters, and there is significant risk that Defendants' actions will dissuade or prevent voters from exercising their constitutional right to vote. *See Ariz. Democratic Party*, No. CV-16-03752-PHX-JJT, 2016 WL 8669978, at *11 (D. Ariz. 2016) ("[I]f some potential voters are improperly dissuaded from exercising their franchise, it is unlikely those voters can be identified, their votes cannot be recast, and no amount of traditional remedies such as money damages would suffice after the fact."); *Fish*, 840 F.3d at 752 (enjoining the enforcement of the elimination of the same-day registration provision and prohibition on counting out-of-precinct ballots because failure to enjoin the provisions prior to an election would result in irreparable harm). As more fully set forth in *Plaintiffs' Brief in Support of Motion for Temporary Restraining Order and Preliminary Injunction*, ECF No. 4, Defendants' misconduct has also forced Plaintiffs to divert resources from

the normal course of their voter education and get-out-the-vote drives to address this new, unlawful threat to civic participation in Colorado.

Defendants must be enjoined immediately to prevent irreparable harm to Colorado voters, including Plaintiffs' members, and to Plaintiffs' voting rights efforts.

### III.     The Balance of Harms and Public Interest Favor Injunctive Relief.

The balance of harms and consideration of the public interest both weigh in favor of an injunction to maintain the status quo and prevent Defendants from intimidating Coloradans at their doorsteps. "[T]he public has a strong interest in exercising the fundamental political right to vote. That interest is best served by favoring enfranchisement and ensuring qualified voters' exercise of their right to vote is successful." *Fish* 189 F.Supp.3d at 1150 (citing *Obama for American v. Husted*, 697 F.3d 423, 436-7 (6th Cir. 2012)) (internal quotations omitted). By contrast, Defendants face *no* legally protectable burden from the proposed injunction, which seeks only to enjoin their illegal activity. *See CAIR-Minnesota*, 497 F. Supp. 3d at 379-80 ("although Defendants have an interest in conducting their business as contracted, there can be no legally-protectable interest in intimidating voters, as the Voting Rights Act makes such conduct unlawful").

Defendants allege that Plaintiffs' request for an injunction raises serious First and Second Amendment issues.  Defendants, however, fails to further develop or provide any legal support for this argument, contending that they need not address this issue because Plaintiffs have not presented evidence confirming  Defendants are maintaining a database of voters, their residences, and/or their vehicles.  But Plaintiffs do have evidence that Defendants are maintaining a database of voters, their residences, and/or their vehicles—Defendants' own statements—and Defendants

8

do not deny that such a database exists.[2] Further, Defendants cannot use the First and Second Amendment to justify their illegal voter intimidation because the First and Second Amendment do not protect such illegal conduct.

Defendants also conclusorily allege, without any support whatsoever, that there is no harm to the Plaintiffs or to voters' right to vote freely and, therefore, it is inappropriate for the Court to use its injunctive powers in this matter.  ECF No. 35 at 10.  As described here, however, Plaintiffs have demonstrated that they are likely to succeed on the merits of their claims under Section 11(b) of the VRA and the KKK Act because Defendants' actions have already threatened and intimidated, and will continue to threaten and intimidate, Colorado voters.

Enjoining Defendants from engaging in conduct that Congress and the Colorado Legislature specifically barred and has no public benefit is crucial to restoring Coloradans' trust that they can vote and participate in the electoral process without intimidation, and it is an appropriate use of the Court's injunctive powers.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully renew their request that the Court grant Plaintiffs' motion, enter the proposed preliminary injunction, and enjoin Defendants from engaging in its door-to-door voter intimidation campaign or from engaging in other actions that may intimidate voters or interfere with voter access to the polls.

Dated:  April 25, 2022                                    LATHROP GPM LLP

By /s/ Amy Erickson
Casey Breese (#51449)
Casey.breese@lathropgpm.com

---

[2] As noted above, Plaintiffs intend and should be permitted to seek discovery prior to the preliminary injunction hearing.  Plaintiffs anticipate such discovery will further corroborate Defendants' admissions regarding the database Defendants are maintaining.

9

Jean Paul Bradshaw
Jeanpaul.bradshaw@lathropgpm.com
Dion Farganis (Admission Pending)
Dion.farganis@lathropgpm.com
Reid Day
Reid.day@lathropgpm.com
Brian A. Dillon
Brian.dillon@lathropgpm.com
Amy Erickson (#54710)
Amy.erickson@lathropgpm.com
1515 Wynkoop Street, Suite 600
Denver, CO 80202
Telephone: (720) 931-3200

Courtney Hostetler
chostetler@freespeechforpeople.org
John Bonifaz
jbonifaz@freespeechforpeople.org
Ben Clements
bclements@freespeechforpeople.org
Ron Fein
rfein@freespeechforpeople.org
FREE SPEECH FOR PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459
Telephone: (617) 249-3015

*ATTORNEYS FOR Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, and Mi Familia Vota*

10

## CERTIFICATE OF SERVICE

       I hereby certify that on April 25, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Amy Elizabeth Erickson | amy.erickson@lathropgpm.com, claudia.neal@lathropgpm.com |
| Ben Clements | bclements@freespeechforpeople.org |
| Brian Andrew Dillon | brian.dillon@lathropgpm.com, kristina.procai@lathropgpm.com |
| Casey Carlton Breese | casey.breese@lathropgpm.com, brandi.pruett@lathropgpm.com, cheyenne.serrano@lathropgpm.com |
| Courtney Marie Hostetler | chostetler@freespeechforpeople.org |
| Jean Paul Bradshaw | jeanpaul.bradshaw@lathropgpm.com |
| Jessica Lynn Hays | jessica@reischlawfirm.com |
| R. Scott Reisch | scott@reischlawfirm.com, cassandra@reischlawfirm.com, Matthew@reischlawfirm.com, Rob@reischlawfirm.com |
| Reid Kelly Day | reid.day@lathropgpm.com, kirsten.hollstrom@lathropgpm.com |
| Ronald Andrew Fein | rfein@freespeechforpeople.org |

                                        s/Brandi Pruett

48652746v3