IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22–cv–00581-PAB

COLORADO MONTANA WYOMING STATE AREA CONFERENCE OF THE NAACP,
LEAGUE OF WOMEN VOTERS OF COLORADO, and
MI FAMILIA VOTA,

       Plaintiffs,

v.

UNITED STATES ELECTION INTEGRITY PLAN,
SHAWN SMITH,
ASHLEY EPP, and
HOLLY KASUN,

       Defendants.

## ORDER

      This matter is before the Court on defendants' Motion to Dismiss [Docket No. 27]. Plaintiffs responded, Docket No. 33, and defendants replied.  Docket No. 36.

## I. BACKGROUND[1]

      Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP ("NAACP"), League of Women Voters of Colorado ("LWVCO"), and Mi Familia Vota ("MFV") are civil- and voting-rights organizations.  Docket No. 1 at 4–5, ¶¶ 13–15.

---

[1] As the Court explains below, defendants raise a facial attack on plaintiffs' standing.  Because defendants' attack is facial rather than factual, the Court accepts the allegations in the Complaint [Docket No. 1] as true.  *See United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) ("Because we construe the United States' Rule 12(b)(1) motion to dismiss for lack of standing to be a facial attack on the complaint, rather than a factual one, we accept Appellants' allegations of material facts as true and construe the complaint in favor of Appellants.").

Defendants Shawn Smith, Ashley Epp, and Holly Kasun are members of defendant United States Election Integrity Plan ("USEIP"). *Id.* at 6, ¶¶ 17–19.[2] Mr. Smith "was, at some points in time . . . [p]resident and [c]o-[f]ounder of USEIP." *Id.*, ¶ 17.

USEIP was formed after the 2020 presidential election and is focused primarily on "advanc[ing] the false claim that former President Trump lost the 2020 election because of 'blatant election fraud.'" *Id.* at 7, ¶ 20. USEIP members travel door-to-door and "interrogat[e] voters under the pretense of seeking to uncover 'phantom ballots,'" which they believe caused President Trump's loss. *Id.*, ¶¶ 22–23. USEIP members target voters using voter rolls that Mr. Smith purchased and focus on "high-density housing, communities experiencing growth among racial minority voters, and communities in which a high percentage of voters supported Democratic candidates" in 2020. *Id.* at 8, ¶ 27. Members of USEIP, who are sometimes armed and wear badges to "present an appearance of government officiality," "interrogate" voters about their addresses and their participation in the 2020 election, including how the voters cast their ballots, and take photos of voters' homes. *Id.* at 2, 8, ¶¶ 3, 27. Members have "claimed to be from 'the county'" and have "falsely accused [voters] of casting fraudulent ballots." *Id.* at 9, ¶ 27. The prospect of visits from USEIP members is particularly intimidating for members of the Black and Latino communities, which plaintiffs serve, because of the history of voter suppression in those communities. *Id.* at 10, ¶¶ 33–34.

Plaintiffs bring three claims for relief: (1) intimidating voters and potential voters in violation of Section 11(b) of the Voting Rights Act of 1965; (2) attempting to intimidate

---

[2] USEIP has no connection to the United States government and no federal or state government agency. *Id.* at 7, ¶ 21.

voters and potential voters in violation of Section 11(b) of the Voting Rights Act of 1965; and (3) violating the Ku Klux Klan Act, 42 U.S.C. § 1985. *Id.* at 12–13, ¶¶ 39–51. Defendants move to dismiss the complaint for lack of standing. Docket No. 27 at 1.

