IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00581-PAB

Colorado Montana Wyoming
State Area Conference of the NAACP,
League of Women Voters of Colorado, and
Mi Familia Vota,

   Plaintiffs,

v.

United States Election Integrity Plan, Shawn Smith,
Ashley Epp, and Holly Kasun,

   Defendants.

---

**MOTION TO DISMISS (ECF NO. 48)**

---

Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, and Mi Familia Vota ("Plaintiffs") respectfully move the Court for an order dismissing the Counterclaims for Defamation and Abuse of Process pursuant to Federal Rule of Civil Procedure 12(b)(6). The defamation claim should be dismissed because it is based solely on allegations by Plaintiffs' counsel in their Complaint or in reference to those allegations, which are absolutely privileged and cannot as a matter of law support a defamation claim. The abuse of process claim should be dismissed because it fails to allege any facts to support an inference that Plaintiffs brought this action for any improper or ulterior motive or purpose. To the contrary, Defendants' counterclaim relies explicitly and exclusively on alleged harm resulting from the proper and intended purpose of the lawsuit—obtaining a court order declaring their voter

1

intimidation unlawful and enjoining it—and, as such, fails as a matter of law to state an abuse of process claim.  In support of their Motion to Dismiss, Plaintiffs state as follows:

**INTRODUCTION**

Plaintiffs brought this action under the Voting Rights Act and the Ku Klux Klan Act based primarily on Defendants' *own public statements*, which demonstrate that they have engaged in a coordinated scheme of illegal voter intimidation in violation of federal law.  USEIP's incendiary "County & Local Organizing Playbook," (the "Playbook") which sets forth USEIP's principles and goals, exclaims: "***This is the fight*** . . . No one is coming to save us.  It's time to stand up . . . ***we are not at a time of peace***.  And everyone who values freedom and is ***committed to the fight*** for our Republic is now needed."[1]  Defendants and USEIP members Shawn Smith, Ashley Epp, and Holly Kasum[2] have appeared and spoken at countless public events and been quoted in various articles touting USEIP's principles and goals and promoting the "Big Lie."  And, in case there is any doubt that the individual Defendants have engaged in threatening and intimidating behavior, Defendant Shawn Smith was recently captured on video making explicit violent threats against Colorado Secretary of State Jena Griswold, as well as anyone else they accuse of election fraud: "I think if you are involved in election fraud then ***you deserve to hang***.  Sometimes the old ways are the best ways."[3] Members of USEIP have publicly discussed their door-to-door intimidation

---

[1]  County & Local Organizing Playbook (Aug. 2021), https://useipdotus.files.wordpress.com/2021/08/useip_playbook_aug2021.pdf.

[2] In their Answer, Defendants Ashley Epp, Holly Kasum, and Shawn Smith admit to being members of USEIP.  (Answer (ECF No. 48) ¶¶ 17-19.)

[3] Defendant Ashley Epp was interviewed for and quoted in Erik Maulbetsch, *Colorado Republican Legislators Join Election Fraud Conspiracy* Panel, COLORADO TIMES RECORDER (Mar. 9, 2021), https://coloradotimesrecorder.com/2021/03/colorado-republican-legislators-join-election-fraud-conspiracy-panel/34839/. The video of Defendant Shawn Smith threatening Secretary of State Jena Griswold can be found here: https://twitter.com/jenagriswold/status/1491991594018304001.

