UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| COLORADO MONTANA WYOMING STATE AREA CONFERENCE OF THE NAACP, LEAGUE OF WOMEN VOTERS OF COLORADO, and MI FAMILIA VOTA )<br><br>Plaintiffs,<br><br>-v-<br><br>UNITED STATES ELECTION INTEGRITY PLAN, SHAWN SMITH, ASHELY EPP, and HOLLY KASUN<br><br>Defendants. | Civil Action No. 1:22-cv-00581-PAB<br><br><br>BENCH TRIAL |

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS**

---

COMES NOW, Defendants, USEIP, Shawn Smith, Ashely Epp, and Holly Kasun, by and through undersigned counsel, and hereby submit this Response in Opposition to Plaintiffs' Motion to Dismiss Counterclaims [Doc. 49] as follows:

**Defamation Claim**

Plaintiffs argue that because the defamatory statements were made in the course of litigation by attorneys, they are absolutely privileged from a claim of defamation. Colorado courts provide privilege to attorneys as follows: "(1) a lawyer is absolutely

privileged to publish defamatory matter about another person or party; (2) in communications preliminary to a proposed judicial proceeding or (3) in the institution of, or during the course and as part of, a judicial proceeding in which the lawyer participates as counsel; (4) if it has some relation to the proceeding." *BKP, Inc. v. Killmer, Lane & Newman, LLP,* 506 P.3d 84, 90 (Colo. App. 2021) (*citing* Restatement (Second) of Torts § 586). However, this privilege has limits, including that "the maker of the statement and the recipient must be involved in and closely connected with the proceeding." *Club Valencia Homeowners Ass'n, Inc. v. Valencia Associates,* 712 P.2d 1024, 1027 (Colo. App. 1985).

Courts have distinguished the litigation privilege when the statement was made to the press in a conference or release. "This means that attorneys who make statements during press conferences, in press releases, and on social media do so at their own risk." *BKP, Inc.,* 506 P.3d at 91[1]. Following this authority, the Court in *BKP* concluded "that the statements made during the press conference and in the press release are not protected by the litigation privilege." *Id.* at 93. Unlike the statements made in this matter, the

---

[1] The Court cites several cases outlining the limitation of the litigation privilege in the context of press releases. These cases are summarized in the opinion as follows: No privilege for press conferences or press releases; no privilege for social media posts; an attorney's press conference remarks did not fall within the sphere of activities the immunity was designed to protect; comments to a newspaper reporter following the filing of a lawsuit are not part of the judicial proceeding protected by the absolute privilege; separating "bona fide litigation activities" from "public relations campaigns"; no privilege for statements made during a press conference because the statements were excessively published, meaning they were published to more persons than necessary to resolve the dispute or further the objectives of the proposed litigation; analogizing statements published on a website to statements made during a press conference and concluding that the statements were not privileged for want of a connection with judicial proceedings. *BKP, Inc.,* 506 P.3d at 91 (internal citations and quotations omitted).

attorneys in the *BKP* case articulated a purpose for the excessive publishing, arguing that it was in an attempt to reach others interested in joining the class action. *Id.* at 93-94. Nevertheless, the Court found that the attorneys "broadly published the allegedly defamatory communications to those having no interest in the case." *Id.* at 94.

Plaintiffs argue that because the defamatory statements at issue also exist in their Complaint, the statements were "made in reference and relation to the subject matter of the pending litigation." [Doc. 49, pg. 6]. While it may be true that these defamatory statements are included in the Complaint, it is not the Complaint itself which makes up the publications. Rather, Plaintiff, League of Women Voters (LWVCO) released a press release, written by Shannon Augustus and posted on League of Women Voters' website as a press release. *Colorado Voting Rights Advocates File Lawsuit Against Voter Intimidation,* Shannon Augustus, (March 9, 2022), https://www.lwv.org/newsroom/press-releases/colorado-voting-rights-advocates-file-lawsuit-against-voter-intimidation.    This article links to the Complaint and Memorandum in Support. The majority of the statements contained in this article are not those of counsel. Therefore, the litigation privilege is inapplicable. Next, Plaintiffs correctly note that counsel on this matter are employed with Free Speech For People, another entity which published defamatory statements. [Doc. 49, pg. 6]. However, similarly to the press release by LWVCO, the published defamatory statements are not those of lawyers representing the parties. The article does not have a clear author, however, it was published for anyone to view on Free Speech For People.org. Even if the counsel authored this article, absolute privilege only attaches if the statement has some relation to the proceeding. Further, and even more clear in this

context, "the maker of the statement *and the recipient* must be involved in and closely connected with the proceedings." *Club Valencia,* 712 P.2d at 1027 (emphasis added).

