IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00581-PAB

Colorado Montana Wyoming
State Area Conference of the NAACP,
League of Women Voters of Colorado, and
Mi Familia Vota,

    Plaintiffs,

v.

United States Election Integrity Plan, Shawn Smith,
Ashley Epp, and Holly Kasun,

    Defendants.

---

**REPLY IN SUPPORT OF MOTION TO DISMISS (ECF NO. #49)**

---

**INTRODUCTION**

Plaintiffs brought this action under the Voting Rights Act and the Ku Klux Klan Act based primarily on Defendants' *own public statements*, which demonstrate that they have engaged in a coordinated scheme of illegal voter intimidation in violation of federal law. Defendants' defamation counterclaim should be dismissed because it is based solely on allegations by Plaintiffs' counsel or the parties made *in the Complaint* or in reference *to the Complaint*, which are absolutely privileged and cannot as a matter of law support a defamation claim. The abuse of process claim should also be dismissed because it fails to allege any facts that support an inference that Plaintiffs brought this action for any improper ulterior motive or in an improper use of proceedings.

1

**ARGUMENT**

**I.     DEFENDANTS CANNOT ASSERT A DEFAMATION CLAIM.**

Defendants' defamation claim, which is based solely upon the allegations in the Complaint and/or litigation-related statements by Plaintiffs or their attorneys, fails to state a claim and should be dismissed with prejudice. Preliminarily, Defendants argue that only statements made by *attorneys* in the course of litigation are absolutely privileged. This position is just wrong. The absolute privilege protects statements made by both attorneys *and parties*. *See Club Valencia Homeowners Ass'n, Inc. v. Valencia Associates*, 712 P.2d 1024, 1027 (Colo. Ct. App. 1985) (holding, in libel counterclaim against parties and their attorneys, that privilege applied, and citing Restatement (Second) of Torts § 586 (1977)); *see also Dept. of Admin. v. State Personnel Bd. of State*, 703 P.2d 595, 597-98 (Colo. Ct. App. 1985) (citing Restatement (Second) of Torts § 587 (1977)) (holding that absolute privilege protects statements made prior to and during litigation proceedings by attorneys and parties to private litigation that could be considered defamatory).

Further, the absolute privilege only fails if: (1) the statements have no relation to the proceeding; or (2) the recipient of the statements has no meaningful connection to the proceedings. *Valencia*, 712 P.2d at 1027. Here, the absolute privilege applies because the statements at issue are unquestionably related to the proceedings and made to an audience that is sufficiently connected to the proceedings.

Under Colorado law, relation to the proceedings means "the allegedly defamatory matter must have been made in reference to the subject matter of the proposed or pending litigation, although it need not be strictly relevant to any issue involved in it." *Id.* (citing Restatement (Second) of Torts § 586 cmt. C (1977); *Sussman v. Damian,* 355 So.2d 809 (Fla. App. Ct. 1977)).

2

Relevancy, in this context, is "a general frame of reference and relation to the subject matter of the litigation" and "embraces anything that possibly may be relevant." *Valencia*, 712 P.2d at 1027 (citing *Smith*, 271 Cal.App.2d at 76; *Feldman v. Bernham*, 6 App.Div.2d 498 (N.Y. App. Ct. 1958)). "All doubt should be resolved in favor of its relevancy or pertinency." *Id.*

Defendants have not explained and cannot explain how any statement made by the parties or their attorneys in the press releases at issue is unconnected or irrelevant to the judicial proceedings. The statements contained in the Complaint, and repeated in the press releases, simply offer information regarding the background, purpose, basis, and framework of the lawsuit. *See Feldman*, 6 App.Div.2d 498 (discussing cases which aid in defining relevancy). For example, the first sentence of the League of Women Voters' press release states: "Today, the League of Women Voters of Colorado and other civil rights groups filed a federal lawsuit against election conspiracy group US Election Integrity Plan (USEIP) for voter intimidation activities in Colorado."[1] The press release continues with: "The lawsuit alleges members of USEIP are leading an organized intimidation campaign, dispatching volunteers — who are sometimes armed — to go door-to-door in diverse communities, interrogating Colorado voters on how they voted."[2] There is no doubt that these statements—which describe the lawsuit and Complaint—are relevant to the judicial proceedings. In fact, these statements, and the rest of the press releases in question, are precisely the types of statements the absolute privilege rule was designed to protect. *See Valencia*, 712 P.2d

