UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| COLORADO MONTANA WYOMING STATE AREA CONFERENCE OF THE NAACP, LEAGUE OF WOMEN VOTERS OF COLORADO, and MI FAMILIA VOTA<br><br>Plaintiffs,<br><br>-v-<br><br>UNITED STATES ELECTION INTEGRITY PLAN, SHAWN SMITH, ASHELY EPP, and HOLLY KASUN<br><br>Defendants. | Civil Action No. 1:22-cv-00581-CNS |

**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

COMES NOW, Defendants, USEIP, Shawn Smith, Ashely Epp, and Holly Kasun, by and through undersigned counsel, and hereby submit this Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c) as follows:

I. **INTRODUCTION AND BACKGROUND**

In the Complaint filed in this case, Plaintiffs, Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, and Mi Familia Vota (collectively, "Plaintiffs"), allege that the Defendants violated Section 11(b) of the Voting Rights

1

Act of 1965 ("VRA"), 52 U.S.C. § 10307(b), and the Ku Klux Klan Act, 42 U.S.C. § 1985. The basis for these claims arises out of Defendants' alleged intimidation and threats to voters, attempt to intimidate or threaten voters, and conspiracy between the Defendants to prevent lawful voters from giving their support or advocacy towards the election. [Docket No. 1, ¶¶ 39-51]. In response to Plaintiffs' Complaint, Defendants filed a Motion to Dismiss for lack of standing on April 4, 2022 [Docket No. 27], which was denied by the Court on April 28, 2022. [Docket No. 39]. Defendants have filed an Answer to the Complaint. [Docket No. 48]. The present motion is filed pursuant to Fed.R.Civ.P. 12(c) seeking judgment on the pleadings for the claims within Plaintiffs' Complaint.[1]

## II. **STANDARD OF REVIEW**

A motion for judgment on the pleadings may be filed "[a]fter the pleadings are closed[2]—but early enough not to delay trial ..." Fed.R.Civ.P. 12(c). Successive Rule 12 motions are limited by rule, however, failure to state a claim upon which relief can be granted may be filed by a subsequent motion under Rule 12(c). Fed.R.Civ.P. 12(g)(2) and (h)(2)(B). A motion pursuant to Rule 12(c) is evaluated under the same standards as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See Corder v. Lewis Palmer School Dist. No. 38,*

---

[1] Pursuant to Local Rule 7.1(b)(2), undersigned Counsel did not confer with opposing counsel as this Motion is brought under Fed.R.Civ.P. 12.

[2] An Answer or Reply must be filed in response to the claim(s) which the movant seeks judgment to be considered "closed" for purposes of Rule 12(c). *See SaBell's Inc. v. Flens,* 559 P.2d 950, 952 (Colo.App. 1979); *Bushnell v. ITT Corp,* 973 F.Supp. 1276, 1281-82 (D.Kan. 1997) ("Accordingly, in ruling on defendant's motion, the court will consider whether, *with respect to a particular cause of action,* plaintiff fails to state a claim for substantive reasons . . .") (internal citations omitted) (emphasis added). Therefore, the claims for which Defendants seek judgment on the pleadings are closed despite the pending counterclaim. There are no other pleadings permitted for the claims at issue under Fed.R.Civ.P. 7(a).

566, F.3d 1219, 1223 (10th Cir. 2009). "Judgment on the pleadings is appropriate only when the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Sanders v. Mountain America Federal Credit Union,* 689 F.3d 1138, 1141 (10th Cir. 2012) (internal quotations and citations omitted). Accordingly, the Court must assess whether the Complaint is legally sufficient to state a claim upon which relief can be granted. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,* 757, F.3d 1125, 1135-36 (10th Cir. 2014). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Plausibility in the context of a motion to dismiss means that Plaintiff pled facts which allow the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id. Twombly* requires a two-prong analysis. First, a Court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-81. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. When a Plaintiff has not "nudged [his] claims across the line from conceivable to plausible," then dismissal is mandatory. *Twombly,* 550 U.S. at 570.

