IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00581-CNS

Colorado Montana Wyoming
State Area Conference of the NAACP,
League of Women Voters of Colorado, and
Mi Familia Vota,

    Plaintiffs,

v.

United States Election Integrity Plan, Shawn Smith,
Ashley Epp, and Holly Kasun,

    Defendants.

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT
ON THE PLEADINGS (ECF. NO. 54)**

**INTRODUCTION**

Defendants have already brought (and failed to succeed on) a Motion to Dismiss for lack of standing. Defendants now seek a second bite at the apple, contending (again) that Plaintiffs' Complaint should be dismissed for lack of standing. Defendants' arguments, however, are wholly without merit and the Motion for Judgment on the Pleadings should be denied. Even the most cursory review of the applicable statutes and case law unambiguously demonstrates that Plaintiffs have standing to sue under both the Voting Rights Act and the Ku Klux Klan Act, and that Plaintiffs are not required to allege (let alone demonstrate) discriminatory animus or state action to succeed on a claim under the Ku Klux Klan Act.

1

## BACKGROUND

United States Election Integrity Plan ("USEIP") and its members, including Defendants Shawn Smith, Ashley Epp, and Holly Kasun, have "developed into a coordinated network of agents throughout Colorado that focus their energy on various activities associated with the Big Lie," including going door-to-door interrogating voters under the pretense of seeking to uncover "phantom ballots," which they allege were the cause of former President Trump losing the 2020 presidential election. Compl. (ECF No. 1) ¶ 23. Essential to "USEIP's operation is its door-to-door voter intimidation campaign" at voters' homes, whereby "USEIP agents travel door to door, often targeting high-density housing, communities experiencing growth among racial minority voters, and communities in which a high percentage of voters supported Democratic candidates in the 2020 election." Compl. ¶ 27.

Plaintiffs are three distinct organizations, all of which have focused missions aimed at supporting their respective members through political, educational, social, and civic efforts. Compl. ¶¶ 13-15. Colorado Montana Wyoming State Area Conference of the NAACP ("NAACP Colorado") is a nonpartisan membership-based civil rights organization with a core mission aimed "to ensure political, educational, social, and economic equality of rights of all persons and to eliminate race-based discrimination." Compl. ¶ 13; *see also* NAACP Decl. (ECF No. 9) ¶ 2. NAACP Colorado engages in efforts—including voter outreach—aimed at protecting democracy, enhancing equity, and increasing democratic participation and civic engagement. NAACP Decl. ¶ 5. USEIP's voter intimidation practices directly harm the NAACP's ability to carry out its mission of ensuring that every American has access to free, open, equal, and protected elections. NAACP Decl. ¶ 11. NAACP Colorado **has already exhausted resources** actively monitoring this voter intimidation and related safety concerns and strategizing about how to combat USEIP's actions.

2

Compl. ¶ 36 (emphasis added); *see also* NAACP Decl. ¶ 13. This diversion of resources is a distraction from key programs that NAACP Colorado would otherwise support, such as voter outreach aimed at protecting democracy, enhancing equity, and increasing democratic participation and civic engagement. Compl. ¶ 36; *see also* NAACP Decl. ¶ 14.

League of Women Voters of Colorado ("LWVCO") is a membership-based non-profit civic engagement organization with the mission to encourage informed and active participation in government, increase understanding of major public policy issues, and influence public policy through education and advocacy. Compl. ¶ 14; *see also* LWVCO Decl. (ECF No. 8) ¶ 3. LWVCO specifically works with newly naturalized citizens and has helped register more than 400 people [to vote] every year. LWVCO Decl. ¶ 4. USEIP's intimidation practices directly harm LWVCO's mission, which is to increase voter engagement and confidence in casting a ballot.  Compl. ¶ 37; *see also* LWVCO Decl. ¶ 10. USEIP's activities ***have forced Plaintiff LWVCO to divert resources*** away from its core functions to counteract USEIP's detrimental impact to current and future voters. LWVCO Decl. ¶ 11 (emphasis added).

