UNITED STATES DISTRICT COURT
for the
District of Colorado

| | | |
|---|---|---|
| COLORADO MONTANA WYOMING STATE AREA CONFERENCE OF THE NAACP, LEAGUE OF WOMEN VOTERS OF COLORADO, and MI FAMILIA VOTA | ) ) ) ) | Civil Action No. 1:22-cv-00581-CNS |
| Plaintiffs, | ) ) ) | |
| -v- | ) ) ) | |
| UNITED STATES ELECTION INTEGRITY PLAN, SHAWN SMITH, ASHELY EPP, and HOLLY KASUN | ) ) ) ) | |
| Defendants. | ) ) | |

---

**REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

---

COMES NOW, Defendants, USEIP, Shawn Smith, Ashely Epp, and Holly Kasun, by and through undersigned counsel, and hereby submit this Reply to Plaintiffs' Response in Opposition to Defendants' Motion for Judgment on the Pleadings ("Response") [Docket No. 55] as follows:

## ARGUMENT

***Statutory Standing Under the Voting Rights Act, 52 U.S.C. § 10307(b)***

Plaintiffs' Response correctly notes that Article III standing has been ruled on by this Court. However, Defendants seek Judgment on the Pleadings for Plaintiffs' evident lack of

1

statutory standing under the specific statutes alleged in the Complaint. In addressing this issue, Plaintiffs' Response argues that prior holdings have established a private right of action under section 11(b) of the Voting Rights Act. [Docket No. 55, pg. 6-7]. The cases cited by Plaintiffs are inapposite to the statutory standing issue presently before the Court. Plaintiffs ignore the numerous holdings in similar cases with express limitations when permitting a private right of action under the Voting Rights Act ("VRA"). Plaintiffs cite *Allen v. State Bd. of Elections,* a Supreme Court case from 1969 which created a private right of action for enforcing § 5 of the VRA. *Allen v. State Bd. of Elections,* 396 U.S. 544-57 (1969). Similarly, *Morse v. Republican Party of Virginia,* the plurality implied a private right of action for § 10 violations of the VRA. *Morse v. Republican Party of Virginia,* 517 U.S. 186, 193 (1996). However, Plaintiffs fail to acknowledge the changing landscape of the VRA and subsequent judicial restraint when expanding congressional intent to infer private rights of actions.

The current framework governing creation of individually enforceable private rights has evolved to a stricter standard. *See Alexander v. Sandoval,* 532 U.S. 275, 286-87 (2001). Without a private right and private remedy created by Congress "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* Likewise, when statutory language expressly creates enforcement rights with no mention of a private right, the Supreme Court interprets such language to "counsel against" finding "a congressional intent to create individually enforceable private rights." *Gonzaga Univ. v. Doe,* 536 U.S. 273, 290 (2002). ("[A] plaintiff suing under an implied right of action . . . must show that the statute manifests an intent to 'create not just a private *right* but also a private *remedy'*.") *Id.* at 284 (emphasis in original) (quoting *Sandoval,* 532 U.S. at 286). To create these

implied rights, the statutory "text must be phrased in terms of the persons benefited." *Gonzaga* 536 U.S. at 284 (internal quotations and citations omitted). Finally, the Supreme Court has cautioned against judicial expansion of a private right of action. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta,* 552 U.S. 148, 164-65 (2008) ("The decision to extend the cause of action is for Congress, not for us. Though it remains the law, the § 10(b) [of the Security Exchange Act] private right should not be extended beyond its present boundaries.").

In light of this context, while *Allen* and *Morse* are binding for the creation of private rights under § 5 and § 10 of the VRA, these cases do not extend a private right under § 11(b)[1]. Under the *Gonzaga* test to confer implied private rights, the language of § 10307(b) is directed at the regulated party, not the person protected, which weighs against finding an implied private right of action. The relevant language in § 10307(b) states: "[n]o person . . .shall intimidate, threaten, or coerce any person for voting or attempting to vote. . ." This language is directed only at the party committing the violation. "Where a statute does not include this sort of explicit 'right-or-duty-creating language, [the Court] rarely impute to congress an intent to create a private right of action." *Gonzaga* 536 U.S. at 284, n. 3 (citing *Cannon v. Univ. of Chicago,* 441 U.S. 667, 690 (1979)).  Next, Congress may create an implied right of action if "the statute manifests an intent 'to create not just a private *right* but also a private *remedy*." *Id.* at 284 (citing *Sandoval,* 532 U.S.

