UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| COLORADO MONTANA WYOMING STATE AREA CONFERENCE OF THE NAACP, LEAGUE OF WOMEN VOTERS OF COLORADO, and MI FAMILIA VOTA<br><br>Plaintiffs,<br><br>-v-<br><br>UNITED STATES ELECTION INTEGRITY PLAN, SHAWN SMITH, ASHELY EPP, and HOLLY KASUN<br><br>Defendants. | Civil Action No. 1:22-cv-00581-CNS-RNR |

**DEFENDANTS' OBJECTION TO THE PROPOSED EXPERT TESTIMONY OF ATIBA ELLIS**

COME NOW, Defendants, United States Election Integrity Plan ("USEIP"), Shawn Smith, Ashely Epp, and Holly Kasun, by and through undersigned counsel, and hereby object to the testimony of Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, and Mi Familia Vota's ("Plaintiffs") proposed expert, Atiba Ellis, because his testimony is not reliable, nor is it relevant to the issues in this case[1]. "[T]he opportunity to present evidence is not unfettered – a district court's resolution of evidentiary questions is

---

[1] Undersigned counsel hereby certifies, pursuant to D.C.Colo.LCivR. 7.1(a), that she has conferred with Amy Erickson, counsel for Plaintiffs, regarding the relief requested in this motion. Ms. Erickson indicates that Plaintiffs oppose the requested relief.

1

constrained by the twin prongs of relevancy and materiality, and guided by the established rules of evidence and procedure." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1121 (10th Cir. 2006). It is the proponents' burden to establish the relevance and reliability of their expert's testimony under Federal Rule of Evidence 702 based on a preponderance of evidence standard. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 n.10 (1993). Plaintiffs have not met this burden.

I. INTRODUCTION

On November 11, 2022, Plaintiffs served their Expert Witness Disclosure on Defendants. Plaintiffs seek to introduce testimony of a retained expert, Professor Atiba Ellis under Fed. R. Civ. P. 26(a)(B)(2). Along with the expert disclosure, Plaintiffs enclosed the proposed testimony of Professor Ellis. **Exhibit 1.** Professor Ellis' *curriculum vitae* indicates that he has post-graduate education and is a scholar of the dynamics of voter suppression in the United States. **Exh. 1** at 1. Defendants seek to exclude Part III of the expert testimony (**Exh. 1** at 23-33) as unreliable due to his reliance on unverified hearsay and his assumption that the facts within these hearsay statements are true. *See* Fed. R. Evid. 702. Parts I and II of the expert testimony (**Exh.** at 3-23) Defendants seek to exclude under the relevancy standard governing such testimony. Plaintiffs' proposed foray into the history of racially motivated voter intimidation creates a significant risk of confusing the issues and misleading the jury, thereby failing the balancing test of Fed. R. Evid. 403. Similarly, this testimony does not relate to the elements of Plaintiffs' claims and is therefore not relevant. *Daubert*, 509 U.S. at 591. ("Expert testimony which does not relate to any issue in this case is not relevant . . .") (internal citations omitted). Accordingly, the Court should exclude the testimony of Plaintiffs' proposed expert.

2

### I. THE LEGAL FRAMEWORK FOR DETERMINING EXPERT ADMISSIBILITY: THE COURT'S GATEKEEPER ROLE UNDER *DAUBERT*

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. Rule 702 permits testimony only by experts qualified by "knowledge, skill, expertise, training, or education," to testify "in the form of an opinion or otherwise" based on "scientific, technical or other specialized knowledge" if that testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "In evaluating the admissibility of expert testimony, trial courts are guided by a trilogy of Supreme Court cases: *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 . . .(1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 . . . (1999); and *General Electric Co. v. Joiner*, 522 U.S. 136 . . .(1997). Together these cases clarify the district court's gatekeeper role under Federal Rule of Evidence 702." *Rodriguez-Felix*, 450 F.3d at 1122.

