**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-581-CNS-NRN

Colorado Montana Wyoming
State Area Conference of the NAACP,
League of Women Voters of Colorado, and
Mi Familia Vota,

    Plaintiffs,

v.

United States Election Integrity Plan,
Shawn Smith, Ashley Epp, and Holly Kasun,

    Defendants.

---

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

---

# TABLE OF CONTENTS

INTEREST OF THE UNITED STATES ......................................................................................... 1

INTRODUCTION .......................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND..................................................................... 2

STATUTORY BACKGROUND .................................................................................................... 3

ARGUMENT .................................................................................................................................. 3

    I.    Section 11(b) Does Not Require Proof of Subjective Intent............................................. 3

    II.    Private Plaintiffs May Enforce Section 11(b). ..................................................................... 7

CONCLUSION............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Sandoval*, 532 U.S. 275 (2001)..............................................................................9, 10

*Allen v. City of Graham*, No. 20-cv-997, 2021 WL 2223772 (M.D.N.C. June 2, 2021).............6, 8

*Allen v. State Bd. of Elections*, 393 U.S. 544 (1969) ...........................................................7, 12, 13

*Ariz. All. for Retired Americans v. Clean Elections USA*, No. 22-cv-1823, 2022 WL
15678694 (D. Ariz. Oct. 28, 2022) ................................................................................................8

*Ariz. Democratic Party v. Ariz. Republican Party*, No. 16-cv-3752, 2016 WL 8669978 (D. Ariz.
Nov. 4, 2016) ...............................................................................................................................5, 8

*Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 586 F. Supp. 3d 893 (E.D. Ark. 2022).....9

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) ...................................................10

*Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979)..........................................................................12

*Chisom v. Roemer*, 501 U.S. 380 (1991) ........................................................................................10

*Daschle v. Thune*, No. 04-cv-4177, ECF No. 6 (D.S.D. Nov. 2, 2004)............................................5

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) ..................................................................................10

*Hanson v. Wyatt*, 552 F.3d 1148 (10th Cir. 2008)..........................................................................10

*Jackson v. Riddell*, 476 F. Supp. 849 (N.D. Miss. 1979).................................................................3

*League of United Latin Am. Citizens v. Pub. Int. Legal Found.*, No. 18-cv-423, 2018 WL
3848404 (E.D. Va. Aug. 13, 2018) ..............................................................................................4, 5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ................................2

*Mich. Welfare Rts. Org. v. Trump*, No. 20-cv-3388, 2022 WL 990704 (D.D.C. Apr. 1, 2022)......8

*Morse v. Republican Party of Va.*, 517 U.S. 186 (1996) ..................................................7, 8, 12, 13

*Nat'l Coal. on Black Civic Participation v. Wohl ("Wohl I")*, 498 F. Supp. 3d 457 (S.D.N.Y.
2020) .........................................................................................................................................5, 6, 8

*Nat'l Coal. on Black Civic Participation v. Wohl ("Wohl II")*, 512 F. Supp. 3d 500 (S.D.N.Y.
2021) ................................................................................................................................................3

*Newman v. Piggie Park Enters.*, 390 U.S. 400 (1968) ...................................................................12

*Olagues v. Russoniello*, 770 F.2d 791 (9th Cir. 1985)..................................................................6, 8

*Olagues v. Russoniello*, 797 F.2d 1511 (9th Cir. 1986)..................................................................7

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881 (2019)............................................4

*Parson v. Alcorn,* 157 F. Supp. 3d 479 (E.D. Va. 2016) ................................................................7

*Rhodes v. Siver*, No. 19-cv-12550, 2021 WL 912393 (E.D. Mich. Mar. 10, 2021) ........................8

*Russoniello v. Olagues*, 484 U.S. 806 (1987) ...................................................................................7

*Schilling v. Washburne*, 592 F. Supp. 3d 492 (W.D. Va. 2022)......................................................8

*Shelby Cnty. v. Lynch*, 799 F.3d 1173 (D.C. Cir. 2015) ................................................................12

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015) ..........13

*United States v. Brown*, 974 F.3d 1137 (10th Cir. 2020)..................................................................4

*United States v. McLeod*, 385 F.2d 734 (5th Cir. 1967) ...............................................................6, 7

**Statutes**

1 U.S.C. § 1...................................................................................................................................11

10 U.S.C. §14704..........................................................................................................................10

20 U.S.C. § 1232g(b)(1) ...............................................................................................................10

