**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-00581-CNS-NRN

Colorado Montana Wyoming
State Area Conference of the NAACP,
League of Women Voters of Colorado, and
Mi Familia Vota,

      Plaintiffs,

v.

United States Election Integrity Plan, Shawn Smith,
Ashley Epp, and Holly Kasun,

      Defendants.

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTION TO THE PROPOSED
EXPERT TESTIMONY OF PROFESSOR ATIBA ELLIS (ECF NO. 71)**

---

## INTRODUCTION

Expert testimony is admissible under Rule 702 "if it will simply help the trier of fact to understand the facts already in the record, even if all it does is put those facts in context." *U.S. v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014) (citing 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.03 (Joseph M. McLaughlin, ed., Matthew Bender, 2d ed. 2014) (footnote admitted))). Professor Ellis's expert testimony will unquestionably assist the trier of fact understand the facts in the record. And, contrary to Defendants' assertion it is neither unreliable nor irrelevant. Moreover, even if there are any doubts regarding his testimony, there is still no basis to exclude it. "Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time

1

or surprise favoring exclusions." *Gutierrez de Lopez*, 761 F.3d at 1136 (quoting *Robinson v. Missouri Pacific R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994)). Defendants' motion to exclude the expert testimony of Professor Atiba Ellis should be denied.

## ARGUMENT

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and method; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Trial courts are charged with the responsibility of acting as gatekeepers of expert testimony to ensure that expert testimony is both reliable and relevant. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588-89 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-52 (1999). Notably, however, "[t]he inquiry envisioned by Rule 702 is . . . a flexible one." *Daubert*, 509 U.S. at 594. The standard articulated in Rule 702 is "intended to *relax* traditional barriers to admission of expert opinion testimony" and "courts are in agreement that Rule 702 mandates a liberal standard for the admissibility of expert testimony." *Cook v. Rockwell Intern. Corp.*, 580 F.Supp.2d 1071, 1082 (D. Colo. 2006) (emphasis added).

Likewise, district courts have "wide latitude" to decide whether to admit or exclude expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005). But "the rejection of expert testimony is the exception rather than the rule" and the district court's gatekeeping role "is

not intended to serve as a replacement for the adversary system . . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *O'Sullivan v. Geico Cas. Co.*, 233 F.Supp.3d 917, 922 (D. Colo. 2017) (quoting Fed. R. Evid. 702 advisory committee's note). It is not the district court's role to determine whether an expert is correct in his or her conclusions; rather, it should focus on determining whether the Rule 702 standards are met. *Etherton v. Owners Ins. Co.*, 35 F.Supp.3d 1360, 1373 (D. Colo. 2014).

Taking into account this liberal standard of admissibility, Plaintiffs must show only that Mr. Ellis is qualified "by knowledge, skill, experience, training, or education" and that his proffered testimony is sufficiently reliable and relevant to assist the trier of fact. *Cook*, 580 F.Supp.2d at 1083. An expert's knowledge required for expert testimony "can be acquired through 'experience' and 'training.'" *O'Sullivan*, 233 F.Supp.3d at 924 (quoting *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009)). Professor Ellis' expert testimony is both reliable and relevant and should be admitted.

**I.    Professor Ellis' Opinion Is Based Upon Reliable Facts and Methods and Should Not Be Excluded.**

When assessing the admissibility of expert testimony, a court must first examine whether the expert's testimony is reliable, meaning that it must have "a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co., Ltd.*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). To be reliable, "[a]n expert opinion must be based on facts that enable the expert 'to express a reasonably accurate conclusion as opposed to conjecture or speculation [but] absolute certainty is not required.'" *Kieffer v. Weston Land, Inc*., 90 F.3d 1496, 1499 (10th Cir. 1996) (internal citations omitted). "The plaintiff need not prove that the expert is undisputedly correct or

that the expert's theory is 'generally accepted' in the scientific community." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (citing *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)).    A court has "considerable leeway" in determining whether an expert's testimony is reliable. *Kumho Tire Co., Ltd.*, 526 U.S. at 152.  As Defendants acknowledge, when an expert's opinion is specialized, rather than scientific, courts must simply determine whether the professional knowledge is professionally sound and reliable.  *Gianfrancisco v. Excelsior Youth Ctrs., Inc.*, No. 10-cv-00991-PAB-KMT, 2012 WL 2890916, at *5 (D. Colo. 2012) (citing *Huey v. United Parcel Serv.*, 165 F.3d 1084, 1087 (7th Cir. 1999); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004)).

