UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| COLORADO MONTANA WYOMING STATE AREA CONFERENCE OF THE NAACP, LEAGUE OF WOMEN VOTERS OF COLORADO, and MI FAMILIA VOTA,<br><br>Plaintiffs,<br><br>-v-<br><br>UNITED STATES ELECTION INTEGRITY PLAN, SHAWN SMITH, ASHELY EPP, and HOLLY KASUN<br><br>Defendants. | Civil Action No. 1:22-cv-00581-CNS-RNR |

### DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW, Defendants, United States Election Integrity Plan ("USEIP"), Shawn Smith, Ashely Epp, and Holly Kasun (collectively "Defendants") and hereby submit the following Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment ("Response") [ECF 72].

### REPLY CONCERNING UNDISPUTED FACTS

6. Defendants deny that the testimony of Salvador Hernandez, Portia Prescott, and Beth Hendrix does not bind their respective organizations. *Response,* p. 2-3, ¶ 6 n.1 Plaintiffs misquote the Court in *GTE Products Corp. v. Gee*, supplanting Fed.R.Civ.P. 30(b)(1) with 30(b)(6), claiming that an organization can only be deposed via a Rule 30(b)(6) notice. *Response,* ¶ 6n.1. Rather, the party seeking to depose has two choices, either of which can bind an organization's deposition testimony. "The first choice is to notice the deposition of the corporation by a *particular* officer, director, or managing agent **pursuant to Rule 30(b)(1)**, Fed. R. Civ. P." *GTE Products*

1

*Corp. v. Gee,* 115 F.R.D. 67, 68 (D.Mass. 1987) (emphasis added). The second choice is to notice a deposition under Rule 30(b)(6) without specifically naming the officer to be deposed. *Id.* However, under Rule 30(b)(1), only "if the named employee is a director, officer, or managing agent of the corporation, [will] such employee will be regarded as a representative of the corporation." *Moore v. Pyrotech Corp.,* 137 F.R.D. 356, 357 (D. Kan. 1991) (citing *GTE,* 115 F.R.D. at 68). Mr. Hernandez, Ms. Prescott, and Ms. Hendrix's were noticed under Rule 30(b)(1). Each deponent, as a director or officer of their organization, is thus, considered a representative of that organization. *See Response,* ¶¶ 3-5. Therefore, the deposition testimony of Mr. Hernandez, Ms. Prescott, and Ms. Hendrix, noticed under Rule 30(b)(1), binds each organization to that officer's testimony.

15.     Defendants deny that three voters identified by Plaintiffs were contacted, intimidated, coerced, threatened or harassed by USEIP. As an initial matter, two of the three individuals in Plaintiffs' Amended 26(a)(1) disclosures, namely Anne Landman and Yvette Roberts, are residents of Mesa County, Colorado. *Id.* at ¶¶ 16, 18. Despite Plaintiffs' claims and Yvette Roberts' declaration, USEIP did not conduct canvassing efforts in Mesa County. **Exh. 1** (Epp Deposition Transcript at 91:6-92:16; 110:22-112:25; 148:7-150:3); **Exh. 2** (Young Deposition Transcript at 80:17-82:24); **Exh. 3,** *Declaration of Jeffrey Young*; **Exh. 4,** *Declaration of Cory Anderson*. Plaintiffs attempt to impute liability to USEIP with no regard to the fact that are other groups within Colorado that are not managed, directed, or organized by USEIP, conducted similar canvassing efforts. Nevertheless, the actions of third parties cannot impute liability on others having no relation, control, or authority over their actions. *See Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1322 (10th Cir. 2004). Finally, Plaintiffs note that the Colorado Secretary of State and various County Clerks were disclosed and have knowledge regarding Colorado voters who

were intimidated by Defendants. *Response,* p. 5-6. Without producing admissible evidence of these theoretical complaints held by State and County officials, such inadmissible hearsay cannot be used to defeat a motion for summary judgment. *See Adams v. American Guarantee and Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

