UNITED STATES DISTRICT COURT
for the
District of Colorado

| | | |
|---|---|---|
| COLORADO MONTANA WYOMING STATE AREA CONFERENCE OF THE NAACP, LEAGUE OF WOMEN VOTERS OF COLORADO, and MI FAMILIA VOTA | ) ) ) ) ) | Civil Action No. 1:22-cv-00581-CNS-NRN |
| Plaintiffs, | ) ) | |
| -v- | ) ) ) | |
| UNITED STATES ELECTION INTEGRITY PLAN, SHAWN SMITH, ASHELY EPP, and HOLLY KASUN | ) ) ) ) | |
| Defendants. | ) ) | |

---

**DEFENDANTS' RESPONSE TO THE STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA [ECF 74]**

---

COME NOW, Defendants, United States Election Integrity Plan ("USEIP"), Shawn Smith, Ashely Epp, and Holly Kasun, by and through undersigned counsel, and hereby respectfully submit this Response to the Statement of Interest of the United States of America ("Statement") [ECF 74].

## I.    INTRODUCTION

The United States submitted its Statement of Interest regarding the interpretation of Section 11(b) of the Voting Rights Act ("VRA"), 52 U.S.C. § 10307(b). Specifically, the United States argues that the Section 11(b) does not require a showing of intent to intimidate, threaten, or coerce for voting or attempting to vote. *See Statement* at 4-7. Next, the United States argues

1

that purely private parties may bring suit to enforce a violation of Section 11(b) of the VRA. For the reasons set forth below, the Court should reject the arguments and interpretation in the Statement.

## II.    Proof of Subjective Intent

The United States argues that 52 U.S.C § 10307(b) does not require a showing specific intent to intimidate. *Statement* at p. 3-8. Although the express language of the intimidation section of the VRA does not require intent, the underlying violative acts of threats and intimidation require a further step in the intent analysis. The United States relies on the language in *Nat'l Coal. On Black Civil Participation v. Wohl (Wohl)*, 498 F.Supp.3d 457, 480 (S.D.N.Y. 2020), which interpreted "threaten" and "intimidate" to include messages that a reasonable person "familiar with the context of the message would interpret as a threat of injury tending to deter individuals from exercising their voting rights." *Id.* at 477. "Statutes such as the VRA that restrict threatening speech 'must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech." *Id.* at 487 (quoting *Watts v. United States*, 394 U.S. 705, 708 (1969)). The court reasoned that in the context of the First Amendment, "threat" for purposes of the VRA is akin to a true threat, which is not constitutionally protected speech. *Id.* at 478-81. Likewise, the court defined intimidation as, "putting a person in fear *for the purpose of* compelling or deterring his conduct." *Id.* at 480 (quoting *Damon v. Hukowicz*, 964 F.Supp.2d 120, 149 (D. Mass. 2013)) (emphasis added).

The Tenth Circuit has defined a true threat "as 'a declaration of intention, purpose, design, goal, or determination to inflict punishment, loss, or pain on another, or to injure another or his

property by the commission of some unlawful act.'" *Derosier v. Balltrip*, 149 F.Supp.3d 1286, 1293 (10th Cir. 2016) (quoting *Nielander v. Bd. Cty. Comm'rs of Cty. Of Republic, Kan*., 582 F.3d 1155, 1167 (10th Cir. 2009)). Furthermore, "[t]he threat must be made with the intent of placing the victim in fear of bodily harm or death. An intent to threaten is enough; the further intent to carry out the threat is unnecessary." *Id.* at 1294 (internal citations and quotations omitted). Although inconsistent in sister Circuits, the Tenth Circuit concludes that "a defendant can be constitutionally convicted of making a true threat only if the defendant *intended* the recipient of the threat to feel threatened." *U.S. v. Heineman*, 767 F.3d 970, 979 (10th Cir. 2014) (citing *Virginia v. Black*, 538 U.S. 343, 359 (2003)) (emphasis in original).

