UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| COLORADO MONTANA WYOMING STATE AREA CONFERENCE OF THE NAACP, LEAGUE OF WOMEN VOTERS OF COLORADO, and MI FAMILIA VOTA<br><br>Plaintiffs,<br><br>-v-<br><br>UNITED STATES ELECTION INTEGRITY PLAN, SHAWN SMITH, ASHELY EPP, and HOLLY KASUN<br><br>Defendants. | Civil Action No. 1:22-cv-00581-CNS-NRN |

**REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTION TO THE PROPOSED TESTIMONY OF PROFESSOR ATIBA ELLIS [ECF No. 75]**

COME NOW, Defendants, United States Election Integrity Plan ("USEIP"), Shawn Smith, Ashely Epp, and Holly Kasun, by and through undersigned counsel, and hereby submit their Reply to Plaintiffs' Response to Defendants' Objection to the Proposed Testimony of Professor Atiba Ellis ("Response") [ECF No. 75].

I.  **INTRODUCTION**

Plaintiffs argue that the proposed expert opinion of Professor Ellis is reliable and relevant and therefore should not be excluded under the "liberal standard of admissibility" governing expert testimony. [ECF 75, p. 3]. Despite this liberal standard, the admission of expert testimony is not unfettered, and the burden lies on the proponent of the expert testimony to show that the testimony

1

is admissible. *U.S. v. Nacchio,* 555 F.3d 1234, 1241 (10th Cir. 2009). Plaintiffs have not met this burden, and therefore, the proposed expert testimony should be excluded.

## II. ARGUMENT

### A. Reliability

Plaintiffs contend that the expert opinion is not based entirely on inadmissible evidence, noting that the expert cites to the USEIP Playbook and a statement by Defendant Smith. *Response,* at 4. Plaintiffs further state that the report does not cite to all of the admissible evidence to be presented at trial. *Id.* at 5. The standard governing whether an expert's use of inadmissible evidence to form their opinion requires that "the information relied on must be of a type reasonably relied on by other experts in the field." *U.S. v. Affleck,* 776 F.2d 1251, 1457 (10th Cir. 1985).

Yet, "the *ipse dixit* of an expert, no matter how qualified he may be, is never enough to guarantee him a ticket to admissibility." *Graves v. Mazda Motor Corp.*, 405 Fed.App'x. 296, 300 (10th Cir. 2010). Since "experience is not a methodology" an expert opinion "must have a traceable, analytical basis in objective fact." *Troudt v. Oracle Corp.*, 369 F.Supp.3d 1134, 1139 (D. Colo. 2019). Plaintiffs analogize their expert's opinion to that of *O'Sullivan v. Geico Casualty Co.*, whereby the expert opinion was deemed reliable and admitted. 233 F.Supp.3d 917, 925 (D. Colo. 2017).

Plaintiffs state that "Professor Ellis's method is identical to the expert in *O'Sullivan*—he explains his knowledge of the history of voter intimidation and of the applicable statutes, describes the evidence he reviewed, and opines as to whether the evidence of Defendants' conduct amounts to intimidating behavior based upon his knowledge and experience." *Response,* at 6. While this general methodology may be similar to other expert's methodology, the expert must nevertheless

2

explain *how* the facts support his conclusion. *O'Sullivan,* 233 F.Supp.3d at 927. "Specifically, although [the expert] makes factual 'observations' based on the evidence and cites authorities ostensibly reflecting. . .industry standards, his conclusions do not clearly apply those standards to the facts. . . Instead, many of his opinions reflect his own interpretations of the evidence— interpretations that are both unhelpful to the jury, which is capable of interpreting the evidence without expert assistance, and unsupported." *TBL Collectibles, Inc. v. Owners Insurance Co.*, 285 F.Supp.3d 1170, 1190 (D. Colo. 2018). Professor Ellis appears to reach his conclusion that Defendants' actions are intimidating by comparing them to the history of voter intimidation. However, he is "required to 'explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Id.* at 1191 (quoting *U.S. v. Fredette*, 315 F.3d 1235, 1240 (10th Cir. 2003)).

Here, Professor Ellis provides his interpretation of the USEIP Playbook and Shawn Smith's statement, concluding that "while Defendants seek to mask the campaign as an innocuous search for the truth, the reality is that their efforts are public, they are announced as a 'return to the old ways' of intimidation, and threat." [ECF No. 72, Ex. 1 at 31]. However, Professor Ellis's interpretation is purely speculative and is not grounded in a specific factual observation. *See O'Sullivan*, 233 F.Supp.3d at 927 ("Speculative opinions surmising what 'may' have motivated Geico's decisions, or what facts 'possibly' led to Geico's actions will be excluded. Nothing in the record reflects that [the expert] has knowledge of the motivations or basis of Geico's actions.") "It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Goebel v. Denver & Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000).

