IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-00581-CNS

COLORADO MONTANA WYOMING STATE AREA CONFERENCE OF THE NAACP,
LEAGUE OF WOMEN VOTERS OF COLORADO,
MI FAMILIA VOTA,

    Plaintiffs,

v.

UNITED STATES ELECTION INTEGRITY PLAN,
SHAWN SMITH,
ASHLEY EPP, and
HOLLY KASUN,

    Defendants.

## ORDER

Before the Court is Defendants' (1) Motion for Judgment on the Pleadings and (2) Motion for Summary Judgment. (ECF Nos. 54, 70). The Court DENIES the motion for judgment on the pleadings and DENIES IN PART and GRANTS IN PART the motion for summary judgment for the following reasons.

### I. FACTS

Plaintiffs are civil- and voting-rights organizations who have filed this civil action against Defendants, raising three claims for relief: (1) intimidating voters and potential voters in violation of 52 U.S.C. § 10307(b); (2) attempting to intimidate voters and potential voters in violation of 52 U.S.C. § 10307(b); and (3) violation of 42 U.S.C. § 1985. (ECF No. 1, pp. 12-13). On April 4,

1

2022, Defendants moved to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), which Chief Judge Brimmer denied on April 28, 2022. (ECF No. 39). Specifically, the Court determined that each Plaintiff had organizational standing under Article III and had sufficiently alleged that Defendants' conduct had caused Plaintiffs a redressable injury. The Court noted that Defendants did not argue that Plaintiffs lacked associational standing and would not analyze the issue because it had determined that each Plaintiff had organizational standing. (ECF No. 39, p. 19). Furthermore, the Court determined that neither party had raised the issue of prudential standing and declined to exercise its discretion to consider the issue. (*Id.*, p. 20).

In the instant motion, Defendants move for judgment on the pleadings and summary judgment under Federal Rules of Civil Procedure 12(c) and 56. (ECF Nos. 54, 70). In their motion for judgment on the pleadings, Defendants argue that (1) Plaintiffs lack prudential or statutory standing to pursue claims 1 and 2 in the Complaint and (2) Plaintiffs might have statutory standing for claim 3, but fail to state a claim because there is no State involvement or invidious discriminatory animus. (ECF No. 54, pp. 3-4). Defendants similarly argue in their motion for summary judgment that: (1) Plaintiffs' claims under 52 U.S.C. § 10307(b) and 42 U.S.C. § 1985(3) fail because Plaintiffs cannot establish an act of intimidation or attempt to intimidate or that the act was done with specific intent; (2) Plaintiffs do not have prudential standing to raise these claims; and (3) Defendant USEIP is an unincorporated association and cannot be sued under 52 U.S.C. § 10307(b) or 42 U.S.C. § 1985(3). (ECF No. 70, pp. 5-20)

## II.  LEGAL STANDARD

### A.  Rule 12(c)

The Court reviews a motion for judgment on the pleadings under Rule 12(c) under the same standard as a motion for Rule 12(b)(6). *Adams v. Jones*, 577 F. App'x 778, 781 (10th Cir. 2014). The Court will not grant a motion for judgment on the pleadings "unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id*. at 782.  Rule 12(g)(2) precludes successive motions under Rule 12; however, Rule 12(g) is subject to Rule 12(h)(2), which allows parties to raise certain defenses in any pleading allowed under Rule 7(a), in a motion for judgment on the pleadings under Rule 12(c), or at trial.  *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 701 (10th Cir. 2014).

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Additionally, the complaint must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed; however, a complaint may be dismissed because it asserts a legal theory not cognizable as a matter of law.  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004).  A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims

3

across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations and citation omitted).

### B.  Rule 56

Summary judgment is warranted when (1) the movant shows that there is no genuine dispute as to any material fact and (2) the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The factual record and reasonable inferences must be construed in the light most favorable to the nonmoving party.  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).  The moving party bears the initial burden, but once met, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986).  Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  "[Q]uestions of intent, which involve intangible factors including witness creditability, are matters for consideration of the fact finder after a full trial." *Prochaska v. Marcoux*, 632 F.2d 848, 851 (10th Cir. 1980).

