IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-00581-CNS-NRN

COLORADO MONTANA WYOMING STATE AREA CONFERENCE OF THE NAACP, LEAGUE OF WOMEN VOTERS OF COLORADO, and MI FAMILIA VOTA

　　　　Plaintiffs,

v.

UNITED STATES ELECTION INTEGRITY PLAN, SHAWN SMITH, ASHLEY EPP, and HOLLY KASUN

　　　　Defendants.

## ORDER

Before the Court is Defendants' Motion to Exclude Testimony of Atiba Ellis Under Federal Rule of Evidence 702 (ECF No. 71). The Court DENIES the motion for the following reasons.

### I. FACTS

This civil action arises from alleged voter intimidation in violation of Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b), and the Ku Klux Klan Act, 42 U.S.C. § 1985(3). Plaintiffs have retained Professor Atiba Ellis, a law professor at Marquette University Law School, to discuss the history and effects of voter intimidation, especially concerning people of color. Defendants have moved to exclude Professor Ellis's expert testimony, asserting that his testimony: (1) is not based upon reliable facts or methods; and (2) is not relevant to the issues in this case.

A four-day bench trial is set to commence on February 5, 2024 (ECF No. 93).

1

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–91 (1993). The party submitting the expert's testimony must show by a preponderance of the evidence that the testimony is admissible. *See, e.g.*, *Bethel v. Berkshire Hathaway Homestate Ins. Co.*, 596 F. Supp. 3d 1260, 1265 (D. Colo. 2022). To determine whether expert testimony is admissible, a court must determine whether: (1) the expert is qualified; (2) the expert's proffered opinion is reliable; (3) the expert's testimony is relevant; and (4) the proffered testimony will assist the trier of fact. *See id.*; *103 Invs. I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006); *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122–23 (10th Cir. 2006).

An expert is qualified if they have the "knowledge, skill, experience, training, or education" to render an opinion. *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2020) (citing Fed. R. Evid. 702). An expert's testimony is reliable if the methodology employed by the expert is based on "sufficient data, sound methods, and the facts of the case." *Id.* at 1181 (citation omitted). The expert's testimony must be scientifically sound, but "absolute certainty" is not required. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quotation omitted). Testimony is relevant if it "logically advances a material aspect" of the case and has a "valid scientific connection" to the case's disputed facts. *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 n.2 (10th Cir. 2005)

2

(citation omitted). The court looks to other non-exclusive factors to determine if the testimony will assist the jury, such as: (1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility. *Rodriguez-Felix*, 450 F.3d at 1123. Doubts about the testimony's usefulness should be resolved in favor of admissibility unless such factors (e.g., time or surprise) weigh in favor of exclusion. *See Robinson v. Missouri Pac. R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) (quotation omitted).

### III. ANALYSIS

To determine whether expert testimony is admissible, a court must examine whether the expert is qualified, and whether his opinion is reliable and relevant. Defendants do not challenge Plaintiffs' expert based on his qualifications. Therefore, the Court analyzes the reliability and relevancy issues raised.

#### A. Reliability

First, Defendants move to preclude Professor Ellis's opinions and report because his opinion is not based upon reliable facts or methods. In particular, Defendants claim that Professor Ellis's opinion relies on the contents of inadmissible, hearsay political opinion pieces published by the *Colorado Times Recorder*, *Colorado Newsline*, and *National Public Radio* as the basis for his conclusion, even though the contents of those publications may not be true (ECF No. 71 at 6-9). In response, Plaintiffs assert that an expert may rely on hearsay or inadmissible evidence in forming their opinion. (ECF No. 75 at 5). Plaintiffs also assert that Professor Ellis's expert opinion is not based exclusively on inadmissible evidence as it cites to Defendants' own actions and

3

statements. Plaintiffs further claim that they will present evidence at trial that corroborates facts cited by Ellis (ECF No. 75 at 4-5). Ultimately, the Court agrees with Plaintiffs.

Under Rule 703, an expert may base an opinion on facts that are not admissible "if experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. The analysis of reliability and methodology is flexible and varies depending on the type of expert and the field in which they work. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). Courts have held that "experts in the field can be presumed to know what evidence is sufficiently trustworthy and probative to merit reliance," so rather than focus on whether the expert relies upon inadmissible hearsay, a Rule 703 analysis focuses on the methods employed by the expert. *See Kinser v. Gehl Co.*, 184 F.3d 1259, 1275 (10th Cir. 1999), *abrogated on other grounds by Weisgram v. Marley Co.*, 528 U.S. 440, 453 (2000); *accord United States v. Corey*, 207 F.3d 84, 89 (1st Cir. 2000).

