## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00581-CNS-NRN

Colorado Montana Wyoming
State Area Conference of the NAACP,
League of Women Voters of Colorado,
and Mi Familia Vota

      Plaintiff(s)

v.

United States Election Integrity Plan,
Shawn Smith, Ashley Epp,and Holly
Kasun

      Defendant(s)

_____

### PRO SE RESPONSE IN SUPPORT OF HOLLY KASUN'S MOTION FOR A CONTINUANCE OF HEARING OR TRIAL

_____

Defendant Ashley Epp is filing this response in support of Holly Kasun's request for a 60-day continuation of trial, currently set for February 5, 2024. Continuation is required to resolve significant, material, outstanding evidence issues and to allow Ms. Epp to prepare for trial pro se. Additional time beyond 60 days is not expected. Upon this Court granting Ms. Kasun's motion, Ms. Epp will withdraw her motion for continuance (Docket 107) as it is duplicative.

Sufficient cause for this action exists as there are outstanding evidence questions, and time is required to resolve these disputes before trial. Further, Ms. Epp is at a natural disadvantage as a pro se Defendant, which is compounded by missing and withheld evidence as well as Plaintiff counsel's refusal to discuss outstanding evidentiary

questions. Additional time is required to resolve these matters before trial, and a denial of this motion for continuance materially prejudices the Defendants.

## LEGAL STANDARD

Plaintiffs have cited United States v. West as the legal standard: "The trial court has broad discretion in determining whether to grant a motion for continuance." United States v. Bradshaw, 787 F.2d 1385, 1392 (10th Cir. 1986) (citing Morris v. Slappy, 461 U.S. 1, 11 (1983)). A trial judge's decision to deny a motion for continuance constitutes an abuse of discretion only if the denial is "arbitrary or unreasonable and materially prejudiced [a party]." United States v. West, 828 F.2d 1468, 1469 (10th Cir. 1987) In ruling on the Motion for Continuance, the Court should consider the following factors:

i.    "the diligence of the party requesting the continuance;

ii.   the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance;

iii.  the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; and

iv.   the need asserted for the continuance and the harm that [the movant] might suffer as a result of the district court's denial of the continuance."

West, 828 F.2d at 1470 (citing Bradshaw, 787 F.2d at 1392).

## ARGUMENT

### I. Defendants have been Diligent in Requesting a Continuance

The first factor the Court must consider in West is the diligence of the moving party. On December 28, 2023, Defendants Epp and Kasun terminated counsel due to

irreconcilable differences. Defendants Epp and Kasun have not had access to case documentation and docket updates or, while represented by counsel, had the ability to negotiate and resolve outstanding evidence issues with Plaintiff counsel, prior to the Court granting the motion to withdrawal on January 2, 2024. Upon the Court granting the motion to withdraw, Defendants Epp and Kasun immediately filed updated contact information with the Court and gained access to the filing system. Both Defendants Epp and Kasun separately notified Plaintiffs of their intentions to file for a continuation on Tuesday, January 2, 2024, immediately upon receipt of the Court's minute order. Within two days of gaining access to – and learning – the ECF system, Ms. Kasun filed her motion to continue. Further, Ms. Epp requested a discussion with Plaintiff counsel on January 5, 2024, to discuss outstanding evidence issues. Ms. Epp has still not received a response from Plaintiff counsel. As a result, Ms. Epp filed her motion for a continuation of hearing or trial on January 8, 2024, and submits this response in support of Holly Kasun's motion now.

Plaintiffs assert that this case has been dormant since May 2023. From Defendant's perspective, this couldn't be further from the truth. Defendants Epp and Kasun understood Plaintiff counsel and Defendant's prior counsel to be working through the remaining evidence issues and negotiating a potential settlement. That Plaintiff counsel states the case has been "dormant" is new information for Defendants Epp and Kasun, who believed their interests were being represented and negotiated, by counsel, during the time that has elapsed since the May 2023 Pretrial Conference.

In their opposition, Plaintiffs rely on _Robinson v. Greater Park City Co_, No. 2:12-cv-485 TS, 2014 WL 3044396, at *1 (D. Utah July 3, 2014), a case where the continuance was requested a little over two weeks before trial and the stated reason for

continuance was a conflict with a job opportunity. Further, Robinson was the Plaintiff

seeking relief and the motion was viewed by the court as, "Plaintiff's latest attempt to delay

the trial in this matter." _Robinson v. Greater Park City Co_. There is simply no comparison

of Robinson's failure to prosecute claims he brought before the court, and Defendants Epp

and Kasun, for the first time, requesting 60 days to ensure they can adequately defend

themselves at trial, having resolved significant outstanding evidence issues.

