IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00581-CNS-NRN

Colorado Montana Wyoming
State Area Conference of the NAACP,
League of Women Voters of Colorado, and
Mi Familia Vota
    Plaintiff(s)

v.

United States Election Integrity Plan,
Shawn Smith, Ashley Epp,
and Holly Kasun
    Defendant(s)

**DEFENDANT ASHLEY EPP'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT ASHLEY EPP'S PRO SE MOTION FOR CONTINUANCE OF HEARING OR TRIAL (ECF NO. 107) AND DEFENDANT EPP'S PRO SE RESPONSE IN SUPPORT OF HOLLY KASUN'S MOTION FOR A CONTINUANCE OF HEARING OR TRIAL (ECF NO. 108)**

Defendant Ashley Epp hereby responds to Plaintiffs response to her Pro Se Motion for Continuance of Hearing or Trial ("Motion for Continuance") (ECF No. 107) and her Pro Se Response in Support of Holly Kasun's Motion for a Continuance of Hearing or Trial (ECF No. 108). Specifically, Ms. Epp responds to Plaintiffs assertions to set forth in their response to the foregoing motions ("Plaintiffs' Response").

1

### I. This Case Has NOT Been Dormant Since May 2023.

Plaintiffs conflate activity in their proposed consent decree with activity in this case. As stated in Ms. Epp's prior response, Plaintiffs ongoing harm with regards to this case means there is no incentive for Ms. Epp to enter a consent decree. Activity regarding Plaintiffs' proposed consent decree is not the only measure of activity in this case and, while being represented by counsel, Ms. Epp was actively seeking to remedy these issues. While being represented by counsel Ms. Epp was not able to communicate directly with Plaintiff counsel to resolve outstanding issues and, as previously discussed (in ECF No. 108), Ms. Epp believed this negotiation was occurring and representing her interests as the defendant in this case. Ms. Epp has been diligent in requesting continuation.

### II. Plaintiffs Admit to Withholding Discovery from Defendants

Ms. Epp maintains that the continuation will achieve its stated purpose. In Plaintiffs' Response, Plaintiff counsel misstates Ms. Epp's evidentiary concerns. Plaintiff also confirms that there are, in fact, real evidence issues to be resolved before trial. Plaintiffs again rely on the discovery deadline of December 2, 2022 in their opposition to Ms. Epp's motion to continue, while confirming that they withheld at least one discoverable document (LWVCO112) from Defendants despite representing to this Court in the May 2022 Final Pretrial Order (ECF No. 95) that this document had been produced. This document is material.

Plaintiffs claim that Ms. Epp can resolve these evidence issues via the Court's "schedule for resolving outstanding evidentiary issues prior to trial." This does not dismiss the fact that the need to resolve these issues derives from Plaintiffs' actions and inactions during and after discovery. Ms. Epp is still not confident that she has received the entire record. Ms. Epp should not be penalized at trial due to Plaintiffs' conduct.

2

In regard to Plaintiff's response to the specific evidentiary issues raised by Ms. Epp:

*A. Plaintiffs Misstate Ms. Epp's Concern About and Issue with Ms. Roberts*

Plaintiffs assert that the Court has already "rejected Defendants' argument that Ms. Roberts was untimely disclosed." Ms. Epp did not raise an issue of the timeliness of Plaintiffs disclosure of Ms. Roberts' as a witness, but rather that the new assertions made by Ms. Roberts were not made until 20 days after the close of discovery and raise additional questions about the witness and her allegations and may imply state action. Further, from the record of this litigation, it is unclear to Ms. Epp where in these proceedings the Court "rejected Defendants' argument that Ms. Roberts was untimely disclosed." As far as Ms. Epp can tell, according to the record of this case, the matter has never been raised. In the order on Motion for Summary Judgement (ECF No. 84):

