IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22:cv-00581-CNS-NRN

Colorado Montana Wyoming State Area Conference of the NAACP,

League of Women Voters of Colorado, and

Mi Familia Vota,

    Plaintiffs,

v.

Shawn Smith, Ashley Epp, and Holly Kasun,

Defendant(s).

**PRO SE DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO HOLLY KASUN'S PRO SE MOTION FOR HEARING AND TRIAL CONTINUANCE (ECF NO. 105)**

This reply is about whether pro se Defendant Kasun's first and only Motion for Continuance should be granted. Defendant Kasun is currently a pro se defendant who is requesting a continuance of sixty days to find new counsel so she can properly prepare for trial.

## **CONTEXT**

In March 2022, Plaintiffs filed their pleading alleging Defendants violated the Voting Rights Act Sec.11(b) and The KKK Act (42 U.S.C. § 1985) [Docket 1] without a single piece of relevant factual evidence, witness affidavits, or any other documentation supporting Plaintiffs case, only Plaintiffs' statements, that doesn't preclude Plaintiffs obligation to comply with evidentiary rules. Plaintiffs' strategy of filing a baseless inflammatory case without evidence was put to the test when Plaintiffs Motion for a Temporary Restraining Order and Preliminary Injunction flat-out failed, " Admissibility concerns aside, these articles are also months old and do not indicate any ongoing conduct by USEIP or its members." " These allegations are unsupported, and plaintiffs do not show that any of this alleged misconduct is ongoing."  [Docket 30 p. 9]

On May 12 2022, Plaintiffs withdrew their Motion for a Temporary Restraining Order and Preliminary Injunction just in time to avoid a scheduled hearing on June 2, 2022.  With the benefit of hindsight, Defendants now understand why Plaintiffs took this unusual action.  The withdrawal ensured opposing counsel avoided having woefully unprepared and clueless Plaintiffs and The Colorado Secretary of State Griswold testify under oath at the hearing.  At that point in the proceedings, Plaintiffs hadn't produced any admittable evidence supporting their case.  It must be noted, this is the first of many cunning moves Plaintiffs used to avoid transparency with both the Defendants and the Court.

On July 6th, Defendants' counsel received a Rule 26(A)(1) DISCLOSURES brief [EXHIBIT 1] which was the start of Plaintiffs' discovery production requests.  By August 23rd, 2022, all three Defendants, Ms. Epp, Ms. Kasun, and Mr. Smith had produced all responsive documentation and completed their sworn depositions. Around two weeks later, Defendants'

witness Jeff Young had turned over his responsive documentation, completed his sworn deposition and USEIP's extensive database records.  By mid-September 2022, Plaintiffs had received *all records they requested for discovery* from Defendants and their witness.   In return, *Defendants hadn't received a single responsive document from the Plaintiffs*.

Defendants' counsel had been diligent in pressing Plaintiffs to comply with discovery. Defendants letter sent on October 11th, 2022, explains, *"I am writing to confer and hopefully resolve the following issues regarding Plaintiffs' initial disclosure and supplemental disclosure deficiencies.  As you know, all parties' 26(A)(1) disclosures were due and have been exchanged on July 8th, 2022.  To this date, no supplemental disclosures have been produced by Plaintiffs."* Defendants' letter then describes Plaintiffs' lack of evidence issues that have persisted for nine (9) months since their pleading was filed. *"Plaintiffs' claims of voter intimidation necessarily require proof that voters were intimidated by Defendants or that Defendants attempted to intimidate voters.  Despite having deposed all Defendants and propounding written discovery, no instances of Colorado voters claiming they were intimidated or threatened by Defendants has been uncovered."*  And finally, the letter demonstrates Plaintiffs' troubling representations to the Court and Defendants, *"Nevertheless, it has been represented to the Court that "Plaintiffs have had contact with voters who were intimidated by encounters with USEIP representatives on their own doorsteps."  [Docket No. 37, pg. 3].  Similarly, it has been represented to undersigned counsel that certain local officials were in receipt of complaints regarding USEIP and such complaints are not in Plaintiffs' possession since they consisted mostly of phone calls."* (EXHIBIT 2).

