**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-00581

Colorado Montana Wyoming
State Area Conference of the NAACP,
League of Women Voters of Colorado, and
Mi Familia Vota,

    Plaintiff(s),

v.

United States Election Integrity Plan, Shawn Smith,
Ashley Epp, and Holly Kasun.

    Defendant(s).

---

### PRO SE DEFENDANTS' EMERGENCY MOTION FOR SANCTIONS for FAILURE TO DISCLOSE UNDER FRCP 26 PURSUANT TO FRCP 37

Defendants move the Court to impose sanctions on Plaintiffs and their counsel due to their pattern of flagrant disregard for the Fed. R. Civ. P. 26 Duty to Disclose pursuant to Fed. R. Civ. P. 37 Failure to make Disclosures, cooperate in discovery. Plaintiffs' pattern of withholding and misrepresenting required discovery records have repeatedly obstructed and, in many cases, prohibited Defendants from mounting a proper defense. Plaintiffs' pattern of violating the Federal Rules of Civil Procedures continues to the present day as indexed in Defendants Quick-Reference Guide [Exhibit 7]. Plaintiffs' bad faith actions have materially prejudiced and harmed Defendants.

Absent the Court's swift and decisive action through the imposition of sanctions, Defendants are unable to use their limited pre-trial time for adequate trial preparation.

## INTRODUCTION

In their complaint, Plaintiffs allege that responding to Defendants' conduct has cause them to divert resources that could otherwise be used for their usual programmatic priorities. [Docket 1] In April 2022, at the pleading stage, the Court recognized, "Diversion of resources is a cognizable harm," and "It has been established that diversion of resources is a cognizable harm in the context of Article III standing analysis." Colorado v. EPA, 445 F. Supp. 3d 1925, 1307 (D. Colo. 2020) (citing Havens Realty, 455 U.S. at 379), rev'd on other grounds, 989 F. 3d 874 (10th Cir. 2021) [Docket 39 p. 7] In other words, an "organization has standing to sue on its own behalf if the "defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts'" *Common Cause of Colo. v. Buescher*, 750 F. Supp. 2d 1259, 1269 (D. Colo. 2010) (quoting *Fla. State Conference of NAACP v. Browning*, 522 F.3d 1153, 1165 (11th Cir. 2008))". At the pleading stage, a Plaintiffs burden is a "low bar" see, e.g., *Attias v. Carefirst, Inc.,* 865 F.3d 620, 622 (D.C. Cir. 2017); *Kan. Nat. Res. Coal. v. Dep't of Interior*, 971 F.3d 1222, 1231 (10th Cir. 2020) [Docket 39 p. 9] "General factual allegations of injury resulting from the defendants' conduct may suffice." (quoting *Lujan*, 504 U.S. at 561)); *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 899 (10th Cir. 2016). "While at summary judgment or trial, the plaintiff must show specific facts." *See, e.g.*, *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 450 (10th Cir. 1996). [Docket 39 p. 7-9].

The Court then stated, "Plaintiffs have met their initial burden by adequately alleging injury, causation and redressability" [Id. p.17] finding Plaintiffs injury allegations causing a diversion of resources claims sufficient to grant each Plaintiff organization standing [Id. p. 15]

Defendants cite the Court's findings to establish that Plaintiffs' injury and damages claim of "diversion of resources" is foundational to Plaintiffs' prima facie case and is material to the overall case given the claims underpin their damages claims that were allegedly caused by Defendants.  If Plaintiffs fail to produce evidence supporting their claims during discovery, and after with through supplementations it materially damages and prejudices Defendants by causing them to incur legal fees and expenses while being obstructed from mounting a proper defense.  Allowing proceedings to continue based on Plaintiffs unsubstantiated damages allegations wastes the Court's and Defendants' time, resources, and finances.

## **ARGUMENT**

Plaintiffs filed their pleading without any evidence supporting their claims.  Before Defendants were served, on the same day the pleading was filed, Plaintiffs went directly to the press announcing their litigation.  Plaintiffs PR effort seeded defamatory headlines associating Defendants with the KKK and portraying Defendants as violent racists hunting down minority voters, intimidating them for voting.  Without a shred of evidence, Plaintiffs succeeded in materially damaging Defendants and destroying their reputations through negative global news coverage.

