IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00581-CNS-NRN

Colorado Montana Wyoming
State Area Conference of the NAACP,
League of Women Voters of Colorado, and
Mi Familia Vota,

    Plaintiffs,

v.

United States Election Integrity Plan, Shawn Smith,
Ashley Epp, and Holly Kasun,

    Defendants.

---

**PLAINTIFFS' RESPONSE TO PRO SE DEFENDANTS' EMERGENCY MOTION FOR SANCTIONS FOR FAILURE TO DISCLOSE UNDER FRCP 26 PURSUANT TO FRCP 37 (ECF NO. 128)**

---

Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP ("NAACP CO"), League of Women Voters of Colorado ("LWVCO"), and Mi Familia Vota ("MFV") (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby submit their Response to *Pro Se* Defendants' Emergency Motion for Sanctions for Failure to Disclose Under FRCP 26 Pursuant to FRCP 37 and in support thereof state as follows:

**INTRODUCTION**

Defendants continue to accuse Plaintiffs of having "no evidence" to support their claims. The accusation is far from true, and the Court has already recognized that fact repeatedly by denying Defendants' Motion to Dismiss, Motion for Judgment on the Pleadings, and Motion for Summary

Judgement, and by dismissing counterclaims filed against Plaintiffs, which accused them of defamation and abuse of process. At trial, Plaintiffs will demonstrate that USEIP—at the behest of Plaintiffs—has been engaged (and may still be engaged) in a wide-reaching campaign of voter intimidation across the state of Colorado.

The *pro se* Defendants' assertion in the pending motion that Plaintiffs' discovery responses were deficient and warrant the extreme sanction of dismissal of two Plaintiffs—NAACP CO and MFV—and the imposition of other sanctions is similarly without merit. In addition to being factually untrue, Defendants' motion is procedurally improper. At no point during a generous period of discovery (or within a year following the close of discovery) did Defendants ever request the documents they now demand, or seek Court intervention to address any alleged discovery deficiencies. Defendants are not entitled to the documents they seek pursuant to Fed. R. Evid. 26(a), are not entitled to documents they did not request pursuant to Fed. R. Evid. 26(b), and should not be allowed use this late-stage motion for sanctions to do an end run around the clear rules of discovery and orders of this Court. As this Court has clearly stated: "A party cannot ignore available discovery remedies for months and then, on the eve of trial, move the court for an order compelling production." *Buttler v. Benson*, 193 F.R.D. 664, 666 (D. Colo. 2000) (denying plaintiff's motion to compel and for sanctions). The *pro se* Defendants' request for sanctions should be rejected.

**BACKGROUND**

The contention that "Plaintiffs filed their pleading without any evidence supporting their claims" and failed to make required disclosures and otherwise cooperate in discovery is wholly without merit and ignores the Court's prior rulings in this case. (ECF No. 128 at 3). In fact,

Plaintiffs brought this action under the Voting Rights Act and the Ku Klux Klan Act based primarily on Defendants' *own public statements*, which demonstrate that they have engaged in a coordinated scheme of illegal voter intimidation in violation of federal law. USEIP's "County & Local Organizing Playbook," (the "Playbook"), which sets forth USEIP's principles and goals, exclaims: "This is the fight . . . No one is coming to save us. It's time to stand up . . . we are not at a time of peace. And everyone who values freedom and is committed to the fight for our Republic is now needed."[1] Defendants and USEIP members Shawn Smith, Ashley Epp, and Holly Kasun[2] have appeared and spoken at countless public events and been quoted in various articles touting USEIP's principles and goals. And, in case there is any doubt about whether the individual Defendants have engaged in threatening and intimidating behavior, Defendant Shawn Smith was captured *on video* making explicit violent threats against Colorado Secretary of State Jena Griswold, as well as anyone else Defendants accuse of election fraud: "I think if you are involved in election fraud then you deserve to hang. Sometimes the old ways are the best ways."[3] Members of USEIP have also publicly discussed their door-to-door intimidation campaign on

---

[1] County & Local Organizing Playbook (Aug. 2021), https://useipdotus.files.wordpress.com/2021/08/useip_playbook_aug2021.pdf.

