IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Colorado Montana Wyoming
State Area Conference of the NAACP,
League of Women Voters of Colorado, and
Mi Familia Vota
    Plaintiff(s)

v.	Civil Action No. 1:22-cv-00581-CNS-NRN

United States Election Integrity Plan,
Shawn Smith, Ashley Epp,
and Holly Kasun
    Defendant(s)

_____

**PRO SE DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE (ECF NO. 137) TO PRO SE DEFENDANTS' COUNTERCLAIM - ABUSE OF PROCESS (ECF NO. 134)**
_____

The Pro Se Defendants Ashley Epp and Holly Kasun are asking the Court to hear their Counterclaim for Abuse of Process under Fed. R. Civ. P. 13(e), specifically as a claim acquired from an earlier pleading. "The court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading." (Fed. R. Civ. P. 13(e)) The Pro Se Defendants assert that the facts and evidence will show Plaintiffs abused the legal process for improper purposes which resulted in extensive harm against the Defendants. These abuses include actions and representations to the Court that are recent and ongoing. Unless the Court considers resolves these disputed facts and related evidence, the Defendants are left without a remedy for the harm acquired by Plaintiffs' ongoing abuses. A district court's finding of bad faith or the absence of bad faith in a particular case is a factual determination. (Ford v. Temple

1

Hosp.)[1] Whether Plaintiffs and their attorneys have brought this litigation in bad faith is a dispute of multiple facts that should be heard and resolved at trial.

## INTRODUCTION

Defendants have maintained since the beginning of this action that Plaintiffs' claims are devoid of factual support. In its May 6, 2022 Order denying Plaintiffs' motion for Limited Expedited Discovery, the Court stated, "Moreover, plaintiffs have not supported their motion with a specific showing of good cause… Plaintiffs, therefore, should be aware of much of the information that they seek. Plaintiffs' members, for instance, could provide information on what both defendants and the members said, which would help provide evidence regarding requests 5 and 7. Plaintiffs' members could also report whether defendants photographed their homes or cars, which would provide evidence regarding request 3. Plaintiffs, however, do not explain why they cannot obtain at least some of this information from their members or whether they have even tried." (Brimmer, ECF No. 44 at 6, ¶ 2)

The record of evidence produced by Plaintiffs, after a robust albeit contentious discovery process, remains devoid of any evidence supporting Plaintiffs' assertions in their March 9, 2022 complaint (ECF No. 01) and subsequent pleadings. In that same order, the Court cited McGee v. Hayes, 43 F. App'x. 214, 217 (10th Cir. 2002), "noting that a district court is not required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." (ECF No. 44) Plaintiffs did engage in a fishing expedition through the regular discovery process and still fail to produce factual support for their claims. The evidentiary record shows that Plaintiffs have derived extensive favorable media coverage and fundraising from this litigation. Additionally, the record proves that Plaintiffs became aware at many points that their claims were inaccurate such that they

---

[1] Ford v. Temple Hosp. 790 F. 2d 342 - Court of Appeals, 3rd Circuit 1986, citing Baker v. Cerberus, Ltd., 764 F.2d at 210; Perichak v. International Union of Elec. Radio, 715 F.2d 78, 79 (3d Cir.1983); Fed.R.Civ.P. 52(a).)

had a duty to withdraw them, but that they made material misrepresentations to the Court to continue their abusive litigation at Defendants' expense. Finally, the Pro Se Defendants have endured extensive harm as a result of Plaintiffs' abuses of this process.

## ARGUMENT

### I. Plaintiffs' Claim that the Pro Se Defendants' Counterclaim is Untimely Lacks Proper Context and Ignores the Facts

Plaintiffs claim the Defendants' motion is untimely. The Pro Se Defendants dispute this assertion, given the extraordinary record and conduct that preceded the pleading of their Counterclaim. The Pro Se Defendants terminated counsel in December 2023. During the January 23, 2024 Status Hearing, the Court directed their prior counsel to provide a complete record of the case to the Pro Se Defendants to prepare for trial. During the month of February, the Pro Se Defendants diligently reviewed all evidentiary records and pleadings produced by both the parties and their witnesses. While the Defendants were aware of the documents that they had produced in discovery themselves, after receiving the record received in accordance with the Court's order, the Defendants saw much of the evidentiary record, including documents produced by the other Defendants and witnesses for the Defense, for the first time. Following this review, and considering the totality of the evidence, the Pro Se Defendants were puzzled by some of the evidence and sought to clarify their confusion prior to trial.