## II. LEGAL STANDARD

An argument that a plaintiff lacks standing to assert a claim is properly determined pursuant to Rule 12(b)(1) because such argument attacks the Court's subject matter jurisdiction. *See Colo. Env't. Coalition v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004) (standing is jurisdictional). Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). Ultimately, plaintiffs have "[t]he burden of establishing subject matter jurisdiction" because they are "the part[ies] asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

"Each plaintiff must have standing to seek each form of relief in each claim." *Collins v. Daniels*, 916 F.3d 1302, 1312 (10th Cir. 2019) (*quoting Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1*, 859 F.3d 1243, 1250 (10th Cir. 2017)). "The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). To establish Article III standing, a plaintiff must meet three elements:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted). "Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)). An injury is particularized if it affects "the plaintiff in a personal and individual way." *Id.* at 1548. "A 'concrete' injury must be 'de facto'; that is, it must actually exist"; it must be "real," not "abstract." *Id.* "If a party satisfies these minimum constitutional requirements, then a court may still deny standing if the injury alleged constitutes a "generalized grievance" that more appropriately should be addressed by the representative branches." *Colo. Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394, 1396 (10th Cir. 1992) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

**III.  ANALYSIS**

As an initial matter, the Court must determine what information it may consider in reviewing defendants' motion. A party filing a Rule 12(b)(1) motion may challenge subject matter jurisdiction through a facial or factual attack. *See Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022) (citing *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020)). "A facial attack assumes the allegations in the complaint are true and

4

argues they fail to establish jurisdiction. A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." *Id.* (quoting *Baker*, 979 F.3d at 872). Because defendants challenge the sufficiency of plaintiffs' jurisdictional allegations, but do not dispute the allegations, *see* Docket No. 27 at 1–2 ("Accepting the facts in [p]laintiffs' [c]omplaint as true for purposes of this [m]otion, this Court should dismiss the [c]omplaint because it is plain that no [p]laintiff has alleged an injury that could confer standing."), and have not provided any evidence to rebut plaintiffs' allegations, the Court considers defendants' challenge to be facial. *See Laufer*, 22 F.4th at 875 ("Because the Loopers have not adduced any evidence outside the pleadings to contest jurisdiction, we address this issue as a facial challenge."); *see also Thrasher v. Rocky Mountain Auto Brokers, Inc.*, No. 18-cv-02342-PAB-KMT, 2019 WL 4695831, at *4 (D. Colo. Sept. 25, 2019) (finding a facial attack because motion accepted plaintiff's allegations as true); *Sentry Ins. a Mut. Co. v. Pichardo*, 2021 WL 4034092, at *2 n.4 (D.N.M. Sept. 3, 2021) ("Here, the . . . challenge is facial, since [movants] adduced no evidence such as affidavits, documents, etc., to contest jurisdiction.").

In reviewing a facial attack on plaintiffs' standing, the Court considers only the sufficiency of the complaint, as it would with a Federal Rule 12(b)(6) motion. *See Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010) ("A facial attack looks only to the factual allegations of the complaint in challenging the court's jurisdiction. A factual attack goes beyond the factual allegations of the complaint and presents evidence in the form of affidavits or otherwise to challenge the court's jurisdiction. . . . [In a facial attack,] we apply the same standards

under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action."); *Cunningham v. Univ. of N.M. Bd. of Regents*, 531 F. App'x 909, 913–14 (10th Cir. 2013) (unpublished) ("While the district court did not identify its analysis as such, we construe its decision as being based on a facial attack because it only addressed facts found within the four corners of Mr. Cunningham's complaint." (citing *Muscogee*, 611 F.3d at 1227 n.1)); *Williams v. City of Arvada*, No. 21-cv-02236-NYW, 2022 WL 1102532, at *11 (D. Colo. Apr. 13, 2022) ("in a facial challenge, the focus is on the sufficiency of the allegations in the complaint"); *Sanchez v. Ward*, 2013 WL 12328914, at *2 (D.N.M. Oct. 29, 2013) ("In determining facial attacks on jurisdiction, the Court limits its review to the sufficiency of the complaint, and it takes the allegations in the complaint as true."); *Onyx Prop. LLC v. Bd. of Cnty. Comm'rs of Elbert Cnty.*, No. 10-cv-01482-LTB-KLM, 2011 WL 588097, at *2 (D. Colo. Feb. 9, 2011) (treating motion to dismiss for lack of standing as facial attack on the complaint); *cf. Rodriguez-Aguirre*, 264 F.3d at 1203 (contrasting facial attack, where "the district court must accept the allegations in the complaint as true," with a factual attack, where the court does not "presume the truthfulness of the complaint's factual allegations," but "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)"); *Baker*, 979 F.3d at 872 ("When a defendant brings a factual attack, a district court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" (quoting *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001)).