48937911v3

campaign on social media and in their County Playbook.⁴ And complaints about this campaign were made to the Colorado Secretary of State, which issued a press release in response to reports of defendants' campaign, reminded voters of their rights to a confidential ballot, and advised voters about what to do if they experience intimidation or harassment.⁵

Defendants' counterclaims amount to asking the Court, "Who are you going to believe, me, or your own eyes?" Defendants bring counterclaims for defamation and abuse of process, claiming that Plaintiffs have made "unsubstantiated" and "frivolous" allegations about Defendants through their filings with the Court and in statements about the litigation. (Counterclaim (ECF. No. 48) ¶¶ 12-14; 17; 20; 26.) Defendants further contend that the statements were made for the "ulterior purpose" of "harassing, embarrassing, and keeping Counterclaim Plaintiffs from engaging in their constitutional rights." (Counterclaim ¶ 20; 31.) Under well-established law, an attorney's statements, even if defamatory, when made in the course of or in preparation for a legal proceeding, cannot be the basis of a tort claim so long as the statements are related to the litigation. Likewise, an abuse of process claim requires an ulterior motive *unrelated* to the goal of the litigation; even a claim that results in harassment or intimidation is *not* abuse of process. Accordingly, the Court should dismiss the counterclaims, with prejudice.

---

⁴ *See,* e.g., Erik Maulbetsch, *Colorado Election Fraud Group is Training Conspiracists in Other States to Knock Doors in Search of 'Phantom Ballots'*, COLORADO TIMES RECORDER (Oct. 1, 2021), https://coloradotimesrecorder.com/2021/10/colorado-election-fraud-group-is-training-conspiracists-in-other-states-to-knock-doors-in-search-of-phantom-ballots/39935/ (article includes screenshots of social media posts by USEIP members about efforts to coordinate their door-to-door campaign); County & Local Organizing Playbook pp. 19-22 (Aug. 2021), https://useipdotus.files.wordpress.com/2021/08/useip_playbook_aug2021.pdf.

⁵ Colorado Secretary of State Jena Griswold, News Release, *In Response to Reported Unofficial Door-to-Door Canvassing of Colorado Voters, the Colorado Secretary of State's Office Reminds Voters of Their Constitutionally Protected Rights* (Sept. 9, 2021), https://www.sos.state.co.us/pubs/newsRoom/pressReleases/2021/PR20210909Canvassing.html.

48937911v3

## LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations to be true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). "To survive a motion to dismiss under Rule 12(b)96) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's 'claim to relief . . . plausible on its face.'" *In re Frontier Airlines Litigation*, 559 F.Supp.3d 1146, 1153 (D. Colo. 2021) (quoting *Khalik v. United Air Lines,* 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *In re Frontier Airlines Litigation*, 559 F.Supp.3d at 1153 (citing *Ascroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "Thus, even though modern rules of pleading are somewhat forgiving, a complaint must still contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *In re Frontier Airlines Litigation*, 559 F.Supp.3d at 1153 (citations omitted). "Allegations that are purely conclusory are not sufficient to state a claim for relief." *GN Netsome, Inc. v. Callpod, Inc*., 2012 WL 4086530, at *2 (D. Colo. Sept. 17, 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555).

**ARGUMENT**

**I.     DEFENDANTS CANNOT ASSERT A DEFAMATION CLAIM.**

Defendants' defamation claim, which is based solely upon the allegations in the Complaint and/or litigation-related statements by Plaintiffs' attorneys, fails to state a claim and should be dismissed with prejudice. "An attorney at law is ***absolutely privileged*** to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel." *Club Valencia Homeowners Ass'n, Inc. v. Valencia Associates*, 712 P.2d 1024, 1027 (Colo. Ct. App. 1985) (quoting RESTATEMENT (SECOND) OF TORTS § 586 (1977) (emphasis added)); *see also Patterson v. James*, 454 P.3d 345, (Colo. Ct. App. 2018) (citations omitted) ("An attorney's statements, even if defamatory, when made in the course of or preparation for, judicial proceedings in a filed case cannot be the basis of a tort claim if the statements are related to the litigation"). "The purpose of this privilege . . . is to afford litigants the utmost freedom to access the courts to preserve and defend their rights and to protect attorneys during the course of their representation of clients." *Id.* (citing *Smith v. Hatch*, 271 Cal.App.2d 39, 76 (Cal. Ct. App. 1969)).