The public at large is an is "an audience wholly unconnected to the judicial process. Consequently, neither the content nor the occasion of the communications warrants absolute privilege. . ." *Seidl v. Greentree Mortg. Co.,* 30 F.Supp.2d 1292, 1314 (D.Colo. 1998) (*citing Kleier Advertising, Inc. v. Premier Pontiac, Inc.,* 921 F.2d 1036 (10th Cir. 1990) (internal quotations omitted)). Had the publication of these defamatory statements ceased at the filing of the complaint, or were kept for the sole purpose of furthering litigation, Plaintiffs' arguments regarding absolute privilege may have merit. However, that is not what occurred here. "Similarly, in this case, an attorney who wishes to litigate her case in the press and via the Internet does so at her own risk. There is no absolute privilege under Colorado law for statements by an attorney or by a party made to the press or gratuitous statements posed on the Internet for the purpose of publicizing the case to persons who have no connection to the proceeding except as potentially interested observers." *Seidl,* 30 F.Supp.2d at 1315.

Moreover, the republication of the defamatory statements contained in the pleadings themselves are not subject to privilege. The articles, press releases, and websites published by Plaintiffs have links to the original Complaint and the Memorandum in Support of the Motion for Preliminary Injunction. [Doc. 1, 6]. These filings are riddled with defamatory statements regarding the Defendants, accusing them of being connected with terrorist organizations and intimidating voters on a racial basis.

Analogous to the publications here, the Court in *Westfield* recognized that by filing a lis pendens, effectively a republication of a simultaneously filed complaint, an attorney is only granted qualified immunity. *Westfield Dev. Co. v. Rifle Inv. Assocs.,* 786 P.2d 1112, 1117 (Colo. 1990). There, the Court balanced "the policy of encouraging free access to the courts which is the basis of an absolute privilege [and found that it] is outweighed by the intentional and improper interference with contract by means of litigation not brought in good faith." *Id.* at 1117; *also see Begley v. Ireson,* 399 P.3d 777 (Colo. App. 2017). The "good faith" requirement is articulated in *Belinda A. Begley & Robert K. Hirsch Revocable Tr. V. Ireson,* 490 P.3d 963, 973-75 (Colo. App. 2020), which rejected that the filing of the lawsuit, alone, could establish good faith. *Id.* at 973.

In addition to the good faith requirement, Plaintiffs cannot avoid that the republication of the complaint and memorandum of law bears no relation to the proceedings nor provides any advancement to judicial functions. *See Seidl,* 30 F.Supp.2d at 1315. Adding a copy of the Complaint to their website resulted in publication to the entire word, an audience who is, at best, concerned observers. *Id.* Therefore, any privilege, absolute or qualified, cannot protect the defamatory statements made by Plaintiffs and their counsel. The privilege does not extend to publications made to an audience with no relation to the case. Plaintiffs and their counsel chose to publish defamatory articles and republish the complaint and memorandum in support to the

general public via the internet. These defamatory statements, whether made by counsel or not are not granted absolute privilege.[2]

## ABUSE OF PROCESS

Plaintiffs argue that the counterclaim for abuse of process fails for lack of an ulterior motive and that the relief sought is consistent with the claims alleged. [Doc. 49, pg. 8-12]. What Plaintiffs cannot avoid is that they are not entitled to *any* of the relief they seek, and therefore the relief itself is an improper use of the legal system.

### A. Plaintiffs Do Not Have a Colorable Claim

Plaintiffs argue that "if a party files 'claims that are colorable on their face, and requests relief consistent with the claims alleged,' there is no abuse of process, even if the claims are factually baseless." *Pinion Sun,* 2019 WL 140710, at *5 (internal citations omitted). Based on this limit to an abuse of process claim, Plaintiffs argue that the relief which they have requested is consistent with the claims that were alleged in the Complaint. [Doc. 49, pg. 11]. Further, Plaintiffs argue that the purpose of the lawsuit is to prevent the Defendants from engaging in the conduct which is the basis for their ulterior motive alleged in the counterclaim. These theories fail because the underlying lawsuit seeks relief which cannot be granted to any of the Plaintiffs.

*i.*    Voting Rights Act Remedies and Sanctions 52 U.S.C. § 10308.