---

[1] Press Release, Shannon Augustus, Colorado Voting Rights Advocates File Lawsuit Against Voter Intimidation (Mar. 9, 2022) (found at https://www.lwv.org/newsroom/press-releases/colorado-voting-rights-advocates-file-lawsuit-against-voter-intimidation).

[2] Id.

49147524v6

at 1027 (citing multiple non-Colorado cases which aid in defining what types of statements are relevant to judicial proceedings and deserve absolute privilege).[3]

Absolute privilege also protects the statements at issue because the intended recipients are sufficiently connected to the proceeding. Defendants argue that Plaintiffs' statements are not protected by the absolute privilege because they were made to "[t]he public at large, which is 'an audience wholly unconnected to the judicial process.'" (Defs.' Resp. to Mot. to Dismiss, ECF. 50, at 4 (citing *Club Valencia*, 712 P.2d at 1027)). Defendants' argument should be rejected.

The intended recipients of the press release are primarily: (1) members or grassroots supporters of Plaintiffs' organizations; and (2) Colorado voters, including those with whom Plaintiffs engage in voter education, assistance, or other outreach activities; those who have been targeted by Defendants' illegal activity; and those who had learned of Defendants' illegal activity and were concerned about being targeted in the future. Members and supporters of Plaintiffs' organizations are sufficiently connected to the proceedings because Plaintiffs' missions include protecting access to free, open, and equal voting and equality of rights. (Compl., ECF No. 1, ¶¶ 13-15.) Plaintiffs, in fact, have a duty to inform their members about the actions they are taking to further the organizations' missions. The press releases offer information about the background of the lawsuit, when the lawsuit was filed, the purpose of filing the lawsuit, and the general

---

[3] Moreover, as the Court is aware from the record in this case, these complained of statements are true, *e.g.*, the League of Women Voters of Colorado and other civil rights groups did, in fact, file a federal lawsuit against the Defendants – *this case*. Undeniably, "the lawsuit alleges members of USEIP are leading an organized intimidation campaign, dispatching volunteers — who are sometimes armed — to go door-to-door in diverse communities, interrogating Colorado voters on how they voted." A simple reading of the Complaint verifies this. Thus, a defamation claim also fails because the statements are true, and defamations requires that the allegedly defamatory statements be false. *See Fry v. Lee*, 408 P.3d 843, 854 (Colo. Ct. App. 2013).

framework of the lawsuit. Offering this information through Plaintiffs' websites allows Plaintiffs to keep their members and supporters abreast of their voting rights work.

Colorado voters, including both those who have been directly targeted by Defendants' voter intimidation campaign and those who have not yet been targeted but worry that if they vote in upcoming elections they may receive a visit from Defendants' armed intimidators, are also sufficiently connected to the proceedings such that the absolute privilege is preserved. Put another way, Colorado voters—especially those who have been targeted by Defendants' illegal conduct—are more than just "concerned observers," as Defendants allege. The press releases at issue serve two primary purposes in regard to Colorado voters. One, they assure Colorado voters that someone is working to put a stop to Defendants' illegal activity. And, two, they act as a catalyst for other victims and potential witnesses in this action to come forward with their stories of voter intimidation. *See Healthsmart Pacific, Inc. v. Kabateck*, 7 Cal.App.5th 416, 429 (Cal. Ct. App. 2016) (holding that statements were protected because the issues raised in the litigation potentially impacted "many thousands" of Californians who received a counterfeited medical device and "consumers of medical services, have an interest in being informed of issues concerning particular doctors and health care facilities").[4]