As argued fully below, Defendants are entitled to judgment as a matter of law for all claims in Plaintiffs' Compliant. Claims 1 and 2 of the Complaint seek relief for violations of § 10307(b) of the Voting Rights Act. Regardless of how Plaintiffs plead these claims, the statute under which they seek relief delegates authority only to the Attorney General to enforce violations. Accordingly, while Plaintiffs have pled standing sufficient for Article III purposes, no amendment

could confer prudential or statutory standing for claims 1 and 2 of the Complaint, and therefore, dismissal is appropriate. Similarly, Plaintiffs cannot prevail on the third claim for relief under the Ku Klux Klan Act since they are not the party deprived of its rights under the Support and Advocacy clause of § 1985(3). To the extent Plaintiffs are bringing claim 3 under the equal protection clause of § 1985(3), while they may have statutory standing, however, the claim fails without State involvement or invidious discriminatory animus towards a class contemplated by the statute. Having failed to plead any set of facts which would entitle Plaintiffs to relief, the Complaint in its entirety must be dismissed.

### III.    ARGUMENTS AND AUTHORITIES

**A.    Plaintiffs do not have statutory standing to bring claims for violation of the VRA, 52 U.S.C. § 10307(b) or for violation of the support and advocacy clause of the Ku Klux Klan Act, 42 U.S.C. § 1985(3).**

Plaintiffs bring two claims under the VRA which allege that Defendants are in violation of 52 U.S.C. § 10307(b) (hereinafter "§ 10307(b)"), "by their intimidating, threatening, and coercive conduct, which includes threatening to or actually showing up at voters' doors around Colorado to intimidate them and ask whether they engaged in voter fraud" [Docket No. 1, ¶ 41], and attempting to do the same, even if their attempts were unsuccessful. [Docket No. 1, ¶ 44]. Plaintiffs seek relief by way of judicial declarations that Defendants' conduct is in violation of the VRA, orders to keep Defendants from continuing or engaging in canvasing efforts, and awards of compensatory damages and attorneys' fees and costs. [Docket No. 1, pg. 13-15, ¶¶ a-n].

In support of the claims of voter intimidation under the VRA, Plaintiffs allege "USEIP agents travel door to door . . . [s]ometimes armed and donning badges to present an appearance of government officiality, [and] interrogate voters about their addresses, whether they participated in

the 2020 election, and–if so—how they cast their vote. . . and have, without evidence, falsely accused the residents of casting fraudulent ballots." [Docket No. 1, ¶ 27]. Plaintiffs argue that Defendants made threats which are objectively and imminently intimidating, and "are a clear signal to Colorado voters—especially voters of color—that to exercise their constitutional rights and vote in an upcoming election means facing interrogation by potentially armed and threatening USEIP agents at their doorstep." *Id.* at ¶ 31. In the claims for relief under the VRA, Plaintiffs argue that Defendants' actions violate § 10307(b) and "Defendants have engaged in this conduct with the intent to threaten, intimidate, and coerce voters with the knowledge that the natural consequences of their conduct and speech will be the intimidation of such voters." *Id.* at ¶¶ 41, 42, 45.

Taking the factual averments in the Complaint as true, Plaintiffs fail to establish that they are entitled to relief under the claimed statute. Plaintiffs have alleged facts which may successfully establish a violation of § 10307(b), prohibiting anyone from intimidating, threatening, or coercing or attempting to intimidate, threaten, or coerce any person for attempting to vote. Having, arguably, established that Defendants have acted in violation of § 10307(b), Plaintiffs, however, cannot prove entitlement to relief for these violations.

To support Plaintiffs' entitlement for relief, each organization claims it diverted resources to combat Defendants' actions. [Docket No. 1, ¶¶ 35-38]. A diversion of resources theory confers organizational standing sufficient for injury in fact for purposes of Article III. *See* Docket No. 39. Nevertheless, "in addition to the Article III standing requirements, plaintiffs must also meet the statutory standing requirements of the statute under which they seek relief." *Niemi v. Lasshofer,* 728 F.3d 1252, 1260 (10th Cir. 2013) (internal quotations and citations omitted). *See The*