Mi Familia Vota (MFV) is a civic engagement organization that unites Latino, immigrant, and allied communities to promote social and economic workshops, voter registration, and voter participation. Compl. ¶ 15; *see also* MFV Decl. ¶¶ 1-5. Faced with USEIP voter intimidation, MFV ***has had to reallocate resources to combat USEIP's actions***, educate voters about their rights when confronted by false accusations of voter fraud in their own homes, and develop a plan for monitoring and responding to Latino voters' safety concerns. Comp. ¶ 38. In addition, one of MFV's primary activities in pursuit of its mission is through door-to-door canvassing, in which MFV members share information about how to vote, where voters can find their closest Voter Service and Polling Center (VSPC), and the hours that the polls are open. MFV Decl ¶ 3. USEIP's

3

door-to-door voter intimidation campaign directly harms MFV's ability to carry out MFV's mission of voter engagement, which depends on door-to-door canvassing. MFV Decl. ¶ 9. USEIP's intimidation of voters make it less likely that Latino voters will answer the door for anyone – including for MFV staff and volunteers. MFV Decl. ¶ 9. Due to USEIP's voter intimidation campaign, MFV has been forced to actively monitor the voter intimidation in Colorado through outreach with organizational partners in the voting rights advocacy community and implementing strategies to counteract USEIP's impact on its members. Compl. ¶ 38. Rather than spend time on activities central to its core mission, USEIP's actions have caused MFV to expend time and resources to create plans to invest additional resources into counties targeted by USEIP so that voters there recognize MFV canvassers as distinct from USEIP agents. Compl. ¶ 38. The resources that MFV staff *has and will continue to spend* responding to USEIP's actions are resources diverted directly from MFV's core mission. Compl. ¶ 38 (emphasis added).

Plaintiffs assert that Defendants have violated Section 11(b) of the Voting Rights Act, 52 U.S. 10307(b) and the Ku Klux Klan Act, 42 U.S.C. § 1985(3), for intimidating and attempting to intimidate voters, and particularly voters of color, in Colorado.

## STANDARD OF REVIEW

A court reviews a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) in the same manner it would review a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Concaten, Inc. v. Ameritrack Fleet Solutions, LLC*, 131 F.Supp.3d 1166, 1171 (D. Colo. 2015). Accordingly, the Court "accept[s] all facts pleaded by the non-moving party as true and grant[s] all reasonable inferences from the pleadings in favor of the same." *Park University Enterprises, Inc. v. American Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006). "Judgment on the pleadings is appropriate only when 'the moving party has

4

clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (quoting *Park Univ.*, 442 F.3d at 1244). Defendants have failed to demonstrate that they are entitled to judgment on the pleadings and their Motion should be denied.

## ARGUMENT

### I. Plaintiffs Have Standing Under the Voting Rights Act and the KKK Act.

To establish standing sufficient to satisfy Article III's requirements, a plaintiff must have: (1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992). "An organization has standing to sue if it can demonstrate an injury to itself and the other constitutional elements for standing." *Sierra Club v. Young Life Campaign, Inc.*, 176 F.Supp.2d at 1084 (citing *Comm. to Save Rio Hondo v. Lucero*, 102 F.3d 445, 447 n. 3 (10th Cir. 1996)). An organization has associational standing to sue "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose and neither the claim asserted nor the relief requested requires the participation of individual members of the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 180-81 (2000).

Here, the Court already held that Plaintiffs have organizational standing to sue, each having established that they were injured when they were forced to divert resources from their core missions to counter Defendants' conduct. (ECF No. 39.) Because the Court determined that each Plaintiff has organizational standing, it declined to reach the question of whether Plaintiffs also have associational standing. (ECF No. 39 at 19.)

5

49529487v2

Therefore, it is already established that Plaintiffs' claims present a case or controversy within the Court's Article III jurisdiction. Despite this, Defendants now argue that the Court should decline to adjudicate the claims on "prudential standing" grounds. In *Lexmark Intern., Inc. v. Status Control Components, Inc.*, the Supreme Court explained that "[i]n recent decades [the Supreme Court] adverted to a 'prudential' branch of standing." 572 U.S. 118, 126 (2014). "[A] doctrine not derived from Article III and 'not exhaustively defined' but encompassing (we have said) at least three broad principles: 'the general prohibition on a litigant's raising another person's legal rights, the ruling barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Id.* (citing *Elk Grove Unified School Dist. V. Newdow*, 542 U.S. 1, 2 (2004)). In *Lexmark*, however, the Supreme Court abandoned this prudential standing "test," reasoning that primary purpose of the "prudential standing" analysis is whether the plaintiffs are within the class of plaintiffs whom Congress authorized to sue under the statute. *Id.* at 127-28. Or, put another way, whether the plaintiffs have a cause of action under the statute. *Id.* at 128. In so holding, Justice Scalia—writing for a unanimous Court— noted that the prudential standing doctrine "is in some tension with [the Supreme Court's] recent reaffirmation of the principle that 'a federal court's "obligation" to hear and decide' cases within its jurisdiction' is "virtually unflagging."'" *Id.* (citing *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976)).