---

[1] The language of § 5 of the VRA used "rights-creating" language: "no person shall be denied the right to vote for failure to comply with [a new state enactment covered by, but not approved under, s5]." *Allen* 393 U.S. at 555. Similarly, as originally enacted § 10 of the VRA provided that the requirement of payment of a poll tax as a precondition of voting abridged or denied citizen's their constitutional right. *Morse,* 517 U.S. at 230 F.N. 40.  The Court found § 10, considering the backdrop of decisions implying a cause of action and the same language in other sections of the Act conferred a private right. *Id.* at 230-235.  Section 5 of the VRA is currently enumerated as 52 U.S.C. § 10304, and 52 U.S.C. § 10306 encapsulates § 10 of the VRA.

at 275). Since the statute at issue here "expressly delegates enforcement authority to the Attorney General, while making no mention of a private right of action . . . the inclusion of an explicit enforcement mechanism tends to negate the implication of an additional unstated mechanism." *Shilling v. Washburne,* 3:21-cv-00022, 2022 WL 827253, at *4-5 (W.D. Va. March 18, 2022) (internal citations omitted).

The cases cited by Plaintiffs in the Response provide minimal guidance for this issue. As referenced above, the reasoning in *Allen* and *Morse* has been abandoned by *Sandoval* where the Court refused to "revert  . . . to the understanding of private causes of action that held sway . . . when [the statute] was enacted." *Sandoval,* 532 U.S. at 287. Plaintiffs mention an Arizona District Court case*,* which permitted a private right of action for an 11(b) claim. *Ariz. Democratic Party v. Ariz. Republican Party,* No. CV-16-03752-PHX-JJT, 2016 WL 8669978, at *4. However, this Court did not engage in any analysis beyond citing the *Allen* opinion and 28 U.S.C. § 1343(a) stating generally, "[t]he statute does not exclude a private right of action for injunctive relief, as Plaintiff has brought here." *Id.* Next, Plaintiffs cite to *Council on American-Islamic Relations— Minnesota,* which is even less convincing. This case merely permitted voter organizations, such as Plaintiffs here, to pursue an 11(b) case with no mention of the ability for the private party's statutory standing. *Council on American-Islamic Relations—Minnesota v. Atlas Aegis, LLC.,*497 F.Supp.3d 371, 379 (D.Minn. 2020). Finally, in *League of United Latin American Citizens,* the Court engaged in an analysis of private parties under 11(b). However, the analysis concluded that the statutory interpretation of § 11(b) indicates "Congressional intent to *reach* both government and private *conduct* . . ." *League of United Latin American Citizens – Richmond Region Council 4614 v. Public Interest Legal Foundation,* 1:18-CV-00423, 2018 WL 3848404 (E.D. Va. Aug. 13,

2018) (emphasis added). This issue here is not whether the statute prohibits private conduct; it is whether a private party may bring a cause of action under this section.

Other Courts, however, have addressed this issue squarely, finding that the statutory interpretation of a § 10307(b) does **not** provide a private right of action. *See Schilling,* 2022 WL 827253 at *5 ("[T]he parallel construction of § 10307(b) with [similar statutory language in FERPA and HIPPA], once combined with Congress' explicit delegation of enforcement authority to the Attorney General, gives the Court sufficient confidence to conclude that there is no implied private right of action here."); *Arkansas State Conference NAACP v. Arkansas Board of Apportionment,* No. 4:21-CV-01239-LPR, 2022 WL 496908, at *24 (E.D. Ark. Feb. 17, 2022) ("[E]ven if the . . . Supreme Court affirm[s] today's ruling that a private right of action cannot be implied to enforce § 2 of the Voting Rights Act, Congress has the power to enact an express private right of action in the Voting Rights Act if it so chooses. . . . But only the Attorney General of the United States may bring a suit to enforce § 2 of the Voting Rights Act."). Since, no matter how desirable the policy matter, the Court must not create a private right of action when none exists, the Plaintiffs' attempt to bring a private right of action under § 10307(b) should be dismissed.