In *Daubert*, the Supreme Court held that prior to the admission of expert testimony, the trial court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The burden is on the proponent to establish the admissibility of their expert's testimony under Rule 702. "The objective of the [gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony." *Kumho Tire*, 526 U.S. at 152. "The Supreme Court has held that Rule 702 imposes a special obligation upon a trial judge to ensure that *all* expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable." *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001) (citing *Kumho Tire*, 526 U.S. at 147) (emphasis added). Therefore, the testimony of an expert, even if found to be reliable under *Daubert*, must be excluded if the proposed testimony is not relevant to an issue in the case.

While the district court is required to exercise the gatekeeper function, it retains broad discretion in deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability. *Rodriguez-Felix,* 450 F.3d at 1123. However, despite this broad discretion, the Tenth Circuit requires that "a district court, when faced with a party's objection, must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000).

## II.     PLAINTIFFS' PROPOSED EXPERT SHOULD BE EXCLUDED BECAUSE HIS OPINION IS NOT BASED UPON RELIABLE FACTS OR METHODS.

In order for an expert's opinion to be deemed reliable, "[t]he plaintiff need not prove that the expert is indisputably correct or that the expert's theory is 'generally accepted' in the scientific community. Instead, the plaintiff must show that at the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Mitchell v. Gencorp, Inc.,* 165 F.3d 778, 781 (10th Cir. 1999). Rule 702 allows a qualified expert to testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. When an expert's opinion is specialized rather than scientific, as is the case here, courts must simply determine whether the specialized knowledge is professionally sound and reliable. *Gianfrancisco v. Excelsior Youth Centers, Inc.*, 10-cv-00991-PAB-KMT, 2012 WL 2890916, *5 (D. Colo. 2012) (citing *Huey v. United Parcel Serv.*, 165 F.3d 1084, 1087 (7th Cir. 1999); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004)). Nevertheless, an expert with specialized knowledge must employ "the same level of intellectual

4

rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. Thus, an expert opinion is properly excluded when his testimony is based on assumptions that are not supported by the evidence and connects "existing data only by the *ipse dixit* of the expert." *General Electric*, 522 U.S. at 146.

Moreover, Rule 703 enables experts to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. Nevertheless, "Rule 703 requires that such information can be used only as the basis for the expert's opinion and not for the truth of the matter asserted." *United States v. Affleck*, 776 F.2d 1451, 1457 (10th Cir. 1985). "If an expert simply parrots another individual's out-of-court statement, rather than conveying an independent judgment that only incidentally discloses the statement to assist the jury in evaluating the expert's opinion, then the expert is, in effect, disclosing that out-of-court statement for its substantive truth." *United States v. Pablo*, 696 F.3d 1280, 1288 (10th Cir. 2012). An expert cannot be used as "a backdoor conduit for an otherwise inadmissible statement." *Id.*

Here, Plaintiffs' expert recites the history of voter intimidation from the eighteenth century through the present, and the congressional intent giving rise to the enactment of § 11(b) of the Voting Rights Act and § 1985(3) of the Civil Rights Act. **Exh 1.** at p. 3-23. Based on the expert's recitation of this history, he provides an opinion regarding Defendants' intent[2] and the assumption that minority voters were intimidated. In an attempt to apply the facts of the case to support his

---

[2] The rules of evidence "do not prevent an expert from drawing conclusion about intent, so long as the expert does not profess to know a defendant's intent." *U.S. v. Schneider*, 704 F.3d 1287, 1294 (10th Cir. 2013).

5

opinion, Plaintiffs' expert avers that "[t]he evidence produced suggest that USEIP operatives have approached voters in their homes in an aggressive manner, . . .[and voters] were treated to a demanding inquiry about their address, their length of residency, their voting history, and in effect, their legitimacy as voters." *Id.* at. 27. Overlooking the *admissible* evidence produced in this litigation, Plaintiffs' expert states that:

> While Defendants seek to mask the campaign as an innocuous search for the truth, the reality is that their efforts are public, they are announced as a 'return to the old ways' of intimidation, and threat, and that, accordingly to the publicly available evidence of their bullying and pushiness, they seek to intimidate and coerce the truth about voting. This kind of behavior reasonably appears to a voter who suffered from it – especially if they are a voter of color—as if a voter vigilante squad is out there that will question their vote and threaten them if the cast their vote.