28 U.S.C. § 517...............................................................................................................................1

42 U.S.C. § 1396a(b) ....................................................................................................................10

42 U.S.C. § 1985(3) ........................................................................................................................2

42 U.S.C. § 2000d–1......................................................................................................................10

52 U.S.C. § 10101(b) ......................................................................................................................4

52 U.S.C. § 10302(a) ....................................................................................................................11

52 U.S.C. § 10302(c) ....................................................................................................................11

52 U.S.C. § 10307(b) ..........................................................................................................1, 3, 4, 10

52 U.S.C. § 10308(d)......................................................................................................................1

52 U.S.C. § 10308(f) ......................................................................................................... 11

52 U.S.C. § 10310(c)(1) ............................................................................................... 3, 10

52 U.S.C. § 10310(e) ....................................................................................................... 12

**Other Authorities**

H.R. Rep. No. 89-439 (1965), *as reprinted in* 1965 U.S.C.C.A.N. 2437 ......................... 5

S. Rep. No. 94-295 (1975), *as reprinted in* 1975 U.S.C.C.A.N. 774 ............................ 11

*Voting Rights Act of 1965: Hearing Before the H. Comm. on the Judiciary*, 89th Cong. 12  ...5, 11

**INTEREST OF THE UNITED STATES**

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States[.]"  This case presents important questions regarding the interpretation of Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b).  Congress has explicitly vested the Attorney General with authority to enforce Section 11(b) on behalf of the United States.  *See id.* § 10308(d).  Accordingly, the United States has a substantial interest in ensuring the proper interpretation of Section 11(b).  The United States expresses no view on any factual dispute before the Court, nor on any legal question other than those described herein related to interpreting Section 11(b).

**INTRODUCTION**

Section 11(b) comprehensively prohibits voter intimidation.  Despite limited case law on the provision, the relevant text, history, and precedent confirm two bedrock principles of Section 11(b).  First, the provision does not demand proof that a defendant had the subjective intent to intimidate a voter.  By its very terms, Section 11(b) does not contain an intent requirement; in fact, the provision was enacted chiefly to do away with an intent element that had rendered a prior voter intimidation statute less than fully effective.  Second, private plaintiffs can enforce Section 11(b).  The Supreme Court has regularly held that private litigants can enforce other provisions of the Voting Rights Act that also lack an express private right of action.  And given the text, structure, and legal context of the Act, nearly every single court to consider the issue has concluded that Congress clearly intended to allow private parties to enforce Section 11(b).  Holding otherwise on either issue would frustrate the Act's core purpose of protecting the right to vote.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, and Mi Familia Vota filed this case on March 9, 2022. *See* Compl., ECF No. 1. At core, they allege that Defendants United States Election Integrity Plan, Shawn Smith, Ashley Epp, and Holly Kasun engaged in "door-to-door canvassing" across Colorado, during which they "carr[ied] weapons," "donn[ed] badges to present an appearance of government officiality," "question[ed] residents about their participation in the 2020 election and their method of voting," "accus[ed residents] of casting allegedly fraudulent ballots," and "[took] photos of voters' residences." *Id.* ¶¶ 2–4, 15 & 27. These actions, Plaintiffs say, amount to voter intimidation in violation of Section 11(b) and conspiracy to interfere with civil rights in violation of the Ku Klux Klan Act, 42 U.S.C. § 1985(3). *See id.* ¶¶ 39–51.

After this Court denied Plaintiffs' motion for a temporary restraining order, *see* Order, ECF No. 30, and Defendants' motion to dismiss, *see* Order, ECF No. 39, Defendants filed a motion for judgment on the pleadings, *see* Defs. Mot. J. Pleads., ECF No. 54. In that motion, Defendants assert, among other things, that "Plaintiffs cannot succeed on the merits of their [Section 11(b)] claims" because "statutory standing for [those] claims has been expressly limited by [C]ongress." *Id.* at 6–7. In other words, Defendants essentially argue that no private right of action exists to enforce Section 11(b).[1] The parties completed briefing that motion, which remains pending with the Court.

Upon the conclusion of discovery, Defendants filed a motion for summary judgment on

---

[1] Defendants frame this issue in terms of whether Plaintiffs have "prudential standing" or "statutory standing" to bring their claims. Defs. Mot. Summ. J. at 16–18; Defs. Mot. J. Pleads. at 5–6. But Defendants' argument is properly framed in terms of whether Plaintiffs have a cause of action to enforce Section 11(b). *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014).