Defendants contend that Professor Ellis' expert testimony is unreliable because it is based on inadmissible evidence and improper assumptions. Defendants' position is untenable and should be rejected.  Preliminarily, Professor Ellis' expert opinion is not based exclusively on inadmissible evidence, as Defendants contend.  To the contrary, Professor Ellis' report cites to Defendants' own actions and statements (and not just those actions and statements summarized in various published news articles).  For example, Professor Ellis cites to The Playbook published by USEIP, which articulates the purpose for and approaches to Defendants' organizing and canvassing efforts and makes clear that Defendants' statements are replete with conspiratorial and violent rhetoric. (ECF No. 72 Ex. 1 at 24-26.)   In addition, Professor Ellis points to Defendant Smith's violent and threatening rhetoric; specifically, his public statements invoking his belief that those involved in election fraud "deserve to hang."  (ECF No. 72 Ex. 1 at 26-27.)

Of course, Professor Ellis' expert report also does not summarize or cite to *all* of the admissible evidence that will be presented at trial in this matter.  As more fully set forth in Plaintiffs'

Response to Defendants' Motion for Summary Judgment (ECF No. 72), Plaintiffs will present
evidence at trial demonstrating, among other things, that:

- Defendants approached voters' homes, asking personal and invasive questions such
  as whether the occupant was a resident of Colorado, whether the occupant was a
  registered voter, whether the occupant was a United States citizen, who in the
  household was a citizen, whether the occupant was the only voter of her household,
  whether the occupant had voted in the last election, and how the occupant had
  voted in the last election (ECF No.73 ("Roberts Dec.") ¶ 8.)

- When USEIP approached voters' homes, volunteers were wearing lanyards with
  laminated nametags and trying to look governmental.  (ECF No. 72-5 ("Hendrix
  Dep.") 13:3-7.)

- USEIP volunteers may have carried firearms when going door-to-door, and
  Defendant Smith believes it would have been justified for any USEIP volunteer to
  brandish a firearm "[i]f they were threatened and were trying to defend and protect
  themselves." (ECF No. 72-9 ("Smith Dep.") 219:11-12.)

- Defendants' behavior was intimidating to voters. (Roberts Dec. ¶¶ 12-14.)

Further, experts can, in fact, rely on hearsay or other inadmissible evidence in forming their
opinions.  *See, e.g., United States v. Posey*, 647 F.2d 1048, 1051 n.2 (10th Cir. 1981) ("If of a type
reasonably relied upon by experts in the particular field in forming opinions or inferences upon the
subject, the facts or data [in the particular case upon which an expert bases an opinion or inference]
need not be admissible in evidence."); *Black v. M&W Gear Co.*, 269 F.3d 1220, 1229 (10th Cir.
2001) ("[E]xperts are allowed to base their opinions on otherwise inadmissible evidence if the basis
upon which the evidence would otherwise be considered inadmissible is reliability or relevance
concerns.").   It is not unreasonable, and certainly does not make Professor Ellis' opinion
unreliable, for him to have reviewed publicly available information about Defendants, in
connection with forming his expert opinion, especially in light of the fact that Professor Ellis'

report (and subsequent testimony at trial) will rely on a significant amount of non-hearsay evidence.[1]