## RESPONSE CONCERNING DISPUTED FACTS

1. Defendants admit that USEIP was formed in late November 2020 and that its leaders are Holly Kasun, Ashley Epp, Shawn Smith, and Jeff Young. Defendants deny that USEIP was formed because its leaders claim to have seen inexplicable, illogical results in the 2020 election. Rather, USEIP was formed for "finding the truth about our elections, sharing the truth and fixing our elections on the most local level." **Exh. 5,** (USEIP Deposition Transcript, 12:23-13:1)

2. Defendants admit the facts in paragraph 2.

3. Defendants admit the facts in paragraph 3.

4. Defendants admit that USEIP's County and Local Organizing Playbook contains the quoted language in paragraph 4. However, the quoted language in paragraph 4 omits the context of these "statements". *See* **Exh. 1** at 116:16-117:13, 138:4-140:9; **Exh. 6** *Holly Kasun Deposition Transcript*, 80:8-82:7, 103:7-104:20, 107:14-108:7.

5. Defendants deny that Mr. Smith has stated that anyone proven to have been involved in election fraud deserved to hang. Defendants deny that Mr. Smith testified that election fraud always warrants punishment of death. *See* **Exh. 7** (Smith Deposition Transcript, 72:22-74:15)

6. Defendants admit that Mr. Smith testified that he has a duty to investigate voting anomalies.

7. Defendants deny that Mr. Smith's personal view is that of USEIP. Defendants admit that USEIP conducted door-to-door canvassing and encouraged taking photographs of anomalies.

3

8. Defendants admit that Mr. Smith testified that he probably had a concealed weapon during his canvassing efforts. However, Plaintiffs omit the context of Mr. Smith's testimony. **Exh. 7** at 218:18-25. Finally, Mr. Smith stating that volunteers would be justified to brandish a firearm if they were threatened and had to defend themselves is not a material fact bearing any weight on Plaintiffs claims. Plaintiffs have presented no evidence that a voter witnessed a volunteer carrying a weapon, nor has any evidence been produced that a firearm was brandished during canvassing. Plaintiffs' hypothetical question during Mr. Smith's deposition has no basis in fact for the claims in this case. *Id.* at 219:1-18.

9. Defendants admit the facts in paragraph 9.

10. Defendants deny that canvassing efforts were not monitored. Rather, canvassing was conducted and governed at a local level, each county captain provided training to their volunteers. **Exh. 5,** 48:3-49:3; **Exh. 7**, 235:17-236:6.

11. Defendants admit that they have no knowledge of a voter being intimidated. Defendants admit that had any intimidation or confrontation taken place, the incident would have been communicated to local leads and to Defendants. Defendants are only aware of positive interactions with Colorado voters and provided supporting documentation regarding all interactions with Colorado voters[1].

12. Defendants deny that no means of communication are publicized. The USEIP website in paragraph 12 contains links to Telegram, Facebook and GETTR. (*See* https://useip.org/).

---

[1] Defendants produced documentation of each residence canvassed by USEIP's volunteers. This documentation includes the county, precinct, voter ID, and any notes regarding the interaction for *every* voter visited by USEIP. Since this document consists of 8,700 pages, it is not included for purposes of this Reply. However, it provides Plaintiffs with corroborating evidence that there were no notably negative interactions with voters at their homes. *See* **Exh. 3.**

13. Defendants admit the facts in paragraph 13. Further, USEIP also provided training materials to its volunteers outlining the precautions needed to prevent intimidation. *See* **Exh. 8** (bates USEIP 0023, 0024, 0030-32).

14. Defendants admit that they are not lawyers and cannot recite the Voting Rights Act. However, USEIP's training materials provide examples of how volunteers must canvass in a manner that is legal. *Id.*

15. Defendants admit that USEIP is non-partisan. Defendants admit that Ms. Kasun and Ms. Epp did not take any action prior to the 2020 election. However, the political beliefs of the individual defendants bear no relevance to the claims brought in this case.