Likewise, "[i]ntimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the *intent of* placing the victim in fear of bodily harm or death." *Black*, 538 U.S. at 344 (emphasis added). Therefore, the speech giving rise to a VRA violation must be interpreted through the lens of the First Amendment. *Watts*, 394 U.S. at 708. Any threatening or intimidating message that violates the VRA cannot be restricted unless it is not protected by the First Amendment. True threats and intimidation are not protected by the constitution and can be prohibited by the VRA.

The opinion of *Wohl* noted that "[w]hether true threats are only statements that the speaker intended as threats likewise remains unresolved by the Supreme Court." *Wohl*, 498 F.Supp.3d at 480. However, because the Second Circuit, in which the court of *Wohl* sits, has yet to resolve that issue, the court concluded that "whether or not Section 11(b) must be construed as including an intent requirement does not alter the outcome here." *Id*. The unresolved issue of whether a true threat requires intent in the Second Circuit does not bind the Court here, sitting

in the Tenth Circuit. Therefore, while the VRA does not explicitly require a showing of intent to intimidate or threaten, a message considered to be intimidating or threatening can only be restricted by the VRA if is an unprotected "true threat." As the Tenth Circuit demands, a true threat is only one in which the Defendant intended the recipient to feel threatened. *Heinenman*, 767 F.3d at 979.

To the extent intent is not required, the United States argues the conduct must be considered objectively intimidating, threatening or coercive to voters. *See Statement* at p. 6. In each case where subtle forms of intimidation were found to be in violation of the VRA, the message contained some type of "explicit or veiled threat or otherwise coercive language." *Bailey v. Trump*, No. 20-182, 2020 WL 6203556, *4 (E.D. Ky. Oct. 22, 2020)[1]. That is not the case here.

### III.    Private Right of Enforcement

Defendants argued in their Motion for Judgment on the Pleadings [ECF 54], that Plaintiffs, as non-profit organizations, do not have prudential standing to enforce a violation of §

---

[1] *See e.g., Wohl,* 498 F.Supp.3d at 483 (a robocall stating that voter's information would be disclosed to creditors for debt collection, to the CDC for forced vaccination, and to law enforcement to track down old warrants, reasonably put the recipients in fear of adverse consequences.); *League of United Latin American Citizens v. Public Interest Legal Foundation,* No. 18-cv-423, 2018 WL 3848404, *1-4 (E.D. Va. Aug. 13, 2018) (Defendants made a publication which "affirmatively reiterates the accusation that certain voters in a number of Virginia jurisdictions were committing one felony by registering to vote and likely guilty of another felony by actually voting." This publication included the name, address, and phone number of each alleged felon, including the named Plaintiffs. The Court found linking the plaintiffs "names and personal information to a report condemning felonious voter registration in a clear effort to subject the named individuals to public opprobrium[,]" was sufficient to support an 11(b) claim.); *U.S. v. Tan Duc Nguyen,* 673 F.3d 1259, 1265 (9th Cir. 2012) (finding sufficient intimidation and threat in a letter sent to foreign-born individuals that "warned recipients that if they voted in the upcoming election their personal information would be collected by a 'new computer system,' and that this information could be provided to organizations who are 'against immigration.'"); *Daschle v. Thune,* No. 04-cv-4177, ECF No. 6 (D.S.D. Nov. 2, 2004) (Defendants assembled at polling places and followed Native American voters "ostentatiously making noises" at them, speaking loudly about Native Americans who were prosecuted for illegally voting, and taking photographs of the voters' license plates as they left the polling place. The Court found this was sufficiently intimidating in violation of the VRA.)

10307(b) based on the statutory text and its interpretation in other jurisdictions. The United States argues that the text, structure, and context of Section 11(b) implies a private right of action to citizens to secure their own rights. *See Statement* at 7-13.

The United States is correct in that § 5 and § 10 of the VRA have binding precedent allowing a private right of action. *See Allen v. State Bd. Of Elections*, 393 U.S. 544 (1969) (creating a private right of action to enforce § 5 of the Voting Rights Act); *Morse v. Republican Party of Virginia*, 517 U.S. 186 (1996) (creating a private right of action to enforce § 10 of Voting Rights Act which prohibits a poll tax). However, the Supreme Court has now made it clear that judicially implied rights of action are extremely disfavored through the opinion of *Alexander v. Sandoval*, and its progeny. *Alexander v. Sandoval*, 532 U.S. 275 (2001). As noted by the United States, a two-part test is determinative on whether Congress intended to create a private right of action to enforce a federal law. *Id.* at 286. "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* (citing *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979)). Without congressional intent to create a private right *and* private remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87 (internal citations omitted).