Plaintiffs further note that the expert report does not summarize or cite to all admissible evidence to be presented at trial. *Response,* at 4-5. However, while Plaintiffs may submit additional evidence, an expert is bound by the disclosure requirements of Fed.R.Civ.P. 26(a)(2). For instance, Professor Ellis cannot use the facts of Yvette Roberts' declaration in support of his conclusion since these facts were not disclosed as "facts or data considered by the witness." Fed.R.Civ.P. 26(a)(2)(B)(ii). Plaintiffs likewise state that "in his report, Professor Ellis relies on scholarly articles discussing the issue of voter intimidation to form his opinions." *Response,* at 6, n.1. Defendants do not object to section I and II on the basis of reliability. In these sections, Professor Ellis uses reliable sources that could reasonably be used to form an admissible expert opinion. Rather, Defendants object to the use of unreliable hearsay sources in section III which give rise to nearly all of the "facts" the expert uses to conclude that Defendants were intimidating.

Plaintiffs offer no argument that political opinion articles are the type which experts in the field use to base their opinions. Rather, Plaintiffs merely state that "[i]t is not unreasonable, and certainly does not make Professor Ellis' opinion unreliable, for him to have reviewed publicly available information about Defendants, in connection with forming his expert opinion, especially in light of the fact that Professor Ellis' report (and subsequent testimony at trial) will rely on a significant amount of non-hearsay evidence." *Response,* at 5-6.

Giving rise to the facts which make up Professor Ellis' opinion, only a single article notes the name of a witness. *See* ECF No. 72, Ex. 1 at 27 n.75. However, the article only notes that the voter's name is Michelle Garcia, living in Pueblo, Colorado. There is no indication that Professor Ellis spoke with Michelle Garcia, received any additional factual information from Michelle Garcia, or conducted additional investigation beyond reading the article. It is "difficult to believe

4

that a qualified expert could credibly testify that anonymous online comments are the type of evidence that is typically relied upon by an expert in their field," *Auraria Student Housing at the Regency, LLC v. Campus Village Apartments, LLC,* No. 10-cv-2516, 2014 WL 4651643, *7 (D. Colo. Sept. 18, 2014). These type of, "[o]nline comments . . . are inherently unreliable. Defendant[s] have no way of testing who made the comments, the bases for these comments, or even verifying that these comments were not made by Plaintiff or its representatives." *Id.* Plaintiffs cannot use their expert as a conduit for admitting hearsay within hearsay statements of unidentified witnesses. *See U.S. v. Pablo*, 696 F.3d 1280, 1288 (10th Cir. 2012). "[W]hen an expert opinion is based on personal information of a hearsay nature the opinion lacks a proper foundation." *Clifton v. Mangum*, 366 F.2d 250, 253 (10th Cir. 1966).

Next, Plaintiffs argue that an expert's opinion need not be stated in definitive terms and claim that his opinion is not based on improper assumptions. *Response* at 7-8. Plaintiffs are correct in that an expert's "reliance on assumptions does not necessarily preclude the opinion" in all cases. *U.S. v. Crabbe*, 556 F.Supp.2d 1217, 1224 (D. Colo. 2008). However, "[t]he accuracy of the assumption is not at issue for Rule 702 purposes, but the importance of the assumption may be." *Id.* When "the assumed fact [is] so critical to the methodology that the witness' failure to ascertain the *actual* fact would render the application of the facts to the methodology unreliable; in such circumstances, the opinion would fail under Rule 702." *Id.* Professor Ellis' ultimate opinion that USEIP canvassing was conducted in an aggressive manner, that firearms were brandished, and that canvassers wore official-seeming badges are all assumptions based on unreliable articles. Without these assumptions, the opinion is limited only to Professor Ellis' interpretation of the USEIP Playbook and the history of voter intimidation. These facts are not so "peripheral to the

5

analytical process"; rather, these assumed facts give rise to the expert's ultimate opinion and the substance of the articles must be assumed as true for Professor Ellis' methodology to be accurately applied. *Id.*

### B. RELEVANCY

Plaintiffs argue that "Professor Ellis' testimony is relevant because it will assist the trier of fact in understanding why Defendants' conduct is intimidating, particularly to Colorado voters of color." *Response* at 10. Plaintiffs contend that the contextual backdrop "can be useful to the trier of fact in evaluating whether Defendants' conduct constitutes illegal voter intimidation." *Id.* The greatest flaw in Plaintiffs' argument is that an expert may not "define the legal parameters within which the jury must exercise its fact-finding function." *Specht v. Jensen*, 853 F.2d 805, 809-810 (10th Cir. 1988).