### III.  ANALYSIS

### A.  Judgment on the Pleadings

Defendants raise two arguments in their motion for judgment on the pleadings: (1) Plaintiffs lack statutory, or prudential, standing to raise claims under 52 U.S.C. § 10307(b) or

42 U.S.C. § 1985(3), and (2) Plaintiffs fail to show state action and racial animus to raise a claim under 42 U.S.C. § 1985(3).  (ECF No. 54, pp. 4-14).

       1. *Prudential Standing*

In April 2022, Defendants moved to dismiss the Complaint under Rule 12(b)(1) arguing that Plaintiffs lacked standing and failed to demonstrate any injury that would confer standing onto each organization.  (ECF No. 27, p. 4).  The Court denied the motion to dismiss, finding that Plaintiffs had Article III standing.  The Court noted that Defendants (1) did not address the issue of associational standing in their briefing and (2) failed to raise the issue of prudential standing and the Court would not examine this issue sua sponte.

Prudential standing is not a jurisdictional limitation and may be waived.  *The Wilderness Soc. v. Kane Cnty.*, 632 F.3d 1162, 1168 (10th Cir. 2011); *Advanced Exteriors, Inc. v. Allstate Vehicle & Prop. Ins. Co.*, No. 21-CV-01539-PAB-STV, 2022 WL 3577260, at *3 (D. Colo. Aug. 19, 2022).  There are three general principles under the prudential standing doctrine:  (1) "the general prohibition on a litigant's raising another person's legal rights"; (2) "the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches"; and (3) "the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (internal quotations and citation omitted).  Contrary to Plaintiffs' arguments, prudential standing was not abandoned by the Supreme Court and is still analyzed by courts in some contexts.  *Hill v. Warsewa*, 947 F.3d 1305, 1309 (10th Cir. 2020).  The Court does not need to reach the issue of whether Plaintiffs have prudential standing because (1) Defendants have

waived the argument and did not timely raise the argument within their first Rule 12 motion, and (2) Plaintiffs have a cause of action under 52 U.S.C. § 10307(b) and 42 U.S.C. § 1985(3).

To begin, Defendants, citing *Grubbs v. Bailes*, 445 F.3d 1275, 1281 (10th Cir. 2006), misquote the Tenth Circuit when arguing that courts permit prudential standing to be examined under Rule 12(b)(6) motion. Rather, the Tenth Circuit indicated that courts may disregard the issue of prudential standing if the plaintiff had established standing under Article III and the court could dispose of the case on the merits. Specifically, the Tenth Circuit stated:

> It thus appears that plaintiff has asserted a direct injury sufficient to satisfy the prudential standing principles in *Alcan*. We need not, however, definitively resolve the matter here. It has been noted on many occasions that the Supreme Court's rejection of the practice of "hypothetical jurisdiction" in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), prohibits federal courts from disposing of claims on the merits without first resolving Article III standing issues. Questions relating to prudential standing, however, may be *pretermitted* in favor of a straightforward disposition on the merits.

*Id*. at 1280–81 (emphasis added); *see Pretermit*, Black's Law Dictionary (11th ed. 2019) ("To ignore or disregard purposely"). Defendants fail to cite any caselaw that indicates that they are permitted to raise the issue of prudential standing in a motion under Rule 12(c).

Indeed, the Court finds that Defendants have waived this particular argument by failing to raise it in their first Rule 12 motion. In April 2022, Defendants filed the first Rule 12(b) motion and did not address the issue of prudential standing. Then in August 2022, Defendants filed the instant motion (styled as a motion under Rule 12(c)) raising the issue of prudential standing after the District Court had stated in its prior Order that the argument had not been raised and that the Court would not examine the issue sua sponte. (ECF Nos. 39, pp. 19-20; 54). The Tenth Circuit has clearly held that prudential standing "is not a jurisdictional limitation and may be waived."