Here, the Court notes that Professor Ellis is a scholar of the dynamics of voter suppression in the United States (ECF No. 71-1 at 1). Professor Ellis has published peer-reviewed work on election law and policy (ECF No. 71-1). In addition to citing to academic articles and historical texts, it is likely reasonable for an expert of this kind to review news articles to inform their analysis. While expert witnesses cannot simply parrot inadmissible out-of-court statements, they can synthesize various out-of-court sources and apply their expertise. *United States v. Pablo*, 696 F.3d 1280, 1287–88 (10th Cir. 2012); *United States v. Kamahele*, 748 F.3d 984, 999 (10th Cir. 2014) (holding testimony of a gang expert who relied on years of experience to filter information from various sources was admissible). In contrast to other cases such as *United States v. Mejia*, 545 F.3d 179, 197–98 (2nd Cir. 2008), where an expert's testimony was inadmissible because he

4

merely repeated what he had read in an article, Professor Ellis synthesizes various news articles and academic articles to inform his own opinion that Defendants' actions could chill a voter's desire to vote. He uses his expertise as a scholar of voter suppression to draw a connection between Defendants' activity and threats that have been made historically to exclude people from the political process (ECF No. 71-1 at 31). The Court finds Professor Ellis's reliance on news reporting is not per se unreliable.

Furthermore, to the extent that Defendants express concerns over the reliability or truthfulness of the publications on which Professor Ellis relies, Plaintiffs have stated that they will present evidence at trial that corroborates the news articles Professor Ellis refers to in his report (ECF No. 75 at 5). Thereafter, the appropriate vehicle for Defendants to pursue any alleged deficiencies in Professor Ellis's methods and analysis is cross-examination. *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking . . . admissible evidence.").

Defendants also argue that Professor Ellis's testimony is not reliable because it consists of assumptions rather than verifiable evidence (ECF No. 71 at 9-11). Plaintiffs respond that expert witnesses may use assumptions in addition to facts to formulate their opinions and Professor Ellis is decisive in his opinions (ECF No. 75 at 6). The Court is unpersuaded by Defendants' argument.

An expert witness may "assume" a fact for the purpose of applying their methodology, and "the assumption may be based upon information supplied to the witness or someone else's work or opinion." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1224 (D. Colo. 2008). Assumptions must clearly be stated. *Id.* Expert testimony is not intended to confirm factual evidence but to offer

opinions assuming that facts in the case are established. *See Champagne Metals v. Ken-Mac Metals, Inc.,* 458 F.3d 1073, 1080 n.4 (10th Cir. 2006). Professor Ellis clearly states when he makes an assumption by using words such as "likely" and "infer" (ECF No. 71-1 at 28–29). Professor Ellis appears to make these assumptions based on his expertise on the history of voter intimidation, and these assumptions are necessary because of the difficulty in obtaining witness evidence of intimidation (ECF No. 71-1 at 17). *See Burson v. Freeman*, 504 U.S. 191, 208 (1992) ("Voter intimidation and election fraud are successful precisely because they are difficult to detect."). Furthermore, the assumptions are based on facts Plaintiffs claim will be entered into evidence at trial (ECF No. 75 at 5).

Based on the foregoing, the Court finds that Professor Ellis's testimony is sufficiently reliable.

### B. Relevancy

Defendants next assert that Professor Ellis's testimony is not relevant to the issues in this case as Plaintiffs need not show racial animus or discrimination to establish a violation of 52 U.S.C. § 10307(b) or 42 U.S.C. § 1985(3). Defendants also assert that the expert testimony provokes an improper emotional response rather than focusing on the claims at issue, thereby warranting its exclusion under Rule 403 (ECF No. 71 at 12-13). In response, Plaintiffs claim that Professor Ellis's testimony is relevant because the history of voter intimidation in Colorado and the United States provides a backdrop that can be useful to the trier of fact in evaluating whether Defendants' conduct violates 52 U.S.C. § 10307(b) and 42 U.S.C. § 1985(3) (ECF No. 75 at 10). Additionally, Plaintiffs assert Professor Ellis's testimony has probative value and is not

inadmissible simply because it might evoke an "emotional response" (ECF No. 75 at 11). The Court finds Defendants' arguments unavailing.