Ms. Epp has been diligent and responsive, and Plaintiffs have been unresponsive

to requests to discuss Ms. Epp's questions. Accordingly, Defendant believes that the first

factor weighs in favor of granting the request for a continuance.

## II. A Continuance is Required to Resolve Outstanding Evidence Before Trial

Per the second factor in the legal standard prescribed in West, the Court must

consider whether the continuance will accomplish Ms. Epp and Kasun's purpose for

requesting it.

The first purpose asserted by Ms. Kasun and further asserted here by Ms. Epp, is

that a continuance would allow Defendants to prepare for trial pro se or seek new counsel.

Ms. Epp is not seeking new counsel but preparing to defend herself pro se in this

proceeding. Plaintiffs assert that Defendants have been ably represented in this

proceeding, but also assert that the case has been "dormant" during a time when

Defendants believed evidentiary disputes were being resolved and settlement negotiations

were taking place. Both assertions cannot be true.

Plaintiffs argue that Defendants' trial preparation was well under way prior to

termination of counsel such that Defendants should be prepared to proceed as scheduled

pro se. But Defendants have only had access to the systems and the ability to negotiate

and resolve outstanding issues with opposing counsel since January 2, 2024. Further, Ms. Epp is not confident that all discovery materials have been provided to her by either Plaintiffs or prior counsel. Ms. Epp and Ms. Kasun did not wait "until the eve of trial" to terminate counsel. Defendants terminated counsel when it became clear that the differences about how to defend this case were irreconcilable. Any implication that Defendants termination of counsel was meant to burden Plaintiffs or the Court is categorically false. A 60-day continuation of trial will accomplish Ms. Kasun's first stated purpose of preparing for trial.

The second stated purpose for Ms. Kasun's motion to continue is the need to resolve outstanding evidence issues. Plaintiffs claim that any evidence asserted in prosecution or defense of the claims against Ms. Kasun are with regards to "conduct by an organization that she created and controlled." USEIP is a free association of independent citizens and has been dismissed as a Defendant in this case. Characterizations that Ms. Kasun, or any of the named Defendants, "controlled" or "control" the actions of USEIP associates in their own local counties are categorically false, entirely disputed by the evidence in this case, and prejudicial to the Defendants.

Ms. Epp agrees with Ms. Kasun's assertion that there are "outstanding evidence questions" that must be resolved before trial. Ms. Epp reached out to Plaintiffs' counsel to discuss these issues on January 5, 2024. Plaintiff counsel responded with a formal letter that threatened six figure penalties against Ms. Epp and urged her to enter into a consent decree that favors Plaintiffs interests, seeks to limit Ms. Epp's First Amendment rights – as a local columnist and member of the press – and allows Plaintiffs to continue harming Ms. Epp's reputation and livelihood. Plaintiff's response ignored the request to discuss outstanding evidence issues.

The evidence issues include the need to (1) further develop the record of evidence as it pertains to the sole fact witness alleging to harm under the laws in this case; (2) address missing evidence issues and confirm that defendants have access to the entire evidentiary record, and (3) address recently discovered evidence that was withheld by Plaintiffs during discovery. Since Plaintiffs assert in their response to Ms. Kasun's motion that there are no outstanding evidence issues, Ms. Epp will outline some of them here.

   i. *Evidence of Federal and State Investigation into Yvette Roberts' 2021 Complaint*

Plaintiffs repeatedly mention the December 2, 2022 discovery deadline as an anchor point for denying Ms. Kasun's motion for a continuance. Yvette Roberts, Plaintiff's only witness that asserts any harm under the laws in this case, did not make those assertions of harm against the Defendants until December 22, 2022 – 20 days after the close of discovery. Prior to the discovery deadline, Ms. Roberts' complaint to the Secretary of State's Office – contemporaneous with her encounter on June 23, 2021 – did not assert injury or harm, did not implicate USEIP or any of the named Defendants, did not assert "official-looking badges," and did not assert that anyone represented themselves as an official or associated with a government entity. These assertions were first made on December 22, 2022, 20 days after the close of discovery, 18 months after Yvette Roberts filed her complaint with the Secretary of State, and in response to Defendants' Motion for Summary Judgement. Ms. Roberts' materially contradictory statements are attached as Exhibit A to this motion.