> "Plaintiffs identified three voters in its Rule 26(a)(1) disclosures who were contacted by USEIP: Anne Landman, Michelle Garcia, and Yvette Roberts. (ECF No. 72, pp. 4-5). Yvette Roberts, a registered Colorado voter and resident of Grand Junction, Colorado, submitted a declaration stating that she felt intimidated by the members of USEIP who visited her home after the 2020 election. (ECF No. 73, p. 3). Ms. Roberts states that a man and a woman affiliated with USEIP came to her home and asked invasive questions, told her that they had voting information from the state of Colorado, wanted to know (1) how she had voted in the last election, (2) who in the household is a citizen, and (3) whether she was the only voter in her household. (Id., p. 2). Ms. Roberts states that she felt intimidated and was concerned by Defendants' actions and lodged a complaint with the Office of the Colorado Secretary of State. (Id., p. 3). Defendants deny that the voters identified

3

by Plaintiffs were contacted by USEIP members and claim that they did not conduct canvassing efforts in Mesa County. (ECF No. 76, p. 2). Accordingly, there is a genuine dispute as to any material facts and the issue should be left to the factfinder. Accordingly, the Court denies Defendants' motion for summary judgment on this issue."

As far as Ms. Epp has been able to decipher, this order is the only time the court has mentioned Ms. Roberts, and Ms. Epp's specific questions have not been raised. As cited above, the Court found that Anne Landman, Michelle Garcia, and Yvette Roberts represented "a genuine dispute as to any material facts and the issue should be left to the factfinder." (ECF No. 84) Anne Landman and Michelle Garcia were discovered by Plaintiffs through news reporting, they do not appear on Plaintiffs witness list, there are no declarations or depositions for either witness, they did not obtain Ms. Garcia's ring doorbell camera video, and Plaintiffs are now attempting to bring these witnesses in through news reporting while representing to this Court that the news reporting is not being offered for the truth of the matter asserted. (ECF NO. 109) That is, Ms. Landman and Ms. Garcia are not alleging any harm under the Section 11(b) of the Voting Rights Act or the Ku Klux Klan as a part of this case. The only witness alleging this harm is Ms. Roberts. While represented by counsel, Ms. Epp was not afforded the opportunity to depose Ms. Roberts which, given that Ms. Roberts is the only fact witness alleging harm against Ms. Epp, could be materially prejudicial to Ms. Epp's defense.

B.  *New Info on the Colorado Secretary of State Documents Raises More Questions*

Plaintiffs claim that the documents "marked with a COSOS Bates label were obtained through a Colorado Open Records Act request from the Colorado Secretary of

4

State's Office and were produced to Defendants in the format in which they were received." Accepting Plaintiffs assertion as true does not alleviate Ms. Epp's issue. As previously stated, given that Ms. Roberts was potentially a witness in a criminal matter involving five federal and state investigative bodies, and as Ms. Roberts is the only witness alleging harm against the defendants in this case, the chain of custody of Ms. Roberts' testimony is important considering that her story significantly, materially changed 20 days after the close of discovery. Further, Plaintiffs' Response reveals to Defendants for the first time that these redactions were applied by the Colorado Secretary of State's Office – which the Defendants did not know prior to Plaintiffs' January 10, 2024 response. This new information raises additional questions:

(1) Who conducted the open records request that produced Ms. Roberts' original complaint?

(2) Did Plaintiffs conduct any due diligence with the five federal and state agencies who had, according to the records in COSOS02-COSOS10, reviewed Ms. Roberts' complaint?

(3) How did Plaintiffs contact Ms. Roberts? Was it through the Secretary of State's office or one of the other investigative bodies? Or was it some other way?

(4) Did the COSOS Office, the Mesa County DA, the Colorado AG, the US Attorney's Office, the FBI, or the Plaintiffs coerce Ms. Roberts to change her story 18 months after her original complaint?

(5) Who commissioned and who wrote Ms. Roberts' December 22, 2022 declaration?