It took until the end of October 2022 for Plaintiffs to produce their interrogatory responses. All three of the Plaintiffs interrogatory responses had been prepared by opposing counsel and **Plaintiffs objected to nearly every interrogatory question Defendants asked**. Plaintiffs egregious delay in responding to Defendants discovery requests were likely intended to allow Plaintiffs to "make their case" given they had no admittable evidence thus far. This is the second occurrence in the pattern of Plaintiffs' cunning moves to avoid transparency with the Court and Defendants in the proceedings.

Just nine (9) days before the close of discovery on December 2, 2022, the three (3) Plaintiffs were finally able to be deposed by Defendants. By the end of the three depositions Plaintiffs' lack of evidence was completely exposed. After eight (8) hours of collective sworn depositions, Plaintiffs A) failed to identify a single voter who was contacted by Ms. Kasun, Ms. Epp, Shawn Smith or any USEIP canvassing volunteer. B) failed to identify a single voter who had been intimidated, threatened, or coerced by Defendants, *or anyone at all.* C) failed to identify any single voter, or group of voters that had been deterred from voting or participating in any voting activity. D) failed to identify any single voter or voting group that had been compelled to act against their will in the context of their voting activity.

Plaintiff Portia Prescott was asked, *under oath,* at least a dozen times - over the course of three (3) hours what evidence, personal knowledge, witnesses, reports, notes, memos, affidavits, statements, declarations, or documentation she or her organization had that demonstrated Defendants engaged in any type of voter intimidation. EVERY ONE OF MS. PRESCOTT'S ANSWERS were "I DON'T RECALL" or "I DON'T KNOW." Defendants' counsel ended Ms. Prescott's deposition with this:

"MR. REISCH: All right. I think we've covered it. I'm going to ask one final time.

(By Mr. Reisch) What evidence do you have that Ms. Kasun, Mr. Smith, or Ms. Epp engaged in voter intimidation, ma'am? What specific evidence do you have? Where did it take place and when?

MS. STOCK [Plaintiffs' counsel]: Objection to form. Asked and answered.

(By Mr. Reisch) You can answer.

MS. PRESCOTT: I don't recall." [Prescott Deposition Transcript, Docket 70, Exhibit 1, p. 140-141.].

In fact, Ms. Prescott answered, "I don't recall" and "I don't know" well over two dozen times in her sworn testimony, raising the issue of whether Plaintiff Prescott actually understood her own lawsuit, the claims, and if she knew she had personal liability for signing the pleading and all subsequent documents related to the case.

Plaintiff Salvador Hernandez's hour-and-a-half sworn deposition is equally void of factual evidence supporting Plaintiffs' baseless voter intimidation claims. In fact, Mr. Hernandez makes it clear neither he or his organization has any firsthand knowledge or documentation supporting any of the false factual allegations in Plaintiffs' pleading.

"(By Ms. Hays) "you testified today that you have not spoken with members of MFV who are concerned of Defendants' past and potential future actions. So is your answer to interrogatory number 2 -- has it changed?"

MR. BREESE: Objection to form.

THE DEPONENT [Plaintiff Hernandez]: Yep. I'm not sure, like, though -- what do you mean by that? I mean, we've spoken to other groups -- right? -- the League of Women Voters being one of them. They heard about, you know, the USEIP going to doors. We

haven't heard directly from community members about experiencing this on a firsthand basis." [Hernandez Depo Transcript p. 55]

And finally, Plaintiff Beth Hendrix Nieland's deposition, while the strongest of the three, failed to disclose any factual evidence supporting her lawsuit. Embarrassingly, Plaintiff only had evidence supporting Defendants' case!  Further, Plaintiff Hendrix Nieland claimed to have turned over all evidence to her counsel,

"(Reisch) Okay. Why have you not turned these over, ma'am? Why has your attorney not turned these over?