*A. Initial Discovery July 8, 2022 - September 1, 2022*

Discovery opened over ninety (90) days after the original filing when the Proposed Scheduling Order and Rule 26(f) Report were filed. [Docket 51] Defendants willingly produced complete and sufficient Rule 26(a)(1)(A) disclosures [Exhibit 6] prior to the July 8, 2022, initial disclosures deadline. Plaintiffs, on the other hand failed to produce sufficient initial disclosures by the July 8th deadline. [Exhibit 2] This was Plaintiffs first of dozens of discovery violations under Federal Rules of Civil Procedure and Federal Rules of Evidence. [Exhibit 7] Under FRCP 26(a)(1)(A)(iii), in initial disclosures Plaintiffs must give a computation of each category of damages claimed by the disclosing party...the documents or other evidentiary material...on which each computation is based, including materials bearing on the nature and extent of injuries suffered.  Since July 8th, 2022, Plaintiffs have still not complied with Under FRCP 26(a)(1)(A)(iii) requirements as outlined in [ Exhibit 7.]

Despite Defendants' former counsel's numerous communications with opposing counsel requesting discovery starting a month after discovery opened. Plaintiffs did not respond.  Defendants former counsel was obstructed from conducting critical work on the case especially considering the lack of Plaintiffs' discovery. Crucial to their position, Defendants former counsel attempted to verify Plaintiffs' diversion of resources claims through interrogatories that asked, "Specifically address personnel and financial resources that have been shifted as a result of the activities of USEIP."  [Exhibits 8, 9, 10].[1]

---

[1] Over a month after the discovery cut-off  per the Rule 26(f) Report, Plaintiffs returned their interrogatory responses on October 21, 2022.  Interrogatory answers failed to establish and support Plaintiffs injury and damages claims. [Exhibits 8-10].

After Plaintiffs flagrantly flouted discovery rules for three (3) months by not returning any responsive documents, records, interrogatories etc.  Defendants' former counsel was forced to schedule a hearing with Magistrate Judge N. Reid Neureiter on August 29th, 2022 [Docket 57] to resolve the obvious discovery issues.  As of September 1, 2022, the discovery cut-off deadline [Docket 51] Plaintiffs knowingly failed to disclose and cooperate with discovery. In the hearing on September 13th [Docket 58], The Court exercised its inherent discretionary powers to amend the 26(f) Report and granted Plaintiffs reprieve and extending discovery until December 2, 2022 [Docket 60] [Docket 61]. Even though Defendants had fully complied with all discovery requirements per the original Rule 26(f) Report and Scheduling order, The Court did not hold Plaintiffs accountable for their brazen disregard of stipulated discovery rules.

### *B. Extended Discovery September 13, 2022 - December 2, 2022*

Plaintiffs continued to fail to comply with discovery deadlines, despite the generous deadline extensions. On October 11th, 2022 Defendants former counsel sent opposing counsel a formal communication requesting discovery compliance.  In the notice, Defendants cited Plaintiffs' numerous Rule 26 violations relating to insufficient disclosure and the damage it was causing her clients,  "Defendants have proceeded through this costly litigation without being provided a single piece of evidence...[Cites Rule 26(a)(1)(A)]...The clear purpose of such disclosure is to permit the party receiving the disclosure to understand what information the person has...That is not sufficient disclosure under Rule 26(a) " Jama v. City and County of Denver, 304 F.R.D. 289, 296 (D. Colo. 2014),  [Docket 115-3 of 3].

*It took until October 21, 2022, for Plaintiffs to return any responsive records to support THEIR OWN CASE.* Given Plaintiffs filed their pleading with no evidence on March 9, 2022, and failed to comply with discovery until October 21, 2022, it left Defendants obstructed for over seven (7) months - unable to effectively work on their defense. Plaintiffs' behavior materially harmed Defendants by extending the proceedings, increasing Defendants substantial legal costs, wasting Defendants time and financial resources -- while Plaintiffs continued to defame Defendants in the press causing material harm.