[2] In their Answer, Defendants Ashley Epp, Holly Kasum, and Shawn Smith admit to being members of USEIP. (Answer (ECF No. 48) ¶¶ 17-19.)

[3] Defendant Ashley Epp was interviewed for and quoted in Erik Maulbetsch, *Colorado Republican Legislators Join Election Fraud Conspiracy* Panel, COLORADO TIMES RECORDER (Mar. 9, 2021), https://coloradotimesrecorder.com/2021/03/colorado-republican-legislators-join-election-fraud-conspiracy-panel/34839/. The video of Defendant Shawn Smith threatening Secretary of State Jena Griswold can be found here: https://twitter.com/jenagriswold/status/1491991594018304001.

social media and in their County Playbook.[4] Complaints about Defendants' campaign also were lodged with the Colorado Secretary of State; those complaints caused the Secretary to issue a press release reminding voters of their rights to a confidential ballot, and advising voters about what to do if they experience intimidation or harassment.[5]

Plaintiffs' Rule 26 Initial Disclosures were first made on July 8, 2022 and were supplemented on November 10 and December 2, 2022. (Erickson Dec. ¶ 3; Ex. A.) Plaintiffs' Disclosures identified the following documents in their possession, custody, or control that would be used to support their claims or defenses: (1) a copy of USEIP's Playbook; and (2) statements made by Defendants' concerning USEIP, USEIP's door-to-door campaign, Colorado voters, and the other facts alleged in Plaintiffs' Complaint. (Erickson Dec. Ex. A.) Plaintiffs also identified numerous witnesses, including but not limited to: the Colorado Secretary of State (or other representatives from her office); the Pueblo, Douglas, Adams, El Paso, and Weld County Clerks and Recorders (or other representatives from their offices), and multiple Colorado Voters who reported being contacted by USEIP as part of their door-to-door campaign. (Erickson Dec. Ex. A.)

---

[4] *See,* e.g., Erik Maulbetsch, *Colorado Election Fraud Group is Training Conspiracists in Other States to Knock Doors in Search of 'Phantom Ballots'*, COLORADO TIMES RECORDER (Oct. 1, 2021), https://coloradotimesrecorder.com/2021/10/colorado-election-fraud-group-is-training-conspiracists-in-other-states-to-knock-doors-in-search-of-phantom-ballots/39935/ (article includes screenshots of social media posts by USEIP members about efforts to coordinate their door-to-door campaign); County & Local Organizing Playbook pp. 19-22 (Aug. 2021), https://useipdotus.files.wordpress.com/2021/08/useip_playbook_aug2021.pdf.

[5] Colorado Secretary of State Jena Griswold, News Release, *In Response to Reported Unofficial Door-to-Door Canvassing of Colorado Voters, the Colorado Secretary of State's Office Reminds Voters of Their Constitutionally Protected Rights* (Sept. 9, 2021), https://www.sos.state.co.us/pubs/newsRoom/pressReleases/2021/PR20210909Canvassing.html.

Plaintiffs were served with discovery requests on September 21, 2022 and responded to the discovery requests on October 21, 2022. (Erickson Dec. ¶¶ 4-5; Exs. B, C.) Defendants did not request any documents related to the diversion of resources within Plaintiffs' organizations. (Erickson Dec. Ex. B.) Rather, the only request that sought information related to diversion of resources was the following interrogatory directed at each Plaintiff:

> INTERROGATORY NO. 8: Identify and describe in detail the activities You have undertaken to actively monitor the "intimidation and related safety concerns" described in Paragraph 36 of the Complaint in this action. Specifically address personnel and financial resources that have been shifted as a result of the activities of USEIP.