One such area that puzzled the Pro Se Defendants was the redactions purported by Plaintiffs to have been produced by the Secretary of State. Plaintiffs only revealed that these redactions came from the Secretary of State in 2024, which was confirmed during the January 23, 2024 status hearing. To provide their best possible defense, the Pro Se Defendants sought more information through open records requests to better understand the redactions. On her very first open records request to the Mesa County District Attorney's Office, Ms. Kasun received what appears to be the

3

unredacted version of the emails in question. The full record of these emails was provided to both Plaintiffs and the Court as a part of the prior Counterclaim pleading (ECF No. 134-Exhibits1-2) After a back and forth with the Secretary of State's Office, Ms. Epp received an exchange that appears to be a partially unredacted part of the exchange. (ECF 132-8) Ms. Epp is still awaiting additional requests from the Secretary State's Office after months of back and forth. The Pro Se Defendants have produced the full record of open records received from both agencies as attachments to the pleadings, despite Plaintiffs' assertions that they have not received them. (ECF No. 137 at 6 ¶ 2) Plaintiffs contend that Ms. Kasun and Ms. Epp should have requested these emails during the discovery process, but the Pro Se Defendants were not representing themselves during the period of discovery, nor did they see Ms. Roberts' complaint or the redacted documents for themselves until 2023 – long after discovery had closed. Further, the subject of the redactions – the original complaint of Yvette Roberts – has been repeatedly misrepresented by Plaintiffs to both the Defendants and the Court, from the timing of the complaint's disclosure to its substance. All that to say that the Pro Se Defendants were in the dark with respect to Ms. Roberts during the discovery period, and they would not have known to seek additional information through open records requests before discovery closed. The Defendants only realized the importance of this evidence when they received the full record of evidence and completed their review of the evidentiary record in February 2024, much of which they received and were seeing for the first time in January 2024. Immediately upon completing their review of the complete record of evidence, the Pro Se Defendants filed their open records request to clarify the record of the complaint.

    The Pro Se Defendants' actions since January 23, 2024, when the Court ordered counsel to provide the full case record to the Defendants, have been focused preparing for trial and, specifically, on understanding the claims against them and what, if any, evidence supports those

4

claims. The Pro Se Defendants maintain that this case is only continuing because Plaintiffs have made material misrepresentations to the Court, and the Court relied upon these misrepresentations in its prior orders. The Pro Se Defendants brought this action once this fact became clear and provable, based on the abuses confirmed during the January 23, 2024 status hearing, and official records received after. This request is timely.

## II. Plaintiffs' Claim that the Pro Se Defendants' Counterclaim is Contrary to Colorado Law is Inaccurate and Misstates Defendants' Prior Arguments

In their response to the Pro Se Defendants' Counterclaim, Plaintiffs assert that a "motion for reconsideration is only proper "where the Court has misapprehended the facts, a party's position, or the controlling law," but it is not a mechanism to "revisit issues already addressed or advance arguments that could have been raised in prior briefing." (Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000)). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." (Servants of Paraclete, 204 F.3d at 1012.)

Plaintiffs then allege that the Pro Se Defendants "do not contend that the Court misunderstood or mistook facts or their position..." This is false. The Pro Se Defendants' argument is that Plaintiffs have made repeated misrepresentations to the Court, and that the Court has relied on these misrepresentations, to such an extent that manifest injustice will result without the Court's intervention to correct the clear error. Defendants are attempting to correct these errors through Ms. Kasun's Motion for Sanctions (ECF No. 128) and this Abuse of Process Counterclaim (ECF No. 134). The new evidence supports Defendants' Counterclaim, but the claim does not rely upon the new evidence. Rather, the new evidence is further confirmation of Defendants' long asserted fact that Plaintiffs' complaint is devoid of factual support and intended for improper purposes – and that this litigation has and continues to harm the Defendants.

5

Plaintiffs' claim that "None of the purported evidence brought forth by pro se Defendants support their long-since dismissed claim that the Plaintiffs abused process in bringing this lawsuit." (ECF No. 137 5 at ¶ 2) The evidence in question is the investigative record across five government agencies with regards to Plaintiffs' only witness that alleges harm under the Voting Rights Act and the Ku Klux Klan Act. The unredacted records prove that, as Defendants have long contended, the named Defendants and USEIP did not canvass in Mesa County, and Ms. Roberts' original complaint was not about USEIP or the named Defendants. Considering this confirmation from the investigative record, the sworn declaration of Ms. Roberts – which names USEIP and makes material changes to her original complaint to align with the facts of Plaintiffs' case – is an abuse of process by Plaintiffs; that is, suborning perjury is an abuse of process. The material differences between Ms. Roberts' two statements were an open question before the Court already; the unredacted emails are newly available, highly relevant, and material to that question of fact. This new evidence is directly related to Yvette Roberts' sworn declaration – which itself was made after the close of discovery. The Court relied upon that sworn declaration in its order denying Defendants' Motion for Summary Judgement (ECF No. 84 at 12). As a result of obtaining the unredacted emails, Defendants realized that the sworn declaration may rise to the level of perjury; that is, someone convinced Ms. Roberts to change her story to align to the facts of Plaintiffs' case, and Plaintiffs filed that sworn declaration with the Court to prevail on a dispositive motion. The court relied upon the misrepresentation in its order denying the dispositive motion. This error must be corrected. "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,' ibid." Further, Fed. Rule Civ. Proc. 8(f) states "All pleadings shall be so construed as to do substantial justice," (Estelle v. Gamble, 429 US 97 - Supreme Court 1976) Whilst there may be procedural defects in the Pro Se Defendants' Counterclaim, the action is being brought to