Plaintiffs are three organizations. *See* Docket No. 1 at 4–5, ¶¶ 13–15. An

under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action."); *Cunningham v. Univ. of N.M. Bd. of Regents*, 531 F. App'x 909, 913–14 (10th Cir. 2013) (unpublished) ("While the district court did not identify its analysis as such, we construe its decision as being based on a facial attack because it only addressed facts found within the four corners of Mr. Cunningham's complaint." (citing *Muscogee*, 611 F.3d at 1227 n.1)); *Williams v. City of Arvada*, No. 21-cv-02236-NYW, 2022 WL 1102532, at *11 (D. Colo. Apr. 13, 2022) ("in a facial challenge, the focus is on the sufficiency of the allegations in the complaint"); *Sanchez v. Ward*, 2013 WL 12328914, at *2 (D.N.M. Oct. 29, 2013) ("In determining facial attacks on jurisdiction, the Court limits its review to the sufficiency of the complaint, and it takes the allegations in the complaint as true."); *Onyx Prop. LLC v. Bd. of Cnty. Comm'rs of Elbert Cnty.*, No. 10-cv-01482-LTB-KLM, 2011 WL 588097, at *2 (D. Colo. Feb. 9, 2011) (treating motion to dismiss for lack of standing as facial attack on the complaint); *cf. Rodriguez-Aguirre*, 264 F.3d at 1203 (contrasting facial attack, where "the district court must accept the allegations in the complaint as true," with a factual attack, where the court does not "presume the truthfulness of the complaint's factual allegations," but "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)"); *Baker*, 979 F.3d at 872 ("When a defendant brings a factual attack, a district court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" (quoting *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001))).

Plaintiffs are three organizations. *See* Docket No. 1 at 4–5, ¶¶ 13–15. An

organization may have standing to sue either in its own right or on behalf of its members.  *See Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1241 (10th Cir. 2021); *Warth v. Seldin*, 422 U.S. 490, 511 (1975) ("[A]n association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy . . . [or,] in the absence of injury to itself, an association may have standing solely as the representative of its members.").

First, an organization may have standing to sue on its own to challenge action that causes it injury "if it meets the standing requirements that apply to individuals." *Colo. Taxpayers Union*, 963 F.2d at 1396 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982)).  Plaintiffs allege that responding to defendants' conduct has caused them to divert resources that could otherwise be used for their usual programmatic priorities.  *See generally* Docket No. 1.

The diversion of resources is a cognizable injury.  "[F]or several decades it has been established that diversion of resources is a cognizable harm in the context of Article III standing analysis." *Colorado v. EPA*, 445 F. Supp. 3d 1295, 1307 (D. Colo. 2020) (citing *Havens Realty*, 455 U.S. at 379), *rev'd on other grounds*, 989 F.3d 874 (10th Cir. 2021).  "[C]ases upholding diversion of resources as a cognizable harm are almost always about nonprofit organizations seeking to advance a social goal (mostly fair housing, voting rights, and immigrant rights)."  *Id.*

> In *Havens* [*Realty*], the Supreme Court found that an organization was entitled to standing on its own behalf because the organization alleged that an apartment owner's racial steering practices had perceptively impaired the organization's ability to provide counseling and referral services for low and moderate income home seekers.  The Court stated that "[s]uch [a] concrete and demonstrable injury to

> the organization's activities – with the consequent drain on
> the organization's resources – constitutes far more than simply a setback
> to the organization's abstract social interests."