"To be privileged, the allegedly defamatory matter must have been made in reference to the subject matter of the proposed or pending litigation, although it need not be strictly relevant to any issue involved in it." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 586 comment C (1977); *Sussman v. Damian,* 355 So.2d 809 (Fla. App. Ct. 1977)). "The pertinency required is not technical legal relevancy, but rather a general frame of reference and relation to the subject matter of the litigation." *Id.* (citing *Smith*, 271 Cal.App.2d at 76). "Thus, the privilege embraces anything that possibly may be relevant." *Id.* (citing *Feldman v. Bernham*, 6 App.Div.2d 498 (N.Y. App. Ct.

1958)). The absolute privilege is "not limited to statements during trial, but may extend to steps taken prior to trial such as conferences and other communications preliminary to the proceeding." *Id.* (citing *Lerette v. Dean Witter Organization, Inc.*, 60 Cal.App.3d 573 (Cal. Ct. App. 1976)). "All doubt should be resolved in favor of its relevancy or pertinency." *Id.* (holding that letters sent to persons having a collateral interest in the litigation are privileged to the extent the statements made have some collateral relation to the subject matter of the litigation).

Here, ignoring well-established law, Defendants claim that Plaintiffs have allegedly defamed them through "false allegations contained in the Complaint" and allegedly "unsupported claims contained in the Complaint." (Counterclaim ¶ 14 n. 2.) Defendants also expressly based their defamation claim on statements made by "Counsel for Counterclaim Defendants." *Id.* Each of the allegedly defamatory statements was either made in the Complaint itself, or was made in reference and relation to the subject matter of the pending litigation. (*See, e.g.*, Counterclaim *id.* (noting that Plaintiffs' attorneys "published a press release on March 9, 2022, *repeating the false allegations contained in their Complaint*) (emphasis added).) As such, the allegedly defamatory statements are absolutely privileged, and Defendants' defamation claim fails as matter of law.[6] *See Club Valencia Homeowners Ass'n, Inc*, 712 P.2d at 1027 (CITING RESTATEMENT (SECOND) OF TORTS § 586 comment C (1977)).

Defendants' position is deeply ironic; although they deny Plaintiffs' accusations of voter intimidation, Defendants have clearly filed meritless counterclaims in a blatant attempt to

---

[6] Even if the statements made by Plaintiffs' counsel in the course of the litigation were not absolutely privileged (which they are), they are nonetheless protected by the First Amendment. *See BKP, Inc. v. Killmer, Lane & Newman, LLP*, 506 P.3d 84 (Colo. Ct. App. 2021) (holding that attorneys' statements at a press conference and in a press release were protected by the First Amendment).

6

intimidate nonprofit voting rights organizations. The absolute privilege rule protects against such behavior by a defendant, as it is designed to "to encourage and protect free access to the courts for litigants and their attorneys."[7] *See Patterson*, 454 P.3d at 350.

Further, although the analysis need not go any further, it is worth noting that, if Defendants' argument is followed to its logical conclusion, no plaintiff could ever bring a lawsuit unless it was *absolutely certain* that it would succeed on each of its claims and had *fully developed* evidentiary support for the same. (*See* Counterclaim ¶ 13 (arguing that a plaintiff must have "independent knowledge of the veracity" of all claims before filing a complaint).) The absolute privilege rule is designed to protect against absurd results such as this. *See id.* (citing *Smith*, 271 Cal.App.2d at 76). Moreover, Defendants' position relies on an incorrect statement of the law and would run afoul of the Federal Rules. Parties presenting pleadings to the court are required to certify only that, after a *reasonable inquiry,* the claims, defenses, and other legal contentions are warranted by existing law and the factual contentions have evidentiary support *or will likely have evidentiary support after a reasonable opportunity for further investigation and discovery.* Fed. R. Civ. P. 11. Plaintiffs easily satisfy this standard.