---

[2] Plaintiffs argue that the pleading requirements of F.R.C.P. 11 have been met and that reliance on one source is permitted. [Doc. 49, pg. 7]. However, the allegations of Plaintiffs' failure to investigate are included for the purpose of establishing actual malice under the elements of a libel per se action. Actual malice with regard to investigation can be established by a lack of corroboration and grossly inadequate investigation. *Kuhn v. Tribune Republican Pub. Co.,* 637 P.2d 315, 319 (Colo. 1981).

Plaintiffs' Complaint seeks relief for alleged violation of the Voting Rights Act, 52 U.S.C. § 10307(b), which prohibits intimidating, threatening, or coercing any person for voting or attempting to vote. 52 U.S.C. § 10307(b), *Prohibited Acts.* Plaintiffs fail to acknowledge the following section of the Voting Rights Act, which delineates the available remedies and sanctions for a violation. *See* 52 U.S.C. § 10308, *Civil and Criminal Sanctions.* Importantly, the only remedy available for a violation of § 10307(b) is as follows:

> Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 10301, 10302, 10303, 10304, 10306, or 10307 of this title . . . the Attorney General may institute for the United States, or in the name of the United States, an action for preventative relief, including an application for a temporary or permanent injunction, restraining order, or other order . . .

52 U.S.C. § 10308(d), *Civil action by Attorney General for preventative relief; injunctive and other relief*.

With no other avenues for relief under § 10307(b), Plaintiffs cannot expect to usurp the rights expressly given to the Attorney General to bring an action for civil relief for the United States or in the name of the United States. The mere initiation of this litigation by which Plaintiffs have no right to pursue is an obvious abuse of the legal system.

Therefore, the requests contained in the Prayer for Relief, to the extent they are related to violations of 52 U.S.C. § 10307(b), are statutorily impermissible. *See* [Doc. 1 pg. 13-15, ¶ a-n]. The argument that the requests for relief are consistent with the claims alleged fails because Plaintiffs have no right to bring a claim under this section. The lack of available remedies goes far beyond the claims being factually baseless. Without a

mere possibility of recovery, its unfathomable to believe that the relief requested is consistent with the claims alleged.

ii.      The Ku Klux Klan Act, 42 U.S.C. § 1985(3)

Similarly, Plaintiffs have no cognizable path to obtain relief under the claim of 42 U.S.C. § 1985(3). The section for which Plaintiffs seek relief states:

> . . .[I]f two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election . . .or to injure any citizen in person or property on account of such support or advocacy; in the case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3), *Depriving Persons of Rights or Privileges.* (hereinafter "§ 1985(3)")

While the statutory language in this section permits the recovery of damages, it provides no substantive right by itself. Rather, this section merely provides remedy for violations of the rights it designates. *See Marino v. Bowers,* 657 F.2d 1363 (3rd Cir. 1981); *Knight v. City of New York,* 303 F.Supp.2d 485 (S.D.N.Y 2004); *Oaks v. City of Fairhope, Alabama,* 515 F.Supp. 1004 (S.D. Ala. 1981). Therefore, it is necessary to look to the underlying violation in order to determine the designated civil right at issue.

Proof of state action in a § 1985(3) claim is an added requirement when the alleged civil rights violation restrains only official conduct. In analyzing a conspiracy claim by purely private parties in relation to deprivation of the First Amendment right to not associate, the Supreme Court held, "[t]he rights, privileges, and immunities that § 1985(3)

8

vindicates must be found elsewhere, and here the right claimed to have been infringed has its source in the First Amendment. Because that Amendment restrains only official conduct, to make out their § 1985(3) case, it was necessary for respondents to prove that the state was somehow involved in or affected by the conspiracy." *United Broth. Of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott,* 463 U.S. 825, 833 (1983). The Plaintiff organizations in this matter are private parties. *See* [Doc. 1, ¶¶ 13-15]. The Defendants are private individuals and an unorganized association. *Id.* at ¶¶ 16-19. No party to this action is a state or government actor. Further, without the involvement of the Attorney General as required by the Voting Rights Act outlined above, there has been no involvement by the State/ Government for the actions complained of. Instead, Plaintiffs chose to take it upon themselves to bring impermissible claims.

Taking the private status of the parties into consideration, the availability of the remedies afforded by § 1985(3) are limited to interference with "rights that are protected against private, as well as official, encroachment." *Carpenters,* 463 U.S. at 833.  The only cognizable rights available to both private and officials are the Thirteenth Amendment right to be free from involuntary servitude and the right to interstate travel. *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 278 (1993). Therefore, Plaintiffs allegation that Defendants interfered with one's right to vote is not one which is permitted by purely private parties. *See Federer v. Gephardt,* 363 F.3d 754, 758-59 (8th Cir. 2004) ("Because no separate statute gives a citizen the independent federal right to support and advocate on behalf of a candidate for Congress, the only otherwise defined federal rights . . . are the First Amendment rights of freedom of association and freedom of expression.

An alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the State is involved in the conspiracy . . ." (*citing Carpenters,* 465 U.S. at 830)).

Since the parties in this case are purely private and the rights infringed upon are those protected by the First Amendment, Plaintiffs cannot seek damages under § 1985(3). Even if State action was not required, which it is, the statutory language confers "the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation. . ." § 1985(3). Although the issue of organizational standing has been litigated before this Court [Doc. 27, 33 and 36], the right to bring a claim under this specific statute has not.

§ 1985(3) requires a demonstration that the defendants acted "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or equal privileges and immunities under the laws. . ." § 1985(3). Standing is conferred only to the persons actually deprived of their individual civil rights. However, in some circumstances, entities such as corporations and organizations are considered "people" granting constitutional rights including the equal protection and due process of law cluses of the Fourteenth Amendment. *See Grosjean v. American Press Co.,* 297 U.S. 233 (1936). However, the deprivation of rights complained of in Plaintiffs' § 1985(3) claim are limited only to "prevent Plaintiffs and others who are lawfully entitled to vote from giving their support or advocacy toward the election. . . Plaintiffs and others who are lawfully entitled to vote have been injured by Defendants' behavior, which has intimidated and threatened voters and potential voters." [Doc. 1, ¶¶ 48-50]. Obviously, an

organization or corporation is not a citizen who is lawfully entitled to vote, as required by §1985(3). Therefore, Plaintiffs' diversion of resources theory to establish standing cannot be grounds for the deprivation of civil rights making up a § 1985(3) claim. Therefore, the remedies sought in Plaintiffs' Prayer for Relief, to the extent they relate to a violation of § 1985(3), are impermissible and leave no possible theory of recovery. [Doc. 1, pg.13-15, ¶¶ a-n].

### B. Defendants' Constitutional Rights- Improper Purpose and Ulterior Motive

Plaintiffs' final argument that because the relief sought is consistent with the goal of the lawsuit, the ulterior purpose that the Defendants' constitutional rights are at risk is insufficient to establish the elements of abuse of process. [Doc. 49, pg. 11-12]. Even if Plaintiffs did not have a nefarious intent in filing this lawsuit, their motive only provides context, "it still must be established that, viewed objectively, there was an improper *use* of the process." *James H. Moore & Assoc. Realty, Inc. v. Arrowhead at Vail,* 892 P.2d 367 (Colo. App. 1994). (Finding that the filings were "supported by plausible contentions that Moore was a victim and that a contract could be proven." This was distinguishable from a similar case "in which plaintiff filed a notice of *lis pendens* knowing that he had no claim to any interest in the property that was the subject of the notice.") *Id.* at 374.

As explained fully above, Plaintiffs have no right under any theory to the relief sought. Knowing that they have no right to seek these remedies, Plaintiffs' improper motive is unavoidable. By filing this action, Plaintiffs attempt to usurp the State's rights of action, and ask the Court to eliminate Defendants' constitutional rights of association, speech, and to bear arms.

It is unfathomable to suggest that Plaintiffs' request to "Order Defendants to cease and desist going uninvited to voters' homes in order to question voters or household members . . . [and] Order Defendant USEIP to cease and desist coordinating or organizing visits to voters' homes in order to question voters . ." is not a clear attempt to violate the protections afforded under the First Amendment. Canvassing efforts have long been protected by our Courts. "Freedom to distribute information to every citizen whenever he desires to receive it is so clearly vital to the preservation of a free society that, putting aside reasonable police and health regulations of time and manner of distribution, it must be fully preserved." *Martin v. City of Struthers, Ohio,* 319 U.S. 141, 147 (1943). Moreover, "perhaps the most effective way of [to give information to] individuals is their distribution at the homes of the people." *Schneider v. State of New Jersey, Town of Irvington,* 308 U.S. 147, 164 (1939). The censorship Plaintiffs seek "strikes at the very heart of the constitutional guarantees." *Id.* Plaintiffs' also ask the Court for an Order directing what Defendants may or may not say to voters. [Doc. 1, Prayer for Relief, ¶ g].