---

[4] This case is distinguishable from *BKP, Inc. v. Killmer*, on which Defendants rely to argue statements to the press are done at the attorneys' own risk. (ECF 50 at 2.) The *BKP* court held the purpose of the attorney's statements to the press—promoting their class action and reaching other potential class members—was directly contradicted by the Complaint which stated the class was easily ascertainable by employment records. *BKP, Inc. v. Killmer*, 506 P.3d 84, 93-94 (Colo. Ct. App. 2021). Here, in contrast, there may be other Colorado voters who have been directly or indirectly intimidated by Defendants' illegal voter intimidation, but have not yet come forward. The press releases offer these people an opportunity to come forward with their stories.

Moreover, the cases cited by Defendants in opposition to the Plaintiffs' Motion to Dismiss are inapposite. Defendants, citing to *Seidl v. Greentree Mortgage Company*, want the Court to believe that *all* communications made via the Internet should be excluded from absolute privilege. Defendants' argument, however, is based on a misunderstanding of the court's holding in *Seidl*. The court in *Seidl* reasoned that "[t]here is no absolute privilege under Colorado law for statements by an attorney or a party made to the press or gratuitous statements posed on the Internet for the purpose of publicizing the case to persons who have no connection to the proceeding except as potentially interested observers." 30 F.Supp.2d 1292, 1315 (D.Colo. 1998). The *Seidl* court found that Mr. Seidl had no valid purpose for disseminating the communications other than to publicize the case to the general public. *See id.* at 1306, 1315, 1319. Here, in contrast, the purposes of the press releases are well-founded. Plaintiffs are entitled to update their members about the ongoing litigation connected to Plaintiffs' missions and to put Colorado voters—including those intimidated by Defendants—on notice of the ongoing litigation.

Neither *Begley v. Ireson* or *Westfield Development Co.*, have any bearing on the present case. In *Begley v. Ireson*, the Colorado Court of Appeals addressed statements made concerning *prospective* litigation and cautioned that attorneys could not cloak tortiously interfering statements in the privilege by "by subsequently filing a bad faith and meritless claim related to the otherwise tortious statement." *Vivos Therapeutics, Inc. v. Ortho-Tain, Inc.*, 2022 WL 2223141, at * 3 (10th Cir. June 21, 2022). Here, however, each of the statements at issue was made *after* the litigation was commenced and, as explained here, the litigation was unquestionably commenced in good faith. In addition, linking to the Complaint in the press releases is not analogous, as Defendants' claim, to the publication of a *lis pendens* in *Westfield Development Co. v. Rifle Investment*

6

*Associates*. A Complaint, unlike a *lis pendens*, has no independent legal import and can never give rise to a tortious interference claim.

Finally, "[t]o be actionable, an allegedly defamatory statement must contain a material falsehood." *Fry v. Lee*, 408 P.3d 843, 854 (Colo. Ct. App. 2013). Defendants fail to identify a single statement they allege is false. Rather, Defendants speak only in generalities, alleging that the "filings are riddled with defamatory statements," including that Defendants have connections to terrorist organizations and intimidating voters on a racial basis. (ECF No. 50 at 4.) Defendants, however, have not explained (and cannot explain) how these statements are false because the allegations in the Complaint are based on Defendants' own statements and conduct.[5]

Defendants have failed to state a claim, and the Court should dismiss Defendants' defamation claim, with prejudice.