*Wilderness Soc. V. Kane County, Utah,* 632 F.3d 1162, 1171 (10th Cir. 2011) ("But a party's interest for the purposes of constitutional standing does not automatically confer prudential standing. Prudential standing imposes different demands than injury in fact. A party may suffer a cognizable injury but still not possess a right to relief.") Therefore, even if Plaintiffs demonstrate harm, it does not necessarily demonstrate that they have prudential standing to bring these claims. *See VR Acquisitions, LLC v. Wasatch County*, 853 F.3d 1142, 1147 (10th Cir. 2017). Although Article III standing is jurisdictional and must be raised before proceeding to the merits, "[q]uestions relating to *prudential* standing, however, may be permitted in favor of a straightforward disposition on the merits." *Grubbs v. Bailes,* 445 F.3d 1275, 1281 (10th Cir. 2006) (emphasis in original). Therefore, dismissal for lack of statutory standing is properly considered under a Rule 12(b)(6) motion to dismiss. *See VR Acquisitions,* 853 F.3d at 1147 n.4.

Once Congress places additional restrictions on who can sue, "courts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue of the defendant's violation of that statutory prohibition or obligation." *TransUnion LLC v. Ramirez,* 141 S.Ct. 2190, 2204 (2021); *see Carolina Cas. Ins. v. Pinnacol Assur.,* 425 F.3d 921, 926 (10th Cir. 2005).

When Congress enacted the Voting Rights Act under which Plaintiffs are suing, it created a provision restricting who may bring a cause of action for violations under the statute. Relevant here is 52 U.S.C. § 10308(d), *Civil Action by Attorney General for preventative relief; Injunctive and other relief,* which states:

> Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 10301, 10302, 10303, 10304, 10306, or 10307 of this title, the Attorney General may institute for the United States, or in the name of the United States, an action for

> preventative relief, including an application for a temporary or permanent injunction, restraining order, or other order ...

Conferring the right to sue, section 10308 of the VRA contains no other language for violations of §10307(b). To the contrary, Congress enumerated civil and criminal sanctions for violations of 52 U.S.C. §§ 10301, 10302, 10303, 10304, 10306, and 10307(a), specifically excluding 10307(b) violations. *See generally* 52 U.S.C. § 10308. Plaintiffs only bring claims under § 10307(b), therefore, statutory standing for Plaintiffs' claims has been expressly limited by congress. Without congressional permission to sue under the statute, Plaintiffs cannot succeed on the merits of their VRA claims.

Generally, judgment on the pleadings is appropriate and will be sustained if it appears that the pleadings are such that amendment would be futile. *See Jefferson County School Dist. No. R-1 v. Moody's Investor's Services, Inc.,* 175 F.3d 848, 859 (10th Cir. 1999). Plaintiffs can make no amendment which would grant them the right to relief under the VRA. Therefore, judgment on the pleadings is appropriate and should be granted for Counts 1 and 2 of the Complaint.

Plaintiffs' third claim for relief is for violation of the Ku Klux Klan Act, 42 U.S.C. § 1985(3), (hereinafter "§ 1985(3)"). Claims under § 1985(3) can be divided into two clauses: (1) the support and advocacy clause and (2) the equal protection clause. *See Kush v. Rutledge,* 460 U.S. 719 (1983); *see also National Coalition on Black Civic Participation v. Wohl,* 498 F.Supp.3d 457 (S.D.N.Y. Oct. 28, 2020). In relevant part, § 1985(3) states:

> If two or more persons. . . conspire. . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privilege and immunities under the laws. . . or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injury

> any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section. . . whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Plaintiffs allege that "Defendants are two or more persons who have conspired to prevent Plaintiffs and others who are lawfully entitled to vote from giving their support and advocacy toward the election of electors for president, electors for vice president, and/or members of Congress." [Docket No. 1, ¶48]. Plaintiffs further state that "Plaintiffs and others who are lawfully entitled to vote have been injured by Defendants' behavior, which has intimidated and threatened voters and potential voters." *Id.* at ¶50. Based on the language of their Complaint, it appears that Plaintiffs are attempting to bring a cause of action under the "support and advocacy clause" of a § 1985(3) claim. However, Plaintiffs cannot establish a right to sue based on the statutory language.