Here, the statues at issue are Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b) and the Ku Klux Klan Act, 42 U.S.C. § 1985(3). Plaintiffs have a cause of action under both statutes. Courts have repeatedly found that Section 11(b) of the Voting Rights Act provides a private right of action, including for injunctive relief against private actors who engage in voter

6

intimidation. *See Allen v. State Bd. of Elections*, 393 U.S. 544-57 (1969) (finding that other sections of the voting rights action could be enforced by a private right of action, even though those sections also provide for enforcement by the Attorney General); *Morse v. Republican Party of Virginia*, 517 U.S. 186, 193 (1996) (same); *Schwier v. Cox*, 340 F.3d 1284, 1296 (11th Cir. 2003) (reasoning that "neither the provision for enforcement by the Attorney General nor Congress's failure to provide for a private right of action expressly require the conclusions that Congress did not intend for such a right to exist"); *Ariz. Democratic Party v. Airz. Republican Party*, No. CV-16-03752-PHX-JJT, 2016 WL 8669978, at *4 (D. Ariz. 2016) (concluding that Section 11(b) "does not exclude a private right of action for injunctive relief"). Consistent with this case law, organizations akin to Plaintiffs and other private plaintiffs routinely bring claims to enforce Section 11(b) of the Voting Rights Act. *See, e.g.*, *Council on American-Islamic Relations—Minnesota v. Atlas Aegis, LLC*, 497 F. Supp. 3d 371, 379 (D. Minn. 2020); *League of United Latin Am. Citizens - Richmond Region Council 4614 v. Pub. Interest Legal Found.*, No. 1:18-CV-00423, 2018 WL 3848404 (E.D. Va. Aug. 13, 2018); *Ariz. Democratic Party*, 2016 WL 8669978.

Next, Defendants' argument concerning the Ku Klux Klan Act is particularly nonsensical, as the Act—by its express terms—applies to private conspiracies. *See* 42 U.S.C. § 1985(3) (stating that "**the party so injured or deprived** may have an action for recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators" (emphasis added)); *see also Nat'l Coalition on Black Civil Participation v. Wohl*, 498 F.Supp.3d 457, (S.D.N.Y. 2020) (granting motion for temporary restraining order under the Ku Klux Klan Act).

In short, Plaintiffs have standing (both Article III and prudential) under the Voting Rights Act and the Ku Klux Klan Act.

7

> **II.   To Succeed on a Claim Under the Support and Advocacy Clause of 42 U.S.C. § 1985(3), Plaintiffs Are Not Required to Allege Discriminatory Animus or State Action.**

Preliminarily, Defendants' argument that Plaintiffs must allege discriminatory animus and state action to prevail on its claim under 42 U.S.C. § 1985(3) is simply wrong. In making the argument, Defendants essentially attempt to rewrite the Complaint. As Defendants acknowledge, Plaintiffs are pursuing a claim under the *Support and Advocacy Clause* of §1985(3). Despite this acknowledgement, Defendants entire argument thereafter is based on legal authority interpreting the *Equal Protection Clause* of §1985(3)—none of which is applicable to the present case. (ECF No. 54 at 9 ("[T]he language in Plaintiffs' Complaint suggests that they are pursuing a claim under the support and advocacy clause of § 1985(3) . . . ."); *see also* Complaint (ECF No. 1) ¶ 48 ("Defendants are two or more persons who have conspired to prevent Plaintiffs and others who are lawfully entitled to vote from giving their ***support or advocacy*** toward the election of electors for president, electors for vice president, and/or members of Congress.") (Emphasis added).)

Just as notably, nearly 40 years ago, the United States Supreme Court considered the arguments Defendants make here and refused to extend the discriminatory animus requirement of § 1985(3)'s equal protection clause to the rest of the section, including the Support and Advocacy Clause at issue in the present case. *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983). More specifically, in *Kush v. Rutledge*, the Supreme Court reasoned:

> Although *Griffith* itself arose under the first clause of § 1985(3) [the Equal Protection Clause], petitioners argue that its reasoning should be applied to the remaining portions of § 1985 as well. We cannot accept that argument . . . First, the scope of the *Griffin* opinion is carefully confined to "the portion of § 1985(3) now before us." There is no suggestion in the opinion that its reasoning applies to any other portion of § 1985. Second, the analysis in the *Griffin* opinion relied heavily on the fact that the sponsors of the 1871 bill added the "equal protection" language in response to objections that the "enormous sweep of the original language" vastly extended federal authority and displaced state control over private conduct. That legislative background

8

49529487v2

does not apply to the portions of the statute that prohibit interference with federal officers, federal courts, *or federal elections*.