### Plaintiff Organizations are not the "party so deprived" under 42 U.S.C § 1985(3)

Plaintiffs' Response misstates the argument made by Defendants regarding the right to bring an action under the Ku Klux Klan Act, 42 U.S.C. §1985(3) (hereinafter "§ 1985(3)"). The language of § 1985(3) clearly creates a private right of action for "the party so injured or deprived." It is true that Plaintiffs' Article III standing has been addressed in this case. "But a party's interest for the purposes of constitutional standing does not automatically confer prudential standing. Prudential standing imposes different demands than injury in fact. A party may suffer cognizable

injury but still not possess a right to relief." *The Wilderness Soc. v. Kane County, Utah,* 632 F.3d 1162, 1171 (10th Cir. 2011). Generally, a plaintiff may not make a claim "to vindicate the constitutional rights of some third party." *Barrows v. Jackson,* 346 U.S. 249, 255 (1953). Only when the plaintiff makes two additional showings can he assert the constitutional rights of a third party. "First, Plaintiffs must show that the party asserting the right has a close relationship with the person who possesses the right. Second, Plaintiffs must show that there is a hinderance to the possessor's ability to protect his own interests." *Aid for Women v. Foulston,* 441 F.3d 1101, 1111-1112 (10th Cir. 2006) (internal citations and quotations omitted).

Despite the issue of standing being addressed at the outset of this case, Plaintiffs have yet to identify a single member of their organizations that has been injured or deprived of a right under § 1985(3). Count three of Plaintiffs complaint states that Defendants "have conspired to prevent Plaintiffs and others who are lawfully entitled to vote from giving their support or advocacy . . . [and] Plaintiffs and others who are lawfully entitled to vote have been injured by Defendants' behavior. . ." [Docket No. 1, ¶¶ 48, 50]. Therefore, by the language of the complaint itself, Plaintiffs bring the §1985(3) claim individually and on behalf of others. While corporate entities have been permitted to assert civil rights violations under §1985(3), this right is limited only when a corporation is considered a "person". For purposes of the Civil Rights Act, "[a] corporation . . . is not a citizen within the meaning of the privileges and immunities clause. But a corporation is a 'person' within the meaning of the equal protection and due process of law clauses. . ." *Grosjean v. American Press Co.* 297 U.S. 233, 244 (1936).

"The plaintiffs are organizations and cannot vote; instead they assert the right to vote of individuals not even presently identifiable." *Fair Elections Ohio v. Husted,* 770 F.3d 456, 461 (6th

Cir. 2014). Therefore, in order for Plaintiffs to assert the voting rights of these unidentified third parties, the two-prong exception identified in *Foulston* must be met. *See Foulston,* 441 F.3d at 1111-1112. Plaintiffs have failed to present any information that would show a close relationship or any obstacle for the proper plaintiff to bring this claim.

Plaintiffs here assert standing on a diversion of resources theory. Plaintiffs have also argued that their members are injured by Defendants actions, and would therefore have standing to sue in their own right. [Docket No. 33, pg. 9]. Through this argument, Plaintiffs merely state that certain, unidentified voters, who may be members of the organization would be harmed by Defendants actions. This attenuated relationship with unidentified people who *might* be a member of the organization is not sufficiently close to satisfy the first prong of third party standing. Courts have found that members of voting rights organizations do not possess the "special relationship" necessary for this exception. "[T]he relationship between the plaintiff organization and the voters it sought to help did not resemble the close relationship of the lawyer-client or doctor-patient relationship recognized by the Supreme Court in *Kowalski.* Plaintiffs' contention that they have developed relationships with categories of voters . . . based on their respective missions and outreach efforts in various communities is an unavailing distinction." *Priorities USA v. Nessel,* 462 F.Supp.3d 792, 808 (E.D. Mich. May 22, 2020) (citing *Fair Elections Ohio,* 770 F.3d at 461 and *Kowalski v. Tesmer,* 543 U.S. 125, 129-30 (2004)).