*Id.* at 31.

The "facts" which Plaintiffs' expert assumes as true, are derived from unreliable political opinion pieces published by Colorado Times Recorder, Colorado Newsline, and National Public Radio[3].

The leeway Rule 703 provides for expert testimony, however, does not permit the expert to summarize the out of court statements of others for their substantive truth providing no independent judgment. *Pablo*, 696 F.3d at 1288. Nearly all of the expert report merely parrots the

---

[3] The cited articles from Colorado Times Recorder are authored by Erik Maulbetch. *Id.* at 26 n.72; 29 n.80-81; 31 n.83. Colorado Times Recorder describes Mr. Maulbetch as "a progressive investigative reporter. He writes largely on Colorado politics and policy, with a focus on right-wing extremists, hate groups, disinformation, and conspiracy theorists." COLORADO TIMES RECORDER, *About,* https://coloradotimesrecorder.com/about/. The article from Colorado Newsline is labeled as an opinion/commentary piece which Colorado Newsline notes "are distinct from stores produced by Newsline reports and are labeled accordingly." COLORADO NEWSLINE, *About Us:* https://coloradonewsline.com/about/. *Id.* at 31 n.84. Finally, conveniently omitted from the expert report, the article from NPR regarding voter Michelle Garcia specifically notes that "[t]he volunteer organization at Landman's door was the U.S. Election Integrity Plan . . . [i]t is not clear if the canvassers who visited Landman were affiliated with the ones who came to Garcia's door, who said they were with a local group." Miles Parks, *The election denial movement is now going door to door,* NPR News, July 21, 2022, https://www.npr.org/2022/07/21/1107023599/colorado-canvassing-election-integrity-plan. *Id.* at 27 n.75

opinion pieces of political columnists. *See Williams v. Illinois*, 567 U.S. 50, 126 (2012) (Thomas, J., concurring) ("When a witness, expert or otherwise, repeats an out of court statement as the basis for a conclusion, . . . the statement's utility is then dependent on its truth. . . So to determine the validity of the witness's conclusion, the factfinder must assess the truth of the out-of-court statement on which it relies.").

Plaintiffs' expert concludes that Defendants' canvassing efforts equate to unlawful intimidation. The bases upon which this conclusion is made include Defendants: (1) "investigating by intimidating and quasi-inquisition like behavior, . . .[leaving] the target of such investigation left [sic] with the impression that they are suspected and at risk for [voter fraud]" **Exh. 1** at 28; (2) "wearing badges that state their name and possibly their affiliation with USEIP. . . [which] would at least suggest an official inquiry, . . .[and] would mark the kind of deceptive practice that would open the door for the kind of voter intimidation by deception and disguise" *Id.* ; and (3) "engag[ing] in canvassing while armed and felt it imperative to use arms while conducting USEIP business." *Id.* at 29. Further, the expert attempts to tie his assumptions regarding the context of USEIP's Playbook and an apparent statement from Defendant Shawn Smith, concluding that "the conduct, understood through the lens of their rhetoric, amounts to a campaign of pressuring and near terrorization that amounts to voter intimidation." *Id.* at 27.

The entirety of the expert's opinion relating to aggressive and intimidating questioning by USEIP volunteers requires the assumption that the hearsay political opinion articles are true. Plaintiffs' expert brushes aside the only admissible evidence on this point stating, "[a]lthough in their testimony the leaders of the group claim that they have been respectful, the evidence also suggests that members of their group have engaged in intimidating behavior." *Id.* at 27. This

7

reference to "evidence" of intimidating behavior is solely derived from an article by NPR which specifically notes that the author is unsure if the individuals were associated with USEIP. *See Id.* at 27 n.75. This is the exact parroting of hearsay evidence that courts caution against.