2

December 2. *See* Defs. Mot. Summ. J., ECF No. 70. In this motion, Defendants reiterate their standing arguments and further assert that Plaintiffs lack evidence that Defendants acted "with specific intent to intimidate or attempt to intimidate." *Id.* at 5, 15–18. Plaintiffs filed their response to the motion on December 23, and Defendants' reply is due on January 6, 2023.

## STATUTORY BACKGROUND

Section 11(b) broadly prohibits any person from intimidating, threatening, or coercing any other person—or attempting to do so—for voting, attempting to vote, urging or aiding another person to vote or attempt to vote, or exercising powers or duties under specific provisions of the Voting Rights Act. *See* 52 U.S.C. § 10307(b). Section 11(b) does not require proof that a defendant caused a voter to refrain from casting a ballot or to vote contrary to their preferences: the provision applies equally to prohibit an "*attempt* to intimidate, threaten, or coerce" as it does to the completed act. *Id.* (emphasis added); *see Nat'l Coal. on Black Civic Participation v. Wohl ("Wohl II")*, 512 F. Supp. 3d 500, 516 (S.D.N.Y. 2021). Section 11(b) "is to be given an expansive meaning," *Jackson v. Riddell*, 476 F. Supp. 849, 859 (N.D. Miss. 1979), and incorporates the extensive definition of "vote" and "voting" provided in Section 14 of the Act, 52 U.S.C. § 10310(c)(1).

## ARGUMENT

Contrary to Defendants' arguments, the Voting Rights Act's text, history, and case law confirm that (I) plaintiffs need not show a defendant's subjective intent to intimidate, threaten, or coerce voters and (II) Section 11(b) affords a right of action to private litigants.

### I.   Section 11(b) Does Not Require Proof of Subjective Intent.

The text and statutory context of Section 11(b) demonstrate that the provision does not require proof of subjective intent to intimidate, threaten, or coerce voters, contrary to Defendants' contention. *See* Defs. Mot. Summ. J. at 5, 15.

3

The plain language of Section 11(b) contains no intent requirement: "No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote[.]"  52 U.S.C. § 10307(b).

This language reflects a deliberate choice by Congress in 1965 to broaden the reach of Section 11(b)'s predecessor voter intimidation statute.  *See Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019) ("Congress legislates against the backdrop of existing law."); *United States v. Brown*, 974 F.3d 1137, 1141–43 (10th Cir. 2020) (analyzing the "statutory context" as part of "traditional tools of statutory construction").  The text of Section 11(b) largely tracks that of Section 131(b) of the Civil Rights Act of 1957, which states that "[n]o person, whether acting under color of law or otherwise, shall intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce any other person *for the purpose of* interfering with the right of such other person to vote or to vote as he may choose[.]" 52 U.S.C. § 10101(b) (emphasis added).  However, in enacting the Voting Rights Act, Congress expanded upon Section 131(b)'s coverage by omitting the phrase "for the purpose of" in the statutory language of Section 11(b).  This omission "suggest[s Section] 11(b)'s deliberately unqualified reach." *League of United Latin Am. Citizens v. Pub. Int. Legal Found.*, No. 18-cv-423, 2018 WL 3848404, at *4 (E.D. Va. Aug. 13, 2018).

Legislative history further confirms that plaintiffs may establish a Section 11(b) violation by showing that a defendant's conduct was objectively intimidating, threatening, or coercing, without having to prove the defendant's subjective intent to intimidate, threaten, or coerce.  In detailing how Section 11(b) would improve upon its predecessor statute, Attorney General

4

Nicholas Katzenbach, the author of the Voting Rights Act, testified in Congress that "the most serious inadequacy [of Section 131(b)] results from the practice of some district courts to require the Government to carry a very onerous burden of proof of 'purpose.' Since many types of intimidation, particularly economic intimidation, involve subtle forms of pressure, this treatment of the purpose requirement has rendered the statute largely ineffective." *Voting Rights Act of 1965: Hearing Before the H. Comm. on the Judiciary*, 89th Cong. 12 (statement of Att'y Gen. Nicholas Katzenbach), https://perma.cc/N9S4-KH2P [hereinafter Katzenbach Statement]. Attorney General Katzenbach then noted that under Section 11(b), "no subjective 'purpose' need be shown, in either civil or criminal proceedings, in order to prove intimidation . . . . Rather, defendants would be deemed to intend the natural consequences of their acts." *Id.* The House Report accompanying the Act echoed this reasoning, explaining that, "unlike [Section 131(b)] (which requires proof of a 'purpose' to interfere with the right to vote) no subjective purpose or intent need be shown" under Section 11(b). H.R. Rep. No. 89-439, at 30 (1965), *as reprinted in* 1965 U.S.C.C.A.N. 2437, 2462.