Akin to the present case, in *O'Sullivan v. Geico Casualty Company*, defendant Geico sought to exclude plaintiff's expert—an individual with 25 years of experience in the insurance industry— from testifying regarding Geico's handling of plaintiff's claim. 233 F.Supp.3d 917, 925 (D. Colo. 2017). Geico argued that the expert's testimony was not reliable because it "did not consider enough facts to support his opinions" or "link any identified evidence to his conclusions." *Id.* at 925. The court rejected this argument and determined that the expert explained his knowledge of the insurance industry, explained the facts and evidence that he reviewed, and opined as to the ways that Geico's handling of plaintiff's insurance claim varied from the industry standards based on his experience. *Id.* The court held that this method was sufficiently reliable such that his testimony was admissible. Professor Ellis's method is identical to the expert in *O'Sullivan*—he explains his knowledge of the history of voter intimidation and of the applicable statutes, describes the evidence he reviewed, and opines as to whether the evidence of Defendants' conduct amounts to intimidating behavior based upon his knowledge and experience.

Defendants contend that Professor Ellis' testimony makes "logical leaps" that are supported "only by assumptions" and is, therefore, inadmissible. (ECF No. 71 at 9.) In making this argument, Defendants cherry pick only a handful of words and phrases uses by Professor Ellis throughout his

---

[1] In his report, Professor Ellis relies on scholarly articles discussing the issue of voter intimidation to form his opinions. An expert's reliance on such materials are permitted under the applicable law. *Kinser v. Gehl Co.*, 184 F.3d 1259, 1274-75 (10th Cir. 1999) (permitting an expert to rely upon inadmissible documents such as meeting minutes of meetings defendant attended to opine as to whether defendant had knowledge of topics discussed at the meeting); *Black v. M & W Gear Co.*, 269 F.3d 1220, 1228-29 (10th Cir. 2001) (admitting expert testimony that relied upon a scholarly article and stating that an expert is entitled to form opinion based upon an academic article).

report in attempt to downplay the strength of his opinion.  Contrary to Defendants' assertion,

however, Professor Ellis is decisive in his opinions, stating, for example:

- **My opinion is that Defendants engaged in a scheme of voter vigilantism that had the objective and subjective effect of intimidating voters through their rhetoric and their aggressive canvassing**. Their conduct runs the risk of disturbing the balance allowed by voter intimidation laws by depriving voters equal dignity, as well as their trust that their votes will be counted.  (ECF No. 72 Ex. 1 at 24.)

- "This history of violence at the polls from the antebellum era to the present day reveals a culture of voter intimidation that endures in the mindset of persons of color in the United States. How people of color perceive the actions of those who might look to intimidate or persuade cannot—and must not—be detached from the historical context from which these tactics stem from." (ECF No. 72 Ex. 1 at 14.)

- "But what it does represent is a public campaign that seeks to assert by intimidation and accountability of not only the State of Colorado, but also the voters of Colorado as to how they cast their votes and the legitimacy of their election process." (ECF No. 72 Ex. 1 at 30.)

Further, and notably, the language on which Defendants rely in arguing that Professor Ellis'

report relies improperly on assumptions is typical of the language used by other experts.  In fact,

to require Professor Ellis to use *only* definitive statements is illogical and would likely make his

opinion *less* reliable. For example, Defendants take issue with the following phrase: "By doing so

at a voter's home, that person would *likely* feel . . . intimidated."  In using the phrase "likely"

Professor Ellis is not basing his opinions on improper assumptions, but rather assessing, in light

of his expert knowledge of the voter intimidation and its affect on voters, that Defendants'

objectively intimidating behavior would have intimidated many—but possibly not all—targeted

voters.