- Each bullet point under paragraph 15 of the *Response* contains allegations regarding USEIP members' political beliefs, affiliation with certain political parties, and affiliation with certain companies. None of these "facts" create a material dispute as to Plaintiffs' claims.

## STANDARD OF REVIEW

Summary judgment may only be granted if there is no genuine issue of material fact for trial. Fed. R. Civ. P. 56(a). "[A] material fact is evidence advanced by the nonmoving party necessary to those dispositive matters for which it carries the burden of proof. Thus, a material fact is one which might affect the outcome of the dispute under the applicable law." *Ulissey v. Shvartsman,* 61 F.3d 805, 808 (10th Cir. 1995) (internal citations and quotations omitted). "Factual disputes that are irrelevant or unnecessary will not be counted. The substantive law of the case determines which facts are material." *U.S. v. Simons,* 129 F.3d 1386, 1388 (10th Cir. 1997) (internal citation and quotation omitted). To establish the existence of a genuine issue of fact, "[c]onclusory allegations made by a non-movant will not suffice. Instead, sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition

transcript, or a specific exhibit incorporated therein." *Id.* at 1388-89 (internal citations and quotations omitted).

As is the case here, a movant may seek summary judgment "simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim. If the movant carries this initial burden, . . . the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998) (internal citations omitted). Plaintiffs have failed to produce evidence to create a genuine issue of material fact precluding summary judgment. Therefore, Defendants' Motion for Summary Judgment should be granted.

## ARGUMENT
### Plaintiffs fail to establish a genuine issue of material fact for their claims under the Voting Rights Act and the Ku Klux Klan Act

In support of Plaintiffs position that Defendants intimidated or attempted to intimidate voters, Plaintiffs claim that the evidence in the record sufficiently shows that voters were intimidated by Defendants based on the number of houses USEIP volunteers visited, the possibility of carrying concealed firearms, taking photographs during canvassing, and implying association with a governmental entity, coupled with a public statement by Shawn Smith. *Response,* at 14.

First, Plaintiffs' argument that because USEIP canvassed over 9,000 Colorado homes, a voter must have been intimidated is unavailing. Defendants have never denied that USEIP volunteers knocked on voter's doors to verify the information contained on the publicly available voter rolls. However, the sheer number of homes visited does not obviate the need for Plaintiffs to present admissible evidence that a defendant or a volunteer controlled or directed by USEIP intimidated, coerced, threatened, or harassed a voter.

6

Next, Plaintiffs claim that Mr. Smith's testimony regarding his concealed weapon equates to unlawful voter intimidation. Plaintiffs fail to address the entire context of Mr. Smith's testimony whereby he states that *if* he carried a firearm, it was absolutely concealed from any voter and even other volunteers canvassing with him. **Exh. 7,** 218:18-25. Mr. Smith further confirmed that he did not see any USEIP volunteers carry a firearm. *Id.* at 219:3-7. Taking Mr. Smith's testimony out of context, Plaintiffs claim that Mr. Smith endorsed brandishing a firearm during canvassing. Yet, Mr. Smith testified, albeit hypothetically:

> Q: If a USEIP volunteer had brandished a firearm, what would your reaction to that have been?
>
> A: Well, so, I guess, it would depend on the circumstances. If they were threatened and were trying to defend and protect themselves, then my reaction would be, well, it's probably good that you had a firearm. But if they pulled out a firearm for some other purpose that was not a – you know, a legally defensible reason for having and brandishing one, then I would say that's probably not somebody that needs to canvass with us anymore."

*Id.* at 219: 8-18.

Nevertheless, Plaintiffs' hypothetical situation where a USEIP volunteer brandishes a firearm during canvassing, is not evidence supportive of their claims.

Plaintiffs further argue that Defendants taking photographs of voters' homes is considered evidence in support of intimidation. However, Defendants produced all photographs taken of "voters' homes" which were, in reality, not voters' homes. **Exh. 9.** The photographs taken were accompanied by affidavits of the volunteers and depict empty lots or abandoned buildings, not the homes of voters who could feel intimidated by the photography.