A private cause of action may be provided through the statute's express terms. "Other federal statutes, however, merely define rights and duties, and are silent on the issue of whether an individual may bring suits to enforce them. For statutes in this latter category . . . courts

5

have held that 'implied' private rights of action may exist subject to statutory interpretation." *Landegger v. Cohen*, 5 F.Supp.3d 1278, 1284 (D. Colo. 2013).

When the language of the statute focuses on limiting the actions of a person or class, rather than protecting a benefited class, "the question whether Congress intended to create a federal right is answered in the negative." *Qwest Corp. v. City of Santa Fe, New Mexico*, 380 F.3d 1258, 1265 (10th Cir. 2004) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002)).

The United States argues that § 10307(b) of the VRA undeniably contains rights-creating language. *Statement* at p. 9. In its view, this section of the VRA "grants individuals a right to be free from intimidation, threats, and coercion in the context of voting" and "delineates the beneficiaries of the provision" to anyone who is taking an "action necessary to make a vote effective is entitled to be free from" such intimidation, threats, or coercion. *Id.* at 10 (citing 52 U.S.C. § 10310(c)(1)). This conclusion, however, ignores much of the language and purpose of § 10307(b).

The statutory language of this provision is intended to prevent individuals, "whether acting under color of law or otherwise" from actually or attempting to intimidate, threaten or coerce voters. 52 U.S.C. § 10307(b). Similar language in the context of HIPPA and ACAA violations have been interpreted as having no rights-creating language. *University of Colo. Hosp. v. Denver Pub. Co.*, 340 F.Supp.2d 1142, 1144-45 (D. Colo. 2004) (citations omitted) ("The statutory provision . . . prohibits a person from knowingly obtaining or disclosing individually identifiable health information. . . [This statute] does not focus on individuals whose privacy may be at risk, but instead on regulating persons who might have access to individuals' health information. Additionally, the language in [this statute] mirrors that

customarily appearing in criminal statutes, and thus creates little reason to infer a private remedy."); *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1268-70 (10th Cir. 2004) (Plaintiff "contends that the statute contains rights-creating language: an air carrier 'may not discriminate.' She contends that 'the focus of the statute is on the individual with the disability.'" However, applying the revised standard in *Sandoval* and its progeny, the Court found that "Congress established an administrative enforcement scheme for violations of the ACAA" giving individuals the authorization to file complaints with the Secretary of Transportation. "Here, Congress's creation of specific means of enforcing the statute indicates that it did not intend to allow an additional remedy—a private right of action—that it did not expressly mention at all.")

With respect to § 10307(b), the focus of the statute is to prohibit a person from intimidating, threatening or coercing a person who is voting. "As the Supreme Court has made clear, 'the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.' Rather, determining whether a private right of action should be implied requires discerning Congress' intent." *Southwest Air Ambulance, Inc. v. City of Las Cruces*, 268 F.3d 1162, 1169 (10th Cir. 2001) (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)). As noted in *University of Colo. Hosp.*, language mirrored in a criminal statute is indicative of creating no private right of action. *University of Colo. Hosp.*, 340 F.Supp.2d at 1145. The criminal counterpart relevant here is 52 U.S.C. § 20511(1) which states:

> "A person . . . who in any election for Federal office—(1) knowingly and willfully intimidates, threatens, or coerces, or attempts to intimidate, threaten, or coerce, any person for (A) registering to vote, or voting, or attempting to vote; (B) urging or

aiding any person to register to vote, to vote, or to attempt to register to vote; or (C) exercising any right under this chapter."

The language in the criminal counterpart is nearly verbatim to the language of § 10307(b), which weighs in favor of finding no private right of action. Accordingly, based upon the statutory interpretation principles of *Sandoval* and cases within the Tenth Circuit, § 10307(b) of the VRA does not have rights-creating language in favor of finding a private right of action.