As an initial matter, Professor Ellis is an attorney expert witness. "[T]he jury may believe the attorney-witness, who is presented to them imbued with all the mystique inherent in the title 'expert,' is more knowledgeable than the judge in a given area of the law. . . Thus, there is a substantial danger the jury simply adopted the expert's conclusions rather than making its own decision." *Id.* at 809 (citing *Marx & Co. v. Diners' Club Inc.,* 550 F.2d 505, 512 (2nd Cir. 1977)). Unlike other expert witnesses, the testimony of a legal expert runs the risk of usurping the function of the court. *Id.* at 810. As Plaintiffs concede, Professor Ellis' testimony is for the purpose of articulating "why Defendants' conduct is intimidating." *Response* at 10.

Professor Ellis does not merely "refer to the law in expressing [his] opinion." *Specht*, 853 F.2d at 809. Instead, the opinion recites the legal standards of voter intimidation and expresses his belief that Defendants' conduct is impermissible voter intimidation. *See TBL Collectibles, Inc.*,

6

285 F.Supp.3d at 1184. While an expert may testify "about his understanding of the law and how it impacts his understanding of the standards that govern" an expert may not testify "about the holding in a particular case and [apply] the rule of that case to the facts at issue here." *King v. Allstate Ins. Co.*, No. 11-cv-103, 2013 WL 3943607, *5 (D. Colo. July 31, 2013).

For purposes of Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b), "[d]etermining what constitutes intimidation is left to the courts, as that term is not defined in the statute." *Ariz. Alliance for Retired Americans v. Clean Elections USA*, No. cv-22-1823, 2022 WL 15678694, *3 (D. Ariz. Oct. 28, 2022). Moreover, Rule 702(a) "does not permit an expert witness to opine on conclusions of law, such as statutory interpretation, which are the sole province of the Court." *In re Grupo Unidos Por El Canal, S.A.,* No. 14-mc-226, 2015 WL 1810135, * 3 (D. Colo. April 17, 2015).

Professor Ellis makes the following impermissible legal conclusions:

- "Based on the foregoing historical and policy background, this report will now . . . address the Defendants' stated purpose for their conduct, but then analyze that purpose considering the evidence on the record to demonstrate that Defendants' conduct actually constitutes illegal voter intimidation." [ECF No. 72, Ex. 1 at 23]

- "My opinion is that Defendants engaged in a scheme of voter vigilantism that had the objective and subjective effect of intimidating voters through their rhetoric and their aggressive canvassing. Their conduct runs the risk of disturbing the balance allowed by voter intimidation laws by depriving voters equal dignity, as well as their trust that their votes will be counted." *Id.* at 24.

- "While Defendants seek to mask the campaign as an innocuous search for the truth, the reality is that their efforts are public, they are announced as a 'return to the old ways' of intimidation and threat, and that, according to publicly available evidence of their bullying and pushiness, they seek to intimidate and coerce the truth about voting." *Id.* at 31

- "This is the kind of intimidation that anti-voter intimidation laws were meant to prevent." *Id.*

7

- "This is chilling the right to vote by deception, which is no less voter intimidation than cajoling someone from voting by violence." *Id.* at 32.

- "Whether it is feeling that their vote is worthless, or feeling that they should stay away from voting, when accompanied by a threat or a deception, voter intimidation statutes seek to allay this kind of threat." *Id.*

- "In this sense, USEIP operatives who approach homes of voters of African American or Latino decent, and then are questioned with regard to their voting practices, may well be the subject of voter intimidation in violation of the United States Code." *Id.* at 33.