*Niemi v. Lasshofer*, 770 F.3d 1331, 1345 (10th Cir. 2014). In *Niemi*, the Tenth Circuit found that the defendants had filed an improper second motion to dismiss when challenging the plaintiffs' standing because they had filed a prior Rule 12 motion to dismiss wherein they argued improper service of process, lack of personal jurisdiction, and improper venue. *Id*. at 1346. The Tenth Circuit found that a challenge to prudential standing did not implicate subject-matter jurisdiction and therefore was not a proper motion brought under Rule 12(h)(3), but rather was an impermissible second motion to dismiss under Rule 12(g)(2). *Id.* Accordingly, this Court finds that Defendants waived the issue of prudential standing because they were aware of this argument and failed to include the issue in their first motion to dismiss. *Id*.

But even if Defendant had not waived this argument,[1] the Court still finds that 52 U.S.C. § 10307(b) and 42 U.S.C. § 1985(3) permit a private right of action against private conduct. The Supreme Court clarified in *Lexmark* "that the question of whether a party falls within the class of plaintiffs whom Congress has authorized to sue under a particular statute is not one properly labeled as prudential; rather, it is a question of statutory interpretation." *Niemi*, 770 F.3d at 1344 (internal quotations and citation omitted). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Accordingly, courts must determine whether Congress intended to create a private right of action by: (1) determining whether "rights-creating language" is contained within the statute, and (2) the methods of enforcement in the statute "manifest an intent to create a private remedy." *Id.* at 289.

---

[1] Defendants also raise the issue of prudential standing again in their motion for summary judgment, thus the Court finds it more efficient to address this issue once rather than ending the analysis at Defendants' waiver. (*See* ECF No. 70, p. 16).

### a. 52 U.S.C. § 10307(b)

Section 11(b) of the Voting Rights Acts states:

*No person*, whether acting under color of law *or otherwise*, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce *any person* for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce *any person* for urging or aiding *any person* to vote or attempt to vote, or intimidate, threaten, or coerce any person for exercising any powers or duties under section 10302(a), 10305, 10306, or 10308(e) of this title or section 1973d or 1973g of Title 42.

52 U.S.C. § 10307(b) (emphasis added).  The statute contains rights-creating language that pertains to any individual citizen.  Furthermore, a plain reading of the statutory language indicates that Congress intended that private action as well as government action be regulated. *League of United Latin Am. Citizens - Richmond Region Council 4614 v. Pub. Int. Legal Found.*, No. 1:18-CV-00423, 2018 WL 3848404, at *3 (E.D. Va. Aug. 13, 2018) ("Here, the language 'or otherwise' indicates Congressional intent to reach both government and private conduct under § 11(b)."). Moreover, Section 11(b) can be enforced through a civil action by a private individual.  *See Arizona All. for Retired Americans v. Clean Elections USA*, No. CV-22-01823-PHX-MTL, 2022 WL 15678694, at *3 (D. Ariz. Oct. 28, 2022); *Nat'l Coal. on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 509 (S.D.N.Y. 2021); *League of United Latin Am. Citizens*, 2018 WL 3848404, at *3; *see also Allen v. State Bd. of Elections*, 393 U.S. 544, 554-57 (1969) ("We have previously held that a federal statute passed to protect a class of citizens, although not specifically authorizing members of the protected class to institute suit, nevertheless implied a private right of action.").  In their reply, Defendants argue that "Plaintiffs fail to acknowledge the changing landscape of the VRA and subsequent judicial restraint when expanding congressional intent to infer private rights of actions."  (ECF No. 59, p. 2).  However, Defendants fail to cite any caselaw

finding that there is no private right of action under 52 U.S.C. § 10307(b) and the Court finds this argument unavailing.