As to Defendants' relevance argument, Rule 702 requires that the expert's knowledge will help the trier of fact to understand the evidence or to determine a fact at issue. Fed. R. Evid. 702. Rule 401 further states that evidence is relevant if it tends to make a fact more or less probable than it would be without the evidence. Fed. R. Evid. 401. Racial animus is not an element of either 52 U.S.C. § 10307(b) or 42 U.S.C. § 1985(3), but the historical context of voter suppression, which cannot be disentangled from racial animus, is relevant for determining if there was intimidation, which is an element in both statutes. Contextual testimony that is helpful to the trier of fact is admissible under Fed. R. Evid. 702. *See Kamahele*, 748 F.3d at 998 (holding expert testimony that explained the context in which a gang operated was admissible). In order to evaluate whether a voter may feel intimidated or threatened, broader historical and social context may be helpful. *See Nat'l Coal. on Black Civic Participation v. Wohl*, No. 20 Civ. 8668 (VM), 2023 WL 2403012, at *26–27 (S.D.N.Y. Mar. 8, 2023) (relying in part on the testimony of two experts who opined on whether a robocall included the kind of disinformation commonly used to confuse and intimidate voters).

Furthermore, as to Defendants' prejudice argument, relevant evidence may be excluded under Rule 403 if its probative value is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid. 403. "[E]xclusion of evidence under Rule 403 that is otherwise admissible under the rules 'is an extraordinary remedy and should be used sparingly.'" *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001) (quoting *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir 1999)). Defendants claim that Professor Ellis's testimony is prejudicial because he compares

Defendants' conduct to the grand marches of the Ku Klux Klan (ECF No. 71 at 13). However, Professor Ellis makes no such direct comparison. To the contrary, Professor Ellis states, "Admittedly, this is *not* the grand marches of the Klan in robes and the use of burning crosses" (ECF No. 71-1 at 30) (emphasis added). Professor Ellis's admission that Defendants' conduct is not at the level of the Klan would likely lessen any prejudice the jury might feel after hearing the history of voter suppression. More importantly, this case is a trial to the court, not a jury. The Tenth Circuit has held that, in a bench trial, it is improper to exclude evidence under Rule 403 on the grounds that it is unfairly prejudicial. *United States v. Kienlen*, 349 F. App'x 349, 351 (10th Cir. 2009). Thus, the Court finds that the expert testimony is relevant and shall not be excluded under Rule 403.

### C. Challenge to Portions of the Report and Testimony

Defendants generally argue that all of Professor Ellis's report is a legal conclusion (ECF No. 71 at 13). An expert's testimony is not permissible under Rule 702 if the expert attempts to define the legal parameters within which the factfinder must exercise its fact-finding function. *See Specht v. Jensen*, 853 F.2d 805, 809–10 (10th Cir. 1988).

In reviewing the report, the court finds two particular areas that warrant discussion. First, Professor Ellis's report states, "This is the kind of intimidation that anti-voter intimidation laws were meant to prevent" (ECF No 71-1 at 31). In offering this opinion, Professor Ellis is clearly interpreting the purpose of voter intimidation laws, and this is improper. *See Specht*, 853 F.2d at 809–10; *see also United States v. F.E.B. Corp.*, 52 F.4th 916, 932 (11th Cir. 2022) (holding district court did not abuse its discretion in excluding an expert's report on the statutory interpretation of an act).

8

Secondly, Professor Ellis concludes that, "USEIP operatives who approach homes of voters of African American or Latino descent, and then are questioned with regard to their voting practices, *may well be the subject of voter intimidation in violation of the United States Code*" (ECF No. 71-1 at 33) (emphasis added). This is an improper legal conclusion. *See Specht*, 853 F.2d at 809–10; *see also United States v. Jensen*, 608 F.2d 1349, 1356 (10th Cir. 1979) (while an expert witness may give an opinion that embraces an ultimate issue to be determined by trier of fact, he may not state legal conclusions by applying law to facts).

A bench trial certainly alleviates concerns about a jury being confused or guided by an expert witness's legal conclusions. *Bartch v. Barch*, No. 18-cv-03016-RBJ-NYW, 2022 WL 1567560, at *2 (D. Colo. May 18, 2022). However, the Court will not consider any of Professor Ellis's legal conclusions on (1) whether Defendants' actions are the type of activity that anti-intimidation laws were meant to prevent; and (2) whether Defendants violated any particular law (ECF No. 71-1 at 31–33).

## IV. CONCLUSION

Consistent with the above analysis, the Court DENIES Defendants' Motion to Exclude Professor Ellis's Testimony (ECF No. 71).

Dated this 7th day of June 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

9