Further, per the Secretary of State's responsive document production in this case, there appears to have been a law enforcement investigation(s) into Yvette Roberts' complaint shortly after it was filed. According to the emails attached to Ms. Robert's complaint, her complaint was shared with the Attorney General, the local Mesa County

DA, the US Attorney's Office, and the FBI. On June 30, 2021, Melissa Kessler of the Secretary of State's Office sent the following to Rebecca Weber of the Assistant US Attorney's Office. "The two attachments to this email describe some reports that we've been getting out of Grand Junction about a strange sort of in-person audit, wherein a group is traveling door-to-door and attempting to "confirm" residents' votes. We've reported this issue to the AG and the local DA." (COSOS0000002- COSOS0000010 attached as Exhibit B). Weber was no longer in that position, and the email was forwarded to Aaron Teitelbaum (AUSA) who responded, "I will be in touch next week as soon as I've had a chance to discuss with FBI. Cheers, Aaron". In addition to the CO Secretary of State's office, Ms. Roberts' complaint has been reviewed by four investigative bodies in the state and federal government: CO Attorney General, Mesa County DA, the US Attorney's Office, and the FBI. This exchange is mostly redacted. These redactions appear to relate to Ms. Roberts' complaint, and subsequent investigation of her complaint, and its allegations which, again, did not implicate the Defendants in any way. Per this Court's January 31, 2023 order that Yvette Roberts' December 22, 2022 declaration presents a question of fact in this case, the source and nature of these redactions and the results of any investigation, is a material, outstanding evidence issue to be resolved with Plaintiffs.

   ii.  *There Remains Missing Discovery from Plaintiffs*

In the final pretrial order, Plaintiffs list "League of Women Voters of Colorado, Safety Plan 2022 for Board & Staff (LWVCO0000112)" on their exhibits list for trial. Defendant did not receive this document in discovery, neither was it indexed in the LWVCO export file provided by Plaintiffs during discovery. In an exhibit exchange on January 8, 2024, Plaintiff counsel produced this document for the first time. As Plaintiffs

assert, it is 28 days before trial. It's also 402 days since the close of discovery, and they are only now turning over evidence listed on their exhibits list in the Final Pre-trial Order from May (Docket 95). The safety plan was represented in deposition as proof of "diversion of resources," making it distinctive as the only exhibit that attempts to affirm Plaintiff LWVCO's harm.

Plaintiffs did not produce this document until January 8, 2024 according to the evidence records Ms. Epp has been provided. Further, the Safety Plan that was provided on January 8, 2024, which is attached to this motion as Exhibit D, is a plan for dealing with any repercussions from Plaintiffs filing their lawsuit. This information was withheld by Plaintiffs until January 8, 2024 despite representing to the Court that it had been turned over. Ms. Epp confirmed with Ms. Hayes that she had also not received the exhibit during discovery. The document is undated. It does not mention USEIP, and it is not a safety plan for dealing with USEIP canvassing; that is, it does not prove any diversion of resources for Defendants' behavior, but rather for their own, but it does provide new evidence about Plaintiffs' intentions with this case and their actions and allegations against Defendants. Notably, with this clarification of what the "Safety Plan" is, LWVCO has also failed to produce evidence that any resources were or are being diverted due to Defendant's alleged behavior.

Plaintiffs have the burden to prove their harm. "Ultimately, plaintiffs have '[t]he burden of establishing subject matter jurisdiction' because they are 'the part[ies] asserting jurisdiction.' *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008). Plaintiffs have made extraordinary claims of harm in the public square and before this Court. In their original complaint, Defendants allege that, (1) "Because USEIP's actions are threatening to NAACP Colorado's core mission, NAACP Colorado has

diverted time and other resources from its vital civic engagement and election support

programs in order to address Defendants' voter intimidation campaign," (2) "LWVCO has

diverted time and other resources from its civic engagement and election support

programs in order to address Defendants' voter intimidation campaign," and (3) MFV has

diverted time and other resources from its civic engagement and election support

programs in order to address Defendants' voter intimidation campaign." (Docket 01)

Further, in their April 18, 2022 response to Defendant's Motion to Dismiss, Plaintiffs

alleged that (1) "NAACP Colorado has already exhausted resources actively monitoring

this voter intimidation and related safety concerns and strategizing about how to combat

USEIP's actions… This diversion of resources is a distraction from key programs that

NAACP Colorado would otherwise support, such as voter outreach aimed at protecting

democracy, enhancing equity, and increasing democratic participation and civic

engagement," (2) USEIP's activities have forced Plaintiff LWVCO to divert resources away

from its core functions to counteract USEIP's detrimental impact to current and future

voters," and (3) "MFV has had to reallocate resources to combat USEIP's actions, educate

voters about their rights when confronted by false accusations of voter fraud in their own

homes, and develop a plan for monitoring and responding to Latino voters' safety

concerns." (Docket 33).