Ms. Epp and Ms. Kasun have been attempting to develop the evidentiary record with regards to Ms. Roberts since Plaintiffs filed her new accusations on December 23, 2022. Given that Ms. Roberts is the only witness in this case that alleges any harm under

5

Section 11(b) of the Voting Rights Act and Ku Klux Klan Act, Defendants have a right to understand all relevant facts about Ms. Roberts before they are presented to the fact finder.

It is of further interest that Plaintiffs admit they did not learn about Ms. Roberts complaint until November of 2022 via open records. This means when Plaintiffs asserted their harm, due in part to the complaints of their members and "others," in March 2022 through November 2022, they did not have Ms. Roberts' testimony. They have not produced any other witnesses to support the claims in their original complaint.

*C. Plaintiffs Admit that they Did Not Produce LWVCO112 despite representing to this court that they did.*

LWVCO112 has been on the exhibits list since the May 2023 Final Pretrial Order (ECF No. 95). Further, the only responsive document produced by any of Plaintiff Organizations that supports their allegations that Defendants have brought them harm is LWVCO112, which has been represented as Plaintiffs' "2022 Safety Plan." The first time this document was produced was January 8, 2024, despite Plaintiffs' reference to it throughout the course of this litigation and its representation in the Final Pretrial Order. As Plaintiffs note, the end of discovery was December 2, 2022. As noted in Ms. Epp's response to Ms. Kasun's Motion for Continuance (ECF No. 108), Plaintiffs have repeated their assertions of harm since filing this case and have produced no responsive documents to support their claims.

On January 10, 2024, Plaintiff counsel communicated to all parties that they produced LWVCO112 in error on January 8, 2024. Per Plaintiffs' Response, they claim they "have withdrawn and clawed back LWVCO112," but do not address why this document was withheld from discovery until January 2024, despite their representations to

6

this Court that it had been produced. The document itself is material to Ms. Epp's defense, she intends to use it at trial, and she has notified counsel of her intentions. Plaintiffs' own admission with regards to LWVCO112 supports Ms. Epp's contentions that there are evidence issues that must be resolved prior to trial.

*D. The Are Outstanding Evidence Issues*

Plaintiffs claim there are no outstanding evidence issues while claiming in Plaintiffs' Response that they will bring evidence at trial to prove "Defendants' role in the formation and operation of USEIP," which is not in dispute, and "what and how resources were diverted within Plaintiffs' organizations to combat USEIP's efforts," for which, absent LWVCO112, there is no evidentiary record. Plaintiffs are attempting to claw back the only document they produced that could support these assertions. If such a record of evidence exists, it has not been provided to Ms. Epp.

Plaintiffs claim to be "puzzled" by Ms. Epp's response to their contention that "allowing a continuance will burden Plaintiffs substantially and increase the risk that Defendants will re-engage in intimidation tactics in the interim." (ECF No. 105 at 6) Plaintiffs have not provided a scintilla of evidence that any intimidation occurred by or at the direction of the defendants, and they continue to conflate lawful canvassing, which is protected under the First Amendment, with unfounded, undefined, and unproven "intimidation." Further, in Plaintiffs' Response, they selectively edited ECF No. 35 (at 8) to read: "all canvassing efforts by USEIP volunteers have ceased" when the pleading reads, "Upon information and belief, all canvassing efforts by USEIP volunteers have ceased." Ms. Epp has maintained since the beginning of these proceedings that she does not direct the efforts of anyone associated with USEIP, as USEIP is a free association of people (and USEIP has been dismissed as a defendant in this case). While Ms. Epp is unaware

7

of any Colorado counties that are currently engaging in door-to-door canvassing, whether under the banner of USEIP or otherwise, Ms. Epp cannot state this as a fact because she doesn't know – and neither do Plaintiffs. That said, the efforts to address the canvassing data with county district attorneys and law enforcement have been ongoing and were active in 2023, as were many other activities that USEIP associates engage in locally. These ostensibly continue. Thus, Plaintiffs assertions that USEIP associates have stopped their activities in Colorado are in fact false because (1) they have not established this assertion with any sort of evidence, and (2) Ms. Epp can prove that the interactions with law enforcement to resolve the data issues found during canvassing were active in 2023 in at least one county. The latter activity is part of the USEIP stated purpose and documented process for canvassing, and thus proof that USEIP activities have not, as plaintiffs allege, ceased.