MS. ERICKSON: Object to the form. Calls for an illegal conclusion. Subject to attorney-client privilege.

THE DEPONENT: We turned over everything.

Q. (By Mr. Reisch) Okay. And when you say we turned over everything, you mean you turned it over to your attorneys. Is that right?

A. Yes.

MR. REISCH: We did number 4 there.  Q. (By Mr. Reisch) Go to page 5 in interrogatory number 5. "Identify the name, address, telephone, numbers, and email of every person or entity from whom you received a report, a positive interaction, [r]elated to any of the actions of the Defendant in this case." Did I accurately state that question? Q. Once again, you -- you all are objecting as to attorney-client privilege or work product.

A. Yes.

Q. And then you state: "LWVCO spoke with one voter who had been contacted by USEIP who reported that they were generally supportive of USEIP's efforts."

A. Yes.

Q. Do you have access to that email, ma'am?

A. Yes, but I turned it over as well.

Q. Do you remember the name of the individual who was supportive of USEIP?

A. I do not.

Q. Now, here you stated there was one, but I believe previously in your testimony you stated that you received two people that were supportive of USEIP.

A. I believe that is correct." [Hendrix Depo Transcript p. 80]

At the end of discovery on December 2, 2022. Plaintiffs had not identified a single piece of evidence, or identified a witness that was injured or harmed by Defendants. However, in Plaintiffs' responsive documents was an email sent from Yvette Roberts of Mesa County to the Office of the Secretary of State on June 23, 2021. Roberts' email did not identify Defendants Kasun, Epp, Smith or USEIP volunteers, describe any behavior that could be even vaguely considered intimidating or threatening, nor did Roberts make any assertion that her interaction with canvassers caused any impact whatsoever on her voting activity. Roberts' email physically describes the two canvassers (one male, and one female) in enough detail that when compared with Defendants Kasun's, Epp's, and Smiths physical descriptions it's a clear mismatch.

Over eighteen months (18) after Roberts sent her contemporaneous account of her encounter with the two canvassers in Mesa County to the Secretary of State, Roberts produced a

sworn declaration signed on December 22, 2022, that was previously undisclosed by Plaintiffs. Plaintiffs submitted this new evidence as an exhibit in their response to Defendants' Motion for Summary Judgement. [DOCKET 72].

Apart from the fact that the digital copy of Roberts' sworn declaration has objectively unusual formatting, the contents of Roberts' declaration contains at least nine (9) material changes to Roberts' initial recollections of her canvassing encounter. Roberts' sworn declaration states she was specifically canvassed by USEIP, and that she felt "intimidated about speaking out." Roberts' two statements in particular are curiously specific given the glaring deficits in Plaintiffs evidence at the close of discovery.

Given Yvette Roberts' declaration was submitted after the close of discovery, it denied Defendants' the opportunity to depose Roberts during discovery. In the Court's ruling on Defendants Motion for Summary Judgement, USEIP was dismissed as a defendant due to the fact that it was deemed a free association of people. However, Roberts' declaration established the only material fact in question which allowed the case to proceed per the Court's Motion for Summary Judgment ruling CITE. By submitting new evidence, Roberts' sworn testimony Plaintiffs' beat an unfavorable ruling on Defendants Motion for Summary Judgement. This is the third occurrence in the pattern of Plaintiffs' cunning moves to avoid transparency with the Court and Defendants throughout the proceedings.

Defendants believed their counsel addressed Roberts' late-add sworn declaration, and the impact it had on Defendants defense with the Court. The Court recognized the issues around Defendants being denied the opportunity to depose Plaintiffs' only fact witness in the case would severely damage Defendants case, and call into question Defendants right to a fair trial. CITE.