More importantly, however is the fact that at the close of eight (8) months of discovery both Plaintiffs NAACP and Mi Familia Vota had not turned over any responsive documents *whatsoever*. Yet in their sworn depositions both Plaintiffs restated and detailed their injury and damages allegations [Exhibit 4 (NAACP) [Exhibit 5 (MFV)]. During both depositions, Defendants former counsel repeatedly asked Plaintiffs for examples of the work both organizations produced, financial records, and staff time-tracking disclosures to substantiate Plaintiffs diversion of resources allegations. In response Portia Prescott (NAACP) stated, "Everything... Programming, money, marketing, people, everything." [Exhibit 4, p.3 L. 8-11] "We put resources to... oh, my god -- thousands." [Id. p.2 L.14] and when Ms. Prescott was reminded of her legal obligation to produce evidence of her claims, "I have thousands of stuff -- I don't recall. I don't -- I don't know." [Id. p.13, L. 18-19].

In response to his diversion of resources allegations Salvador Hernandez in his deposition stated "as much as 20% of its civic engagement budget will be spent responding to USEIP's voter intimidation - money that would otherwise be spent on

advancing MFV's core mission [Exhibit 5, p.3, L.6-9] In Mr. Hernandez's deposition nine (9) months later he states, "It's really difficult to make these kinds of assessments, but it's our best guess, I guess." [Id. p.3, L22-24] Yet, Hernandez confirms he can produce the financial evidence of the diversion of resources, "That might be in the national budget" [Id. p. 7, L. 11-12] and Hernandez confirms he has seen MFVs civic engagement budget. [Id. p. 7-8].

The third Plaintiff (LWV) had also not turned over any evidence supporting their damages claims by discovery cut-off.  Yet in Ms. Hendrix's sworn deposition, she extensively detailed her organization's injury and damages claims [Exhibit 1].  When asked about diversion of resources caused by Defendants Ms. Hendrix stated, "publishing a white paper...that took a committee hundreds of hours of work." [Exhibit 1, p.4, L.6-8] and creating a "Safety Plan" that took eight hours of Ms. Hendrix's own time to produce. [Id. p.9 L.17].  Without LWVs timekeeping, and/or financial records to substantiate Ms. Hendrix's sworn statement, the diversion of resources claims are hollow allegations that stand to this day.

At the close of extended discovery its well-established that Plaintiffs had not complied with Federal Rules of Civil Procedure and Federal Rules of Evidence outlined in the chart summarizing the timeline, nature, dates, and violation citations [Exhibit 7, p. 1-8].  Plaintiffs' numerous violations resulted in material damage and prejudice to Defendants. The entire time Plaintiffs withheld required, material evidence it obstructed Defendants' ability to mount a proper defense.  Defendants and their counsel were prohibited from properly researching, developing evidence, authenticating records, verifying material facts of the case, establishing strategy, creating and refining a sound

defensive positioning. Plaintiffs' malicious behavior wasted the defense's critical discovery time which resulted in Defendants unjustly incurring legal fees totaling $88,019.65 between July 8, 2022 - December 2, 2022, [Exhibit 12]

### *C. Post Discovery December 2,2022 - Present Day*

Plaintiffs pattern of willful disregard for their obligations to comply with the Fed. R. Civ. P. 26(e) continues to this day. Plaintiffs' violations are material to the case, and material to Defendants ability to mount a proper defense and prepare for trial.

On January 23, 2024, the Court Ordered Defendants' former counsel to supply the entire discovery packet to pro se Defendants Ms. Kasun and Ms. Epp. After reviewing the entire evidentiary record, pro se Defendants discovered an array of Plaintiffs missing discovery records.

To remedy the problem without court intervention, Pro se Defendants contacted opposing counsel several times attempting to obtain the missing records specific to supporting Plaintiffs' injury and damages claims. The records Defendants seek exist, were acknowledged in Plaintiffs depositions, and are specific to the claims in the case. In a good faith attempt to lessen the burden on opposing counsel, Defendants outlined the key records they sought. In response, Opposing Counsel refused to work with Pro Se Defendants claiming, "discovery is long closed, you should've asked for those documents during discovery." [Exhibit 11] This response is telling. A) Plaintiffs' counsel again admitted the documents exist, B) admitted they have not complied with Fed. R. Civ. P. 26(a), and C) misrepresented to pro se Defendants that the documents had

been requested numerous times during discovery.  Defendants are seeking missing discovery, not new discovery.