(Erickson Dec. Ex. B.) Subject to their general objections, each Plaintiff responded fully to the interrogatory. (*See* Erickson Dec. Ex. C.)

In connection with their Rule 26 Initial Disclosures and responses to Defendants' discovery requests, Plaintiffs also produced hundreds of pages of documents, including documents reflecting Defendants' own statements concerning USEIP and its efforts; documents from LWVCO's files; and documents received by Plaintiffs from the Secretary of State and County Clerks' offices pursuant to various Colorado Open Records Act requests. (Erickson Dec. ¶ 6.) Plaintiffs also sought and obtained documents and other discovery information from Defendants (and third parties affiliated with Defendants) concerning USEIP's door-to-door campaign, which will be offered into evidence at trial. (Erickson Dec. ¶ 7.)

The *pro se* Defendants now contend that Plaintiffs were slow to produce documents and note that a discovery conference was scheduled with Magistrate Judge Neureiter. In fact the parties resolved all discovery disputes without Court intervention. Plaintiffs produced documents in a timely manner consistent with deadlines established by the rules or otherwise agreed to by the

parties. No motion to compel discovery was ever filed with the Court, and the Court has not issued any order finding that Plaintiffs failed to comply with any discovery request or obligation.

In bringing this motion, the *pro se* Defendants contend that LWVCO "made two materially damaging misrepresentations of evidence meant to substantiate its diversion of resources damages claim." (ECF No. 128 at 17.) Specifically, they argue the Safety Plan and whitepaper created and produced by LWVCO are "irrelevant" to the claims in this lawsuit because neither document specifically mentions Defendants or this case and because the whitepaper was created after USEIP ended their canvassing efforts.[6] (*Id.*) Of course, documents do not have to specifically mention parties or the case to be relevant to the action, and Defendants are entitled to cross examine Ms. Hendrix (of LWVCO) at trial regarding the aforementioned documents and related issues. Plaintiffs are confident that no misrepresentations were made by LWVCO or any other Plaintiff.

Finally, although Plaintiffs seek to recover their attorneys' fees under applicable law, they are not seeking compensatory damages. Plaintiffs have no obligation to produce documents to support a damages claim they have not asserted.

---

[6] Although the *pro se* Defendants now claim in connection with this motion that USEIP ended its canvassing efforts (ECF No. 128 at 17), Defendant Epp also recently represented to the Court that "Plaintiffs assertions that USEIP associates have stopped their activities in Colorado is also false. USEIP associates are actively engaged in all 64 counties." (ECF No. 108 at 23.)

# ARGUMENT

## I. Dismissal of MFV and NAACP Is an Extreme Sanction That Is Not Warranted in the Present Case.

The *pro se* Defendants contend that MFV and NAACP CO should be dismissed from this action because they have failed to produce sufficient evidence to establish that they have standing. (Docket No. 128 at 16-17.) The *pro se* Defendants' argument lacks merit and should be rejected.

Preliminarily, Plaintiffs have already prevailed against three dispositive motions, two of which alleged that Plaintiffs lacked standing to bring their claims. Relevant here, the Court reasoned as follows in denying Defendants' Motion to Dismiss:

> Plaintiffs allege that responding to defendants' conduct has caused them to divert resources that could otherwise be used for their usual programmatic priorities. *See generally* Docket No. 1. . . . "[F]or several decades it has been established that diversion of resources is a cognizable harm in the context of Article III standing analysis." *Colorado v. EPA*, 445 F. Supp. 3d 1295, 1307 (D. Colo. 2020) (citing *Havens Realty*, 455 U.S. at 379), *rev'd on other grounds*, 989 F.3d 874 (10th Cir. 2021) "[C]ases upholding diversion of resources as a cognizable harm are almost always about nonprofit organizations seeking to advance a social goal (mostly fair housing, voting rights, and immigrant rights)." *Id.*
>
> . . .
>
> [A]n "organization has standing to sue on its own behalf if the 'defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts,'" *Common Cause of Colo. v. Buescher*, 750 F. Supp. 2d 1259, 1269 (D. Colo. 2010) (quoting *Fla. State Conference of NAACP v. Browning*, 522 F.3d 1153, 1165 (11th Cir. 2008)), or "when a defendant's conduct makes it difficult or impossible for the organization to fulfill one of its essential purposes or goals." *Id.* (citing *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1353–54 (11th Cir. 2005)).
> . . .
>
> The Court therefore finds that plaintiffs have sufficiently pled that NAACP has suffered a diversion-of-resources injury under *Havens Realty* and therefore has Article III standing to proceed. The Court will therefore deny the motion as to NAACP.
> . . .