correct clear error, supported by new evidence not previously available to the Pro Se Defendants. To prevent the Pro Se Defendants from accessing a remedy for the extensive harm they've endured from Plaintiffs' abuses is to materially prejudice the Defendants and may result in manifest injustice against the same. The court should exercise its discretion to determine the truth of the matter at trial.

### III. Plaintiffs' Contention that Their Allegations are Supported by Evidence are Based on Evidence Ruled Inadmissible by the Court Earlier in these Proceedings

In their response to the Pro Se Defendants' Counterclaim (ECF No. 137), Plaintiffs offer, as a showing of proof and ostensibly good faith, the same "evidence" provided to the Court during their pursuit of a Temporary Restraining Order and Limited Expedited Discovery. That is, in Plaintiffs' response they produce out of court statements in highly-biased Opinionated Editorials from a progressive media site. This inadmissible hearsay was previously rejected by the Court. For example, in response to this showing of proof during Plaintiffs' attempt to obtain a Temporary Restraining Order, the Court stated, "The article is not admissible. See, e.g., Stine v. Lappin, No. 08-cv-00164- WYD-KLM, 2009 WL 482630, at *5 (D. Colo. Feb. 25, 2009) (denying emergency injunctive relief that was requested in reliance on hearsay and holding that, 'pursuant to Federal Rule of Evidence 801, hearsay, i.e., an out-of-court statement offered for its truth, is not admissible evidence. The statements contained within the article are clearly hearsay, as they are out-of-court statements offered by [p]laintiff to prove the truth of his claims, or that there is contamination of the ADX ventilation systems that is causing harm to the inmates.' (citing New Eng. Mut. Life Ins. Co. v. Anderson, 888 F.2d 646, 650 (10th Cir. 1989) (recognizing that the trial court properly excluded statements in a newspaper article that were offered to prove the truth of the matter asserted)). **None of the exceptions to hearsay appear to apply to Mr. Maulbetsch's article**. See Fed. R. Evid. 801(d)(1), (2); Fed. R. Evid. 803." (ECF. 30, footnote 6 at ¶ 8)

7

Further, Plaintiffs offer as proof another false assertion that complaints were lodged with the Secretary of State against the Defendants. (ECF No. 137 at 10 ¶ 1) Plaintiffs have failed to produce any evidence to support this assertion, and it is further disproven by the unredacted emails submitted as part of this action. Again, Ms. Roberts is the only witness produced by Defendants who claims to have firsthand knowledge of Plaintiffs' allegations about the Defendants. Based on the official government record, Ms. Roberts was not visited by the named Defendants or USEIP, nor was she intimidated according to the five government entities that reviewed her complaint and investigated her encounter, including the Secretary of State's Office. Plaintiffs have failed to produce any factual support for their allegations – academic theory, inadmissible news articles, and perjury are not factual support.

**IV.    The Pro Se Defendants are NOT Asking the Court to Decide the Merits Before Trial**

Plaintiffs assert that Defendants are asking the Court to decide on the merits of the case prior to trial. If something in the Pro Se Defendants' pleading suggests that, then Pro Se Defendants clarify that they are explicitly asking the Court to determine AT TRIAL:

(a) If Plaintiffs, at any point in these proceedings, had factual support for their claims.

(b) Whether Plaintiffs or the Department of State are responsible for the redaction of exculpatory information in Plaintiffs' exhibit production.

(c) Whether Plaintiffs suborned perjury with Ms. Roberts' sworn declaration.

(d) Whether Plaintiffs enjoyed financial and reputational benefits from this litigation.

(e) Whether Plaintiffs, after realizing their claims were without factual support at multiple points in over two years of these proceedings, continued to pursue this litigation to continue enjoying financial and reputational benefits at the expense of the Defendants.