*Colo. Taxpayers Union*, 963 F.2d at 1397 (quoting *Havens Realty*, 455 U.S. at 379 (citation omitted)).  In other words, an "organization has standing to sue on its own behalf if the 'defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts,'" *Common Cause of Colo. v. Buescher*, 750 F. Supp. 2d 1259, 1269 (D. Colo. 2010) (quoting *Fla. State Conference of NAACP v. Browning*, 522 F.3d 1153, 1165 (11th Cir. 2008)), or "when a defendant's conduct makes it difficult or impossible for the organization to fulfill one of its essential purposes or goals."  *Id.* (citing *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1353–54 (11th Cir. 2005)).

Second, an organization may also have standing to sue on behalf of its members "(1) when its members would otherwise have standing to sue in their own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Utah Physicians*, 21 F.4th at 1241 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)); *see also Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

Because "[e]ach plaintiff must have standing to seek each form of relief in each claim," *see Collins*, 916 F.3d at 1312; *Am. Humanist Ass'n, Inc. v. Douglas Cnty. Sch. Dist. RE-1*, 859 F.3d 1243, 1254 (10th Cir. 2017) (citing *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650 (2017)), the Court considers plaintiffs' allegations relating to each plaintiff individually.

A court must satisfy itself of its subject matter jurisdiction at every stage of the proceeding. *See, e.g.*, *Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1297 (10th Cir. 1980). At the pleading stage, a plaintiff's burden is a "low bar," *see, e.g.*, *Attias v. Carefirst, Inc.*, 865 F.3d 620, 622 (D.C. Cir. 2017); *Kan. Nat. Res. Coal. v. Dep't of Interior*, 971 F.3d 1222, 1231 (10th Cir. 2020) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." (quoting *Lujan*, 504 U.S. at 561)); *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 899 (10th Cir. 2016) ("the burden of establishing standing at this stage of the litigation is lightened considerably") (internal quotations and citations omitted), while at summary judgment or trial, the plaintiff must show specific facts. *See, e.g.*, *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 450 (10th Cir. 1996).

### A. Organizational Standing

The Court first considers plaintiffs' organizational standing allegations and determines whether plaintiffs have sufficiently alleged that defendants' conduct has caused plaintiffs a redressable injury. *See Colo. Taxpayers Union*, 963 F.2d at 1396.

#### 1. NAACP

NAACP's mission is to "ensure political, educational, social, and economic equality of rights of all persons and to eliminate race-based discrimination." Docket No. 1 at 4, ¶ 13. NAACP does this by coordinating the "civil rights activities of freedom fighters and game-changing activists in Colorado" and ensuring that every American has "free, open, equal, and protected access to the vote." *Id.* Plaintiffs allege that NAACP "has diverted time and other resources . . . in order to address [d]efendants'

voter intimidation campaign" and, absent an injunction, it will be required to "further divert time and resources." *Id.*  NAACP has "already exhausted resources actively monitoring this voter intimidation and related safety concerns and strategizing about how to combat [d]efendants' actions" and "anticipates having to shift both personnel and financial resources" to counteract USEIP's actions, which is a "distraction from key programs." *Id.* at 10–11, ¶ 36.

Defendants argue that NAACP's alleged injury is speculative, "not concrete," "volitional, manufactured, and a product of fear rather than actual injury traceable to [d]efendants' actions." Docket No. 27 at 6.  Defendants are correct that a voluntary budgetary decision is not sufficient for an Article III injury.  If it were, any organization could "manufacture standing merely by inflicting harm" on itself.  *See Sup. Ct. of N.M.*, 839 F.3d at 901 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415–16 (2013)).  In other words, an organization cannot simply pick a fight and claim to have standing.  However, defendants' reliance on *Clapper* is misplaced.  In *Clapper*, the plaintiffs claimed that they were "suffering present injuries" because they had chosen "to take costly and burdensome measures to protect the confidentiality of their international communications" from the potential of surveillance under the Foreign Intelligence Surveillance Act, which was a "hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 402.  The Supreme Court held that "precautions taken by the plaintiffs to avoid the interception of their communications . . . were self-inflicted, and did not establish standing, because the statute did 'not regulate, constrain, or compel any action on [the plaintiffs'] part.'"  *Sup. Ct. of N.M.*, 839 F.3d at 901 (quoting *Clapper*, 568 U.S. at 418).  Here, however, plaintiffs allege that NAACP, which is dedicated to, among