Indeed, even if Defendants were correct (which they are not) that Plaintiffs relied exclusively on reporting by a "third-party journalist" and published articles in *The Colorado Times Reporter*, this reliance would meet the requirements of Rule 11. And, contrary to Defendants' assertion, Plaintiffs have neither failed to corroborate the allegations in the Complaint, nor relied

---

[7] The Colorado Legislature has also discouraged lawsuits designed to prevent parties from exercising their rights of petition or free speech in connection with matters of public concern by adopting a strong anti-SLAPP law. *See* C.R.S. § 13-20-1101(3)(a) (allowing a defendant to file a special motion to dismiss SLAPP claims unless the plaintiff establishes "a reasonable likelihood" of prevailing on the claim.")

7

exclusively on the "claims" of a third-party journalist. Above all else, Plaintiffs have relied on Defendants' own statements—statements which have been widely disseminated through the Playbook, USEIP website, public speaking events, interviews, and their door-to-door voter intimidation efforts. And, even if Plaintiffs did not have sufficient evidence to *prove* their claims at the time of filing the Complaint (which in fact they did), Plaintiffs certainly expect to have additional evidentiary support after an opportunity for further investigation and discovery. *See* Fed. R. Civ. P. 11.

Because Plaintiffs' allegedly defamatory statements made in the course of the litigation are absolutely privileged, Plaintiffs have failed to state a claim. Consequently, the Court should dismiss Defendants' defamation claim with prejudice.

## II. DEFENDANTS FAIL TO STATE A CLAIM FOR ABUSE OF PROCESS.

Defendants' counterclaim for abuse of process likewise has no legal merit. To support an abuse of process claim, Defendants must establish "(1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of the proceedings, *i.e.*, use of a legal proceeding in an improper manner; and (3) resulting damage." *Stevens v. Mulay*, 2021 WL 1153059, at *1 (D. Colo. Mar. 26, 2021) (citing *Parks v. Edward Dale Parrish LLC*, 452 P.3d 141, 145 (Colo. App. 2019)). Crucially, however, "not simply any ulterior motive will satisfy the requirements of abuse of process;" the ulterior motive must be "one which results in the use of the process in an improper manner." *Id.* "[A]n ulterior purpose is one that the legal proceeding was ***not*** designed to accomplish." *Mintz v. Accident & Injury Medical Specialists, PC*, 284 P.3d 62, 66 (Colo. App. 2010) (emphasis added). Therefore, "there is no liability for abuse of process if the defendant's ulterior purpose was simply incidental to the

8

proceeding's proper purpose." *Id.* Simply put, the ulterior motive that is being alleged must be one that seeks a "collateral objective different from what could have been obtained in the lawsuit itself." *Pinon Sun Condominium Association, Inc. v. Atain Specialty Insurance Co*., 2019 WL 140710 at *7 (D. Colo. Jan. 9, 2019).

Even more important here, "[t]he fact that there is an incidental motive or consequence of harassment or intimidation to a process that is otherwise invoked for its normal purpose does not give rise to a cognizable claim for abuse of process." *Tatonka Cap. Corp. v. Connelly*, 2016 WL 9344257, at *5 (D. Colo. Dec. 29, 2016); *see also Sterenbuch v. Goss*, 266 P.3d 428, 439 (Colo. App. 2011) (allegations that a plaintiff brought suit "to harass, embarrass, damage, burden and wrongfully obtain monies from defendants" were insufficient to state viable abuse of process claim). Moreover, "if a party files 'claims that are colorable on their face, and requests relief consistent with the claims alleged,' there is no abuse of process, even if the claims are factually baseless." *Pinon Sun*, 2019 WL 140710, at *5 (quoting *Partimer Worldwide Inc. v. Siliconexpert Techs. Inc*., 2010 WL 502718, at *3 (D. Colo. Feb 10, 2010)). Defendants' abuse of process counterclaim clearly requires dismissal.