Not only are Plaintiffs' requests in violation of the freedom of speech and press, Plaintiffs ask the Court to violate Defendants' right to freedom of association. Specifically, Plaintiffs' request for an order that USEIP cease and desist coordinating and organizing visits to voters' homes and an Order to cease and desist instructing or encouraging anyone to carry weapons during USEIP-related interactions with voters. "The right to associate thus recognizes one's right to join with others to pursue goals independently protected by the First Amendment, such as literary expression, political change, or

religious worship. An abridgment of that right occurs when any insufficiently justified governmental action interferes with or discourages a group's pursuit of these First Amendment interests." *State Bd. For Community Colleges and Occupational Education v. Olson,* 687 P.2d 429, 439 (Colo. 1984).

The remaining requests for relief also abridge Defendants' constitutional rights. Plaintiffs' request for an Order that Defendants stop taking photographs and stop maintaining databases of voters, and asking for deletion of any such items is also in violation of free speech and press. News gathering in a public forum is protected by the First Amendment. *J. Pub. Co. v. Mechem,* 801 F.2d 1233 (10th Cir. 1986). Plaintiffs do not allege that Defendants' collection of voter information including photographs and databases was derived by illegal means, or even in violation of the voter's privacy. Rather, Plaintiffs allege that photographs were merely taken of residences and vehicles; an action fully within the purview of the First Amendment.

Finally, Plaintiffs ask the Court for an order that Defendants cease and desist carrying weapons when going to speak to voters at their homes. A person's "right to bear arms in self-defense is an important constitutional right." *Students for Concealed Carry on Campus, LLC v. Regents of University of Colorado,* 280 P.3d 18, 26 (Colo. App. 2010) (internal citations and quotations omitted). Further, the legislature enacted C.R.S. § 18-12-201 authorizing the concealed carry of a handgun "in all areas of the state, except as specifically limited in this section." § 18-12-214(1)(a), C.R.S. Specifically excluded are places where the carrying of firearms is prohibited by federal law, the real property of any public elementary, middle, junior high, or high school, and specific public buildings. § 18-

12-214(3)-(5), C.R.S. Therefore, Plaintiffs' request that Defendants cannot carry their weapons where legally permitted by Constitution and by Statute is undeniably impermissible.

Plaintiffs' legally impermissible requests violate the constitutional guarantees of the Defendants. "The duty to prevent encroachment upon these constitutional guarantees rests not only upon the legislature but upon the judicial branch of government." *Pueblo Bldg. and Const. Trades Council v. Harper Const. Co. of Colo.,* 307 P.2d 468, 473 (Colo. 1957). The act of bringing this lawsuit, having no rights thereunder, and using the judicial system to curtail Defendants' undeniable Constitutional rights is the epitome of abuse of process.

## CONCLUSION

Plaintiffs' Motion to Dismiss Defendants' counterclaims must be denied. Plaintiffs attempt to assert the absolute privilege for defamatory statements made in conjunction with litigation. Yet, the publication of these defamatory statements was not limited to the litigation itself. Rather, Plaintiffs chose to litigate via the press and internet and therefore did so at their own peril. Plaintiffs cannot hide behind the litigation privilege when the defamatory statements were disseminated to the general public. Therefore, Plaintiff's request that the defamation claim be dismissed is unfounded and should be denied. Plaintiffs' argument that the abuse of process claim should be dismissed for having brought this litigation for its stated purpose fails. To the contrary, Plaintiffs brought this litigation having no right to even assert these claims against Defendants, in the hopes that the legal system would grant requests abridging Defendants' undeniable

constitutional protections. The purpose of an abuse of process claim is to remedy the precise actions Plaintiffs took here. Therefore, Plaintiffs' motion to dismiss the abuse of process claim should be denied. To the extent that dismissal is permitted, Defendants request that the Court allow them to amend their pleadings to cure any defects.

WHEREFORE, Defendants respectfully request that the Court deny Plaintiff's' Motion to Dismiss.

Respectfully submitted this 17th day of June, 2022.

<div align="right">

*s/ Jessica L. Hays*
Jessica L. Hays, #53905
R. Scott Reisch, #26892
THE REISCH LAW FIRM, LLC
1490 W. 121st Avenue, #202
Denver, CO 80234
(303) 291-0555
Email: scott@reischlawfirm.com
jessica@reischlawfirm.com
cassandra@reischlawfirm.com
*Attorneys for Defendants*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS** has been electronically served through ECF this 17th day of June, 2022, to all counsel of record.

<div style="margin-left:45%">

*s/ Jessica L. Hays*
R. Scott Reisch, #26892
Jessica L. Hays, #53905
THE REISCH LAW FIRM, LLC
1490 W. 121st Avenue, #202
Denver, CO 80234
(303) 291-0555
Email: scott@reischlawfirm.com
Email: jessica@reischlawfirm.com
*Attorneys for Defendants*

</div>

16