## II. DEFENDANTS FAIL TO STATE A CLAIM FOR ABUSE OF PROCESS.

To support an abuse of process claim, Defendants must establish: "(1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of the proceedings, *i.e.*, use of a legal proceeding in an improper manner; and (3) resulting damage." *Stevens v. Mulay*, 2021 WL 1153059, at *1 (D. Colo. Mar. 26, 2021) (citing

---

[5] As reported nationally, "USEIP appears to have fully embraced the QAnon conspiracy theory. Its website and the first page of its 'playbook' include the slogan 'We Are the Plan,' frequently associated with QAnon believers. During a presentation organized by Sherronna Bishop, the former campaign manager for Rep. Lauren Boebert, USEIP leader Cory Anderson (who is also a member of the anti-government Three Percenter militia) described the briefing as 'being redpilled,' according to the Times Recorder. (That expression, originally drawn from 'The Matrix,' is popular among QAnon followers and other far-right conspiracy theorists.)." https://www.msn.com/en-us/news/politics/pro-trump-group-sent-armed-members-door-to-door-in-colorado-to-intimidate-voters-lawsuit/ar-AAVjway (Last checked 6/28/2022).

49147524v6

*Parks v. Edward Dale Parrish LLC*, 452 P.3d 141, 145 (Colo. App. 2019)). Defendants fail to establish any of the elements of abuse of process.

In fact, Defendants seem to wholly misunderstand their own abuse of process claim, contending that Plaintiffs are liable for abuse of process because they "are not entitled to *any* of the relief they seek." (ECF No. 50 at 6 (emphasis in original).) As an initial matter, this cannot form the basis for an abuse of process claim. Defendants—who already have filed their Answer to the Complaint, and who chose not to file a timely motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)—cannot show abuse of process simply based on a supposed failure to state a claim. They must show an "ulterior purpose" and "use of a legal proceeding in an improper manner," *Stevens*, 2021 WL 1153059, at *1. But when confronted with this point, Defendants simply argue that "[k]nowing that they have no right to seek these remedies, Plaintiffs' improper motive is unavoidable." (ECF No. 50, at 11.) In other words, Defendants' *only* argument regarding Plaintiffs' supposed ulterior motive is that (in Defendants' view) Plaintiffs fail to state a claim. But on that logic, <u>every</u> complaint questioned under Rule 12(b)(6) would ground an abuse of process counterclaim; Defendants' treatment of a dispute about the availability of certain relief as an abuse of process is, itself, misuse of a tort counterclaim.

Moreover, even if an abuse of process claim was the appropriate mechanism to assert that Plaintiffs' claims lack merit (which it is not), Plaintiffs have asserted colorable claims. First, contrary to Defendants' assertion, both the government and private parties (Plaintiffs included) may sue to enforce Section 11(b) of the Voting Rights Act. *See, e.g.*, *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 476 (S.D.N.Y. 2020) ("both government and private parties may sue to enforce Section 11(b)"); *Council on Am.-Islamic Rels.-Minnesota v. Atlas Aegis,*

8
49147524v6

*LLC,* 497 F. Supp. 3d 371, 378-79 (D. Minn. 2020) (describing standard for private plaintiffs to enforce Section 11(b)); *Mi Familia Vota v. Abbott*, 497 F.Supp.3d 195, 223 (W.D. Tex. 2020) ("Congress did not intend to foreclose private causes of action by also granting the Attorney General enforcement authority." (citation omitted)); *Arizona Democratic Party v. Arizona Republican Party*, 2016 WL 8669978, at *4 (D. Ariz. Nov. 4, 2016) ("the statute does not exclude a private right of action for injunctive relief").

Second, Defendants argue that Plaintiffs' claim under the KKK Act is improper because the parties in this case are private parties and the rights infringed upon are protected by the First Amendment. Defendants' argument and the cases cited by Defendants in support thereof indicate that Defendants do not understand either the Complaint or the authority they cited.

Rendered charitably, Defendants' argument (ECF No. 50, at 8-11) appears to be: Plaintiffs sued Defendants for conspiring to prevent, by intimidation, voters from giving their support or advocacy in federal elections; if a *governmental* actor had done this, it would violate the First Amendment; a First Amendment claim can only be asserted against governmental actors; therefore (purportedly) claims under this provision of the Ku Klux Klan Act can only be asserted against government officials—*not* against private actors such as Defendants or (to pick an example relevant to interpreting the Ku Klux Klan Act) the Ku Klux Klan.