The language which confers standing only allows "the party so injured or deprived [to] have an action for the recovery of damages occasioned by such injury or deprivation." 42 U.S.C. § 1985(3). By claiming a violation of the support and advocacy clause of this statute, only a *citizen who is lawfully entitled to vote* can be deprived of this right, thereby conferring the right to damages.

There are limited constitutional protections which apply equally to corporations as well as individuals. A corporation is not considered a citizen within the privileges and immunities clause of the 14th Amendment but is a citizen for the equal protection and due process clauses. Therefore, a corporation cannot maintain an action for the deprivation of its rights but may seek damages for an equal protection violation. *See First Natl. Bank of Boston v. Bellotti,* 435 U.S. 765, 771 (1978).

8

Although Plaintiffs state that they are lawfully entitled to vote and were injured by Defendants, Plaintiffs cannot be considered citizens with a right to vote. [*See* Document No. 1, ¶ 50]. In fact, Plaintiffs Complaint describes Plaintiff NAACP Colorado as a civil rights organization and Plaintiffs LWVCO and MFV as non-profit civic engagement organizations. *Id.* at ¶¶ 13-15. Organizations, regardless of their mission, are not citizens lawfully entitled to vote in a federal election. The statutory limitation regarding standing states that "the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation." Without being the party deprived of its right to vote, Plaintiffs cannot maintain an action for damages occasioned by such deprivation. *See Llano Del Rio Co. of Nevada v. Anderson-Post Hardwood Lumber Co.* 79 F.Supp. 382, 392-93 (W.D.La. 1948). There can be no amendment in which Plaintiffs become citizens whose right to vote in a federal election has been deprived. Therefore, dismissal is proper for lack of statutory standing for Count 3 of the Complaint.

**B.     To the extent that Plaintiffs allege violation of the equal protection clause of 42 U.S.C. § 1985(3), Plaintiffs fail to show State Action and racial animus.**

Although the language of Plaintiffs' Complaint suggests that they are pursuing a claim under the support and advocacy clause of §1985(3), to the extent Plaintiffs wish to establish standing by claiming violation of the equal protection clause, the Complaint nonetheless fails. To succeed on a claim brought under the "equal protection clause" of § 1985(3), the Plaintiff must prove: "(1) a conspiracy; (2) to deprive the plaintiff of protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir. 1993). "[H]owever, § 1985(3) does not 'apply to all tortious, conspiratorial interferences with the rights of others,' but rather, only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'"

9

*Id.* (citing *Griffin v. Breckenridge,* 403 U.S. 88, 101-02 (1971)). Without State interference, an action under this section must allege a conspiracy "aimed at interfering with rights that are protected against private, as well as official, encroachment." *Id.* (internal quotations and citations omitted). The Supreme Court has explicitly found that "[t]here are few such rights (we have hitherto recognized only the Thirteenth Amendment right to be free from involuntary servitude, and, in the same Thirteenth Amendment context, the right to interstate travel.)" *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 278 (1993) (internal citations omitted). Under this framework, it is necessary to recognize the type of rights interfered with, whether the interference was private or involved the government, and if the conspiracy was motivated by an invidiously discriminatory animus. Plaintiffs' Complaint fails to plead facts sufficient to bring a claim under this section, and therefore must be dismissed.

*Civil Rights Allegedly Violated*

In support of their claim, Plaintiffs allege that "USEIP's public-facing actions are a clear signal to Colorado voters --especially voters of color-- that to exercise their constitutional rights and vote in an upcoming election means facing interrogation by potentially armed and threatening USEIP agents at their doorstep." [Docket No. 1, ¶ 31]. Interfering with the right to vote is in violation of the Fifteenth Amendment, which states "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous servitude." U.S. Const. amend. XV, § 1. In addition to the 15th Amendment, arguably the right of association under the First Amendment and an equal protection of the laws under the Fourteenth Amendment are implicated in Plaintiffs' claim. U.S. Const. amend. 1; U.S. Const. amend. 14, § 1. Notably, each constitutional provision prohibits *government* interference with an

individual's right to vote, not the interference by purely private action. The claims which interfere with the Fifteenth, First, and Fourteenth Amendments "fail as these Amendments do not erect a shield against merely private conduct however discriminating or wrongful." *Tilton,* 6 F.3d at 687.