*Id.* at 726 (emphasis added); *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 281 n. 13 (1993) (emphasizing the connection between the "animus requirement" and the equal protection language in § 1985(3).)   Put simply, the Support and Advocacy Clause (under which Plaintiffs bring their claim) does not require a showing that Defendants acted with discriminatory animus.[1]   Defendants presumably knew (or should have known) of this well-established principle *before* they made their meritless argument to this Court.

Likewise, contrary to Defendants' assertion, the Support and Advocacy Clause does not require a showing of state action:

> [I]f **two or more persons** conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States . . .

42 U.S.C. § 1985(3) (emphasis added); *see also Ariz. Democratic Party v. Ariz. Republican Party*, No. CV-16-03752, 2016 WL 8669978, at *5 n. 4 (D. Ariz. Nov. 4, 2016) (noting that the "plain language of the [Support and Advocacy Clause] does not require a showing" of state action (or racial animus)); *Am. Citizens (LULAC) v. Pub. Interest Legal Found.*, No. 18-CV-00423, 2018 WL 3848404, at *4-6 (E.D. Va. Aug. 13, 2008) (describing the Support and Advocacy Clause as not requiring state action); *Nat'l Coalition on Black Civic Participation v. Wohl*, 498 F.Supp. 457, 486-88 (S.D.N.Y. 2020) (omitting state action as a required element for a claim under Section 1985(3)'s Support and Advocacy clause). Indeed, such a showing would be countervailing to the

---

[1] Defendants have not—and, in fact, cannot—cite any case law to the contrary. As Defendants acknowledge, the cases cited in their Motion involve claims brought under the Equal Protection Clause of the KKK Act (not the Support and Advocacy Clause) and are therefore inapposite.  *See Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (discussing the elements necessary to prove a Section 1985(3) equal protection claim).

9

purpose of the clause, which expressly prohibits interference by anyone, including private actors, with federal officials or elections. *See Kush*, 460 U.S. at 726.

In short, Plaintiffs' claim under the Ku Klux Klan Act does not require a showing of racial animus or state action.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for Judgment on the Pleadings.

Dated:  August 26, 2022                    LATHROP GPM LLP

By /s/ Amy Erickson
Casey Breese (#51449)
Casey.breese@lathropgpm.com
Jean Paul Bradshaw
Jeanpaul.bradshaw@lathropgpm.com
Dion Farganis (Admission Pending)
Dion.farganis@lathropgpm.com
Reid Day
Reid.day@lathropgpm.com
Brian A. Dillon
Brian.dillon@lathropgpm.com
Amy Erickson (#54710)
Amy.erickson@lathropgpm.com
1515 Wynkoop Street, Suite 600
Denver, CO 80202
Telephone: (720) 931-3200

49529487v2

Courtney Hostetler
chostetler@freespeechforpeople.org
John Bonifaz
jbonifaz@freespeechforpeople.org
Ben Clements
bclements@freespeechforpeople.org
Ron Fein
rfein@freespeechforpeople.org
FREE SPEECH FOR PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459
Telephone: (617) 249-3015

*ATTORNEYS FOR Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, and Mi Familia Vota*

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Amy Elizabeth Erickson | amy.erickson@lathropgpm.com, claudia.neal@lathropgpm.com |
| Ben Clements | bclements@freespeechforpeople.org |
| Brian Andrew Dillon | brian.dillon@lathropgpm.com, kristina.procai@lathropgpm.com |
| Casey Carlton Breese | casey.breese@lathropgpm.com, brandi.pruett@lathropgpm.com, cheyenne.serrano@lathropgpm.com |
| Courtney Marie Hostetler | chostetler@freespeechforpeople.org |
| Jean Paul Bradshaw | jeanpaul.bradshaw@lathropgpm.com |
| Jessica Lynn Hays | jessica@reischlawfirm.com |
| R. Scott Reisch | scott@reischlawfirm.com, cassandra@reischlawfirm.com, Matthew@reischlawfirm.com, Rob@reischlawfirm.com |
| Reid Kelly Day | reid.day@lathropgpm.com, kirsten.hollstrom@lathropgpm.com |
| Ronald Andrew Fein | rfein@freespeechforpeople.org |

s/Claudia Neal

12

49529487v2