Furthermore, even if the Plaintiff organizations could establish the close relationship necessary for the first prong, there must be a genuine obstacle that prevents the actual party harmed from asserting his or her own right. *Foulston,* 441 F.3d at 1113-1114. There is no such obstacle here. A hinderance sufficient for this exception was found where the NAACP resisted an order

requiring disclosure of its membership lists, asserting the First and Fourteenth Amendment rights of its members. *NAACP v. Alabama,* 357 U.S. 449 (1985). The Court found that "[t]o require that [the right] be claimed by the members themselves would result in nullification of the right at the very moment of its assertion." *Id.* at 459. Plaintiffs have alleged that their members have been intimidated by Defendants actions. However, such members on whose behalf Plaintiff organizations are advocating "are not constrained in brining suit by any obstacles made known in the Complaint." *Freilich v. Upper Chesapeake Health, Inc.* 313 F.3d 205, 215 (4th Cir. 2002). Without a sufficiently close relationship or a genuine obstacle in bringing the claims on their own behalf, Plaintiffs cannot meet the requirements of prudential standing on behalf of unidentified third parties.

Plaintiffs one authority regarding prudential standing under § 1985(3) is similarly unavailing. In *Wohl,* the named plaintiffs included individuals who personally experienced the voter intimidation at issue. *Wohl,* 498 F.Supp.3d at 467. "When, as here, a case involves multiple plaintiffs, only one plaintiff need possess the requisite standing for a suit to go forward." *Id.* at 469. (internal citations and quotations omitted). The named plaintiffs before the Court in this case are only organizations.

### *Discriminatory Animus and State Action Under § 1985(3)*

According to Plaintiffs' Response, the §1985(3) claim is being brought solely under the "support and advocacy clause" of the statute. *Response,* pg. 8. In Defendants' Motion for Judgment on the Pleadings, the analysis regarding state action and racial animus is limited only to the extent Plaintiffs claim falls under the equal protection clause. [Docket No. 54, pg. 9-14]. Defendants agree with Plaintiffs' Response that if the claim is limited only to the support and advocacy clause,

there is no need for a showing of racial animus or state action. Although the language of Count 3 of Plaintiffs' Complaint is limited to the support and advocacy clause, the Complaint in its entirety alleges that USEIP volunteers "[target] high-density housing, communities experiencing growth among racial minority voters, and communities in which a high percentage of voters supported Democratic candidates in the 2020 election." [Docket No. 1, ¶ 27]. The totality of the Complaint seems to allege that canvassing was geared towards racial minorities. Whether this was merely background information regarding the members of Plaintiff organizations or if it was meant to allege racial targeting is not entirely clear. Therefore, the context of the Motion for Judgment on the Pleadings regarding the equal protection clause is only to the extent that Plaintiffs are alleging racial or political discrimination.

## **CONCLUSION**

Despite the clear statutory language of 52 U.S.C. § 10308(d) giving the Attorney General sole authority to bring civil action for violations of §10307(b), the private Plaintiff organizations wish to pursue a claim under this section. No matter how desirable it may be to permit this cause of action, the Court must not infer a private right without congressional intent to do so. Plaintiffs are not the proper parties to bring counts 1 and 2 of the Complaint and therefore should be dismissed. Plaintiff organizations bring a claim in violation of § 1985(3) which permits a private cause of action for the "party so injured or deprived." Without being citizens who are lawfully entitled to vote, Plaintiffs may only assert the constitutional rights of third parties with a close relationship to Plaintiff and a genuine obstacle preventing the proper party from bringing his own claim. Plaintiffs fail to meet either of these requirements to allow an exception to third-party standing and therefore cannot bring count 3 of the Complaint on others' behalf.

WHEREFORE, Defendants respectfully request that the Court grant the Motion for Judgment on the Pleadings for the reasons set forth above.

Dated this 6th day of September, 2022.

*Jessica L. Hays*
R. Scott Reisch, #26892
Jessica L. Hays, #53905
THE REISCH LAW FIRM, LLC
1490 W. 121st Avenue, #202
Denver, CO 80234
(303) 291-0555
Email: scott@reischlawfirm.com
jessica@reischlawfirm.com
cassandra@reischlawfirm.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** has been electronically served through ECF this 6th day of September, 2022, to all counsel of record.

*s/ Jessica L. Hays*
Jessica L. Hays