Likewise, the expert's conclusion regarding the use of firearms during canvassing requires accepting the truth of an opinion piece by Colorado Times Recorder. *See Id.* at 29 n.80- 81. The expert does, however, point to portions of deposition testimony by defendant Shawn Smith. Conveniently, the expert uses ellipses omitting from Mr. Smith's statement that, "I have a concealed carry permit. So I most likely carry everywhere I go. . . I for sure never pulled a firearm out. I mean, it would have been - -  it would have been undetectable to anybody else around me because I carry it concealed." **Exh. 2** (*Smith Deposition*, 218: 18-25). The expert's own conclusion regarding firearms states: "*to the extent that a voter would have seen these weapons* while being questioned, or even if USEIP canvassers showed these weapons while making their queries, the risk of threat becomes extreme." **Exh. 1** at 30 (emphasis added). Having omitted the context of this testimony which contradicts the expert's own conclusion, he disregards the admissible evidence and accepts the substance of the Colorado Times Recorder hearsay as true.

Plaintiffs and their expert are tasked only with proving that Defendants' conduct intimidated voters and that Defendants intended to intimidate voters. Instead of proffering admissible evidence on the elements of their claims, Plaintiffs offer a "conclusory statement based only on the purported motivation of [USEIP] and its members." *Arizona Democratic Party v. Arizona Republican Party*, No. CV-16-03752-PHX-JJT, 2016 WL 8669978, *11 (Ariz. 2016). Plaintiffs must "offer the vital evidentiary components that would allow the Court to infer likely

8

or intended intimidation." *Id.* "The factually unsubstantiated, though informed, opinion of Plaintiff's expert does not obviate the need for further evidence. . ." *Id.*

Experts in any field, especially the legal field, would not base their opinion on articles dictated as commentary pieces as the basis for admissible expert testimony. Expert opinions must be "based on actual knowledge, not subjective belief or unsupported speculation." *Dodge v. Cotter Corp.*, 328 F.3d 121, 1222 (10th Cir. 2003).

While Plaintiffs' expert may be well versed in congressional intent and the history of voting laws, Part III of his opinion consists only of assumptions not supported by the facts. Indicative of the expert's logical leaps, supported only by assumptions rather than verifiable evidence, the expert report makes the following theoretical conclusions:

- Given their premise of election fraud, it is *likely* that USEIP operatives have spoken at length in these intimidating contexts. **Exh. 1** at 28[4].

- By doing so at a voter's home, that person would *likely* feel . . . intimidated. *Id.*

- It seems reasonable to *infer* that the rhetoric of the vigilante acting in the name of ferreting out crime through home-grown inquisition, coupled with the act of investigating by intimidating and quasi-inquisition like behavior, would leave the target of such an investigation . . . with the impression that they are suspected and at risk [for voting]. *Id.*

- The name United States Election Integrity Project [sic] would at least *suggest* an official inquiry. *Id.*

- There seems to a *risk* of confusion on the part of a respondent who could then *predictably* become afraid of an inquiry by someone they perceive to be a governmental agent. *Id.* at 29.
- It would also *seem likely* that these discussions could then become focused on why this inquiry is being made . . . which *could reasonably be predicted* to create apprehension among voters. *Id.*

- I *would be concerned* that an average voter . . . [would] feel both doubtful about the validity of their own vote and of the election system. *Id.*

---

[4] Emphasis added to each section of the expert report to demonstrate indicators of assumption.

9

- The *risk* is high that such a voter would feel like they should avoid voting . . . *Id.*

- *To the extent* that a voter would have seen these weapons . . . the *risk* of threat becomes extreme. *Id.* at 30.

- The record *leaves the impression* that USEIP operatives see themselves as a voter vigilante campaign. *Id.*

- A selection bias that *runs the risk* of making Defendants obsess over finding results . . . would make them *prone* to undertake intimidation. *Id.* at 31.

- These inquiries *run the risk* of causing voters to believe that their votes may well have been illegitimate. *Id.* at 32.