In line with the plain statutory text and clear congressional intent, courts have generally interpreted Section 11(b) as not requiring proof of subjective purpose or specific intent. *See, e.g.*, *League of United Latin Am. Citizens*, 2018 WL 3848404, at *4 ("[I]n the absence of plain statutory text, statutory history, or binding case law to the contrary, the Court does not find that a showing of specific intent . . . is required under [Section] 11(b)."); *Nat'l Coal. on Black Civic Participation v. Wohl ("Wohl I")*, 498 F. Supp. 3d 457, 480 (S.D.N.Y. 2020) (finding "no explicit requirement of intent" in the provision); *Ariz. Democratic Party v. Ariz. Republican Party*, No. 16-cv-3752, 2016 WL 8669978, at *4 n.3 (D. Ariz. Nov. 4, 2016) ("[T]he plain language of the statute does not require a particular *mens rea*[.]"); *Daschle v. Thune*, No. 04-cv-

5

4177, ECF No. 6 (D.S.D. Nov. 2, 2004) (granting temporary restraining order and holding that "[w]hether the intimidation was intended or simply the result of excessive zeal is not the issue, as the result was the intimidation of prospective Native American voters"); *Allen v. City of Graham*, No. 20-cv-997, 2021 WL 2223772, at *8 (M.D.N.C. June 2, 2021) (rejecting defendants' argument that Section 11(b) requires proof of specific intent).

As illustrated by the case law, the crux of a Section 11(b) claim is whether the conduct at issue was *objectively* intimidating, threatening, or coercive to voters—that is, whether a reasonable person "familiar with the context of the [conduct] would interpret as a threat of injury tending to deter individuals from exercising their voting rights." *Wohl I*, 498 F. Supp. 3d at 477. Because "[t]hreats, intimidation[,] or coercion may take on many forms," courts must consider all surrounding facts, including "Defendants' prior conduct and expressed goals," in evaluating whether the challenged conduct was objectively intimidating, threatening, or coercive. *Id*. at 484–85.[2]

Despite the clear textual distinction between Section 11(b) and Section 131(b) on whether proof of intent is necessary, some courts have erroneously drawn from cases requiring specific intent under Section 131(b) when analyzing Section 11(b) claims. All such cases that the United States is aware of rely on *Olagues v. Russoniello*, 770 F.2d 791 (9th Cir. 1985), which misread the holding in *United States v. McLeod*, 385 F.2d 734 (5th Cir. 1967), a case under Section 131(b) filed before the passage of the Voting Rights Act. In *McLeod*, the court analyzed whether

---

[2] As such, evidence that some individuals did not feel intimidated by Defendants' actions, *see* Defs. Mot. Summ. J. at 6–15, is not dispositive, because such evidence may "not negative their general coercive effect" in the broader context. *United States v. McLeod*, 385 F.2d 734, 744–45 (5th Cir. 1967) (drawing inferences based on "all of the surrounding facts" to conclude that baseless prosecutions of those aiding voter registration constituted voter intimidation, despite testimony by some Black voters that they were not intimidated); *see also* Pls. Mot. Summ. J. Resp. at 15, ECF No. 72.

6

"the intimidation was for the purpose of interfering with the right to vote," as the text of Section 131(b) requires.  385 F.2d at 740.  In *Olagues*, the panel relied on the *McLeod* court's analysis of Section 131(b) to find that Section 11(b) required proof of intent, disregarding the provision's distinct text.  *See Olagues*, 770 F.2d at 804.  The panel decision in *Olagues* was withdrawn for rehearing en banc, *see* 797 F.2d 1511, 1515 (9th Cir. 1986), and the en banc decision itself was later vacated as moot, *see* 484 U.S. 806 (1987).  Yet, the district court in *Parson v. Alcorn*—cited by Defendants in this case, *see* Defs. Mot. Summ. J. at 5, 15—imported this misreading from *Olagues* to find that, "in order to succeed on [a Section 11b] claim, a plaintiff must show . . . that the act was done with the specific intent to intimidate or attempt to intimidate." 157 F. Supp. 3d 479, 498 (E.D. Va. 2016) (citing *Olagues*, 770 F.2d 791, and *McLeod*, 385 F.2d 734).  These cases reflecting an erroneous reading of Section 11(b)'s intent standard, however, do not bind this Court, have no basis in the statutory text, and are contrary to the weight of authority from other jurisdictions.