In any event, the applicable law is clear that an expert witness "may use assumptions in addition

to facts to formulate his opinion, and the use of such assumptions does not make the opinion

inadmissible." *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 2014

WL 4651643, *5 (D. Colo. 2014). In fact, the Tenth Circuit has stated that even the accuracy of an assumption does not affect admissibility of expert testimony under Rule 702; rather, the accuracy of the expert's assumption goes to the weight to be given to the opinion. *United States v. Crabbe*, 556 F.Supp.2d 1217, 1224 (D. Colo. 2008) ("Reliance on assumptions does not necessarily preclude the opinion from having an adequate foundation under Rule 702. The accuracy of the assumption is not at issue for Rule 702 purposes . . . . The accuracy of the assumption is an issue for trial because it affects the weight of the opinion."). Put simply, to the extent Professor Ellis' opinion makes use of assumptions, that simply goes to the weight of the opinion, not to the admissibility of the opinion.

In short, Defendants' have not and cannot demonstrate that Professor Ellis' opinion is unreliable and, therefore, inadmissible.

## II.    Professor Ellis' Testimony Is Relevant to the Issues in the Case.

Rule 702 requires that expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 591. "This condition goes primarily to relevance." More specifically, "the trial court must conduct an inquiry into whether proposed testimony is sufficiently 'relevant to the task at hand.'" *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005) (citing *Daubert*, 509 U.S. at 597). Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "A trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Bitler*, 400 F.3d at 1234.

Defendants contend that Professor Ellis' expert testimony is not relevant to "any factually driven issues of this case" and is, therefore, inadmissible.  (ECF No. 71 at 11-14.)  Defendants position should be rejected. Plaintiffs—through their Complaint—allege that Defendants engaged in illegal voter intimidation in violation of Section 11(b) of the Voting Rights Act and the Ku Klux Klan Act.  To succeed on a claim under Section 11(b), Plaintiffs must show that Defendants: (1) intimidated, threatened, or coerced, or attempted to intimidate threaten or coerce, another person; (2) in connection with voting, attempting to vote, or urging or aiding another to vote.  52 U.S.C. § 10307(b).  "Intimidation means putting a person in fear for the purpose of compelling or deterring his or her conduct." *See League of United Latin Am. Citizens - Richmond Region Council 4614 v. Pub. Interest Legal Found.*, No. 1:18-CV-00423, 2018 WL 3848404, at *4 (E.D. Va. Aug. 13, 2018) ("*LULAC*") (internal quotation marks and citation omitted).  Thus, Section 11(b) and the Ku Klux Klan Act are violated by, among other things, any actual or attempted action by any person to instill fear in connection with one's exercise of the right to vote.  *Daschle v. Thune*, Temporary Restraining Order, Case No. 04-4177 (D.S.D Nov 2, 2004) (finding that the defendants violated Section 11(b) and objectively intimidated Native American voters by following voters from polling places, copying down voters' license plate numbers, and by recording their license plates).  Likewise, to prevail on a claim under the Ku Klux Klan Act, a plaintiff must show: (1) a conspiracy of two or more, (2) to prevent by force, *intimidation*, or threat, (3) any citizen from giving his or her "support or advocacy" to a candidate—in this instance, by voting—for federal office, and (4) an act in furtherance of that conspiracy.  *See LULAC*, 2018 WL 3848404, at *1, 5-6; *see also Kush* v. *Rutledge*, 460 U.S. 719, 724 (1983) (noting that Section 1985(3) "proscribe[s]

conspiracies that interfere with" among other things "the right to support candidates in federal elections").

Professor Ellis' expert testimony is relevant because it will assist the trier of fact in understanding why Defendants' conduct is intimidating, particularly to Colorado voters of color. After discussing the history of voter intimidation in the United States (the backdrop against which the statutes at issue in this action were adopted), Professor Ellis opines on how Defendants' conduct is reminiscent of historic voter intimidation tactics and, as a result, likely to have a chilling effect on a voter's desire to vote, especially if they are a voter of color. Defendants conduct was not undertaken in a vacuum and, therefore, the relevant context (i.e., the history of voter intimidation in Colorado and the United States) provides an important backdrop that can be useful to the trier of fact in evaluating whether Defendants' conduct constitutes illegal voter intimidation in violation of the Voting Right and Ku Klux Klan Acts. The Tenth Circuit has routinely held that such contextual testimony is helpful to the trier of fact and, therefore, admissible under Fed. R. Evid. 702. *See, e.g.*, *United States v. Kamahele*, 748 F.3d 984, 998 (10th Cir. 2014) (allowing expert testimony on a gang's structure, insignia, and history); *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1137 (10th Cir. 2014) (allowing expert testimony on the immigrant smuggling trade generally, including how smuggling operations work, why crossing Border Patrol interior checkpoint is important, and the difficulty of apprehending an undocumented immigrant the further he or she moves away from the border).