Finally, Plaintiffs claim that USEIP volunteers implied that they were associated with a governmental agency. Plaintiffs support this claim with an affidavit by Yvette Roberts who declares that USEIP volunteers undeniably intimidated her during their canvassing efforts. However, as Ms. Roberts states, she is registered to vote and a resident of Grand Junction, Mesa

7

County, Colorado. [Docket No. 73, ¶1-2]. Although Ms. Roberts claims she was intimidated at her home in Mesa County by volunteers of USEIP; USEIP did not conduct canvassing activities in Mesa County. *See* **Exh. 3, Exh. 4.** Moreover, Plaintiffs' use of Ms. Roberts as its sole witness creates additional issues related to the admissibility of such testimony due to Plaintiffs' untimely disclosure of this witness, less than a month before the close of discovery.

Plaintiffs claim that Defendants' canvassing is particularly intimidating because of public statements and public appearances by Defendants. *Response,* p. 14-15. However, Mr. Smith testified at length regarding the context of this statement. Furthermore, when asked whether Mr. Smith's statement prevented the Colorado Secretary of State from voting, Ms. Hendrix responded, "I don't know. I doubt it." **Exh. 10,** 126:17-24. "Plaintiff[s] bear[ ] the burden of providing the evidence to take its claims from a nebulous concern over Defendants' statements, to a likelihood that the named Defendants and those acting in concert with them will intimidate, threaten, coerce, or attempt to intimidate, threaten or coerce, voters." *Ariz. Democratic Party v. Ariz. Republican Party,* No. CV-16-03752-PHX-JJT, 2016 WL 8669978, * 10 (D. Ariz. 2016). Plaintiffs have not met this burden. To the contrary, Defendants' testimony and training materials show that any canvassing of voters was performed in a cordial and lawful manner. *See* **Exh. 8.** Plaintiffs fail to offer evidence proving otherwise.

Next, Plaintiffs note the single member of LWVCO, who was not personally intimidated, stated that others could find such visits intimidating. *Response,* p. 15. Plaintiffs cannot use Ms. Hendrix's recitation of a non-party's statement for its truth, whether in trial or summary judgment. *Adams,* 233 F.3d at 1246. Furthermore, Plaintiffs' reliance on an undisclosed witness' speculation that a voter could be intimidated is insufficient evidence to support their claims.

8

Plaintiffs have failed to present any admissible evidence that a voter was intimidated, coerced, threatened or harassed by Defendants. Without evidence supporting their claims, Plaintiffs cannot rely on the conclusory statements contained in the pleadings, and the hypothetical situations where a voter could have been intimidated. Therefore, summary judgment should be granted for Plaintiffs claims under the Voting Rights Act and the Ku Klux Klan Act.

## II. Prudential Standing

Although Plaintiffs claim the argument regarding their lack of standing is a non-starter, the statutes under which Plaintiffs seek relief prohibit intimidation of "any *person* for voting or attempting to vote" 52 U.S.C. § 10307(b); and "whereby another is . . . deprived of having and exercising any right or privilege of *a citizen of the United States*, the party so injured or deprived may have an action . . ." 42 U.S.C. § 1985(3) (emphasis added). The language of these statutes requires an actual person to be intimidated or otherwise deprived of their rights. The statutes do not seek to vindicate organizations for funds spent counteracting activity, even if such activity was in violation of the statute. Each Plaintiff is a non-profit organization which has no right to vote. "Instead, they assert the right to vote of individuals not even presently identifiable." *Fair Elections Ohio v. Husted,* 770 F.3d 456, 461 (6th Cir. 2014). Because of Plaintiffs' status as organizations, they must satisfy the dual prongs of prudential standing on behalf of their members.