Nevertheless, "even where a statute is phrased in such explicit rights-creating terms, a plaintiff suing under an implied right of action must show that the statue manifests an intent 'to create not just a private *right* but also a private *remedy*.'" *Gonzaga*, 536 U.S. at 284 (quoting *Sandoval*, 532 U.S. at 286)). In the context of the VRA, Congress established penalties for its violation including criminal and civil sanctions. 52 U.S.C. § 10308. "[I]t is an elemental canon of statutory construction that where a statue expressly provides a particular remedy or remedies, a court must be chary of reading others into it. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Transamerica Mortg. Advisors, Inc.*, 444 U.S. at 19-20 (1979) (citations and quotation omitted). If a Plaintiff alleges violations of § 10307(b), they "may avail themselves of the full panoply of administrative remedies offered under the Act." *Southwest Air Ambulance*, 268 F.3d at 1172.

The greatest issue in the United States' argument is that Congress included § 10308, which defines the procedure for pursuing criminal and civil sanctions for violations of the Act. Plaintiffs in this case brought suit for alleged violations of 52 U.S.C. § 10307(b). [ECF 1, ¶¶ 39-46]. § 10308(d) of the VRA provides the only remedy for a violation of § 10307(b) stating:

> Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section . . . 10307 of this title, . . . the Attorney General may institute for the United States, or in the name of the United State, and action for preventive relief, including an application for temporary or permanent injunction, restraining order, or other order . . .

The remainder of § 10308 provides no other remedy for a violation of § 10307(b), but rather explicitly excludes this section. The language of § 10308(d) only authorizes the Attorney General to seek preliminary injunction and mentions no private right of action for a violation of §10307(b), which strongly suggests that Congress intended to preclude other methods of enforcement. *See Sandoval*, 531 U.S. at 290.

The United States points to 52 U.S.C. § 10302(a), (c), which provides remedies for actions brought by "the Attorney General or an aggrieved person . . . under any statute to enforce the voting guarantees of the fourteenth and fifteenth amendment." *See Statement* at 11. The United States, however, does not take this analysis to the conclusion that a violation of the fourteenth and fifteenth amendment necessarily applies to the *government's* interference with a private person's constitutional guarantees, and therefore would include a private right of action. "The VRA, as amended, clearly expresses an intent to allow private parties to *sue the States.* The language of § 2 and § 3, read together, imposes direct liability on the States for discrimination in voting and explicitly provides remedies to private parties to address violations under the statute." *Alabama State Conference of NAACP v. Alabama*, 949 F.3d 647, 652 (11th Cir. 2020) (dismissed as moot). "The fourteenth amendment protects the individual against state action, not against wrongs done by individuals." *U.S. v. Williams*, 341 U.S. 70, 92 (1951) (internal citations omitted). Similarly, the fifteenth amendment "relates solely to action 'by the United States or by any

state,' and does not contemplate wrongful individual acts." *James v. Bowman*, 190 U.S. 127, 135 (1903).

While the United States may argue, and is correct, that violations of the fourteenth and fifteenth amendment guarantees allow a private party to sue the State or government for violations; the same cannot be said for private actions alleged to be in violation of such constitutional guarantees.[2] Taking the United States' position would expand constitutional violations under the fourteenth and fifteenth amendments to purely private actions, disregarding a century of jurisprudence. The provisions of the VRA with binding precedence implying a private right of action, seek to regulate conduct of state actors[3].

---

[2] The United States cites the Senate Report which evinces Congress' intent to allow private suits. However, the Senate Report explicitly amends § 3 of the VRA, as amended 52 U.S.C. §10302. S. Rep. No. 94-295, at 40 (1975) ("Senate Report"). In full, the Senate Report States, "Under the current provisions of Section 3, whenever the Attorney General has instituted a proceeding to enforce the guarantees of the 15th Amendment, the court may authorize appointment of Federal examiners, may suspend the use of literacy tests and other similar devices, and may impose preclearance restrictions on all changes relating to voting or election processes. The amendment proposed . . . would authorize courts to grant similar relief to private parties." *Id.*