- "Defendants' tactics of voter vigilantism appear to replicate the voter intimidation activities that have happened in every era of American history, including our own, and therefore should be subject to heightened scrutiny of this Court" *Id.*

Plaintiffs further argue that Professor Ellis' testimony survives the balancing test under Fed.R.Evid. 403, because it provides probative value in assisting "the trier of fact in understanding why Defendants' conduct is intimidating to Colorado voters." *Response,* at 11. Plaintiffs cite to *United States v. Oldman*, as an example where graphic photos were permitted to support medical testimony. 979 F.3d 1234, 1250 (10th Cir. 2020). However, Professor Ellis' "opinion testimony not only relates to a wholly different type of expertise, but is serves an entirely different purpose in this case. [The expert's] opinions do not explain evidence which will be before the jury that it otherwise could not understand, such as drug paraphernalia, gang practices, or some technical matter." *Muller v. Swift,* No. 15-cv-1974, 2017 WL 3175804, *5 (D. Colo. July 21, 2017). The jury in this case is tasked with the straightforward question of what happened and whether the evidence shows that a voter was intimidated or threatened. Professor Ellis' opinion of "why it happened, and whether what occurred in this case was or was not consistent with alleged broader societal patterns" is of no help to the jury. *Id.* The potential probative value of Professor Ellis' opinion is very slight. Professor Ellis has no personal knowledge of what Defendants did or did

8

not do. "Ultimately, the existence of broader social patterns has little to do with how the parties actually acted, or failed to act, in the date in question." *Id.* at *7 (citation omitted).

Professor Ellis' opinion also creates a substantial risk of prejudice and of confusing the issues at trial. Fed.R.Evid. 403. His "opinion would be tantamount to characterizing [Defendants] as someone who had the motives and characteristics typical of" a voter vigilante group. *Muller,* 2017 WL 3175804 at *7. Unfair prejudice is an even greater concern when the expert is giving ultimate opinions of the law. "Thus, there is a substantial danger the jury simply adopt[s] the expert's conclusions rather than making its own decision. Notwithstanding any subsequent disclaimer by the witness that the court's instructions would govern, a practical and experienced view of the trial world strongly suggests the jury's deliberation [would be] unduly prejudiced by the expert's testimony." *Specht*, 853 F.2d at 809. Not only do Professor Ellis' legal opinions create a grave risk of prejudice; his explanation of the violent history of voter intimidation creates both prejudice and a confusion of the issues. This type of comparison "tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and punish the bad . . .despite what the evidence in the case shows actually happened." Fed.R.Evid. 404, Advisory Committee Notes to 1972 Proposed Rule.

### III.   CONCLUSION

Professor Ellis' proposed expert opinion should not be admitted based upon the standards governing expert admissibility. Professor Ellis bases his conclusions on his own interpretation of the evidence, merely surmising what Defendants intended and how voters may have felt. The factual basis for his opinion arises from speculation of what Defendants may have done based upon political articles found on the internet. To reach his conclusion that Defendants approached

9

voters in an aggressive manner, brandished firearms, and portrayed association with the government requires accepting hearsay statements as true, which lacks the proper foundation under Rule 702. There is no indication that Professor Ellis took steps to verify the information contained in the hearsay articles; nor could he, since the online articles contain little to no identifying information as to who made the claims. Professor Ellis' methodology in comparing the history of voter intimidation to his interpretation of inadmissible factual allegations is impermissible under Rule 702.

Moreover, Professor Ellis' expert opinion must be excluded on the grounds that he is defining the law of the case; usurping the Judge's role of defining legal standards and the jury's role in applying the facts to the law. Professor Ellis' opinion states what the law of voter intimidation is, based upon his statutory interpretation, and applies inadmissible facts to the law concluding that Defendants actions were intimidating to voters and in violation of the relevant statutes. His analysis leaves nothing for the jury to decide. The jury is tasked with interpreting the evidence presented and determining whether Defendants actions were intimidating to voters. Assuming Plaintiffs can present evidence that a voter felt intimidated, the jury is able to understand and evaluate this evidence without the specialized knowledge of a voter intimidation historian. Furthermore, Professor Ellis' legal conclusions create a substantial risk of prejudice because the jury may merely adopt his opinion rather than making its own determination. Based upon the foregoing, Plaintiffs' expert opinion is inadmissible under Rules 702, 703, and 403.

WHEREFORE, Defendants respectfully request that this Honorable Court exclude the opinion of Professor Atiba Ellis.

Dated this 20th day of January, 2023.

*s/ Jessica L. Hays*
R. Scott Reisch, #26892
Jessica L. Hays, #53905
THE REISCH LAW FIRM, LLC
1490 W. 121st Avenue, #202
Denver, CO 80234
(303) 291-0555
Email: scott@reischlawfirm.com
jessica@reischlawfirm.com
cassandra@reischlawfirm.com
*Attorneys for Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTION TO THE PROPOSED TESTIMONY OF PROFESSOR ATIBA ELLIS (ECF No. 75)** has been electronically served through ECF this 20th day of January, 2023, to all counsel of record.

*s/ Jessica L. Hays*
Jessica L. Hays