### b. 42 U.S.C. § 1985(3)

Plaintiffs state that they are pursuing a claim under the "Support or Advocacy Clause" of 42 U.S.C. § 1985(3).[2] (ECF No. 55, p. 8). This portion of section 3 (italicized) states:

> *[I]f two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy*; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

The Supreme Court has determined that "all indicators—text, companion provisions, and legislative history—point unwaveringly to § 1985(3)'s coverage of private conspiracies." *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971). Defendants argue that Plaintiffs are not citizens with a

---

[2] The first clause of 42 U.S.C. § 1985(3) is generally referred to as the "Equal Protection Clause" while the second clause of subsection 3 is referred to as the "Support or Advocacy Clause." *See generally, The Support or Advocacy Clause of § 1985(3)*, 133 Harv. L. Rev. 1382 (2020). The Equal Protection Clause of § 1985(3) states:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws.

Under this clause, a plaintiff must show that the conspiracy is aimed "at a deprivation of the equal enjoyment of rights secured by the law to all" and was motivated by a "racial" or "class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Under the Support or Advocacy Clause, there is no need to show racial animus. *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983). Defendants concede as much in their reply regarding the motion for judgment on the pleadings, thus the Court will not consider this argument in the motion. (*See* ECF No. 59, pp. 8-9).

right to vote and therefore cannot maintain an action for damages.  This argument is unavailing.  Corporations are "persons" within the meaning of the Fourteenth Amendment's Equal Protection clause and have been treated as plaintiffs under 42 U.S.C. § 1985(3) even though they do not have the right to vote.  *See Triad Assocs., Inc. v. Chicago Hous. Auth.*, No. 87 C 5096, 1992 WL 349655, at *9 (N.D. Ill. Nov. 13, 1992), *aff'd sub nom. Triad Assocs., Inc. v. Robinson*, 10 F.3d 492 (7th Cir. 1993).  "When an [organization] meets the constitutional test of standing, as [Plaintiffs] admittedly [do], prudential considerations should not prohibit [them from] asserting that defendants, on racial grounds, are frustrating specific acts of the sort which the [organization] was founded to accomplish."  *Hudson Valley Freedom Theater, Inc. v. Heimbach*, 671 F.2d 702, 706 (2d Cir. 1982) (citing *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 80 (1978)).  Defendants only argue that Plaintiffs cannot vote and therefore cannot raise a claim, which this Court finds unavailing.  The Court does not need to delve further into this argument or the organizational structure of each Plaintiff.

* * *

Accordingly, Plaintiffs are permitted to bring a private cause of action against Defendants under 52 U.S.C. § 10307(b) and 42 U.S.C. § 1985(3).[3]

### B. Summary Judgment

Defendants raise two arguments in their motion for summary judgment:  (1) Plaintiffs fail to prove that a voter was intimidated, that Defendants attempted to intimidate a voter, or that Defendants' actions were done with the intent to intimidate voters; and (2) USEIP is an unincorporated association and cannot be sued under 52 U.S.C. § 10307(b) or 42 U.S.C. § 1985(3).

---

[3] The Court will not reexamine the issue of prudential standing in Defendants' motion for summary judgment.

(ECF No. 70, pp. 6-20). Having reviewed the Complaint, the motions and related briefing, and the relevant legal authority, the Court finds that there are disputed questions of material fact that preclude summary judgment in favor of Defendants on the first issue; however, the Court finds that Defendants are entitled to summary judgment on the second issue.

    *1. Voter Intimidation*

Defendants argue that they are entitled to summary judgment because Plaintiffs cannot produce evidence that (1) a voter was intimidated by Defendants' actions or (2) Defendants attempted to intimidate voters. (ECF no. 70, pp. 6, 14). Section 11(b) prohibits (1) any person from (2) intimidating, threatening, or coercing another person or (3) attempting to do so, (4) for voting, attempting to vote, urging or aiding another person to vote or (5) attempt to vote or exercising any powers or duties under certain provisions listed in the Voting Rights Act. 52 U.S.C. § 10307(b); *see Nat'l Coal. on Black Civic Participation*, 512 F. Supp. at 509-10. Furthermore, Section 11(b) does not "proscribe only threatening and intimidating language that successfully prevents a person from voting" as the attempts to do so are equally proscribed. *Nat'l Coal. on Black Civic Participation*, 512 F. Supp. 3d at 516. Finally, there is no requirement in the language in Section 11(b) that requires Plaintiffs to establish that Defendants acted with the specific intent to intimidate voters. *League of United Latin Am. Citizens*, 2018 WL 3848404, at *3.