Again, in their December 23, 2023 response to Defendant's Motion for Summary

Judgement, Plaintiffs further reiterated this diversion of resources, claiming, (1) "Plaintiffs

are not asserting the rights of third parties, but rather alleging harm to the organizations

themselves," and (2) Plaintiffs have presented evidence that each of their organizations

diverted resources as a directly result of Defendants' actions." (Docket 72)

Plaintiffs have produced no such evidence, despite representing to this Court that

they have. In fact, Plaintiffs NAACP and Mi Familia Vota have produced NO responsive
documents in this case at all, according to the documents to which Ms. Epp has been
given access. In the recently decided *FAIR FIGHT INC. v. TRUE THE VOTE*, Dist. Court,
ND Georgia 2024, the court cited *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1246
(11th Cir. 2020) that "('[T]he facts necessary to establish standing . . . must not only be
alleged at the pleading stage, but also proved at trial.' (second alteration in original)
(quoting *Gill v. Whitford*, 138 S. Ct. 1916, 1931 (2018))). Standing requires Plaintiffs show
an injury in fact (that is both 'concrete and particularized' and 'actual and imminent'), as
well as a causal connection between the injury and conduct at issue, and that the injury
can be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61
(1992)."

The only record from Plaintiffs NAACP or Mi Familia Vota aside from their sworn
allegations is the deposition testimony of their principles: Portia Prescott from NAACP and
Salvador Hernandez from Mi Familia Vota. Further, the deposition testimony of these two
Plaintiff representatives does not support the repeated assertions made by Plaintiffs'
counsel that Defendant's alleged actions have caused them harm. Additionally, this
testimony confirms that, if allegations of harm are true, there should be responsive
documents to support it.

a. *Portia Prescott, NAACP*

In deposition, NAACP's Portia Prescott claimed to have diverted resources to
programming but did not articulate any resources associated with the Defendant's actions
and did not produce any supporting documentation in discovery.

"Counsel: 'Okay. Well, let's talk about programming. What changed? Did you
produce some documents?'

Ms. Prescott: 'Yes.'

Counsel: 'Okay. Do you still have that document?'

Ms. Prescott: 'I produced documents. We produced video content, we produced

marketing, digital media, advertising -- those sort of -- yes.'

Counsel: 'And you still have all that?'

Ms. Prescott: 'We -- I don't know if I have it all because I don't save stuff like that,

but you can go to our website and go to our Facebook, Twitter, Instagram and --

you can go anywhere and find it.'"

(Prescott Dep. 42:13-25; 43:1-10)

Ms. Prescott directing Defendants' counsel to prove her alleged harm through

online searches of her social media is improper since Plaintiffs have the burden to prove

their harm. Port City Props. v. Union Pac. R.R. Co. Discovery in this case closed on

December 2, 2022, and NAACP has produced no evidence to support that they have been

harmed as they have claimed, repeatedly, since their original complaint, beyond Ms.

Prescott's assertions. In fact, the NAACP has produced no responsive documents at all,

according to the records provided to Ms. Epp by prior counsel.

### b. *Salvador Hernandez, Mi Familia Vota*

In his deposition, Plaintiff Salvador Hernandez of Mi Familia Vota claimed to have

diverted and planned to divert an estimated 20 percent of his organization's resources, but

like Ms. Prescott and NAACP, neither Mr. Hernandez nor Mi Familia Vota have produced

evidence to support these claims. In fact, Mi Familia Vota has produced no responsive

documents in this case at all, according to the records provided to Ms. Epp by prior

counsel.

Mr. Reisch: 'Okay. So on number 20 on that – on your declaration, you can't say for

certain that 20 percent of your civic engagement budget had been sent -- spent as a result of USEIP. Is that true?'

Mr. Hernandez: 'It's an estimation. Right? We don't -- there's not, like, an exact science of how to, you know, calculate that, I guess.'

Mr. Reisch: 'So how did you come to that number – or how did you come to that estimate before you signed your declaration for this lawsuit?'

Mr. Hernandez: 'Well, I guess it's an estimate. Right? We think about, like, you know, the -- what we need to do in terms of spending time with the staff, training them, those kinds of things; so, you know, we make our best educated guess -- right? – how much time are we going to take every day to talk about this with our staff and, you know, ongoing conversations that we're having with them.'