Plaintiffs attempt to isolate USEIP canvassing as inherently unlawful or intimidating behavior, but they have not provided any evidence to support this conflation beyond their own editorializing of inadmissible news reports. In fact, prior to the close of discovery, Plaintiffs could not produce a single witness that alleged injury or harm, implicated USEIP or any of the named Defendants, claimed anything about "official-looking badges," or alleged that anyone – not just anyone associated with USEIP but anyone – represented themselves as an official or associated with a government entity. These assertions were first made on December 22, 2022, 20 days after the close of discovery, 18 months after Yvette Roberts filed her complaint with the Secretary of State, and in response to Defendants' Motion for Summary Judgement. That Plaintiffs are puzzled is further proof that their allegations against the defendants are unfounded.

   E.  Plaintiffs Misstate Ms. Epp Assertions about Evidence Disputes

8

Plaintiffs assert that Ms. Epp's evidence questions are "properly included in dispositive motions or argued at trial, but find no place in a motion seeking continuance of a trial." Again, Plaintiffs misstate Ms. Epp's issue, as she is not disputing the merits of Plaintiffs' evidence. As stated in her motion in support of Ms. Kasun's motion to continue, "Ms. Epp is not asking this court to reconsider standing before trial. Rather, Ms. Epp is not confident that she has access to the full evidence record from discovery. That is, Ms. Epp does not 'disagree' with Plaintiffs evidence alleging their harm. According to the record she has been provided, Ms. Epp is certain that no such evidence exists, despite Plaintiff counsel's repeated assertions that it does and has been produced." Plaintiffs assert in Plaintiffs' Response that they will present evidence at trial that proves, "what and how resources were diverted within Plaintiffs' organizations to combat USEIP's efforts." (ECF No. 113 at 3). Ms. Epp maintains that she has not received any such evidence in discovery. Either it exists and Ms. Epp has not been provided it, or it doesn't exist.

Plaintiffs' assertions in their response further demonstrate that there are evidentiary disputes to be resolved before trial, warranting a continuation.

III. *Plaintiffs DID Ignore Ms. Epp's Requests to Discuss Evidence Issues & Responded Instead with Intimidation and Coercion*

Given that this case is fundamentally about intimidating, threatening or coercive behavior, which Plaintiffs baselessly attempt to conflate with lawful canvassing protected under the First Amendment, this dispute will be instructive to the pro se Defendants as per the expected norms of professional conduct, while helping to clarify the legal standards to which Defendants are being held in this proceeding.

Plaintiff counsel contends that "Plaintiffs Neither Refused to Meet with Ms. Epp Nor 'Threatened Her With Six Figure Penalties.'" They claim, "Plaintiffs have not 'threated six

9

figure penalties against Ms. Epp' to 'coerce' her into entering a consent decree; rather, in connection with communications concerning Plaintiffs' Proposed Consent Decree, Plaintiffs simply noted that they are seeking an award of attorneys' fees at trial." (ECF No. 113)

First, Plaintiff's assertion misstates Ms. Epp's allegation which is that "Plaintiff counsel responded with a formal letter that threatened six figure penalties against Ms. Epp and urged her to enter into a consent decree." (ECF No. 108) More importantly, Plaintiffs' contentions in their response are untrue, and the exchange is attached to this reply as Exhibits 1-3. On January 3, 2024, Plaintiff counsel approached Ms. Epp via email with the following message:

> "Ashely // We first shared the attached Proposed Consent Decree with your prior counsel at the Reisch Law Firm back in May. I do not know whether you have ever seen a copy of this (or what has otherwise been shared with the two of you regarding possible resolution of this matter), but we have never received any response to the attached settlement proposal. // If you would like to provide a response to this or otherwise discuss a resolution of this prior to trial, please let us know. If not, we will continue with preparation for trial, which we believe should proceed as scheduled."
> (Exhibit 1)