However, Defendant Kasun's former counsel never took the opportunity to depose Roberts, even after Defendants urged her to do so through numerous requests over the course of months.

In May 2023, the Pre Trial Order was issued, and trial was scheduled for February 5th 2024. Plaintiffs withdrew their damages claim. Ms. Kasun, Mr. Smith, and Ms. Epp were not informed of this material change in the proceedings until months later. They also were unaware that the Plaintiffs' change resulted in a denial of Defendants right to a jury trial, which they'd been granted early in the proceedings. In the list of exhibits, Plaintiffs Document 112 was identified as a "safety plan" that Hendrix claimed was evidence of her diversion of resources caused by USEIP's canvassing activity. Hendrix stated it took "eight hours" to come up with it and she had it written down and still had a copy of the plan. [Hendrix Depo Transcript p. 36]

As of January 7th, 2024 Plaintiffs had not turned over Document 112 to Defendants, despite it being on the Pre Trial Order exhibit list. Ms. Epp repeatedly asked her counsel, over the course of weeks, where she could find it. Only after Ms. Epp was officially defending herself Pro se did she see Plaintiff Hendrix "Safety Plan" Document 112. It turns out, the "Safety Plan" was actually a Plaintiffs' memo, describing their intent to sue Mike Lindell a wealthy businessman, and Plaintiffs expectation there may be blowback from the litigation. Not only was Document 112 withheld until January 8th, 2024, it's nature and contents were completely misrepresented to Defendants and the Court for months. Worse, Plaintiffs' attorney Amy Erickson communicated to the Defense (collectively) she intended to remove the damning memo from her pre-trial evidence list. Ms. Erickson's actions show *she was intentionally withholding evidence* and *she had no intention of turning it over to Defendants* despite its material value to Defendants' case, in violation of the rules of evidence.

Plaintiffs' pattern of withholding evidence continues.  Defendant Kasun just discovered new evidence that Plaintiffs failed to disclose.  An email between Plaintiff Beth Hendrix Nieland and a League of Women Voters (LWV) member who is now a LWV Board Member—AND a USEIP canvassing volunteer. This email is material to Defendant's defense based on its content and who sent it to Plaintiff Hendrix.  Through this email, Defendant Kasun learned of a new fact-witness that supports her defense.  However, because Plaintiffs failed to disclose this message, it denied Defendant Kasun to properly investigate, and likely develop material evidence to support her case.

Over the course of these proceedings, and to this day **Plaintiffs have established an undeniable pattern of withholding evidence, and misrepresentation to Defendants and the Court.**  Plaintiffs' actions have severely harmed Defendant Kasun's, Smith's and Epp's ability to defend themselves, pro se or not.

## ARGUMENT

Pro se Defendant Kasun requests a continuance for 60 days to find new counsel and resolve evidentiary issues with former counsel and opposing counsel.  According to West, 828 F.2d at 1470 (citing Bradshaw, 787 F.2d at 1392). The Court must weigh four factors (i)"the diligence of the party requesting the continuance; (ii) the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; (iii) the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; and (iv) the need asserted for the continuance and the harm that [the movant] might suffer as a result of the district court's denial of the continuance."  Based on the context Defendant Kasun provided, it's shown Ms. Kasun's diligence in proactively managing her defense with and without counsel, that extra time is needed to find new counsel and to

resolve obvious evidentiary issues that affect Ms. Kasun's defense and all parties, including the Court. Defendant Kasun acknowledges the granting of the continuance inconveniences the Court and Plaintiffs interests. However, the damage and harm Defendant Kasun would suffer if a continuance isn't granted would mean the ends of justice could not be met in this case if she had to represent herself pro se without a continuance.

    Signed January 11, 2024

        /s/ Holly Kasun
        Print Name: Holly Kasun
        Address: 6600 S. Boulder Road
        Boulder, CO 80303
        Telephone Number: (720) 340-6421
        Email Address: hollyataltitude@protonmail.com