The harm Plaintiffs have caused Defendants can't be understated.  Every day this lawsuit continues, the mental, professional, personal, economic, and emotional damage Defendants suffer due to the loss of their reputations is immense.  The economic harm Defendants have suffered due to Plaintiffs willful disregard to comply with evidentiary rules since the close of discovery has cost Defendants $128,970.09 in additional legal fees and costs, totaling $216,989.74 from July 2022 - December 2023.  [Exhibit 12] Pro Se Defendants continue to be obstructed from properly preparing for trial to mount an effective defense causing them to suffer material harm and prejudice.  Absent Plaintiffs required disclosures, Pro se Defendants are forced into an untenable position as the window for trial preparation closes.

## **DEFENDANTS' HARM**

The records Plaintiffs continue to withhold are material to the case therefore material to Defendants ability to defend themselves.  Plaintiffs have alleged their diversion of resources took the form of redirecting staff to other duties, staff time spent in training and retraining, personnel producing materials, and spending money caused by Defendants alleged canvassing activity.  Plaintiffs are obliged to produce evidence substantiating these allegations.  Without Plaintiffs time-keeping records documenting what staff was diverted, to what activities, and when; Defendants are unable to authenticate and verify Plaintiffs damages claims.  Without Plaintiffs producing the organizational materials they claim to have produced, Defendants are unable to verify whether Defendants and/or their activity were the cause of the production of these

materials. And finally, without Plaintiffs financial records, Defendants can't authenticate when funds were spent, what funds were spent, thus prohibiting Defendants from verifying Plaintiffs diversion of resources allegations were caused by the Defendants.

To demonstrate Defendants point, as recently as January 8th, 2024, Defendants discovered Plaintiff League of Women Voters made two materially damaging misrepresentations of evidence meant to substantiate its diversion of resources damages claims.

Plaintiffs' counsel signed the Pretrial Order that includes the "Safety Plan" [LWVCO0000112 "Document 112"] on Plaintiffs' exhibit list. [Docket 95] This official certification to the Court confirms the "Safety Plan" Plaintiff Hendrix stated took her 8 hours to produce was a diversion of resources caused by Defendants actions [Exhibit 1 p.9 L.17]. The contents of Document 112 demonstrates it is not what Plaintiffs claim it to be - evidence of LWV's diversion of resources caused by Defendants actions. The document states, "we will file a voter intimidation lawsuit that may be very visible and contentious and names Mike Lindell... Because it's best to be prepared out of an abundance of caution" [Docket 108, Exhibit 4]. Nowhere in the document are Defendants, their actions, or claims in this case mentioned. So, Plaintiffs assertion that the resources diverted to create the "Safety Plan" is false. Opposing counsel knowingly withheld this evidence until January 8, 2024, despite their signed certification discovery was complete on May 16th, 2023 [Docket 95, p.21 8, 26] Violating FRCP 26, FRCP 11(b) and misrepresented it under FRCP 26(g)(1)(A). The Court was made aware of Plaintiffs' discovery misrepresentation on January 23, 2024. [Docket 127]

Plaintiffs second materially prejudicial misrepresentation of its damages is Plaintiff Hendrix's claim LWV spent "hundreds of hours producing a whitepaper to combat misinformation" [Exhibit 1, p.4, L.6-8]. The whitepaper was generated at least nine (9) months after USEIP volunteers ended their canvassing project and lacks mention of this lawsuit or the Defendants in this case. Plaintiffs purpose for the whitepaper "combatting misinformation" is irrelevant to the claims in this case.  This whitepaper is a standard LWV business document, making it irrelevant to supporting diversion of resources injury and damages claims caused by Defendants.