> MFV . . . like NAACP and LWVCO, has expended resources to counter defendants' alleged conduct. *See* Docket No. 1 at 5, ¶ 15. MFV's resources could have been used for other programs and activities. *Id.* at 11, ¶ 38. Plaintiffs therefore have sufficiently alleged that MFV's mission has been impaired by defendants' conduct, and a favorable resolution from this Court would redress MFV's injury.

(ECF No. 39 at 7-18.) In denying Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment, the Court also found that: (a) Defendants had waived the argument that Plaintiffs lacked prudential standing to pursue their claims by failing to raise the issue in connection with their first Rule 12 motion; and (b) in any event, Plaintiffs have standing to bring their claims under 52 U.S.C. § 10307(b) and 42 U.S.C. § 1985(3), which permit a private right of action against private conduct. (ECF No. 84 at 6-7.)

Dismissal with prejudice is "an extreme sanction," which should only be granted after careful examination of the following factors: (a) the degree of actual prejudice to the defendant; (b) the amount of interference with the judicial process; (c) the culpability of the litigant; (d) whether the court warned the party in advance that dismissal of the action would be a likely sanction of noncompliance; and (e) the efficacy of lesser sanctions. *Jones v. Thompson*, 996 F.2d 261 (10th Cir. 1993) (citing *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992)). Dismissal is only warranted "where the aggravating factors outweigh the judicial system's *strong predisposition to resolve cases on their merits.*" *Ramon v. City and County of Denver,* No. 08-cv-0043-CMA-KMT, 2011 WL 222319, *2 (D. Colo. Jan. 21, 2011) (emphasis added). As set forth in more detail below, none of these factors are present here.

### A. The *Pro Se* Defendants Have Not and Cannot Establish that They Have Been Prejudiced.

The cases in which courts in this district and elsewhere in the Tenth Circuit dismissed a lawsuit in whole or in part are characterized by a plaintiffs' flagrant disregard of their discovery

obligations, which is undoubtedly not the case here. In *Jones v. Thompson*, for example, the Tenth Circuit found that plaintiffs had prejudiced defendants by: failing to sit for depositions (despites several court orders compelling their attendance), failing to attend pretrial conferences, failing to submit a pretrial order, requiring *seven* separate court-ordered deadlines for termination of discovery, and failing to prosecute their case. 966 F.26 261, 264-265 (10th Cir. 1996). Likewise, in *Anderberg v. Sitewise Corporation*, this Court found that a defendant was prejudiced only after the plaintiff failed to serve any verified responses to written discovery, refused sit for a deposition (despite repeated scheduling attempts), and failed to prosecute his case. No. 15-cv-00501-CBS, 2016 WL 1090021, at * 2 (D. Colo. Mar. 21, 2016).