Making these factual determinations should not require any new witnesses or evidence, relying upon the existing evidentiary record, including existing witnesses, deposition transcripts,

and evidence. Since proceeding Pro Se in this case, Ms. Epp and Ms. Kasun have raised three explicit factual areas where Plaintiffs have repeatedly violated the rules and abused the process to keep this litigation going, including material misrepresentations in signed pleadings, dating back to Spring 2022 and occurring as recently as January 2024. These instances are supported by witness testimony and document evidence. Each of these three areas comprise multiple misrepresentations, and the facts and evidence of each should be heard, with each decided on its own merits, at trial. These are not the only areas nor do these pleadings contain all relevant evidence that will be presented at trial. Rather, these three areas are offered as a showing of proof of Plaintiffs' ongoing conduct. These three areas are:

(1) Plaintiffs' misrepresentation of the League of Women Voters' 2022 Safety Plan (LWVCO000112), a document Plaintiffs represented as being produced in a signed pleading, the May 2023 pretrial order. (ECF No. 95) In that pleading, the document was even labeled with a Bates ID number that is not listed in Plaintiffs' discovery records or index file. This document was not produced to the Defendants until January 8, 2024.

(2) Plaintiffs withholding the email exchange between Beth Hendrix and Tara Menza, a current League of Women Voters Board Member, and withholding Ms. Menza as a relevant witness. The exchange between Ms. Menza and Ms. Hendrix was about Ms. Menza's experience with unidentified canvassers, and it was not produced by Ms. Hendrix. Ms. Kasun discovered this material evidence by chance in December 2023. Plaintiff Beth Hendrix and Tara Menza were parties to this exchange, it is relevant and material, and it was withheld by Plaintiffs.

(3) Plaintiffs' misrepresentation of Yvette Roberts, as revealed by the facts contained in her original complaint, her sworn declaration (filed after the close of discovery), the redacted version of the investigative emails, purported to have been produced by the Secretary of

9

State to Plaintiffs, and the unredacted versions of these emails produced, in part by Secretary of State, and more completely by the Mesa County District Attorneys' Office.

Of these three examples, Yvette Roberts is the only one that involves "new evidence" – and the new evidence in question is more aptly described as clarification of the existing evidentiary record. The unredacted emails are highly relevant as they are exculpatory to both Plaintiffs' and their witness Yvette Roberts' allegations before this court. Plaintiffs were in possession of Ms. Roberts' complaint in April 2022, and the totality of the evidence of Ms. Roberts, including but **not limited to or reliant upon** the unredacted emails, proves that Ms. Roberts' sworn declaration is false and may amount to perjury. The court relied upon this false declaration and misrepresentation for its decision on Defendants' Motion for Summary Judgement (ECF No. 84).

The new evidence, when combined with the full record and pattern of behavior, supports Defendants' claim that Plaintiffs' allegations are devoid of factual support, that they continued to pursue them for improper purposes, and that it has harmed and continues to harm the Defendants.

## V. The Court Considering Defendants' Counterclaim at Trial Does NOT Need to Delay these Proceedings

The court's consideration of Defendants' well-founded Abuse of Process Counterclaim need not prolong these proceedings. The court has great discretion in the pursuit of justice. According to the rules, the Court can hear the facts and evidence and trial, or the Court can order separate trials. The Defendants are explicitly asking the Court to determine the facts at trial and conclude all open factual disputes. If Plaintiff liability is determined at trial, Defendants ask the Court to provide a remedy for Defendants' harm. "If the court orders separate trials under Rule 42(b), it may enter judgment on a counterclaim or crossclaim under Rule 54(b) when it has jurisdiction to do so, even if the opposing party's claims have been dismissed or otherwise

resolved." (Fed. R. Civ. P. 13(i)); "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." (Fed. R. Civ. P. 42(b)); see also "When an action presents more than one claim for relief… the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." (Fed. R. Civ. P. 54(b))

The Court has broad discretion in the pursuit of justice, and the Pro Se Defendants ask the Court to exercise that discretion in hearing the facts and deciding the case on its merits at trial, per the existing trial schedule.

## CONCLUSION

Defendants will prove at trial that (1) Plaintiffs knew their claims were devoid of factual support, and they had a duty to withdraw them at multiple points in these proceedings; (2) instead, Plaintiffs continued to pursue these claims to harass Defendants, to generate headlines, to raise funds and punish Defendants' constitutionally protected behavior; and, (3) these sham activities have harmed the Defendants. Whether or not the harm caused by Plaintiffs is due to a bad faith abuse of this process is a genuine dispute of multiple facts, as outlined above (see Section IV at page 8 in this document), and the fact finder should determine the truth of the matter at trial. Leaving this dispute unresolved favors the Plaintiffs and materially prejudices the Defendants, leaving them without a remedy for specific and concrete harm.

The Pro Se Defendants urge the Court to serve as a fact finder for the truth of the matter asserted by both Plaintiffs *and* Defendants at trial.

Dated: April 17, 2024

*/s/Ashley Epp*

Ashley Epp

asheinamerica@protonmail.com

*/s/ Holly Kasun*

hollyataltitude@protonmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served through ECF this 17th day of April 2024, to all counsel of record.

*/s/Ashley Epp*

_____

Ashley Epp
asheinamerica@protonmail.com