other things, ensuring that every American has "free, open, equal, and protected access to the vote," *see* Docket No. 1 at 4, ¶ 13, has already expended time and money to counteract defendants' conduct.  Thus, unlike the "hypothetical enforcement" in *Clapper*, plaintiffs allege that NAACP has already suffered a drain on resources that could have been used elsewhere.  *See, e.g.*, *Fish v. Schwab*, 957 F.3d 1105, 1120 (10th Cir. 2020) ("But unlike the hypothetical enforcement in *Clapper*, the DPOC requirement here actually was enforced against Mr. Bednasek.  And it was that enforcement that caused Mr. Bednasek's injury-in-fact, not any decision he made to spend money to avoid a hypothetical injury.").

Moreover, courts have found standing in similar circumstances and based on allegations similar to those plaintiffs make about NAACP and its being compelled to divert resources, and a plaintiff need not show more at this stage of the proceeding. *See Comm. to Save the Rio Hondo*, 102 F.3d at 449 ("In cases reviewing questions of standing under a motion to dismiss, the court presumes general allegations embrace those specific facts necessary to support the claim.").  For instance, in *Common Cause of Colorado*, the court found sufficient the plaintiffs' allegations that they "diverted substantial resources in 2008, and will likely do so again in this election, dealing with phone calls related to pre-election voter list 'purges'/ cancellations." 750 F. Supp. 2d at 1269–70 ("All three [p]laintiffs, moreover, claim injury-in-fact under *Havens* [*Realty*] . . . as a result of having had to divert substantial resources from their normal election activities in 2008 to counteract the actual and threatened effects of the 20-day Rule."). The court also noted that an "independent basis for organizational standing exists when a defendant's conduct makes it difficult or impossible for the organization to fulfill one of

11

its essential purposes or goals." *Id.* at 1269. Plaintiffs have alleged that NAACP's programmatic missions are impaired by their having to expend resources to counter defendants' conduct. Docket No. 1 at 4, 11, ¶¶ 13, 37. Other courts have found similar allegations sufficient. *See, e.g.*, *Informed Consent Action Network v. Becerra*, 2022 WL 992814, at *6 (S.D.N.Y. Mar. 31, 2022) ("Plaintiffs have properly pleaded perceptible impairment of their mission. Taking the allegations in the [c]omplaint as true, [p]laintiffs state that they have, and continue to, divert significant time and resources from other organizational efforts to investigate, identify, and expose" defendants' claims.); *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 471 (S.D.N.Y. 2020) (finding sufficient allegations that one of the plaintiff's goals is "to promote and support civic participation," including by "helping and encouraging members of the Black community in Detroit to participate in the Census" and, once the organization learned of the defendant's conduct, the plaintiff "had to stop her Census work in order to respond to [it] . . . leaving less time to work on its Census-related outreach," which "constitute[d] a perceptible impairment of the organization's activities"); *Common Cause/N.Y. v. Brehm*, 344 F. Supp. 3d 542, 548–49 (S.D.N.Y. 2018) (finding sufficient allegations that plaintiff has "devoted significant resources to addressing the concerns about New York's list maintenance procedures" and has had to divert resources from "its efforts to register and mobilize voters," which is essential to its mission, "in order to assist voters who have been improperly placed on 'inactive' status and/or removed from the voter rolls"); *League of Women Voters of Ariz. v. Reagan*, 2018 WL 4467891, at *4 (D. Ariz. Sept. 18, 2018) (finding sufficient allegations that plaintiffs "changed their behavior because of the alleged violations and expended additional resources that they would not otherwise