As an initial matter, Defendants have already had an opportunity to test whether Plaintiffs' claims are colorable. Before filing its Answer and Counterclaim, Defendants filed a Motion to Dismiss, which the Court denied.

In addition, as for requested relief, Plaintiffs ask the Court to:

a. Declare that Defendants' door-to-door campaign of voter harassment and threats of carrying out such campaigns in the future constitute unlawful voter intimidation in violation of Section 11(b) of the Voting Rights Act.

b. Declare that Defendants' door-to-door campaign of voter harassment and threats of carrying out such campaigns in the future constitute a conspiracy in violation of Section 42 U.S.C. § 1985(3), the Ku Klux Klan Act.

c. Order Defendants to cease and desist going uninvited to voters' homes in order to question voters or household members about mail-in ballots, alleged voter fraud, or to intimidate voters from voting (including by mail).

d. Order Defendant USEIP to cease and desist coordinating or organizing visits to voters' homes in order to question voters or household members about mail-in ballots, alleged voter fraud, or to intimidate voters from voting (including voting by mail).

e. Order Defendants to stop taking photographs and stop maintaining databases of voters, their residences, or their vehicles; to make no attempt to access or use their copies of existing photographs or databases of voters, their residences, or their vehicles; and to delete their copies of existing photographs or databases of voters, their residences, or their vehicles and to submit an affidavit to the Court attesting to the deletion of the same.

f. Order Defendants to submit to the Court their original existing photographs and databases of voters, their residences, and their vehicles, and order that these photographs and databases be restricted to the Court and the parties (Level 1) pursuant to D. C., Colo. L. Civ. R. 7.2.

g. Order Defendants who speak with voters to: (i) clearly state the organization with whom they are affiliated; (ii) inform voters that they are not required to speak with Defendants; (iii) stop claiming that they affiliated with any government entity; (iv) not make any threat of consequences, reprisals, or criminal charges to voters; and (v) to otherwise not threaten or intimidate voters.

h. Order Defendants to cease and desist carrying weapons when going to voters' homes to speak with voters or household members.

i. Order Defendants to cease and desist instructing or encouraging anyone to carry weapons during USEIP-related interactions with voters.

j. Order Defendants not to engage in other actions that threaten voters for having voted in 2020 or threaten or intimidate voters from voting in future elections.

k. Award Plaintiffs compensatory damages.

l. Award Plaintiffs reasonable attorneys' fees and costs.

10

m. Retain jurisdiction to ensure Defendants' ongoing compliance with the foregoing orders.

n. Grant such other and further relief that this Court deems just and appropriate.

Because all requested relief is "consistent with the claims alleged," there is no abuse of process, and the Court should dismiss the abuse of process claim with prejudice.

In support of their claim, Defendants allege that Plaintiffs filed their Complaint "for the improper purpose of harassing, embarrassing, and keeping Counterclaim Plaintiffs from engaging in their constitutional rights." (Counterclaim ¶ 31.) These allegations are insufficient to support an abuse of process claim for several reasons. First, as noted above, Colorado courts have made clear that an allegation that a complaint that incidentally caused harassment, embarrassment, or burden is not abuse of process. *Tatonka Cap. Corp.*, 2016 WL 9344257, at *5. Accordingly, even if Plaintiffs' motivation was what Defendants allege (which it was not), this would still not amount to abuse of process.

Second, an abuse of process claim requires more than a conclusory allegation that there was an ulterior motive. Simply alleging that there was an ulterior motive, without more, does not clear the Rule 12(b)(6) plausibility bar. *See, e.g., Satterfield v. Ennis*, 2008 WL 3910995, at *1 (D. Colo. Aug. 25, 2008) (concluding that an abuse of process claim alleging extortion as an ulterior motive "consists of only labels and conclusions, and the claim is not 'plausible on its face' because there are no facts alleged to support those labels and conclusions); *GN Netsome, Inc. v. Callpod, Inc.*, 2012 WL 4086530, at *2 (D. Colo. Sept. 17, 2012) (dismissing an abuse of process claim because there was no explanation of *how* the suit was motivated by the plaintiff's desire to gain settlement leverage). This defect in Defendants' counterclaim is particularly glaring with regard to their allegation that Plaintiffs seek to keep them from "engaging in their constitutional rights."