But Defendants appear to confuse 42 U.S.C. § 1983, under which litigants may sue individuals acting under color of state law for deprivation of constitutional rights, with 42 U.S.C. § 1985(3), under which litigants may sue any "two or more persons" (no color-of-law requirement) for "conspir[ing] to prevent by force, intimidation, or threat" (not protected speech) a voter from giving support or advocacy in a federal election (not the same as the First Amendment). In fact,

9

"it is clearly possible to state a valid claim under the support-or-advocacy clauses without a predicate right under the First Amendment, and there is no reason to think that the clauses were designed to vindicate First Amendment rights at all." Richard Primus & Cameron O. Kistler, *The Support-or-Advocacy Clauses*, 89 Fordham L. Rev. 145, 161–62 (2020).

In any event, Defendants' reliance on *United Brotherhood of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott,* 463 U.S. 825, 830 (1983), and *Federer v. Gephardt*, 363 F.3d 754 (8th Cir. 2004), is misplaced. *Carpenters* arose under a *different subclause* of Section 1985(3)—the first (equal protection) subclause. *See* Primus & Kistler, 89 Fordham L. Rev. at 177-78, 183-89 (noting common misreading of *Carpenters* as applying to all of Section 1985(3), not just the equal protection subclause). And *Carpenters* and *Federer*, unlike this case, involved claims that First Amendment rights were being infringed; therefore state action was required. That is irrelevant to this case, which focuses on voter intimidation.[6] This is not a First Amendment case.

Defendants' abuse of process claim should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order dismissing the Counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[6] Nor, for their part, have Defendants asserted a First Amendment right to intimidate voters in violation of the Voting Rights Act and Ku Klux Klan Act, or that these laws are unconstitutional.

Dated: June 30, 2022

LATHROP GPM LLP

By /s/Amy Erickson
Casey Breese (#51448)
Casey.breese@lathropgpm.com
Jean Paul Bradshaw
Jeanpaul.bradshaw@lathropgpm.com
Dion Farganis
Dion.farganis@lathropgpm.com
Reid Day
Reid.day@lathropgpm.com
Brian A. Dillon
Brian.dillon@lathropgpm.com
Amy Erickson (#54710)
Amy.erickson@lathropgpm.com
1515 Wynkoop Street, Suite 600
Denver, CO 80202
Telephone: (720) 931-3200

Courtney Hostetler
chostetler@freespeechforpeople.org
John Bonifaz
jbonifaz@freespeechforpeople.org
Ben Clements
bclements@freespeechforpeople.org
Ronald Fein
rfein@freespeechforpeople.org
FREE SPEECH FOR PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459
Telephone: (617) 249-3015

*ATTORNEYS FOR Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, and Mi Familia Vota*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Amy Elizabeth Erickson | amy.erickson@lathropgpm.com, claudia.neal@lathropgpm.com |
| Ben Clements | bclements@freespeechforpeople.org |
| Brian Andrew Dillon | brian.dillon@lathropgpm.com, kristina.procai@lathropgpm.com |
| Casey Carlton Breese | casey.breese@lathropgpm.com, brandi.pruett@lathropgpm.com, cheyenne.serrano@lathropgpm.com |
| Courtney Marie Hostetler | chostetler@freespeechforpeople.org |
| Jean Paul Bradshaw | jeanpaul.bradshaw@lathropgpm.com |
| Jessica Lynn Hays | jessica@reischlawfirm.com |
| R. Scott Reisch | scott@reischlawfirm.com, cassandra@reischlawfirm.com, Matthew@reischlawfirm.com, Rob@reischlawfirm.com |
| Reid Kelly Day | reid.day@lathropgpm.com, kirsten.hollstrom@lathropgpm.com |
| Ronald Andrew Fein | rfein@freespeechforpeople.org |
| John C. Bonifaz | jbonifaz@freespeechforpeople.org |
| Dion Richard Farganis | dion.farganis@lathropgpm.com, gwen.inskeep@larthropgpm.com |

                                                  s/Claudia Neal

12
49147524v6