Plaintiffs brought this lawsuit alleging that the Defendants, purely private individuals, deprived other individuals of their right to vote. A § 1985(3) claim alleging a purely private conspiracy, even if the aim of the conspiracy was to influence state activity, cannot rest on a right that is only protected from government involvement. *Id.* at 687-88. The claim Plaintiffs bring regarding interference with the right to vote "fails as [Plaintiffs have] identified no right protected against private encroachment that has been the object of the alleged conspiracy." *Id.* at 688. This fatal flaw in Plaintiffs Complaint is enough to warrant dismissal of the conspiracy claims. However, Plaintiffs' claim fails for lack of racial or class-based invidiously discriminatory animus as well.

*Discriminatory Animus*

"[T]o prevent § 1985 claims from becoming the source of a general federal tort law, it is necessary to invoke the animus requirement." *Brown v. Reardon,* 770 F.2d 896, 906 (10th Cir. 1985). It is not sufficient to allege only discriminatory animus, rather, the animus must be invidious and the conspiracy was because of the class membership. *Wilhelm v. Continental Title Co.,* 720 F.2d 1173, 1176 (10th Cir. 1983). The discriminatory purpose requires more than just intent or awareness. Discriminatory purpose under this section means that the Defendants "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects on an identifiable group." *Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 278 (1979).

While there is no argument that discrimination on the basis of race or sex is a class contemplated by the statute, political affiliation is not. Courts cautioned against allowing a § 1985 claim for one political group against another. "To accede to that view would go far toward making the federal courts, by virtue of § 1985(3), the monitors of campaign tactics in both state and federal elections, a role that courts should not be quick to assume. If [this proposition] were accepted, the proscription of § 1985(3) would arguably reach the claim that a political party has interfered with the freedom of speech of another political party by encouraging the heckling of its rival's speakers and the disruption of the rival's meetings." *United Broth. Of Carpenters and Joiners o/f America, Local 610, AFL-CIO v. Scott,* 463 U.S. 825, 836 (1983). Even if the statute reached conspiracies aimed at political views, Courts have expressly denied conspiracies motivated by economic or commercial animus. *Id.* at 837; *See Wilhelm,* 720 F.2d at 1175.

In support of Plaintiffs' claims of discriminatory intent, Plaintiffs allege "USEIP agents travel door to door, often targeting high-density housing, communities experiencing growth among racial minority voters, and communities in which a high percentage of voters supported Democratic candidates in the 2020 election." [Docket No. 1, ¶ 27]. Further, Plaintiffs allege that "[t]he prospect of door-to-door visits by potentially armed individuals is particularly intimidating for Black and Latino voters because of the extensive history in these communities of frequently violent, voter intimidation and vigilante interference in their own homes." *Id.* at ¶ 33. Plaintiff LWVCO, claims that it is "concerned that new voters (such as young people, new citizens, and others who have just become eligible to vote) are especially vulnerable to this intimidation, and may opt to disengage from the voting process rather than face intimidating visits from USEIP agents." *Id.* at ¶ 37. Finally, Plaintiffs allege that Defendant, Shawn Smith, purchased voter rolls

from the Colorado Secretary of State to assist in "targeting" certain groups[3]. *Id.* at ¶ 27; *See generally* Docket No. 7, Declaration of Casey Breese.

Taking these allegations as true for purposes of this motion, Plaintiffs fail to assert racially motivated intent to deprive individuals of their rights. At its best, Plaintiffs' Complaint could give rise to an inference that by purchasing voter rolls, Defendants aimed their canvassing efforts at voters who were affiliated with a certain party. However, the attempt to associate "high-density housing" and "communities experiencing growth among racial minorities" does not come close to the invidious discrimination requirement of a §1985(3) claim. Even if Plaintiffs' allegation that communities with a high number of racial minority voters were targeted by USEIP agents, there are no allegations that Defendants targeted voters based on their race for the *purpose* of interfering with their right to vote. Rather, Plaintiffs claim that Defendants and others coordinate "to harass and intimidate voters who did not vote for former President Trump." [Docket No. 1, ¶22]. Plaintiffs articulate a fear that, particularly, minority voters will be impacted by Defendants' actions. *Id.* at ¶¶ 31-38. This is not enough for purposes of a §1985(3) claim.