Although an expert's reliance on an assumption does not automatically preclude their testimony under Rule 702; the importance of the assumed fact may. *See U.S. v. Crabbe*, 556 F.Supp.2d. 1217, 1224 (D. Colo. 2008). "Depending on the case, the assumed fact may be so critical to the methodology that the witness' failure to ascertain the *actual* fact would render the application of the facts to the methodology unreliable; in such circumstances, the opinion would fail under Rule 702." *Id.* (emphasis in original). Conversely, when an assumed fact is "sufficiently peripheral to the analytical process . . . [t]he accuracy of the assumption is an issue for trial because it affects the weight of the opinion." *Id.* The assumptions made in Plaintiffs' expert report dispose of all issues critical to this case. Without these assumptions, the expert report merely recites legislative history. Moreover, because these assumptions arise from inadmissible, unreliable "facts", they are necessarily not supported by evidence, rendering them inadmissible. *See Gianfrancisco*, 2012 WL 2890916 at *4.

Yet, the expert appears to understand that Plaintiffs lack the necessary evidence to prove their case. The expert notes, "[i]t is difficult to obtain testimony around voter intimidation as it often evades detection and is often based on the coded messages that are relayed around the

10

political process and individual's participation." **Exh. 1** at 17. He rationalizes, despite the lack of evidence, that "inference from the totality of the circumstances is necessary to provide accountability for voter intimidation." *Id.* The expert goes on, stating "intimidation is amorphous, largely subjective in nature since it lacks concrete evidence, and oftentimes lacks witnesses. . . Ordinarily witness testimony is necessary to convict one of a voter intimidation crime. . ." *Id.* at 21. No matter the excuse the expert makes for this lack of evidence, "if the [plaintiff] cannot provide any independent admissible evidence to prove the foundational facts that are essential to the relevance of the expert's testimony, then the expert's testimony cannot be given any weight by the trier of fact." *U.S. v. Sedillo*, 509 Fed.Appx. 676, 687 (10th Cir. 2013) (citing *Williams*, 567 U.S. at 81).

### III. PLAINTIFFS' PROPOSED EXPERT SHOULD BE EXCLUDED BECAUSE HIS TESTIMONY IS NOT RELEVANT TO THE ISSUES IN THE CASE

Not only are the opinions of Plaintiffs' expert unreliable; his opinions are not relevant to any factually driven issue of this case. Expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. To be admissible, such testimony may not usurp the jury's fact-finding function. *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). "Expert testimony that does not relate to any issue in the case is not relevant, and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. This relevance inquiry is guided by Rule 401 defining relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005).

Plaintiffs' claims in this case are limited only to: (1) intimidating voters and potential voters in violation of Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b); (2)

11

attempting to intimidate voters and potential voters in violation of the Voting Rights Act, 52 U.S.C. § 10307(b); and (3) conspiracy to prevent individuals who are lawfully entitled to vote from giving their support or advocacy in violation of 42 U.S.C. § 1985(3). [Docket No. 1, ¶¶ 39-51]. To prevail on counts I and II under 52 U.S.C. § 10307(b), plaintiffs "must show both an act of intimidation or attempt to intimidate, and that the act was done with the specific intent to intimidate or attempt to intimidate." *Parson v. Alcorn*, 157 F.Supp.3d 479, 498 (E.D. Va. Jan. 15, 2016) (citing *Olagues v. Russoniello*, 770 F.2d 791, 804 (9th Cir. 1985)). The elements of a claim under 42 U.S.C § 1985(3) require plaintiffs to prove: "(1) a conspiracy; (2) the purpose of which is to force, intimidate or threaten; (3) an individual legally entitled to vote who is engaging in lawful activities related to voting in federal elections." *Nat'l Coal. On Black Civic Participation v. Wohl*, 498 F.Supp.3d 457, 486-87 (S.D.N.Y. 2020).

Notably absent from either cause of action is proof of racial animus or targeting. *Id.* at 476-77, 487 (internal citations omitted) ("A plaintiff need not show racial animus or discrimination to establish a violation of Section 11(b). . . [P]laintiffs suing under the Support or Advocacy Clause [of § 1985(3)] need not demonstrate that defendants acted with discriminatory, class-based animus."). Plaintiffs' expert report contains fifteen pages reciting the history of race and voter intimidation in the United States. **Exh. 1** at 3-18. Using this backdrop, the expert opines that Defendants' "behavior reasonably appears to a voter who suffered from it – especially if they are a voter of color—as if a voter vigilante squad is out there and will question their vote and threaten them if they cast a vote." *Id.* at 31. Rather than focus on the claims at issue, Plaintiffs' expert delves into America's horrific past, provoking an emotional response from any rational juror.