## II. Private Plaintiffs May Enforce Section 11(b).

Private plaintiffs may bring suit to enforce Section 11(b).  That right is inherent in the text, structure, and history of the Voting Rights Act, even though Section 11(b) does not expressly provide a private right of action.  Notably, the Supreme Court has long recognized that Congress intended the Act to empower private citizens to secure their own rights.  *See Allen v. State Bd. of Elections*, 393 U.S. 544, 554–57 (1969).  And the Supreme Court has repeatedly ruled that other provisions of the Act that also lack an explicit private right of action can still be enforced by private plaintiffs.  *See id.* at 557 (holding that an "individual citizen" may bring suit under Section 5 of the Act); *Morse v. Republican Party of Va.*, 517 U.S. 186, 232 (1996) (opinion of Stevens, J., with one justice joining) (holding that Section 10 of the Act is enforceable by private plaintiffs because "[i]t would be anomalous, to say the least, to hold that

7

both [Section] 2 [of the Act] and [Section] 5 are enforceable but [Section] 10 is not, when all lack the same express authorizing language."); *see also id.* at 240 (opinion of Breyer, J., with two justices joining) (agreeing with Justice Stevens that *Allen*'s rationale concerning the private enforceability of Section 5 "applies with similar force not only to [Section] 2 but also to [Section] 10").

Reflecting the Supreme Court's repeated recognition that the Voting Rights Act's other provisions are privately enforceable, the vast majority of courts have properly recognized that a private right of action exists to enforce Section 11(b). *See, e.g.*, *Ariz. All. for Retired Americans v. Clean Elections USA*, No. 22-cv-1823, 2022 WL 15678694, at *3 (D. Ariz. Oct. 28, 2022) ("It is well established that [Section 11(b)] . . . can be enforced through private litigation."); *Mich. Welfare Rts. Org. v. Trump*, No. 20-cv-3388, 2022 WL 990704, at *11–12 (D.D.C. Apr. 1, 2022) (conducting an exhaustive analysis and holding that Section 11(b) "creates a private right of action"); *City of Graham*, 2021 WL 2223772, at *7 (noting that "multiple courts" have deemed Section 11(b) to "establish[] a private cause of action"); *Rhodes v. Siver*, No. 19-cv-12550, 2021 WL 912393, at *2 (E.D. Mich. Mar. 10, 2021) (holding that private plaintiffs can sue under Section 11(b)); *Wohl I*, 498 F. Supp. 3d at 476 ("Consistent with Section 11(b)'s broad reach, both the government and private parties may sue to enforce Section 11(b)."); *Ariz. Democratic Party*, 2016 WL 8669978, at *4 (stating that Section 11(b) "does not exclude a private right of action for injunctive relief"); *Olagues*, 770 F.2d at 805 (finding an implied private right of action for equitable relief under Section 11(b)).

Defendants rely on the reasoning of a lone district court case that has said otherwise regarding Section 11(b) and another finding no private right of action under Section 2. *See* Defs. Mot. J. Pleads. Reply at 5, ECF No. 59 (citing *Schilling v. Washburne*, 592 F. Supp. 3d 492

8

(W.D. Va. 2022), and *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 586 F. Supp. 3d 893, 896 (E.D. Ark. 2022), *appeal filed*, No. 22-1395). But the text of Section 11(b), the structure of the Voting Rights Act, and the legal context all reflect Congress's intent to provide a private right of action. *See Alexander v. Sandoval*, 532 U.S. 275, 286, 288 (2001) ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. . . . We therefore begin (and find that we can end) our search for Congress's intent with the text and structure of [the statute].").

Under *Sandoval*, courts must determine whether Congress intended to create a private right of action by: (1) making the "critical" determination of whether the statute in question contains "rights-creating language" and, if so, (2) assessing whether Congress has "manifest[ed] an intent to create a private remedy." 532 U.S. at 288–89. The *Schilling* court found that Section 11(b) does not contain rights-creating language and delegates enforcement only to the Attorney General.[3] That is incorrect. Section 11(b) undeniably contains rights-creating language. It provides:

> "No person, . . . shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce *any person for voting or attempting to vote*, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce *any person for urging or aiding any person to vote or attempt to vote*, or intimidate, threaten, or coerce *any person for exercising any powers or duties under* [certain provisions of the Act]."