Defendants' argument that Professor Ellis' opinion is unfairly prejudicial under Federal Rule of Evidence 403 should also be rejected. Pursuant to Federal Rule of Evidence 403, a court may exclude relevant evidence only if its "probative value is *substantially outweighed* by a danger

of . . . unfair prejudice." Fed. R. Evid. 403 (emphasis added). The court "has considerable discretion in performing the Rule 403 balancing test, but exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." *United States v. Durham*, 902 F.3d 1180, 1224 (10th Cir. 2018) (quoting *United States v. Silva*, 889 F.3d 704, 712 (10th Cir. 2018)). In *Untied States v. Oldman*, for example, the Tenth Circuit reasoned that district courts have discretion to admit graphic photos (including of brutal murders) that aid in illustrating, add relevant detail, or support medical testimony. 979 F.3d 1234, 1250 (10th Cir. 2020) (citations omitted). Put simply, Professor Ellis' opinion is not inadmissible simply because it might evoke an "emotional response" from the trier of fact by making reference to the Ku Klux Klan and associated history of voter intimidation. Further, it unquestionably provides probative value because, as set forth above, it assists the trier of fact in understanding why Defendants' conduct is intimidating to Colorado voters. Defendants have not and cannot demonstrate that Professor Ellis' opinion is inadmissible under Fed. R. Evid. 403.

## CONCLUSION

The purpose of the *Daubert* inquiry is always the same: "To make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1206 (10th Cir. 2002) (quoting *Kumho Tire*, 526 U.S. at 152). Professor Ellis' report demonstrates his extensive knowledge in the area of voter intimidation. Professor Ellis' opinions are based upon his years of studying voter intimidation practices and there is no doubt that his expert opinions withstand the requirements of Rule 702. For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

request to exclude the expert testimony of Professor Atiba Ellis. Plaintiffs do not believe that an

evidentiary hearing is necessary.

Dated:  January 6, 2023                         LATHROP GPM LLP

                                                By */s/Amy Erickson*
                                                Casey Breese (#51448)
                                                Casey.breese@lathropgpm.com
                                                Jean Paul Bradshaw
                                                Jeanpaul.bradshaw@lathropgpm.com
                                                Dion Farganis
                                                Dion.farganis@lathropgpm.com
                                                Reid Day
                                                Reid.day@lathropgpm.com
                                                Brian A. Dillon
                                                Brian.dillon@lathropgpm.com
                                                Amy Erickson (#54710)
                                                Amy.erickson@lathropgpm.com
                                                1515 Wynkoop Street, Suite 600
                                                Denver, CO 80202
                                                Telephone: (720) 931-3200

                                                Courtney Hostetler
                                                chostetler@freespeechforpeople.org
                                                John Bonifaz
                                                jbonifaz@freespeechforpeople.org
                                                Ben Clements
                                                bclements@freespeechforpeople.org
                                                Ron Fein
                                                rfein@freespeechforpeople.org
                                                FREE SPEECH FOR PEOPLE
                                                1320 Centre Street, Suite 405
                                                Newton, MA 02459
                                                Telephone: (617) 249-3015

                                                *ATTORNEYS FOR Plaintiffs Colorado Montana
                                                Wyoming State Area Conference of the NAACP,
                                                League of Women Voters of Colorado, and
                                                Mi Familia Vota*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/Claudia Neal

50230421v2