Plaintiffs' argument regarding its close relation to the aggrieved person fails. As previously stated, the single member of LWVCO claims she was not intimidated, and therefore cannot seek relief under a voter intimidation statute. Next, assuming *arguendo* that Ms. Roberts was in fact contacted by Defendants and was intimidated, there is no indicia that Ms. Roberts is a member of a Plaintiff organization. Rather, Ms. Roberts reached out to the Colorado Secretary of State with her concerns. Plaintiffs cannot claim that Ms. Roberts has a close relationship without being a

9

member or otherwise connected to a Plaintiff organization. Plaintiffs made no argument regarding the second prong of prudential standing which requires a hinderance to the true party's ability to protect his or her interest. *See Aid for Women v. Foulston,* 441 F.3d 1101, 1111-1112 (10th Cir. 2006). Therefore, Defendants will not further argue this point.

### III. USEIP's Capacity as an Unincorporated Association

As an initial matter, Plaintiffs argue that "the Tenth Circuit is alone in refusing to treat unincorporated associations as persons for purposes of section 1983." *Response,* p. 18. While this may be true, Plaintiffs brought this case in the Federal District Court of Colorado, which sits in the Tenth Circuit. Therefore, the Tenth Circuit opinion of *Lippoldt v. Cole,* 468 F.3d 1204 (10th Cir. 2006) is binding authority on this Court.

Plaintiffs make the argument that the holding in *Lippoldt* is inapplicable because the unincorporated association was seeking to enforce its rights under § 1983 as a Plaintiff rather than a Defendant. Plaintiffs cite a single case out of the Eighth Circuit where an unincorporated association *defendant* was successfully sued under the § 1985(3). *See Action v. Gannon,* 450 F.2d 1227 (8th Cir. 1971). Plaintiffs fail to note that the unincorporated association defendants in *Action* were sued as a class, unlike defendant USEIP here. *See Gannon v. Action,* 303 F.Supp. 1240, 1242 (E.D. Mo. 1969). Further, although Plaintiffs claim that the holding in *Lippoldt* is inapplicable because it involved a claim under § 1983 of the Civil Rights Act, courts have similarly held that § 1985(3) claims cannot include an unincorporated association. *See National Ass'n for Community Development v. Hodgson,* 356 F.Supp. 1399, 1402 (D.D.C. 1973) (citing *Democratic Nat'l Committee v. McCord,* 356 F.Supp. 1394 (D.D.C. 1972) (overruled on other grounds). The court in *Hodgson* stated that §1985(3) of the Civil Rights Act "has been held only to apply to natural persons, even a corporation is not a person under the civil rights laws, much less an unincorporated

association." *Id.* The exception in Fed.R.Civ.P. 17(b), allowing unincorporated associations to be sued, "could not apply when those laws are the civil rights provisions, since no substantive right can exist for anything other than a natural person." *Id.* Only where the alleged statute protecting a substantive right does "not specifically limit the right to 'persons' but rather say nothing one way or another" may a court allow a party to sue an unincorporated association under the Rule 17(b) exception. *Id.* Using the rationale in *Hodgson,* Plaintiffs cannot sue USEIP as an unincorporated association under either §1985(3) of the Civil Rights Act or § 10307(b) of the Voting Rights Act as both statutes enforce the rights of 'persons'.

WHEREFORE, based upon the foregoing and the arguments set forth in Defendants Motion for Summary Judgment [ECF 70], Defendants respectfully request Summary Judgment on Plaintiffs' claims.

Dated January 6, 2023.

THE REISCH LAW FIRM, LLC

*Jessica L. Hays*
R. Scott Reisch, #26892
Jessica L. Hays, #53905
1490 W. 121st Avenue, Suite 202
Denver, CO 80234
(303) 291-0555
Email: scott@reischlawfirm.com
jessica@reischlawfirm.com
cassandra@reischlawfirm.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT has been electronically served through ECF this 6th day of January, 2023, to all counsel of record.

*s/ Jessica L. Hays*
Jessica L. Hays