Similarly, the United States points to several District Court cases which find a private right of action under Section 11(b) of the VRA. *Statement,* at p. 8. While none of these opinions are binding on this Court, many of these opinions provide little to no analysis regarding the private right of actions, merely concluding that one exists. The sole opinion cited by the United States which offers an extensive analysis allowing private parties to bring a Section 11(b) action is *Michigan Welfare Rts. Org. v. Trump,* No. 22-cv-1823, 2022 WL 990704, at * 1 (D.D.C. Apr. 1, 2022). This case can be distinguished from the facts here because the private party brought the claim against implicit government actors, namely Donald J. Trump, the Trump Campaign, and the Republican National Committee. *Id.*

[3] It is well established that violations of the constitutional provisions the VRA "is designed to implement, applies to all entities having power over any aspect of the electoral process within designated jurisdictions." *Morse v. Republican Party of Virginia,* 517 U.S. 186, 204 (1996). However, violations of the constitutional provisions require the defendant to act "under authority explicitly or implicitly delegated by the State when they carried out the challenged actions." *Id.* at 223. "The Voting Rights Act was aimed at the subtle, as well as the obvious, state regulations which have the effect of denying citizens their right to vote because of their race." *Allen,* 393 U.S. at 565.

Moreover, "[t]he fact that a federal statue does not give rise to an implied private right of action does not necessarily mean that a statutory violation cannot be remedied through a [civil rights] action." *Id.* at 1172-73. Relevant here, Plaintiffs seek relief under the VRA *and* 42 U.S.C. § 1985(3), of the Civil Rights Act. [ECF No. 1, ¶¶ 47-51]. "Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Great American Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979). The Civil Rights Act undeniably provides for a private right of action and private remedy, stating:

> [I]f two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner . . . or to injure any citizen in person or property in account of such advocacy . . . *the party so injured or deprived* may have an action for recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3) (emphasis added).

The Civil Rights Act, including §1985(3) and § 1983, is "available to enforce violation of federal statutes." *Wright v. City of Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423 (1987). The availability of this remedy is foreclosed where the underlying statute has a "comprehensive remedial scheme provided by Congress, a scheme that itself provide[s] for private actions and [leaves] no room for additional private remedies." *Id.* The section of the VRA at issue here does not provide a comprehensive remedial scheme for private remedies. Rather, it leaves enforcement solely to the Attorney General. It is the Civil Rights Act, not the Voting Rights Act, which grants the right for private individuals to seek civil remedies.

## IV.    CONCLUSION

Only when speech is not protected by the First Amendment, such as true threats, can it be restricted by the VRA. True threats and intimidation, as interpreted by the Tenth Circuit, require a showing that the Defendant intended to place the victim in fear. While intent is not explicitly written into § 10307(b) of the VRA, the underlying acts of intimidation and threat through the lens of the First Amendment require a showing of intent.

Next, the United States argues that private parties may sue to enforce a Section 11(b) violation of the VRA. Statutory interpretation governs the inquiry of whether Congress implied a private right of action and private remedy. Section 11(b) has language which focuses on the person regulated, not the person protected, and is mirrored in its criminal counterpart. This factor weighs in favor of finding no private right of action. Furthermore, Congress included § 10308, which defines the remedies available for a VRA violation. The inclusion of certain remedies is indicative of Congressional intent to exclude others. This language also weighs in favor of finding no implied private remedy under the statute. Finally, the Civil Rights Act provides a private cause of action and private remedies for violations of federal statutes. Even though the Civil Rights Act itself does not create substantive rights, it does, however, give private remedies to an aggrieved person whose rights were violated.

WHEREFORE, based upon the foregoing, Defendants respectfully request that the United States' arguments and interpretation be rejected.

Dated this 16th day of January, 2023.

*s/ Jessica L. Hays*
R. Scott Reisch, #26892
Jessica L. Hays, #53905
THE REISCH LAW FIRM, LLC
1490 W. 121st Avenue, #202
Denver, CO 80234
(303) 291-0555
Email: scott@reischlawfirm.com
jessica@reischlawfirm.com
cassandra@reischlawfirm.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **DEFENDANTS' RESPONSE TO THE STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA [ECF 74]** has been electronically served through ECF this 16th day of January, 2023, to all counsel of record.

*s/ Jessica L. Hays*
Jessica L. Hays