42 U.S.C. § 1985(3) prohibits (1) conspiracy (2) to prevent by force, intimidation, or threat, (3) any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person or (4) to injure any citizen in person or property on account of such support or advocacy. *See also Nat'l Coal. on Black Civic Participation*, 512 F. Supp. 3d at 512.

Defendants argue that Plaintiffs must prove that a voter was intimidated or that Defendants attempted to intimidate a voter. Defendants stated during a deposition that they visited 9,472 homes and spoke to 4,601 individuals at their homes. (ECF No. 72-7, p. 24). Plaintiffs identified three voters in its Rule 26(a)(1) disclosures who were contacted by USEIP: Anne Landman, Michelle Garcia, and Yvette Roberts. (ECF No. 72, pp. 4-5). Yvette Roberts, a registered Colorado voter and resident of Grand Junction, Colorado, submitted a declaration stating that she felt intimidated by the members of USEIP who visited her home after the 2020 election. (ECF No. 73, p. 3). Ms. Roberts states that a man and a woman affiliated with USEIP came to her home and asked invasive questions, told her that they had voting information from the state of Colorado, wanted to know (1) how she had voted in the last election, (2) who in the household is a citizen, and (3) whether she was the only voter in her household. (*Id*., p. 2). Ms. Roberts states that she felt intimidated and was concerned by Defendants' actions and lodged a complaint with the Office of the Colorado Secretary of State. (*Id*., p. 3). Defendants deny that the voters identified by Plaintiffs were contacted by USEIP members and claim that they did not conduct canvassing efforts in Mesa County. (ECF No. 76, p. 2). Accordingly, there is a genuine dispute as to any material facts and the issue should be left to the factfinder. Accordingly, the Court denies Defendants' motion for summary judgment on this issue.

  2. *Unincorporated Associations*

Defendants argue that Defendant USEIP is an unincorporated association and, therefore, cannot be sued as a "person" under 52 U.S.C. § 10307(b) or 42 U.S.C. § 1985(3). (ECF No. 70, p. 18). Defendants cite *Lippoldt v. Cole*, 468 F.3d 1204, 1211 (10th Cir. 2006), wherein the Tenth

Circuit determined that an unincorporated association was not a "person" entitled to sue under 42 U.S.C. § 1983.[4]

In *Lippoldt*, wherein an anti-abortion association and members brought a § 1983 action against the city of Wichita, the Tenth Circuit reasoned that an unincorporated association could only "be a Section 1983 plaintiff" if it was a "person" within the jurisdiction of the United States. *Id*. at 1212.  In light of *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) and its progeny, the Tenth Circuit considered the "(1) the legislative history of Section 1983, (2) the general understanding, as of 1871, regarding the legal personality of unincorporated associations, and (3) the Dictionary Act of 1871." *Id*. at 1213.  The Court determined that there was no "general understanding in 1871, when the precursor to Section 1983 was passed, that unincorporated associations should be treated as natural persons" that could sue a municipality and that "the language of the Dictionary Act of 1871 also shows that unincorporated associations were not intended to be 'persons' for Section 1983 purposes." *Id*. at 1213-14 ("Neither is a person in law, and, unless authorized by statute, they have no capacity to sue.").  "In sum, none of the aforementioned factors, legislative history, general understanding, or the Dictionary Act of 1871, suggest Congress' intent *to entitle unincorporated associations to seek redress* under Section 1983." *Id.* at 1215.