(Hernandez Dep. 43:24-25; 44:1-17)

Mr. Hernandez and Mi Familia Vota have repeatedly claimed Defendants caused and will cause them to divert an estimated 20 percent of their resources to deal Defendants' alleged conduct. Plaintiff Mi Familia Vota has the burden of proving that they have been harmed and are entitled to judicial relief. Port City Props. v. Union Pac. R.R. Co. Mi Familia Vota and Mr. Hernandez have provided zero responsive documents in this case, let alone any evidence that supports (1) their allegations against Defendants, or (2) their alleged harm relative to their allegations against Defendants, despite representing to this Court that such evidence has been produced.

Ms. Epp is not asking this court to reconsider standing before trial. Rather, Ms. Epp is not confident that she has access to the full evidence record from discovery. That is, Ms. Epp does not "disagree" with Plaintiffs evidence alleging their harm. According to the record she has been provided, Ms. Epp is certain that no such evidence exists, despite

Plaintiff counsel's repeated assertions that it does and has been produced. Either it exists and Ms. Epp has not been provided it, or it doesn't exist. Ms. Epp needs to know this before trial, and continuation would achieve resolution on that issue.

      *c. Newly Discovered Evidence Withheld During Discovery*

Defendants recently became aware of an additional communication that was not disclosed by Plaintiffs during discovery. The communication between Ms. Hendrix and a current high ranking LWVCO member discusses the member's experience with unidentified canvassers. The exchange supports the Defendants' affirmative defenses, disputes Plaintiffs' allegations in this case, and it was not produced by Plaintiffs during discovery. Had Ms. Hendrix produced this email exchange during discovery, Defendants would have sought to depose the member and may have taken other actions. But Plaintiffs withheld this document during discovery and Defendants only recently learned of its existence. This document is in the custody of Ms. Kasun.

These are not insignificant evidence issues. Rather, they are material in the matter before this Court. Further, as Plaintiffs argue that this case has been dormant and that these issues should have been brought before the close of discovery, (1) Defendants Epp and Kasun have been attempting to clarify the issues with regards to Ms. Roberts' declaration since December 23, 2023, (2) LWVCO0000112 was not produced by Plaintiffs until January 8, 2024 despite being listed on the Exhibits list in the pretrial order from May 2023, and (3) the communication withheld by Plaintiffs was only recently discovered by Ms. Kasun. Resolution of these issues is the primary purpose for Ms. Epp's motion for continuance (Docket 107) and her support of Ms. Kasun's motion for continuance.

In their opposition to Ms. Kasun's motion, Plaintiffs cite *People in Int. of V. A. E. Y. H. D.*, 199 Colo. 148, 152 (1980) as precedent for denial of continuance where

continuance will not help further develop the evidentiary record. But in *People in Int. of V. A. E. Y. H. D.,* "the court allowed three continuances of the termination hearing over a period of fourteen months in order to give counsel time to prepare the case." Further, the appellant had at least four attorneys throughout the proceedings and there was concern about the ongoing safety of the child in her custody. This is Ms. Kasun's first motion for continuance, and since Plaintiffs have failed to prove any harm from Defendants alleged conduct to date, there is no real comparison of circumstances here.

Continuation will allow the parties to resolve these significant, material evidence issues and allow Ms. Epp to adequately prepare for trial, accomplishing Ms. Kasun's two part stated purpose for the continuance. Accordingly, Ms. Epp believes that the second factor in West also weighs heavily in favor of granting the request for a continuance.

### iii. A Continuance is Required Despite Inconveniences to Plaintiffs

The third factor to consider in West is the impact on Plaintiffs, their witnesses and the Court. Plaintiffs claim that they would be greatly inconvenienced if the continuance is granted, asserting that they have expended tremendous effort and time in preparing for a trial to begin on February 5, 2024. This is inconsistent with Plaintiffs' assertion that the case has been dormant since May 2023. Moreover, the outstanding evidence issues asserted by Defendants are directly related to the evidence produced – and not produced – by Plaintiffs.

Plaintiff counsel asserts that, "continuation of this case will create undue hardship" upon Plaintiffs and "take them away from their important work." This seems unlikely since Plaintiff organizations have only minimally participated in this litigation since filing their original complaint. As noted above, two of the three Plaintiff organizations failed to produce any responsive documents during discovery, and the third organization failed to

14

produce material documents relevant to the alleged facts asserted in their case and

withheld material evidence from one of their current high-ranking members. This conduct

is important, as LWVCO and Beth Hendrix recruited Mr. Hernandez and his organization

into this endeavor. Salvador Hernandez testified that he learned of Defendants' behavior

from Ms. Hendrix in relation to the filing of this case. "That's who called me -- Beth called

me and told me about the this group that was going door to door, and that's basically how

I learned about it." (Hernandez Dep. 22:13-15). Ms. Hendrix testified, and Plaintiff's

privilege long confirms, that this case originated with her national organization and Free

Speech for People, counsel in this case.