Upon receipt, Ms. Epp promptly responded:

> "Hi Amy // Given the facts in this case, I am struggling to find any incentive for me to sign your proposed consent decree. It appears unlikely that we can resolve this matter without a trial. I will be filing my motion to continue today, and I will include that plaintiffs oppose the

10

motion. // Separately, in preparation for trial, I have a few evidence-related questions for you. When is a good time to chat? Kind regards, Ashe."

(Exhibit 2)

In response to her request "to chat" about the "evidence-related questions," Plaintiff counsel responded, changing her previously informal salutation of "Ashely" to "Ms. Epp":

"Ms. Epp // I trust your prior counsel advised you that if we prevail at trial, you, Holly, and Shawn will each be liable for all the attorneys' fees and costs incurred by our clients in connection with this action. That exposure is increasing daily as we prepare for trial and will be substantial six-figure number if we end up trying the case. The judgment against you, Holly, and Shawn would be joint and several, meaning our clients would have the right to collect the entire amount from any one of you. Further, the Court would issue a public Order condemning your actions and finding that you, Holly, and Shawn violated the Voting Rights Act and the KKK Act. // We are extremely bullish on our position on the merits.  You, Holly, and Shawn have all admitted that you were instrumental in the formation of USEIP.  We have substantial evidence demonstrating voters felt intimated by USEIP's actions, and that our clients were forced to divert resources from their mission in order to protect voters from USEIP's actions. We believe there is more than enough evidence to find violations of the Voting Rights Act and KKK Act and justify an award of attorneys' fees and costs. // The Court's rulings to date also give us confidence.  Your attorneys brought countless motions in attempt to dismiss our clients' claims, and nearly all of those motions were promptly denied by the Court. The Court also dismissed your Counterclaims, and it denied your request to preclude our expert from testifying. // As I indicated in my email to Holly yesterday,

11

if you find our Proposed Consent Decree unacceptable as written, feel free to offer suggested revisions for our consideration. From our perspective, there is little downside to you and your co-defendants entering into the Consent Decree as written, and substantial exposure (which is growing by the day) if you do not." (Exhibit 3)

It is important to the administration of justice that these proceedings be free from intimidation and coercion. (*Bridges v. California*, 314 US 252 - Supreme Court 1941) (holding that the courts have a duty to provide "fair judicial trials free from coercion or intimidation.") At no time in their response to Ms. Epp, or in the days since, did Plaintiffs engage with Ms. Epp's request to discuss what she perceived to be outstanding evidence issues. Rather, Plaintiffs responded in a way that Ms. Epp subjectively found to be intimidating, and which she believes was an attempt to coerce her into an unwarranted and unwanted consent decree that favors their interests.

(1) The salutation within the email thread changed from "Ashely" to "Ms. Epp" upon Ms. Epp's rejection of the consent decree, changing the tone of the exchange, mid-thread, from informal to formal.

(2) *"That exposure is increasing daily as we prepare for trial and will be substantial six-figure number if we end up trying the case."* Plaintiffs explicitly mention a "substantial six-figure number" in relation to going to trial and state that the number is increasing.

(3) *"The Court would issue a public Order condemning your actions and finding that you, Holly, and Shawn violated the Voting Rights Act and the KKK Act."*

12

Following the discussion of six-figure penalties, Plaintiff added implied threats of additional reputational damage and other reprisals.

(4) *"We have substantial evidence demonstrating voters felt intimated by USEIP's actions, and that our clients were forced to divert resources from their mission in order to protect voters from USEIP's actions."* There is no such evidence in the record. This is one of Ms. Epp's primary stated purposes of requiring more time – to understand if Ms. Epp is missing part of the record – because Plaintiffs keep referring to evidence that is not there. Ms. Epp views this statement as gaslighting intended to instill confusion and fear about the record of facts and evidence in an attempt to trick her into entering a consent decree.