Plaintiffs pattern of knowingly disregarding their obligation to comply with Fed. R. Civ. P., Fed. Rules of Evidence, and Rules for Professional Conduct has materially prejudiced and harmed Defendants and these proceedings, raising the issue of Plaintiffs standing. At this stage of the proceedings, Plaintiffs have failed to establish their injury and damages claims, thus failing to carry their burden of maintaining their Article III Standing. [Docket 39 p.3-4][2].  An "organization has standing to sue on its own behalf if the 'defendants illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts." Id. p8.  Defendants have demonstrated that without Plaintiffs producing evidence supporting their diversion of resources claims, Plaintiffs fail to maintain the legal threshold of the required elements of Article III standing.

---

[2] First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be "fairly...trace[able] to the challenged action of the defendant, and not...th[e] result [of] the independent action of some third party not before the court." Third it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations omitted).

## **PLAINTIFFS COUNTER ARGUMENTS**

Plaintiffs will argue they are not obligated to disclose financial, timekeeping, and the materials Plaintiffs produced caused by Defendants because the Court denied pro se Defendants' Motion to Reopen Limited Discovery [Docket 125]. This argument fails because Plaintiffs are obligated to supplement disclosure under Fed. R. Civ. P. 26(e). This rule applies to all parties regardless of whether discovery is closed or not.

Secondly, Plaintiffs will argue the records Defendants seek qualifies as new discovery. Defendants have shown they did request these required documents numerous times during and after discovery -- continuing to the present day. Plaintiffs acknowledged these documents exist which substantiates Defendants' assertions that these are missing required records -- not new records. [Exhibit 11]

Finally, Plaintiffs will argue that since they changed their prayers for relief in the Final Pretrial Order from seeking financial damages to injunctive relief [Docket 95] disclosing the required financial, timekeeping, and organizational training records is unnecessary. This argument fails because no matter what relief Plaintiffs seek, they still must carry the burden of proving their injury and damages claims. Further this raises argument raises questions about the truthfulness of Plaintiffs claims of harm since the inception of this case. Plaintiffs' claims hinge on establishing and proving Plaintiffs organizations diverted resources, caused by Defendants activities. As Defendants have already stated, a combination of disclosures is required for Defendants to authenticate and verify Plaintiffs allegations to be able to properly defend their position.

## **CONCLUSION**

Federal Courts are empowered to "'protect the administration of justice by levying sanctions in response to abusive litigation practices." Kovilic Const. Co., v. Missbrenner, 106 F.3d 768, 772-73 (7th Cir. 1997).  Further, the source of the court's inherent power is "governed not by rule or statute buy by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R.R., 370 U.S. 626, 630-631(1962).

Plaintiffs pattern of maliciously disregard for complying with discovery rules under Fed. R. Civ. P. 26[3] and other discovery rules throughout these proceedings over the course of nineteen (19) months have materially and prejudicially damaged Defendants [Exhibit 7] and these proceedings.  Thus, warranting the imposition of sanctions pursuant to Fed. R. Civ. P. 37.  Given the Court's inherent powers Chambers v. NASCO, Inc., 501 U.S. 32 (1991) "A district court has the inherent power to 'fashion appropriate sanction[s] for conduct that abuses the judicial process.' Id at 44.  This power exists even where procedural rules govern the same conduct." Id. at 49.  At this point, Plaintiffs inability to support their injury and damages allegations is now a case of "*The Emperor Has No Clothes"* thus, raising the issue of whether this case has merit to continue.

Defendants move the Court to use its inherent power to impose specific sanctions on Plaintiffs:

1) Dismiss Plaintiffs NAACP and Mi Familia Vota as Plaintiffs from this lawsuit with prejudice under Fed. R. Civ. P. 37(c)(1)(C). "Because '[e]ach plaintiff must have