This is not a case where Plaintiffs failed to prosecute their case or refused to participate in discovery. To the contrary, Plaintiffs requested discovery, responded to discovery (including producing responsive documents), noticed and took numerous depositions, and a representative of each of Plaintiffs' organizations sat for a deposition during which they were examined at length by Defendants. In fact, the *only* evidence Defendants allege Plaintiffs failed to produce are documents supporting the allegation that Plaintiffs diverted resources to combat Defendants' voter intimidation campaign. But Plaintiffs were neither required to produce such documents under Federal Rule of Civil Procedure 26(a)(1)(A)(ii),[7] nor did Defendants ever request such documents in its Request for Production of Documents or in any other manner during the discovery period. (*See* Erickson Dec. ¶ 4; Ex. B.) Moreover, Plaintiffs NAACP CO, LWVCO,

---

[7] Federal Rule of Civil Procedure 26(a)(1)(A)(ii) only requires "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use *to support its claims or defenses*." (emphasis added). Plaintiffs' Article III standing is not a "claim" or "defense."

and MFV each submitted affidavits detailing their diversion of resources and representatives of each organization testified under oath at their depositions as to the diversion. (*See, e.g.*, ECF Nos. 8, 9, 10.) Defendants—apparently satisfied with what they learned through these affidavits and depositions—never made supplemental discovery requests (or even informally sought documents regarding Plaintiffs' diversion of resources). In short, Defendants have not and cannot establish that they have been prejudiced—to the contrary, they have forfeited any claims to information that they never sought during the discovery period. *See Latham v. High Mesa Communications*, No. 17-cv-02118-JLK-GPG, 2020 WL 13880011, at * (D. Colo. Oct. 9, 2020) (citing *Buttler v. Benson*, 193 F.R.D. 664, 666 (D. Colo. 2000) (denying Defendants' motion for sanctions for failure to disclose evidence because Defendants had failed to move to compel the evidence); see also ECF No. 125 (denying motion to reopen discovery). Accordingly, Plaintiffs NAACP CO and MFV should not be dismissed from this action.

### B. Plaintiffs Did Not Interfere With the Judicial Process.

Even a cursory review of the record in this action makes clear that Plaintiffs have not willfully interfered with the judicial process. *See Armstrong v. Swanson*, No. 08-cv-00194-MSK-MEH, 2009 WL 1938793, at * (D. Colo. July 2, 2009) (finding prejudice to the judicial system and plaintiff culpable where plaintiff's neglect forced the Magistrate Judge to adjudicate a motion to compel, issue an Order to Show Cause, and entertain several motions to extend deadlines as a result of plaintiff's failure to participate in discovery and nothing in the record indicated external forces were to blame for plaintiff's failure to prosecute); *Jones v. Thompson*, 966 F.2d 261, 264-265, 265 (10th Cir. 1996) (finding that plaintiffs repeatedly ignored court orders and thereby hindered the court's management of its docket and its efforts to avoid unnecessary burdens on the

court and the opposing party). In fact, Plaintiffs timely met all discovery obligations, no motion to compel was ever filed by Defendants, no discovery order was ever issued by the Court and—to the extent any deadlines were extended in this action—they were extended by mutual agreement of the parties. Neither NAACP CO nor MFV interfered with the judicial process and, therefore, should not be dismissed from this action.

### C. Plaintiffs Were Never Warned by the Court That Dismissal of This Action Was a Likely Sanction.

As previously noted, Defendants not only never sought intervention from the Court during the discovery period, they never sought in the first place the documents that they now claim the plaintiffs failed to turn over. Plaintiffs are not required to be mind readers, nor to turn over documents that Defendants did not request and are not entitled to pursuant to Rule 26. Because Defendants never raised any discovery concerns with the Court, Plaintiffs were never warned (and could not have been warned) by the Court that dismissal of this action was a likely sanction. By way of contrast in *Armstrong v. Swanson*, this Court reasoned:

> Plaintiff has previously been warned that his failure to prosecute could result in dismissal of the action. The Magistrate Judge's Order to Show Cause specifically advised him of that possibility. Similarly, the Defendants' Motion for Sanctions expressly requested dismissal on that ground, and the Plaintiff failed to timely respond to that motion. Thus, the Court finds that the Plaintiff cannot claim surprise that a sanction of dismissal is contemplated.