have expended, and in ways that they would not have expended them" and that "the injury is on-going because [p]laintiffs will continue to expend resources . . . to provide voter registration services to individuals affected by [d]efendant's alleged NVRA violation" (citations and quotations omitted)); *League of Women Voters of Cal. v. Kelly*, 2017 WL 3670786, at *6 (N.D. Cal. Aug. 25, 2017) (same).  Any of the plaintiff organizations in these cases theoretically could have chosen not to devote resources to countering the defendants' conduct and, in that sense, their drained resources were volitional.  But courts have considered organizations in similar positions to have been "forced" to act.  *See, e.g.*, *Common Cause of Colo.*, 750 F. Supp. 2d at 1259; *Browning*, 522 F.3d at 1156.  Moreover, defendants identify no authority for the proposition that, where a defendant's conduct has "perceptibly impaired" the plaintiff's ability to engage in its mission, *see Colo. Taxpayers Union*, 963 F.2d at 1397, by "forcing the [plaintiff] to divert resources to counteract" the defendant's conduct, the plaintiff lacks standing. *See Common Cause of Colo.*, 750 F. Supp. 2d at 1269; *see also Jud. Watch, Inc. v. Griswold*, 554 F. Supp. 3d 1091, 1104 (D. Colo. 2021).[3]

In *Havens Realty*, the Supreme Court held that a fair housing organization had organizational standing to challenge alleged violations of the Fair Housing Act.  455 U.S. at 379.  The Court found sufficient the allegation that "[p]laintiff . . . has been frustrated by defendants' racial steering practices in its efforts to assist equal access to

---

[3] The Court also notes that the perceptible impairment of an organization's mission or the diversion of resources need not be great.  "For standing purposes, a loss of even a small amount of money is ordinarily an 'injury,'" *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017), and "[t]he fact that the added cost has not been estimated and may be slight does not affect standing, which requires only a minimal showing of injury."  *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008).

housing through counseling and other referral services.  Plaintiff . . . has had to devote significant resources to identify and counteract the defendant's [*sic*] racially discriminatory steering practices."  *Id.* (bracket in original).  The Court held that if, "as broadly alleged, [the defendants'] steering practices have perceptibly impaired [the plaintiffs'] ability to provide counseling and referral services for low- and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact" because such "concrete and demonstrable injury to the organization's activities – with the consequent drain on the organization's resources – constitutes far more than simply a setback to the organization's abstract social interests."  *Id.*  The plaintiffs in *Havens Realty* could have chosen not to test the defendants' racial steering practices, but the Court did not find that their doing so made their alleged injury "manufactured" or "volitional."  *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 225–26 (1974) ("[T]he essence of standing[] 'is not a question of motivation but of possession of the requisite . . . interest that is, or is threatened to be, injured by the unconstitutional conduct.'").  *Havens Realty* is binding on this Court, and the Supreme Court recently cited the case with approval.  *See Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1303 (2017).

NAACP anticipates having to expend additional resources to counteract defendants.  Docket No. 1 at 10–11, ¶ 36.  Although future expenses may be more hypothetical than past expenses, the Court accepts this allegation as true.  *See Rodriguez-Aguirre*, 264 F.3d at 1203; *Muscogee*, 611 F.3d at 1227 n.1.  Moreover, given that NAACP has allegedly already expended resources to counter defendants' conduct, it is reasonable to infer that it will continue to expend resources to counter the

14

same conduct if the conduct continues.  *See id.*  NAACP's alleged injury of continued and future expenses is not an injury based on "speculation about the decisions of independent actors," which the Court found insufficient in *Clapper*.  568 U.S. at 414.  Rather, as alleged, it is an "actual or imminent" injury.  *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); see also *Browning*, 522 F.3d at 1165–66 ("Plaintiffs have made a sufficient showing that they will suffer a concrete injury" because they "reasonably anticipate that they will have to divert personnel and time to educating volunteers and voters," which "would otherwise be spent on registration drives and election-day education and monitoring.").