11

Not only do Defendants fail to identify what "constitutional rights" Defendants believe they are being kept from engaging in, but – even more fatal to their claim – they fail to explain how this is an *ulterior* motive wholly separate from the goal of the lawsuit. Defendants have no constitutional right to intimidate or attempt to intimidate voters. The fact that Defendants allegedly believe that their conduct is constitutionally protected conduct, and not unlawful voter intimidation, does not convert Plaintiffs' motivation for filing suit – *i.e.*, to prevent Defendants from engaging in that conduct – into an improper *ulterior* motive. An abuse of process claim cannot stand when the alleged ulterior motive is, in fact, the **purpose** of the lawsuit. *See Lauren Corp. v. Century Geophysical Corp.,* 953 P.2d 200, 202 (Colo. App. 1998) "[A] claim for abuse of process must include an allegation of 'the use of process to accomplish a coercive goal which is not the intended legal purpose of the process.'" (internal citation omitted).

Because Defendants have not and cannot allege any facts to suggest that Plaintiffs' suit is not colorable, seeks unrelated relief, or was commenced for an improper ulterior motive, the abuse of process claim cannot survive a Rule 12 challenge and should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order dismissing the Counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: June 2, 2022                                   LATHROP GPM LLP

By /s/Amy Erickson
Casey Breese (#51448)
Casey.breese@lathropgpm.com
Jean Paul Bradshaw
Jeanpaul.bradshaw@lathropgpm.com
Dion Farganis

12

Dion.farganis@lathropgpm.com
Reid Day
Reid.day@lathropgpm.com
Brian A. Dillon
Brian.dillon@lathropgpm.com
Amy Erickson (#54710)
Amy.erickson@lathropgpm.com
1515 Wynkoop Street, Suite 600
Denver, CO 80202
Telephone: (720) 931-3200

Courtney Hostetler
chostetler@freespeechforpeople.org
John Bonifaz
jbonifaz@freespeechforpeople.org
Ben Clements
bclements@freespeechforpeople.org
Ronald Fein
rfein@freespeechforpeople.org
FREE SPEECH FOR PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459
Telephone: (617) 249-3015

*ATTORNEYS FOR Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, and Mi Familia Vota*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Amy Elizabeth Erickson | amy.erickson@lathropgpm.com, claudia.neal@lathropgpm.com |
| Ben Clements | bclements@freespeechforpeople.org |
| Brian Andrew Dillon | brian.dillon@lathropgpm.com, kristina.procai@lathropgpm.com |
| Casey Carlton Breese | casey.breese@lathropgpm.com, brandi.pruett@lathropgpm.com, cheyenne.serrano@lathropgpm.com |
| Courtney Marie Hostetler | chostetler@freespeechforpeople.org |
| Jean Paul Bradshaw | jeanpaul.bradshaw@lathropgpm.com |
| Jessica Lynn Hays | jessica@reischlawfirm.com |
| R. Scott Reisch | scott@reischlawfirm.com, cassandra@reischlawfirm.com, Matthew@reischlawfirm.com, Rob@reischlawfirm.com |
| Reid Kelly Day | reid.day@lathropgpm.com, kirsten.hollstrom@lathropgpm.com |
| Ronald Andrew Fein | rfein@freespeechforpeople.org |
| John C. Bonifaz | jbonifaz@freespeechforpeople.org |
| Dion Richard Farganis | dion.farganis@lathropgpm.com,gwen.inskeep@larthropgpm.com |

                                                                                  s/Claudia Neal

48937911v3