According to Plaintiffs' Complaint, the *purpose* of USEIP is to harass and intimidate voters who did not vote for a certain candidate. The Tenth Circuit has declined to expand the classes

---

[3] The Colorado Secretary of State allows the purchase of voter data to anyone who asks for it. However, only certain information is considered public record which includes a voter's full name, residential address, political party affiliation and date of affiliation, phone number, gender identity, birth year, and information about whether the individual has voted in prior elections. *Public Voter Data and Information Requests FAQs,* Colorado Secretary of State, https://www.sos.state.co.us/pubs/elections/FAQs/VoterRegistrationData.html (last accessed June 27, 2022). Therefore, at best, the information obtained on the voter rolls would allow targeting of individuals based upon their party affiliation.

covered by §1985 to those not already expressly considered by the Supreme Court[4]. Without supporting facts beyond targeting high-density housing with the possibility of a greater number of minority voters, Plaintiffs fail to allege an invidious animus to a protected class. Even if Defendants' purpose was to interfere with the rights of those affiliated with the democratic party, this conduct does not arise to invidious discrimination under § 1985(3).

A § 1985(3) claim is only successful after the two-pronged analysis: "first, is there state involvement in the conspiracy alleged, secondly, is there a showing of class-based invidious discrimination?" *Brown,* 770 F.2d at 906 (citing *Scott,* 463 U.S. at 830). Plaintiffs fail under both prongs of the analysis. First, Plaintiffs allege violation of voting rights that could fall under the protections of the First, Fourteenth, and Fifteenth Amendments of the U.S. Constitution. Each of these possible protections requires State or Government action and cannot give rise to purely private conspiracies. Since there is no State action, nor any possible amendment to the Complaint that would permit a private cause of action, the claim fails on the first prong. Second, Plaintiffs cannot prove racial or otherwise class-based invidiously discriminatory animus necessary for a § 1985(3) claim. At best, Plaintiffs allege facts sufficient to give rise to political or economic animus which is not a class that §1985(3) is aimed to protect. Plaintiffs cannot succeed on any grounds to establish relief under Count 3, and therefore, it must be dismissed.

---

[4] The 10th Circuit refused to expand § 1985(3) coverage to handicapped persons. *Wilhelm v. Continental Title Co.,* 720 F.2d 1173, 1177 (10th Cir. 1983). Following this decision, the Court again refused to allow a §1985(3) claim for discrimination against people of Norwegian ancestry in *Bauge v. Jernigan,* 669 F.Supp. 348, 353-54 (D. Colo. 1987). The 10th Circuit affirmed the limitations of class-based claims under § 1985(3) that were articulated in the Supreme Court's *Griffin* and *Scott* opinions. *See Brown v. Reardon,* 770 F.2d 896, 905-08 (10th Cir. 1985). There, the Court confirmed that political affiliation will not give rise to a § 1985(3) discrimination claim.

## IV. **CONCLUSION**

For the reasons set forth above, Plaintiffs have not asserted a claim for relief upon which relief can be granted. Defendants respectfully request that this Court grant Defendants' Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c) and dismiss all three counts contained in Plaintiffs' Complaint.

Respectfully submitted this 5th day of August, 2022.

*s/ Jessica L. Hays*
R. Scott Reisch, #26892
Jessica L. Hays, #53905
THE REISCH LAW FIRM, LLC
1490 W. 121st Avenue, #202
Denver, CO 80234
(303) 291-0555
Email: scott@reischlawfirm.com
jessica@reischlawfirm.com
cassandra@reischlawfirm.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **MOTION FOR JUDGMENT ON THE PLEADINGS** has been electronically served through ECF this 5th day of August, 2022, to all counsel of record.

*s/ Jessica L. Hays*
R. Scott Reisch, #26892
Jessica L. Hays, #53905
THE REISCH LAW FIRM, LLC
1490 W. 121st Avenue, #202
Denver, CO 80234
(303) 291-0555
Email: scott@reischlawfirm.com
Email: jessica@reischlawfirm.com
*Attorneys for Defendants*