While relevancy is, in part, governed by Fed. R. Evid. 401, an expert's opinion must also survive an inquiry under Fed. R. Evid. 403. Rule 403 is a balancing test ensuring the probative value of the testimony substantially outweighs the danger of unfair prejudice. *See U.S. v. Garcia*, 635 F.3d 472, 477-78 (10th Cir. 2011). Testimony is unfairly prejudicial when it "provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged." *Id.* (citing *United States v. Tan*, 254 F.3d 1204, 1211-12 (10th Cir. 2001)) (emphasis in original). The issues relevant to this case in no way require a history lesson comparing Defendants to the grand marches of the Klan. *See* **Exh. 1** at 30. Such testimony only prejudices the Defendants by provoking an, admittedly, justified emotional response from the jurors. While this testimony is incredibly prejudicial, it also fails to provide any probative value since the claims do not require racial targeting or animus in order to prevail.

Furthermore, permissible expert testimony is limited only to issues of fact, not the principles of law governing the case. *Specht*, 853 F.2d at 808. An expert may not "supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence." *Id.* When such testimony has the purpose of directing "the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed. In no instance can a witness be permitted to define the law of the case." *Id.* at 810. Plaintiffs' expert provides no aid to a jury in understanding the facts in evidence. Instead, the entirety of Plaintiffs' expert report is a legal opinion of what voter intimidation is, couched in theoretical facts. The conclusion that Defendants' actions *must* be construed as voter intimidation, despite the lack of evidence, completely obviates the Judge's role in defining the law of voter

13

intimidation and the jury's role to assess the evidence. Such expert testimony is impermissible and must be excluded.

Plaintiffs' attempt to circumvent the need for admissible evidence through their expert's opinion is an improper use of expert testimony. Such testimony fails the relevancy inquiry of Fed. R. Evid. 401 and 403.

## IV. CONCLUSION

Guided by Supreme Court precedent and the Federal Rules of Evidence, Plaintiffs' expert cannot survive an admissibility inquiry. While experts are granted some leeway for inadmissible hearsay, Plaintiffs' expert bases the entirety of his opinion on the assumption that the substance of articles, authored by political opinion columnists, are true. Unsubstantiated articles are not the type of material which experts in any field would reasonably rely in rendering an opinion. Plaintiffs' expert opinion is not only unreliable, but also fails to meet the standards of relevancy. It cannot help a trier of fact determine a fact at issue.

Instead, the expert opinion equates Defendants' actions to the racially targeted voter intimidation of the Klan. Yet, none of Plaintiffs' claims require a showing of racial targeting or animus. Plaintiffs' expert uses his opinion to provoke an emotional response from the jury unconnected to the facts and issues in the case. Finally, Plaintiffs' expert, as knowledgeable as he may be, cannot define the law of the case. This type of expert testimony is inadmissible under each inquiry governing expert admissibility. For the foregoing reasons, the gatekeeping function of the Court must be used to strike Plaintiffs' proposed expert testimony.

Defendants do not believe that an evidentiary hearing is necessary for the arguments set forth in this motion.

Respectfully submitted this 16th day of December, 2022.

> s/ Jessica L. Hays
> R. Scott Reisch, #26892
> Jessica L. Hays, #53905
> THE REISCH LAW FIRM, LLC
> 1490 W. 121st Avenue, #202
> Denver, CO 80234
> (303) 291-0555
> Email: scott@reischlawfirm.com
> jessica@reischlawfirm.com
> cassandra@reischlawfirm.com
> *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **DEFENDANTS' OBJECTION TO THE PROPOSED EXPERT TESTIMONY OF ATIBA ELLIS** has been electronically served through ECF this 16th day of December, 2022, to all counsel of record.

> s/ Jessica L. Hays
> Jessica L. Hays