---

[3] In *Schilling,* the court considered none of the Voting Rights Act cases that found a private right of action coextensive with the Attorney General's enforcement authority, nor did it consider any of the cases that found a private cause of action under Section 11(b). *Compare* 592 F. Supp. 3d. at 498–99 *with supra* at 7–8. Likewise, the decision in *Arkansas Board of Apportionment* is incorrect for the reasons the United States has explained in that case. *See* United States Amicus Br., *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, No. 22-1395 (8th Cir. Apr. 22, 2022), https://perma.cc/CH3P-C3RM.

9

52 U.S.C. § 10307(b) (emphases added).  Section 11(b) grants individual citizens a right to be free from intimidation, threats, and coercion in the context of voting and specifies individuals protected by the provision—namely, those who are "voting or attempting to vote," "urging or aiding any person to vote or attempt to vote," or "exercising any powers or duties under" the Act. *Id.*; *see also Chisom* v. *Roemer*, 501 U.S. 380, 392 (1991) (describing Section 2 as "grant[ing] . . . a right to be free from enactment or enforcement of [discriminatory] voting qualifications . . . or practices").  The Act's definition of "vote" and "voting" further delineates the beneficiaries of the provision: anyone who is taking any "action necessary to make a vote effective" is entitled to be free from intimidation, threats, and coercion while engaging in those activities.  52 U.S.C. § 10310(c)(1).

Section 11(b)'s focus on the individuals protected by the provision plainly distinguishes it from non-rights-creating statutes, which "focus on the person regulated rather than the individuals protected." *Sandoval*, 532 U.S. at 289; *cf. id.* (finding no private right of action under 42 U.S.C. § 2000d–1, which is "phrased as a directive to federal agencies engaged in the distribution of public funds" and states that "[e]ach Federal department and agency . . . is authorized and directed to effectuate the provisions of [another section of the statute]"); *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 331 (2015) (same under 42 U.S.C. § 1396a(b), which states that the "Secretary shall approve any plan which fulfills the conditions specified in [another subsection of the statute]"); *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) (same under 20 U.S.C. § 1232g(b)(1), which states that "[n]o funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records . . . of students without the written consent of their parents"); *Hanson v. Wyatt*, 552 F.3d 1148, 1157–58 (10th Cir. 2008) (same under 10

10

U.S.C. §14704, which states that "the Secretary may convene a selection board under [another provision] of this title to consider all officers on that list who are in that grade and competitive category").

The structure of the Voting Rights Act also demonstrates that Congress intended to create a private remedy for enforcement of Section 11(b). Section 3 of the Act, for example, provides for certain remedies in actions brought by "the Attorney General *or an aggrieved person . . .* under *any* statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302(a), (c) (emphases added); S. Rep. No. 94-295, at 40 (1975), *as reprinted in* 1975 U.S.C.C.A.N. 774, 807 [hereinafter Senate Report] ("An 'aggrieved person' . . . may be an individual or an organization representing the interests of injured persons."). That Section 3 provides remedies for aggrieved persons to enforce the voting guarantees of the Reconstruction Amendments evinces Congress's intent to allow private enforcement of Section 11(b), which aimed to ensure that the "theoretical right to vote was [not] successfully thwarted by intimidation." Katzenbach Statement at 3; *see also* Senate Report at 40 ("The Committee concludes that it is sound policy to authorize private remedies to assist the process of enforcing voting rights.").

Likewise, Section 12(f) of the Voting Rights Act provides that "[t]he district courts of the United States shall have jurisdiction of proceedings instituted pursuant to [Section 12 of the Act] and shall exercise the same without regard to whether *a person asserting rights* under the provisions of [the Act] shall have exhausted any administrative or other remedies that may be provided by law." 52 U.S.C. § 10308(f) (emphasis added). The statutory term "person" is broad and "include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. Section 12(f) therefore reflects

11

Congress's intent that federal courts have subject matter jurisdiction over suits to enforce the Act's substantive provisions—including Section 11(b)—brought by private plaintiffs, as well as by the United States when it has been given litigating authority. *See Allen*, 393 U.S. at 555 n.18 (finding "force" to the argument that Section 12(f) "necessarily implies that private parties may bring suit under the Act").