Furthermore, in *Becker v. Ute Indian Tribe of the Uintah & Ouray Rsrv*., 868 F.3d 1199, 1202 (10th Cir. 2017), a contractor brought an action against the Ute Indian Tribe of the Uintah

---

[4] Defendants also cite *Hidden Lake Dev. Co. v. Dist. Ct. In & For Adams Cnty.*, 515 P.2d 632, 635 (Colo. 1973) and *Johnson v. Chilcott,* 599 F. Supp. 224 (D. Colo. 1984) for the proposition that an unincorporated association must have, inter alia, bylaws, a stated purpose, and officers in order to exist.  However, these arguments are unavailing as this inquiry is for a court when determining the existence of an unincorporated association under Colorado law and not a person under 52 U.S.C. § 10307(b) or 42 U.S.C. § 1985(3).

and Ouray Reservation and the tribe filed counterclaims against the contractor and sought to enjoin the state-court proceedings under 42 U.S.C. § 1983 on the ground that the state court action violated the Tribe's due-process rights.  The Tenth Circuit again reaffirmed its narrow definition of the term "person," noting that the Tribe was not a person under 42 U.S.C. § 1983:

> We recognize that Ute Energy Holdings, LLC, is also a plaintiff. But we said in *Lippoldt v. Cole,* 468 F.3d 1204 (10th Cir. 2006), that unincorporated associations are not persons entitled to sue under § 1983, and Ute Energy has presented no argument why an LLC should be distinguished from other unincorporated associations in this respect.[5]

*Becker v. Ute Indian Tribe of the Uintah & Ouray Rsrv.*, 868 F.3d 1199, 1206 n.5 (10th Cir. 2017) (emphasis added).  The Tenth Circuit again reaffirmed such a narrow reading of the word "person" in *United States v. Doe*, 572 F.3d 1162, 1169-70 (10th Cir. 2009), wherein the defendants argued that the use of "person" in 18 U.S.C. § 1153 only applied to living individuals.  The Tenth Circuit determined that a victim under 18 U.S.C. § 1153, was defined as "living individuals and corporations, but [not] unincorporated associations." *Id*.  However, the Tenth Circuit noted that "the Dictionary Act definition does not apply if "the context indicates otherwise." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1129–30 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014).  The Tenth Circuit clarified that context means "the text of the Act of Congress surrounding the word at issue, or the text of other related congressional Acts." *Id*.

Here, the Court, being bound by Tenth Circuit precedent, finds that it must grant summary judgment to Defendants on their claim that USEIP, as an unincorporated association, cannot be

---

[5] Arguably, by Defendants' own logic, Defendant USEIP would be barred from raising counterclaims against Plaintiffs.  Regardless, the Court dismissed Defendants' counterclaims for failure to state a claim under Rule 12(b)(6). (ECF No. 81).

sued under 52 U.S.C. § 10307(b) or 42 U.S.C. § 1985(3). As the Tenth Circuit has previously noted, "[w]hile there is no per se rule of statutory interpretation that identical words used in different parts of the same act are intended to have the same meaning, there is a presumption that this is so." *Lippoldt*, 468 F.3d at 1213. In *Lippoldt* and *Becker*, the Tenth Circuit determined that unincorporated associations could not seek relief under 42 U.S.C. § 1983 as plaintiffs. Here, USEIP is a defendant in this case; however, the Tenth Circuit in *Lippoldt* noted that common law "essentially held that unincorporated associations lacked the capacity to sue or be sued" and that it would it strain the court's analysis to hold that an entity could be considered a "person" under one clause of the statute but not a "person" within another clause of the same statute. *Lippoldt*, 468 F.3d at 1212-13 (quoting *Rural Water Dist. No. 1, Ellsworth Cnty. v. City of Wilson*, 243 F.3d 1263, 1274 (10th Cir. 2001)). Accordingly, the Court finds that an unincorporated association cannot be considered a person, whether as a plaintiff or a defendant, under 52 U.S.C. § 10307(b) or 42 U.S.C. § 1985(3).