> Mr. Reisch: "Am I to understand that this article was the primary basis for your
>
> lawsuit that you filed in federal district court?"
>
> Ms. Hendrix: "No. I would say it was a factor, but I would say the main, I guess,
>
> focus was more the support that -- and information we received from our national
>
> office and Free Speech for People."
>
> (Hendrix Dep. 113:10-16)

This statement contradicts Ms. Hendrix's sworn declaration that, "LWVCO

members have reported concerns based on their own experience with visits from USEIP

agents" and that these reported concerns are "significant, since many voters who are less

active or aware of their rights are likely to find these visits even more intimidating." (Docket

08) Such reports may be significant, but Plaintiffs have produced no such reports or

witnesses of such reports. Rather, Ms. Hendrix or her attorneys withheld at least one

material communication from a high-ranking LWVCO member, ostensibly because it hurt

their case and supported the defense. Defendants are entitled to know what other

communications Plaintiffs withheld during discovery. Defendants understand that a

continuance may inconvenience Plaintiffs' counsel, who are engaging in similar novel legal endeavors around the country; but as Plaintiff organizations have provided zero evidence of the harm they've claimed since their original complaint, it is unlikely a continuance will have any impact on Plaintiff organizations.

Plaintiffs further assert that "allowing a continuance will burden Plaintiffs substantially and increase the risk that Defendants will re-engage in intimidation tactics in the interim." This statement is categorically false and prejudicial against Defendants. First, Defendants' stated intentions of canvassing are to verify government records and report any issues discovered to election officials and law enforcement. This stated intent is well documented throughout the record of evidence and proved by the fact that USEIP members have engaged with law enforcement with regards to their canvassing findings. Second, while Plaintiffs contend that Ms. Epp's behavior was in relation to "The Big Lie," an offensive trope meant to inflame these proceedings and invoke imagery of the Holocaust, Ms. Epp maintains that she had adequate cause as a member of the electoral franchise to check the state's assertions about Colorado voter data, and this cause was later substantiated by the outcome of ongoing litigation that pre-dated the 2020 elections and the formation of USEIP. _Judicial Watch, Inc. v. Griswold_ ended in a consent decree, which states, "Beginning April 14, 2023, and by April 1 of each year thereafter, Defendants shall provide to Plaintiff Judicial Watch, Inc. the most recent data described in questions AI, A8, and A9e, including subparts, of the attached 'U.S. ELECTION ASSISTANCE COMMISSION (EAC) 2022 Election Administration and Voting Survey (EAVS),' for each Colorado county, and for Colorado as a whole. Defendants' obligations under this paragraph shall automatically terminate on April 2, 2028." _Judicial Watch, Inc. v. Griswold,_ _554 F. Supp. 3d 1091 - Dist. Court, D. Colorado 2021._ Defendants' behavior was not in

relation to a "big lie," but rather born of concerns about the accuracy and security of Colorado elections, concerns that were later substantiated by the Colorado Secretary of State's Office entering a consent decree with regards to the very records that Defendants' activities sought to verify.

Second, Plaintiffs' assertion that USEIP associates have stopped their activities in Colorado is also false. USEIP associates are actively engaged in all 64 counties and, as Plaintiffs TRO was denied in 2022, Ms. Epp is unaware of anyone associated with USEIP explicitly stopping any planned activities as a result of this litigation (though admittedly, Ms. Epp doesn't know what all USEIP associates across all counties are doing, because USEIP is not a top-down formal organization but a free association of people in Colorado.) Further, USEIP associates around the state provided the data gathered during canvassing to law enforcement to investigate in 2022 and, in 2023, according to Ms. Epp's understanding, local USEIP associates in El Paso County were contacted by law enforcement as part of their investigation and worked with law enforcement to reconcile their findings with the official government records. The fact that Plaintiffs believe USEIP activities have stopped is further evidence that their claims are baseless and unfounded, and that USEIP activities are lawful, protected under the First Amendment, and entirely without harm.