(5) *"The Court's rulings to date also give us confidence. Your attorneys brought countless motions in attempt to dismiss our clients' claims, and nearly all of those motions were promptly denied by the Court. The Court also dismissed your Counterclaims, and it denied your request to preclude our expert from testifying."* Here, Plaintiff counsel attempts to make Ms. Epp doubt the impartiality of this Court via an appeal to authority fallacy. For the record, Ms. Epp believes this Court to be above reproach and believes her only opportunity to clear her name and heal from Plaintiffs' character assassinations and other ongoing harm, is a fair trial. Ms. Epp believes the facts, the evidence, and the law are on her side and that she will prevail at trial. Plaintiffs' efforts to make Ms. Epp doubt the impartiality of this Court have had no effect on Ms. Epp.

(6) *"From our perspective, there is little downside to you and your co-defendants entering into the Consent Decree as written, and substantial exposure (which is*

13

*growing by the day) if you do not."*

After ignoring Ms. Epp's request to discuss evidence issues, attempting to instill fear in her decision to proceed to trial, and gaslighting her about the facts of the case, Plaintiffs then offer Ms. Epp a "way out" in the form of signing their consent decree.

In <u>Counterman v. Colorado</u>, the Supreme Court confirmed the "Colorado Test" as the standard to determine true threats. "The Colorado test starts 'with the words themselves, along with any accompanying symbols, images, and other similar cues to the words' meaning.' Id. at 731. But because the meaning of a word or phrase is inseparable from its context, 'what a [speaker] actually said is just the beginning of a threats analysis.' Id. at 732 (quoting Haughwout v. Tordenti, 211 A.3d 1, 11 (Conn. 2019)). The Colorado test thus considers the following, non-exhaustive list of factors to determine the full context in which the statement was made: (1) the statement's role in a broader exchange, if any, including surrounding events; (2) the medium or platform through which the statement was communicated, including any distinctive conventions or architectural features; (3) the manner in which the statement was conveyed (e.g., anonymously or not, privately or publicly); (4) the relationship between the speaker and recipient(s); and (5) the subjective reaction of the statement's intended or foreseeable recipient(s)." (*<u>Counterman v. Colorado</u>*, 143 S. Ct. 2106 - Supreme Court 2023).

With regards to Plaintiff counsel's statements, Ms. Epp considers that (1) the broader exchange is a legal proceeding in which Plaintiff counsel claims to have the upper hand, (2) the medium is direct communication via email, (3) the statement was conveyed directly and privately, (4) the relationship between the speaker and the recipient is

14

imbalanced, in terms of power and access to knowledge and resources, and contentious by nature; and (5) Ms. Epp's subjective reaction to the statement is objectively fear.

According to Black's Law Dictionary, "implied coercion" is defined as "where a person induces another person into doing something that he does not want to do" and "moral coercion" is a "term that means to exert extreme pressure on a person to make them do or not do a thing." Having established via the Colorado Test that Plaintiff counsel's statements were subjectively threatening, they become coercive when considering the change in tone from informal to formal, and the "way out" provided by plaintiffs: a legal agreement that would enable Plaintiffs and Plaintiffs' counsel to violate Ms. Epp's civil liberties, regulate her First Amendment rights, and continue doing her harm.

## CONCLUSION

Defendants have been diligent in requesting this continuation, and Plaintiffs' own admissions in Plaintiffs' Response confirm there are outstanding evidence issues to be resolved before trial. Further, the inconveniences to Plaintiffs are far outweighed by the harm that will result from denial of this continuation of trial.

Dated: January 10, 2024

_____

Ashley Epp
1132 Koa Ct
Castle Rock, CO 80104
+1 (303) 591-8714
asheinamerica@protonmail.com

15

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been electronically served through ECF this 10th day of January 2024, to all counsel of record.

s/Ashley Epp

_____

Ashley Epp