---

[3] §§ 26(a)(1)(A), 26(a)(1)(A)(i), 26(a)(1)(ii), 26(a)(1)(iii), 26(a)(2)(A), 26(a)(2)(B), 26(f), 26(f)(C), 26(g)(1)(A), 26(g)(1)(B)(ii), 26(g)(1)(B)(iii), 26(g)(3)

standing to seek each form of relief in each claim."[4] Neither the NAACP or MFV has disclosed a single evidentiary document or record supporting any of their injury, damages, or diversion of resources allegations in their own complaint filed twenty four (24) months ago. Cases that have upheld sanction of dismissal typically involve "bad faith, fraud, or undue delay by one of the parties. Kovilic Const. Co., v. Missbrenner, 106 F.3d 768, 772-73 (7th Cir. 1997). Given NAACP and MFV have not established or carried their burden to maintain their Article III Standing. "A court must satisfy itself of its subject matter jurisdiction at every stage of the proceeding." [Docket 39 p.9][5] The Court must consider whether the Plaintiffs have filed a baseless or deceptive pleading; Action Mfg., Inc. v. Fairhaven Textile Corp., 790 f.2d 164, 165-66 (1st Cir.) Under the present circumstances, Defendants move The Court to dismiss NAACP, and MFV be dismissed with prejudice.

2) Pro se Defendants move the Court to impose sanctions on the Plaintiffs in the form of payment of reasonable expenses including attorney's fees in the sum of $216,989.74 under Fed. R. Civ. P 26(e) pursuant to Fed. R. Civ. P. 37(c)(1)(A). And, financial sanctions on Plaintiffs' counsel under U.S.C. § 1927 "An Attorney...who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct." Defendants unjustly accrued these legal fees while being obstructed from mounting their defense due to the material harm

---

[4] *see Collins*, 916 F. 3d at 1312; Am. Humanist Ass'n, Inc. v. Douglas Cnty. Sch.Dist. RE-1, 859 F. 3d 1243, 1254 (10th Cir. 2017) (citing Town of Chester v. Laroe Ests., Inc., 137 S. Ct. 1645, 1650 (2017)).
[5] See, e.g., Citizens Concerned for Separation of Church & State v. City& Cnty. of Denver, 628 F. 2d 1289, 1297 (10th Cir. 1980).

caused by all three Plaintiffs and their counsel's failure to comply with discovery from July 2022 - December 2023.  This has caused pro se Defendants substantial personal financial damage and hardship.

      3) If the Court allows this case to proceed after evaluating its subject matter jurisdiction at this stage of the proceeding, Defendants move the Court to use its inherent power to compel disclosure under Fed. R. Civ. P. 37(a)(1)(B) requiring Plaintiffs to immediately turn over all missing discovery records.  Specifically, all records supporting Plaintiffs diversion of resources allegations including but not limited to staff timekeeping, financial, and organizational materials allegedly produced because of Defendants actions.

      Defendants underscore the urgent necessity for the Court to act, given the reputational damage Defendants are suffering in the press, material harm, and material prejudice due to Plaintiffs actions.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2024, I electronically filed the foregoing **PRO SE DEFENDANTS' EMERGENCY MOTION FOR SANCTIONS for FAILURE TO DISCLOSE UNDER FRCP 26 PURSUANT TO FRCP 37** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- Amy Elizabeth Erickson
- amy.erickson@lathropgpm.com, claudia.neal@lathropgpm.com

- Ben Clements
- bclements@freespeechforpeople.org

- Brian Andrew Dillon
- brian.dillon@lathropgpm.com, kristina.procai@lathropgpm.com

- Casey Carlton Breese
- casey.breese@lathropgpm.com, brandi.pruett@lathropgpm.com, cheyenne.serrano@lathropgpm.com

- Courtney Marie Hostetler
- chostetler@freespeechforpeople.org

- Jean Paul Bradshaw , II
- jeanpaul.bradshaw@lathropgpm.com

- John C. Bonifaz
- jbonifaz@freespeechforpeople.org

- Kristin M. Stock
- kristin.stock@lathropgpm.com, lois.siljander@lathropgpm.com

- Ronald Andrew Fein
- rfein@freespeechforpeople.org

- Zeyen Julian Wu
- zeyen.wu@usdoj.gov, annette.dolce@usdoj.gov

- Ashley Epp
- asheinamerica@protonmail.com

- Jessica Hays
- Jessica@reischlawfirm.com

- Scott Reisch
- Scott@Reischlawfirm.com

*s/ Holly Kasun*
Holly Kasun Pro Se Defendant
hollyataltitude@protonmail.com