No. 08-cv-00194-MSK-MEH, 2009 WL 1938793, at * 5 (D. Colo. July 2, 2009). Likewise, in *Jones v. Thompson*, a previous order issued by the district court specifically stated that if the "plaintiffs fail to comply with the order ... this court will, *sua sponte,* dismiss this case with prejudice as a sanction for the continued abuses ... the plaintiffs have engaged in throughout." 966 F.26 261, 264-265, 265 (10th Cir. 1996). Because Plaintiffs were never given any notice

whatsoever that they risked dismissal because of any alleged discovery deficiencies, dismissal of any Plaintiff organization would be improper.

### D. No Sanctions Are Warranted.

"Dismissal is a severe sanction that should only be the Court's 'last resort' when no other effective sanction is available." *Armstrong v. Swanson*, No. 08-cv-00194-MSK-MEH, 2009 WL 1938793, at * 5 (D. Colo. July 2, 2009) (citing *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1143 (10th Cir. 2007)). Here, no sanctions are warranted because—as set forth above—Plaintiffs complied with their discovery obligations. And even if they had failed to comply with their discovery obligations, the appropriate remedy for failing to produce documents during the discovery period is exclusion of the evidence, not dismissal. *Id.*

In sum, the *pro se* Defendants have failed to satisfy *any* of the factors warranting dismissal of NAACP CO and MFV from this action and their request should be denied.

### II. The *Pro Se* Defendants Request for Attorneys' Fees from Plaintiffs and Their Counsel Should Be Rejected.

The *pro se* Defendants ask the Court to impose sanctions on Plaintiffs in the form of payment of attorneys' fees in the sum of $216,989.74 under Federal Rule of Civil Procedure 37(c)(1)(A) and to impose sanctions against Plaintiffs' attorneys under 28 U.S.C. § 1927 for "unreasonably and vexatiously" multiplying these proceedings and causing the *pro se* Defendants substantial personal financial damage and hardship. The *pro se* Defendants' requests for sanctions has no basis in law or fact and should be rejected.

Rule 37 provides that—when a party fails to comply with the discovery and disclosure rules a court may impose "appropriate sanctions," including ordering "payment of reasonable expenses, including attorney fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A) (emphasis added).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Not only have the *pro se* Defendants failed to demonstrate that Plaintiffs committed any discovery violation, but they have also failed to demonstrate that the attorneys' fees they seek were "caused by" a discovery violation. *See* Fed. R. Civ. P. 37(c)(1)(A). In fact, from what Plaintiffs can surmise from the *pro se* Defendants' motion, it appears they are seeking to recoup *all* the fees they have incurred in this action. As this Court has made clear, it "'must determine which of the attorney's fees and expenses … were the result of specific violations of the [discovery] rules,' and award only those fees." *Swan Global Investments, LLC v. Young*, No. 18-cv-03124-CMA-NRN, 2021 WL 3164242, at *1 (D. Colo. July 27, 2021) (quoting *Turnball v. Wicken*, 893 F.2d 256, 259 (10th Cir. 1990)). "The burden is not for the court to justify each dollar or hour deducted from the total submitted by counsel. It remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986). Here, the *pro se* Defendants have not demonstrated, and cannot demonstrate, that the fees they seek through this motion were caused by a discovery violation. Accordingly, their request for fees should be denied. *See Swan Global Investments, LLC v. Young*, No. 18-cv-03124-CMA-NRN, 2021 WL 3164242, at *2 (D. Colo. July 27, 2021) (denying defendant's request for fees because defendants failed to identify which fees relate to Plaintiff's discovery violations).