   The final two requirements for Article III injury are causation and traceability.  *See Lujan*, 504 U.S. at 560–61.  Plaintiffs allege that defendants' conduct has caused NAACP its injury and that an injunction would redress the injury, which satisfies the final causation and traceability.  Docket No. 1 at 10–11, ¶ 36 (alleging that NAACP has exhausted resources "to combat [d]efendants' actions" and "towards combatting USEIP's voter intimidation campaign").  If defendants had not begun the alleged "intimidation campaign," NAACP would have continued to use its resources for its programmatic priorities.  *See id.* ("[t]his shift in resources is a distraction from key programs that NAACP would otherwise support").  Relief from the Court, in the form of an injunction and compensatory damages, as plaintiffs request, *see id.* at 15, would allow NAACP to direct its resources back to its other civil rights and civic engagement priorities and would remedy past expenditures.  *See id.* at 10–11, ¶ 36.  Although these allegations are general, they are sufficient at the pleading stage.  *See Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from

15

defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)); *Comm. to Save the Rio Hondo*, 102 F.3d at 449 ("In cases reviewing questions of standing under a motion to dismiss, the court presumes general allegations embrace those specific facts necessary to support the claim."); *see also Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070, 1084 (D. Colo. 2001) (finding sufficient for injury, causation, traceability allegation that "[d]efendant's failure to comply with the Act, the regulations, and its Permit has injured the past, present, and future interests of plaintiff, and plaintiff's members, by adversely affecting aesthetic, environmental, recreational, public health, wildlife, due process, and procedural interests," and that "[t]hese injuries are fairly traceable to the actions of defendant complained of herein").[4]

The Court therefore finds that plaintiffs have sufficiently pled that NAACP has suffered a diversion-of-resources injury under *Havens Realty* and therefore has Article III standing to proceed. The Court will therefore deny the motion as to NAACP.

### 2. LWVCO

LWVCO is a "non-profit civic engagement organization with the mission to encourage informed and active participation in government, increase understanding of major public policy issues, and influence public policy through education and advocacy."

---

[4] Even if plaintiffs' requested relief would not necessarily remedy NAACP's alleged injuries, redressability only requires a showing that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *See Lujan*, 504 U.S. at 561, (internal quotation marks and citation omitted). Plaintiffs need not show that a favorable decision will relieve every injury. *See Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982).

Docket No. 1 at 5, ¶ 14.  LWVCO does this by "conduct[ing] state and local advocacy, voter registration and engagement, civic education, and member enrichment programs." *Id.*  Defendants' actions, plaintiffs allege, are "a direct assault on LWVCO's foundational mission to help new, young, and/or newly naturalized voters exercise their rights to participate in democracy."  *Id.* at 11, ¶ 37.  Plaintiffs allege that LWVCO has "diverted time and other resources from its civic engagement and election support programs in order to address" defendants' actions.  *Id.* at 5, ¶ 14.  LWVCO worries that "new voters (such as young people, new citizens, and others who have just become eligible to vote) are especially vulnerable to this intimidation" and may not vote as a result of defendants' conduct.  *Id.* at 11, ¶ 37.

Defendants argue that plaintiffs have not alleged that LWVCO has sufficient injury for Article III standing.  Docket No. 27 at 5–6.  Defendants' arguments regarding LWVCO are similar to their arguments regarding NAACP and fail for the same reasons.  Defendants assert that "[t]here has been no actual injury, and the injuries [plaintiffs allege regarding LWVCO] are only hypothetical in nature."  *Id.* at 6.  Although they purport to accept plaintiffs' allegations as true, *see id.* at 1, defendants appear to have overlooked the allegation that LWVCO has "diverted time and other resources from its civic engagement and election support programs in order to address" defendants' actions.  *See* Docket No. 1 at 5, ¶ 14.  Just as plaintiffs have met their burden with respect to NAACP, plaintiffs have also adequately alleged LWVCO's injury, causation, and redressability.  Plaintiffs have alleged that defendants' conduct has impacted LWVCO's mission and, because LWVCO would not have expended these resources to counteract defendants if defendants had not engaged in the alleged conduct, plaintiffs

17

have shown that defendants caused LWVCO's injury. Moreover, a favorable resolution of an injunction and compensatory damages would likely redress that injury, as LWVCO would not have to expend more resources to counteract defendants' conduct and would be compensated for what it did spend. *See Sierra Club*, 176 F. Supp. 2d at 1084. The Court's analysis regarding NAACP standing applies equally with LWVCO and, accordingly, the Court will deny defendants' motion to dismiss LWVCO.