Similarly, Section 14(e) of the Voting Rights Act allows for "the prevailing party, *other than the United States*" to seek attorneys' fees "[i]n *any* action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10310(e) (emphases added). That the Act provides for fees presupposes the existence of a private cause of action to enforce its core provisions, including Section 11(b). *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 699–701 (1979) (finding an implied private cause of action under Title VI of the Civil Rights Act of 1964 based on the existence of an attorneys' fees provision); *see also Shelby Cnty. v. Lynch*, 799 F.3d 1173, 1185 (D.C. Cir. 2015) ("Congress intended for courts to award fees under the [Voting Rights Act] . . . when prevailing parties helped secure compliance with the statute."); *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968) ("Congress therefore enacted the provision for counsel fees . . . to encourage individuals injured by racial discrimination to seek judicial relief.").

The historical context in which the Voting Rights Act was enacted further indicates that a private right of action exists to enforce Section 11(b). Indeed, determining whether the provision allows for private enforcement "must take into account [the] contemporary legal context" surrounding the Act, including that it was passed "against a 'backdrop' of decisions in which implied causes of action were regularly found." *Morse*, 517 U.S. at 231 (opinion of Stevens, J.). When Congress reenacted and extended the Act in 1975, it confirmed its intent to maintain "a

12

dual enforcement mechanism" that has "given enforcement responsibility to a governmental agency, and . . . has also provided remedies to private persons acting as a class or on their own behalf." Senate Report at 40. What is more, "during the 1960s[,] the [Supreme] Court had consistently found [private rights of action] notwithstanding the absence of an express direction from Congress," *Morse*, 517 U.S. at 231 (opinion of Stevens, J.); Congress was "aware of this unanimous precedent" when it enacted Section 11(b), *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 536 (2015).

Finally, the limited federal resources available to enforce the Voting Rights Act highlight the need for a private cause of action under Section 11(b), and the existence of the Attorney General's enforcement authority over other provisions of the Voting Rights Act has not been interpreted as precluding a private right of action. As the Supreme Court has noted, "[t]he Attorney General has a limited staff" who may not always be able to "uncover quickly" various instances of voter intimidation across the country. *Allen*, 393 U.S. at 556. Thus, "[t]he achievement of the Act's laudable goal [would] be severely hampered, . . . if each citizen were required to depend solely on litigation instituted at the direction of the Attorney General." *Id.*; *see also Morse*, 517 U.S. at 231 (opinion of Stevens, J.) (attaching "significance to the fact that the Attorney General has urged us to find that private litigants may enforce the Act").

## CONCLUSION

Section 11(b) does not require proof of subjective intent and may be enforced by private plaintiffs. The United States respectfully submits this Statement of Interest to assist the Court in evaluating Plaintiffs' Section 11(b) claims.

13

Dated: January 3, 2023

| | |
|---|---|
| COLE FINEGAN<br>United States Attorney<br><br>*/s/ Zeyen J. Wu*<br>Zeyen J. Wu<br>Assistant United States Attorney<br>1801 California Street, Suite 1600<br>Denver, CO 80202<br>Telephone: (303) 454-0100<br>Fax: (303) 454-0411<br>zeyen.wu@usdoj.gov | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division<br><br>ELISE C. BODDIE<br>Principal Deputy Assistant Attorney General<br>Civil Rights Division<br><br>*/s/ Jennifer J. Yun*<br>T. CHRISTIAN HERREN, JR.<br>TIMOTHY F. MELLETT<br>JAYWIN SINGH MALHI<br>JENNIFER J. YUN<br>Attorneys, Voting Section<br>Civil Rights Division<br>United States Department of Justice<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530<br>(800) 253-3931<br>chris.herren@usdoj.gov<br>timothy.f.mellett@usdoj.gov<br>jaywin.malhi@usdoj.gov<br>jennifer.yun@usdoj.gov |

**CERTIFICATE OF SERVICE**

      I hereby certify that, on January 3, 2023, I electronically filed the foregoing under seal with the Clerk of the Court using the CM/ECF system, and caused to be served by email a copy of this filing to counsel of record.

> /s/ Zeyen J. Wu
> Zeyen J. Wu
> Assistant United States Attorney
> 1801 California Street, Suite 1600
> Denver, CO 80202
> (303) 454-0100
> zeyen.wu@usdoj.gov