While this Court agrees with Plaintiffs that the Tenth Circuit's holding in *Lippoldt* "stands alone against the trend of treating unincorporated associations as 'persons,'" that does not permit this Court to ignore binding precedent. *See Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1283 (11th Cir. 2021).[6] Accordingly, this Court finds that Defendants

---

[6] This Court respectfully disagrees with the conclusion in *Lippoldt* and finds the Eleventh Circuit's analysis persuasive. First, the Tenth Circuit only defined the term "person" by the general understanding in 1871 and examined the legislative history of the 1871 Civil Rights Act and the 1871 Dictionary Act, but failed to examine the developments that occurred *after* 1871. Indeed, as the Eleventh Circuit noted, "Congress re-enacted the word 'person' in § 1983 twice after intervening developments in federal law clarified that unincorporated associations were 'persons.'" *Fort Lauderdale Food Not Bombs*, 11 F.4th at 1283. The ramifications of concluding that an unincorporated association is not a person under 42 U.S.C. 1985(3) based on a definition frozen in 1871 cannot be ignored given the history of the Ku Klux Klan Act when enacted within the Civil Rights Act of 1871. Indeed, during the Reconstruction Era when the legislation was passed, the Ku Klux Klan and private individuals were acting in concert to "subvert state law enforcement mechanisms and insure unequal application of state law." Stephanie M. Wildman, *42 U.S.C.A. § 1985(3)—A Private Action to Vindicate Fourteenth Amendment Rights: A Paradox Resolved*, 17 SAN DIEGO L REV

are entitled to summary judgment for this particular claim and Defendant USEIP is dismissed from the case.

## IV.  CONCLUSION

Accordingly, Defendants' Motion for Judgment on the Pleadings is DENIED and the Motion for Summary Judgment is DENIED IN PART AND GRANTED IN PART consistent with the analysis above.  (ECF Nos. 54, 70).  Defendant USEIP is DISMISSED from the case.

DATED this 31st day of January 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

---

317, 321 (1980).  Moreover, the term, unincorporated association, was a relatively recent legal development at the time that the Ku Klux Klan Act was being drafted, thus explaining why this term was not listed in the initial version of the Dictionary Act in 1871:

> In the interval between the acceptance of the principle that a corporation in English law arises only as a result of state concession, and the passing of the first Companies Act in 1862, there were established many unincorporated associations, some of them of very great importance. Such an association enjoyed no legal existence distinct from that of its members. Its legal status was simply that of an association of persons, linked by contract, and the rights of members were determined by their contractual rights, in respect of the association.

*Association*, Black's Law Dictionary (11th ed. 2019) (citing G.W. Keeton, *The Elementary Principles of Jurisprudence* 169 (2d ed. 1949)).  What results from *Lippoldt* is that civil rights organizations cannot seek relief against unincorporated associations under 42 U.S.C. § 1985(3) to halt an allegedly discriminatory conspiracy committed by the group's members – which is entirely contrary to the purpose and history of the Ku Klux Klan Act.  *See generally, Griffin*, 403 U.S. at 97.  The Supreme Court instructs courts to examine the context of the text, the Act of Congress surrounding the word at issue, or the text of other related congressional acts.  *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 199 (1993).  The Dictionary Act also gives the courts context about how to determine the meaning of a word or phrase in an Act of Congress, however, the Supreme Court noted that the inquiry permits a court to not accept a definition in the Dictionary Act if it is a "poor fit" with the text of the statute.  *Rowland*, 506 U.S. at 200 ("Where a court needs help is in the awkward case where Congress provides no particular definition, but the definition in 1 U.S.C. § 1 seems not to fit. There it is that the qualification 'unless the context indicates otherwise' has a real job to do, in excusing the court from forcing a square peg into a round hole.").  By ignoring the context of the Ku Klux Klan Act, and disregarding congressional action thereafter, which continued to utilize the term "person" after federal law made clear that unincorporated associations were "persons" under the law, it does appear that this result is contrary to the text and meaning under 42 U.S.C. § 1985(3).