Prior to the close of discovery, Plaintiffs failed to produce a single piece of evidence that Defendants intimidated anyone directly or indirectly or caused anyone to be intimidated. All assertions by Plaintiffs that the Defendants intended to intimidate voters or suppress voting activity are categorically false and wholly disputed by the evidence in this case. In fact, LWVCO responsive documents show that, months before filing this case, on September 4, 2021, they emailed their members in a call for potential witnesses

(LWV0000002). This effort produced no witnesses but did result in many responses in support of USEIP activities. It was not until 20 days after the close of discovery, to beat a dispositive motion, that Plaintiffs produced Yvette Roberts sworn declaration, signed December 22, 2022. This declaration makes at least four materially contradictory statements, all of which change her prior testimony to align to Plaintiffs allegations, more than 18 months after Ms. Roberts' complaint to the Colorado Secretary of State.

Plaintiffs' efforts may further, according to the evidence record, have impacted important federal and state criminal investigations into voter intimidation in Mesa County, as Ms. Roberts' original complaint is now tainted by her contradictory sworn declaration in this civil case. Yvette Roberts' declaration is, per this Court's January 31, 2023 order on Defendants' motion for summary judgment, "a genuine dispute as to any material facts and the issue should be left to the factfinder." (Docket 84) Notably, this dispute did not arise until 20 days after the close of discovery, when the facts asserted by Yvette Roberts changed to align to Plaintiffs' allegations. Prior to the close of discovery, no witnesses – including Yvette Roberts whose original, contradictory complaint was already in evidence – claimed any threat, intimidation or coercion, any other injury or harm, any allegations against USEIP, any allegations against any of the named Defendants, anything about "official-looking badges," or anything about anyone representing themselves as an official or associated with a government entity. These allegations against Ms. Epp, her co-defendants, and USEIP broadly were first made by Ms. Roberts on December 22, 2023, 20 days after the close of discovery. Ms. Roberts is in Mesa County, and Ms. Epp did not organize, plan, train, or participate in canvassing in Mesa County.

Plaintiffs further assert that a continuance "will increase trial costs, and many of Plaintiffs' counsel are out-of-state attorneys with busy schedules that will be burdened by

a continuance." This is unfortunate, but the outstanding evidence issues require time to resolve in preparation for trial. While Defendants respect the busy schedules of Plaintiffs and their witnesses, it is improper to ask Defendants Epp and Kasun – two individual Colorado citizens – to defend themselves against false allegations made by some of the oldest and most powerful civil rights organizations in the nation while there remain significant, outstanding evidence issues in the record due to Plaintiff's lack of compliance with the Court's discovery order.

With regards to the Court's docket, Ms. Epp understands the inconvenience of a 60-day continuance, and she does not expect any additional delays beyond 60 days. While the third factor in West may weigh slightly in favor of denial of the request for a continuance, only as it pertains to the impact on the Court's docket, the harm that will result if the continuance is denied is substantial and outweighs these potential impacts.

### iv. Denial of the Continuance will Material Prejudice Defendants Epp and Kasun

Plaintiffs tried this case in the court of public opinion before Defendants were ever served with this lawsuit. On March 9, 2022, Ms. Epp learned of this litigation from Ms. Kasun after a national reporter called her for comment. It was not until five days later on March 14, 2022 that Ms. Epp was finally served and able to assess the full complaint – following dozens of local and national news stories repeating Plaintiffs baseless and defamatory allegations. These news reports have continued since the case was filed, nearly two years ago. While Defendant can only speculate about the benefits that Plaintiffs – and their counsel – have enjoyed from the nearly two years of unopposed press coverage and fundraising, Defendants have endured nearly two years of reputational damage, psychological damage, loss of income, harassment, and threats of physical harm because of Plaintiffs' abusive and extra-governmental efforts to deter Defendants' lawful

behavior. Prior to the inception of this case, Ms. Epp was a respected member of the Denver business community, the Women in Technology Leader for a celebrated local consultancy, and a recognized leader in the people and business sides of large-scale technology transformation programs. Ms. Epp's thought leadership has been published locally and nationally. The harm arising from Plaintiffs' false allegations against Ms. Epp is significant and ongoing. Further, as a mother of three teenagers, there are generational impacts of Plaintiffs' very public false allegations. Ms. Epp was (and is) prepared to present evidence of the harm that has resulted from Plaintiffs' public conduct, and their conduct before this Court, but she was never afforded the opportunity prior to this Court's dismissal of her counterclaims due to, as Ms. Epp understands it, a procedural mistake by prior counsel. "Defendants had the opportunity to file a motion to dismiss under Rule 12(b)(6) and failed to do so; they cannot litigate the issue of whether Plaintiffs have stated a claim for relief under the guise of abuse of process." (Docket 81)

Ms. Epp does not want Plaintiff's harm against her to continue; rather, she wants the ability to properly defend herself at trial. Ms. Epp understands that this Court has dismissed Defendants' compulsory counterclaims for defamation and abuse of process. Considering that dismissal, the only relief Ms. Epp can hope for to restore her name, reputation, and livelihood, and for her and her family to begin to heal from Plaintiffs' nearly two years of public character assassinations and incalculable damage, is a fair trial before this Court. Denial of this motion for a continuance, considering the foregoing issues, will be materially prejudicial to Ms. Epp. Therefore, the fourth factor in <u>West</u> weighs heavily in favor of granting the continuance.

## CONCLUSION

The outstanding evidence combined with Defendants Epp and Kasun's natural

handicap as pro se litigants, make a continuance necessary to ensure that the
administration of justice can occur.

The four factors in <u>West</u> weigh heavily in favor of granting a 60-day continuation of
hearing or trial. Ms. Kasun and Ms. Epp have been diligent in requesting this continuance,
acting immediately upon realizing that there were irreconcilable differences with prior
counsel with regards to how to defend this case. This was not an easy decision, but a
terrifying one. Ms. Epp feels forced into this pro se defense, and she requires 60 days to
prepare. Ms. Kasun and Ms. Epp have been proactive and responsive with Plaintiff
counsel, from the moment that the motion to withdraw prior counsel was approved by this
Court. In contrast, Plaintiffs have not responded to Ms. Epp's January 5 request to discuss
the forgoing issues. A continuance will accomplish its intended purpose, allowing Ms. Epp
and Ms. Kasun to discuss these evidence issues with Plaintiff counsel and adequately
prepare for trial. Further, the inconveniences to Plaintiff counsel and their out of state
attorneys and witnesses are far outweighed by the harm that will result from denial of this
continuation of trial.

As the Court unanimously held in Haines v. Kerner, a pro se complaint, "however
inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted
by lawyers." <u>Haines v. Kerner, 404 U. S. 519 (1972)</u>. This standard is arguably more
important in a pro se defense, particularly when it pertains to such heinous allegations as
those alleged by Plaintiffs, including the ongoing libelous attacks on Plaintiff counsel's
website (still active at the time of this filing). "In the normal civil suit where [the
preponderance of the evidence] standard is employed, `we view it as no more serious in
general for there to be an erroneous verdict in the defendant's favor than for there to be an
erroneous verdict in the plaintiff's favor.' *In re Winship*, 397 U. S. 358, 371 (1970)

(HARLAN, J., concurring). In libel cases, however, we view an erroneous verdict for the

plaintiff as most serious…the possibility of such error, even beyond the vagueness of the

negligence standard itself, would create a strong impetus toward self-censorship, which

the First Amendment cannot tolerate." _Rosenbloom v. Metromedia, Inc.,_ 403 US 29 -

Supreme Court 1971. As a local columnist and member of the press, Ms. Epp is

extraordinarily concerned about the "strong impetus toward self-censorship" that Plaintiffs'

false allegations have already created, not just for herself but for all USEIP associates

and, frankly, all Coloradans' ability to engage in the civic process and rely upon their First

Amendment protections.

Federal Rule of Civil Procedure 11(b)(1) states that, "By presenting to the court a

pleading, written motion, or other paper—whether by signing, filing, submitting, or later

advocating it—an attorney or unrepresented party certifies that to the best of the person's

knowledge, information, and belief, formed after an inquiry reasonable under the

circumstances: (1) it is not being presented for any improper purpose, such as to harass,

cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims,

defenses, and other legal contentions are warranted by existing law or by a nonfrivolous

argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will

likely have evidentiary support after a reasonable opportunity for further investigation or

discovery; and (4) the denials of factual contentions are warranted on the evidence or, if

specifically so identified, are reasonably based on belief or a lack of information." Fed. R.

Civ. P. 11(b).

As Plaintiffs have not yet responded to Ms. Epp's January 5, 2024 request to

discuss these outstanding issues, her representations herein are the best of her

knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, despite being conducted without participation by Plaintiffs.

For the foregoing reasons, Ms. Epp respectfully requests that the Court grant Defendant Holly Kasun's Pro Se Motion for a 60-day Continuance of Hearing or Trial. (Docket 104). Upon granting Ms. Kasun's motion, Ms. Epp will withdraw her motion for continuance (Docket 107) as duplicative.

Ashley Epp
1132 Koa Ct
Castle Rock, CO 80104
+1 (303) 591-8714
asheinamerica@protonmail.com

Attached to this Motion:

- Appendix A: Yvette Roberts Statements

- Appendix B: Law Enforcement Communications

- Appendix C: Deposition Excerpts

- Appendix D: LWV Safety Plan