There is also no basis for imposing any sanction against Plaintiffs' counsel. Under 28 U.S.C. § 1927 provides that "any attorney . . . who so multiplies the proceedings in any case unreasonably

and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "The power to assess costs against an attorney under § 1927, however, is a power that must be *strictly construed* and utilized only in instances evidencing a 'serious and standard disregard for the orderly process of justice.'" *Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985) (quoting *Kietel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1167 (7th Cir. 1968), cert. denied, 365 U.S. 908 (1969)) (emphasis added). Here, the *pro se* Defendants have failed to demonstrate that Plaintiffs' counsel have disregarded—let alone seriously or unreasonably or vexatiously disregarded—the orderly process of justice, nor have they demonstrated that any of the costs incurred by the *pro se* Defendants in the course of this proceeding were incurred as a result of Plaintiffs' conduct. In fact, Defendants brought and were denied three dispositive motions in this matter, asserted Counterclaims against Plaintiffs that were dismissed as a matter of law, and—in the last two months alone—have filed numerous motions with the Court seeking to reopen discovery and otherwise rehashing matters that have already been decided by the Court. Although the *pro se* Defendants have not even attempted to trace the attorneys' fees they incurred in this action to Plaintiffs, it is safe to assume just from looking at the docket in this matter that the overwhelming majority of fees incurred by Defendants in this action are traceable to their own conduct, not to Plaintiffs.

The *pro se* Defendants request for attorneys' fees from Plaintiffs and their counsel should be denied.

**III.    The Court Should Not Compel Further Discovery.**

As the Court made clear at the hearing on January 23, 2024, the time to conduct discovery is during the discovery period. (*See* ECF No. 125.) Defendants are asking the Court to order the production of documents that: (a) Plaintiffs are not required to produce under Federal Rule of Civil Procedure 26(a)(1); and (b) that Defendants did not request during the discovery period.[8] Defendants had ample opportunity to request documents from Plaintiffs during the discovery period, yet they *never* directed discovery requests to Plaintiffs seeking documents related to the diversion of resources and they *never* brought any motion with the Court contending that Plaintiffs failed to adequately respond to discovery (until now—over a year after the close of discovery). The *pro se* Defendants' request to compel further discovery should be rejected (again).

## CONCLUSION

For the aforementioned reasons, the *pro se* Defendants' Emergency Motion for Sanctions for Failure to Disclose Under FRCP 26 Pursuant to FRCP 37 should be denied.

---

[8] It is also worth noting that if Defendants had asked Plaintiffs to produce the documents Defendants now seek—such as their entire organizational budgets—Plaintiffs would have objected to those requests on the grounds that they are neither relevant to the claims and defenses nor proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1).

63301602v2                                              15

| | |
|---|---|
| Dated:  March 12, 2024 | LATHROP GPM LLP<br><br>By */s/Amy Erickson*<br>Casey Breese (#51448)<br>Casey.breese@lathropgpm.com<br>Jean Paul Bradshaw<br>Jeanpaul.bradshaw@lathropgpm.com<br>Kristin Stock<br>Kristin.Stock@lathropgpm.com<br>Brian A. Dillon<br>Brian.dillon@lathropgpm.com<br>Amy Erickson (#54710)<br>Amy.erickson@lathropgpm.com<br>1515 Wynkoop Street, Suite 600<br>Denver, CO 80202<br>Telephone: (720) 931-3200<br><br>Courtney Hostetler<br>chostetler@freespeechforpeople.org<br>John Bonifaz<br>jbonifaz@freespeechforpeople.org<br>Ben Clements<br>bclements@freespeechforpeople.org<br>Ron Fein<br>rfein@freespeechforpeople.org<br>Amira Marcella Mattar<br>amira@freespeechforpeople.org<br>FREE SPEECH FOR PEOPLE<br>1320 Centre Street, Suite 405<br>Newton, MA 02459<br>Telephone: (617) 249-3015<br><br>*ATTORNEYS FOR Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, and Mi Familia Vota* |

## CERTIFICATE OF SERVICE

  I hereby certify that a copy of the foregoing has been electronically served through ECF this 12th day of March 2024, to all counsel of record.


            *s/Claudia Neal*
            Claudia Neal