### 3. MFV

MFV is a "civic engagement organization that unites Latino, immigrant, and allied communities to promote social and economic justice through citizenship workshops, voter registration, and voter participation." Docket No. 1 at 5, ¶ 15. MFV's mission is to "build Latino political power by expanding the electorate, strengthening local infrastructures, and conducting year-round voter engagement." *Id.* Plaintiffs allege that MFV has "diverted time and other resources from its civic engagement and election support programs" to respond to defendants' conduct. *Id.* MFV "plans to invest additional resources into counties targeted by USEIP so that voters there recognize MFV canvassers as distinct from USEIP [members]." *Id.* at 11, ¶ 38. These resources that MFV "has and will continue to spend responding to USEIP's actions" would "otherwise . . . have been spent on activities central to [MFV's] core mission." *Id.*

Defendants' argument regarding MFV is contained in a single sentence: "[t]he language regarding MFV's alleged injury is entirely speculative, hypothetical, and conjectural and cannot establish standing." Docket No. 27 at 5 (citing *Nat'l Treasury Emps. Union* v. *United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996)). MFV, however, like NAACP and LWVCO, has expended resources to counter defendants' alleged

18

conduct. *See* Docket No. 1 at 5, ¶ 15. MFV's resources could have been used for other programs and activities. *Id.* at 11, ¶ 38. Plaintiffs therefore have sufficiently alleged that MFV's mission has been impaired by defendants' conduct, and a favorable resolution from this Court would redress MFV's injury. Just as these allegations were sufficient for NAACP pand LWVCO, they are sufficient for MFV. Accordingly, the Court will deny defendants' motion as to MFV.

### B.  Associational Standing

Defendants argue that they do not need to address plaintiffs' possible associational standing because plaintiffs "have not pled any facts to establish associational standing, and therefore, plaintiffs may only establish direct organizational standing." Docket No. 27 at 3. Plaintiffs disagree. Docket No. 33 at 9. The Court need not consider associational standing because the Court has determined that each plaintiff has organizational standing. *See Sierra Club*, 176 F. Supp. 2d at 1084 ("Whether the Sierra Club has standing to sue on its own behalf as opposed to standing to sue on behalf of its members is of no consequence so long as the Sierra Club has standing on one of these bases." (citing *Comm. to Save the Rio Hondo,* 102 F.3d at 447 n.3 ("An association has standing to sue even if it has not been injured itself so long as the association's members satisfy the constitutional minimum of Article III."))).

### C.  Prudential Standing

The prudential standing doctrine encompasses various limitations, including "the general prohibition on a litigant's raising another person's legal rights." *Allen v. Wright*, 468 U.S. 737, 751 (1984). "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

parties." *Warth*, 422 U.S. at 499. "Without such limitations – closely related to [Article] III concerns but essentially matters of judicial self-governance – the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Id.* at 500; *see also The Wilderness Soc. v. Kane Cnty.*, 632 F.3d 1162, 1168–69 (10th Cir. 2011).

Prudential standing, however, "is not a jurisdictional limitation and may be waived." *The Wilderness Soc.*, 632 F.3d at 1168 n.1. Neither party has raised the issue of prudential standing. *See* Docket Nos. 27, 33. Although, the Court has discretion to address prudential standing *sua sponte*, *see Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1299–1301 (10th Cir. 2011), the Court declines to exercise its discretion to consider the issue.

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants' Motion to Dismiss [Docket No. 27] is **DENIED**.

DATED April 28, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge