UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| COLORADO MONTANA WYOMING STATE AREA CONFERENCE OF THE NAACP, LEAGUE OF WOMEN VOTERS OF COLORADO, and MI FAMILIA VOTA<br><br>Plaintiffs,<br><br>-v-<br><br>SHAWN SMITH, ASHELY EPP, and HOLLY KASUN<br><br>Defendants. | Civil Action No. 1:22-cv-00581-CNS-NRN |

## DEFENDANT SHAWN SMITH'S TRIAL BRIEF

COMES NOW, Defendant Shawn Smith, by and through undersigned counsel, and hereby submits his trial brief for the bench trial set to commence on July 15, 2024.

### I. INTRODUCTION

Plaintiff organizations, the Colorado Montana Wyoming State Area Conference of the NAACP ("NAACP"), League of Women Voters of Colorado ("LWVCO"), and Mi Familia Vota ("MFV"), brought this lawsuit in March of 2022, claiming the individual defendants, Shawn Smith, Ashely Epp, and Holly Kasun, through an unincorporated association, USEIP, were engaged in a door-to-door campaign aimed at intimidating Colorado voters. Despite the completion of discovery and two years of litigation, Plaintiffs' case is premised on pure speculation derived from unsubstantiated reports from media outlets and a single witness.

There is no question that voter intimidation is a serious issue, and to combat these concerns,

1

congress enacted the Voting Rights Act of 1965 ("VRA"), and the Ku Klux Klan Act ("KKK Act") in conjunction with the Civil Rights Act of 1871. In doing so, Congress recognized the chilling effect that threats, intimidation, and coercion had on the democratic process. However, baseless claims of voter intimidation due to differing political beliefs cut against the heart of democracy and the political debate that is necessary and welcomed in our society.

## II. FACTUAL BACKGROUND

Plaintiffs carry the burden to put forth evidence demonstrating that Shawn Smith, Ashely Epp, and Holly Kasun intimidated, threatened, coerced or attempted to intimidate, threaten, or coerce voters. The evidence Plaintiffs intend to present at trial fails to meet this burden. Plaintiffs contend that by helping develop an unincorporated association aimed at finding the truth, sharing the truth, and restoring voters' integrity in the voting process, the defendants created a guide for individuals across Colorado to intimidate and threaten voters through USEIP's canvassing campaign. However, the evidence produced at trial will show that USEIP was designed as a non-partisan, grassroots organization with the sole intention of ensuring Colorado voters could trust that their vote counted and give a voice to Colorado voters who experienced any failure in the democratic process. Defendants' testimony will demonstrate that USEIP, through its volunteers and playbook, was designed to protect both voters and volunteers alike from violations of federal and state laws.

The evidence presented at trial will show the painstaking measures that the defendants took to maintain impartiality, show kindness and respect to Colorado citizens, and protect against accusations like the ones Plaintiffs allege in this case. Shawn Smith will testify that he volunteered as a canvasser in Weld and El Paso counties. Through his experience as a canvasser, he, along with another volunteer, visited seventy to seventy-five homes, and at each home where a resident

2

answered the door, he would introduce himself as a volunteer who is canvassing to verify the Secretary of State's voter history file and would ask the resident if they would be willing to answer questions. Mr. Smith will testify that if a resident would indicate that they did not want to answer questions, he would thank the resident and leave the property immediately. When a resident was willing to answer questions, Mr. Smith would ask the resident if they were the voter listed at the address and whether they voted in the 2020 election, all based on the Secretary of State's voter data. He will testify that only if the resident's information contradicted the information contained from the secretary of state, would he ask additional questions including by what mechanism did the resident vote; by mail, in person, or via drop box, and whether the secretary of state data regarding the resident's registered voter affiliation was accurate. Mr. Smith will testify that only when the resident noted inconsistencies between the Secretary of State's data and the residents' answers would he ask if they would be willing to sign an affidavit memorializing the information the resident provided. Through these personal experiences as a canvasser, Mr. Smith will provide admissible testimony regarding the interactions with Colorado voters, the voluntary questions asked of the residents, and the process by which USEIP volunteers were trained to utilize during the canvassing. Mr. Smith will testify that he asked the same questions to each resident who he spoke to, and the only interactions that deviated from the status quo included a woman who followed him from her property to give him hard candy and thank him for his work, and a postal employee who described having distrust in the Postal Service properly delivering her ballot, so she returned her ballot to a drop box.

Likewise, defendant Ashely Epp participated in canvassing in Douglas and El Paso counties. Ms. Epp will testify that the residents were thankful and appreciative of her visit. She can testify that during canvassing, she introduced herself as a concerned citizen who was verifying

3

the state's records. She would show the resident the data from the Secretary of State and ask the resident if the data was correct and reflected the resident's voting experience. Ms. Epp will also testify regarding Plaintiffs' claims of photographing residences. Contrary to Plaintiffs' beliefs, photographs were only taken when the state's data indicated the property was the registered address of a voter, but the property itself was anything other than a residence. For instance, Ms. Epp will testify that a photo was taken during her canvassing when looking for a couple in their 80s who, according to the Secretary of State's data, had voted from an address which was only a storage unit.

Plaintiffs intend to present evidence of a single witness, Yvette Roberts, who claims to have been canvassed by USEIP volunteers at her home in Mesa County. However, evidence will show that not only did Shawn Smith, Ashely Epp, and/or Holly Kasun never canvass in Mesa County, but that no USEIP volunteer conducted canvassing in Mesa County. Rather, because of the detailed records kept by USEIP volunteers in their canvassing coupled with the data from the Secretary of State, the evidence will show that Ms. Roberts did not interact with a volunteer of USEIP, including the individual defendants. The evidence will instead show that the Secretary of State's voter data contains Ms. Roberts as a registered voter in Mesa County with a voter ID number: 644583. USEIP, through its canvassers, memorialized every home that was canvassed or attempted to be canvassed by using the Secretary of State voter ID to identify each resident. By cross-referencing the Colorado Secretary of State data with the data collected by USEIP, it is undeniable that Ms. Roberts' interaction was not at the direction of USEIP or its volunteers.

Without Ms. Roberts, Plaintiffs are left with only the hearsay testimony of NAACP, LWVCO and MFV representatives, hearsay opinion articles of political journalists, unverifiable hearsay complaints to Colorado county officials, and Plaintiffs' own speculative interpretation of

4

USEIP documents. Plaintiffs' evidence, as a whole, is unreliable and cannot justify relief under the VRA or KKK Act.

### III. ANALYSIS

a. **Plaintiffs' evidence is inadmissible hearsay and cannot support the alleged violations of the VRA or KKK Act.**

Underlying every stage of this litigation has been a grave concern that Plaintiffs based this entire case on pieces of political media which accuse the defendants and USEIP of intimidating Colorado voters. At its inception, Plaintiffs sought a temporary restraining order and preliminary injunction. To justify the need for this relief, Plaintiffs filed a memorandum in support, citing primarily to articles written by Eric Maulbestch in the Colorado Times Recorder. These articles claim that USEIP and the individual defendants were involved in violent acts and engaged in a crusade of door-to-door voter intimidation across Colorado. [ECF No. 6]. In its order denying the temporary restraining order and preliminary injunction, this Court recognized that these articles are not admissible and do not fall under any exception to hearsay. [ECF No. 30, n. 6].

Now, more than two years later, Plaintiffs include these same articles as exhibits for trial. Despite having no independent or reliable evidence to support the accusations in these articles, Plaintiffs continue to rehash these accusations to justify their involvement in this case. In fact, testimony of Beth Hendrix confirms that LWVCO initiated this litigation based *solely* on "media reports" from Eric Maulbetsch; not based on LWVCO's independent knowledge of voter intimidation. Ms. Hendrix will testify that in response to the alleged concerns of USEIP canvassing, the only independent investigation of voter intimidation was initiating an email blast to LWVCO members asking if anyone had received a visit from a USEIP volunteer. The responses to this email were overwhelmingly positive, but nevertheless, must be excluded as hearsay. Likewise, Salvador Hernandez of MFV will testify that he has no knowledge of a Colorado voter

5

who was intimidated by defendants, and that MFV merely joined this lawsuit after Ms. Hendrix raised the concern that USEIP and its volunteers were intimidating voters. Neither Mr. Hernandez nor Ms. Hendrix have independent knowledge or evidence of a voter who was intimidated by defendants and USEIP. Finally, Portia Prescott of the NAACP is unable to recall any information regarding this lawsuit or the evidence NAACP claims to support its involvement in this litigation.

After discovery was completed, Plaintiffs were left without any admissible evidence of USEIP's alleged intimidation tactics. Rather, Plaintiffs rely on the testimony of a single witness, Yvette Roberts, who initially wrote the Colorado Secretary of State's office with concerns of potential intimidation from canvassers in Mesa County. Testimony will show that neither the individual defendants nor USEIP volunteers conducted canvassing in Mesa County. Plaintiffs cannot attribute the actions of other canvassing groups to the defendants and hold the defendants liable for having no part in organizing, training, or conducting the canvassing Ms. Roberts encountered.

Without the immense amount of hearsay Plaintiffs seek to introduce, Plaintiffs are left only with testimony that Ms. Roberts was intimidated by canvassers who had no ties to USEIP. To find that the defendants, whether through USEIP or individually, were engaged in widespread voter intimidation without any admissible evidence or corroborating testimony is untenable and defeats the truth-finding purpose of the legal system.

b. **Plaintiffs cannot demonstrate that the defendants threatened, intimidated, or coerced voters in violation of the Voting Rights Act or the Ku Klux Klan Act.**

To prevail on their claim under Section 11(b) of the VRA, Plaintiffs must provide evidence to show that defendants intimidated, threatened or coerced or attempted to intimidate, threaten or coerce a person in connection with voting. 52 U.S.C. § 10307(b). Threats and intimidation in violation of this section need not be physical or violent "and may include communications

6

inspiring fear of legal consequences, economic harm, dissemination of personal information, and surveillance." *Nat'l Coal. on Black Civic Participation v. Wohl,* 661 F.Supp. 3d 78, 118 (S.D.N.Y. 2023).

Plaintiffs claim that Defendants have intimidated voters by founding USEIP and being involved in drafting its Playbook, publicizing USEIP's efforts, and making threatening public statements and appearances. Although subtler forms of intimidation may give rise to an actionable VRA violation, Plaintiffs ask this Court to disregard the First Amendment and hold the Defendants liable for what they perceive *could* be intimidating to a Colorado voter who has not been identified and not on the stand. In a review of prior cases where subtle forms of intimidation are sufficient to uphold a VRA violation, the plaintiffs had witnesses who could testify that the named defendants intimidated them, and the actions of the defendants would cause any voter to express concerns regarding the consequences of voting.[1] In each case, the defendants' actions caused palpable fear among voters with explicit consequences of participating in voting conduct. There is no case, however, where voter intimidation was premised on the interpretation of innocuous language written for canvassers, with clear expectations that canvassers cannot break the law, provide misinformation, or cause discomfort to those individuals canvassed.

---

[1] *See e.g. Id.* at 112-117 (A robocall stating that voting by mail collected information which could result in law enforcement tracking down old warrants to make arrests, credit card companies collecting outstanding debts, and the CDC tracking individuals for mandatory COVID-19 vaccinations was sufficient to create intimidation and threat in violation of the VRA); *Council on American-Islamic Relations—Minnesota v. Atlas Aegis, LLC.,* 497 F.Supp.3d 371, 379 (D. Minn. Oct. 29, 2020) (the presence of armed guards at the polls was likely to intimidate voters where several residents expressed concern about voting in person based on the presence of these guards); *U.S. v. Tan Duc Nguyen,* 673 F.3d 1259, 1265 (9th Cir. 2012) (distribution of letter among Latino immigrants warning "that if they voted in the upcoming election their personal information would be collected" and could be provided to anti-immigration organizations was intimidation); *Daschle v. Thune,* No. 04-CV-4177 (D.S.D. Nov. 2, 2004) (finding intimidation particularly targeted at Native Americans where defendants would follow Native American voters from polling locations or copying down license plates at polling locations).

Without proof that the individual defendants or any other volunteer of USEIP caused intimidation, whether overtly or subtly, Plaintiffs attempt to argue that Mr. Smith made threatening public statements, and therefore has threatened voters. Again, this argument fails to demonstrate a true threat which could escape First Amendment protection. *See Nat'l Coal. On Black Civic Participation v. Wohl,* 498 F.Supp.3d 457, 487 (S.D.N.Y. 2020). The Tenth Circuit has acknowledged that "[a] true threat means a serious threat as distinguished from words as mere political argument, idle talk or jest." *U.S. v. Viehaus,* 168 F.3d 392, 395 (10th Cir. 1999). To avoid First Amendment protection, a statement must cross the threshold from crude political rhetoric to a true threat. *Id.* at 396 ("Although the bulk of the recorded message at issue is comprised of crude political rhetoric, Viehaus cross the threshold from political rhetoric to criminal threat when he stated unequivocally that fifteen cities would be bombed."); *U.S. v. Wolff,* 370 Fed.Appx. 888, 893 (10th Cir. 2010) ("We acknowledge a substantial portion of Defendant's mailing likely constitutes political speech . . . When Defendant declared there would be a standoff when authorities came to foreclose on his property . . . in which he would give his life 'if need be' and would 'take any that will try to come against him' he sufficiently passed beyond the pale of unpleasant, caustic, but protected speech to . . . a true threat."). Plaintiffs ask this Court to blur the line between protected speech and true threats by claiming that a purely political rhetoric made by Mr. Smith constitutes a true threat to all voters in Colorado.[2] To be a true threat, the statement must "communicate a serious expression of an intent to commit an unlawful act of violence to a particular individual or group of individuals." *Wolff,* 370 Fed.Appx. at 892. The Court will examine "the language, the

---

[2] In this speech, Mr. Smith states that he "has, in his possession, evidence of criminal conduct by the Secretary of State and her staff." As the crowd chants "Lock her up", Mr. Smith responds with "or give due process and justice. And I think if you're involved in election fraud, you deserve to hang. Sometimes the old ways are the best ways. I was accused of endorsing violence, I'm not endorsing violence, I'm saying when you put your hand on a hot stove, you get burned, and you always see it coming and that's what happens to tyrants."

8

context in which the statements are made, as well as the recipients' responses" in determining whether the statement is a true threat. *Id.* Mr. Smith's statement fails to communicate a serious intent to commit an unlawful act of violence, and instead, asks for due process and justice. Plaintiffs take Mr. Smith's statement out of context and claim that this statement, which was republished by news outlets, amounts to Mr. Smith going door-to-door telling all Colorado voters that they should hang. This conclusion fails to consider the language, context and intent of Mr. Smith, all of which require First Amendment protection.

Similarly, Plaintiffs contend that even if the defendants did not directly intimidate voters, they may be liable for the actions of third parties by causing USEIP volunteers to go door to door. This argument has no support in law or rationale. Causation may be implied in a VRA violation in that the defendants are deemed to intend the natural consequences of their actions. *Fair Fight Inc. v. True the Vote,* No. 2:20-CV-00302-SCJ, 2024 WL 24524 at * 42, n.65 (N.D. Ga. Jan. 2, 2024). However, the causal chain cannot break, and evidence must demonstrate that defendants controlled or directed the behaviors of other individuals who may have intimidated voters. *Id.* at *43.

Although there is no evidence that another volunteer of USEIP intimidated, threatened or coerced voters, in *arguendo,* Plaintiffs are unable to demonstrate that the named defendants directed the illegal behaviors of any third party. Throughout the USEIP Playbook, volunteer guides, training materials, and personal experiences, all USEIP volunteers were instructed to follow the law, be polite and professional, and avoid disseminating misinformation. Affirmative steps were taken by USEIP to vet all volunteers, including a social media review, verification phone call, and background check before allowing a volunteer to canvass with USEIP. Plaintiffs position that the defendants caused other, unnamed USEIP volunteers to engage in voter intimidation, is unsupported by documentary evidence and testimony.

9

Finally, Plaintiffs allege a violation of KKK Act, which prohibits conspiring "to prevent by force, intimidation or threat, any citizen who is legally entitled to vote, from giving his support or advocacy." 42 U.S.C. § 1985(3). Mirroring the VRA, the KKK Act requires evidence that the defendants intimidated or threatened a voter. Plaintiffs contend that defendants conspired to found USEIP and trained volunteers to go door-to-door to intimidate Colorado voters.

The minimal admissible evidence Plaintiffs can present demonstrates that no Colorado voter was intimidated or threatened by the defendants or at the direction of the defendants. Furthermore, evidence will demonstrate that the agreed upon purpose of USEIP was to ensure election integrity through legal and respectful canvassing of willing Colorado voters. Having no evidence of intimidation or threats, coupled with an explicit renunciation of intimidating or threatening behavior from volunteers, Plaintiffs fail at every step to establish a violation of the KKK Act.

## IV. CONCLUSION

Plaintiffs are unable to meet their burden of proof to prevail on the claims asserted. Plaintiffs brought this case after seeing unsubstantiated reports of voter intimidation published through a media outlet. Without independently verifying the veracity of these reports, Plaintiffs filed suit against the individual defendants and USEIP claiming violations of Section 11(b) of the Voting Rights Act, and the Ku Klux Klan Act. Discovery only further demonstrated the lack of admissible evidence Plaintiffs could present to justify this lawsuit. At the close of discovery and presentation of evidence admissible at trial, Plaintiffs are only able to introduce the testimony of Yvette Roberts, a registered voter in Mesa County who claims that USEIP volunteers intimidated her during their canvassing. However, this evidence is refuted by her inconsistent statements and the diligent record keeping of all canvassing activities by USEIP volunteers. Testimony will

10

demonstrate that, although unfortunately, Ms. Roberts may have experienced voter intimidation due to canvassers, these canvassers were not the named defendants nor were they acting under the direction of USEIP. Plaintiffs are unable to produce any admissible evidence demonstrating that a Colorado voter was intimidated, threatened or coerced by the individual defendants or other USEIP volunteers. Without evidence of intimidation, threats or coercion, Plaintiffs are unable to meet the requisite elements of a VRA or KKK violation. Furthermore, although Plaintiffs may disagree with Defendants' political views and USEIP's purpose, Defendants must be afforded First Amendment protection when their conduct and speech is merely political debate. Thus, Plaintiffs claims must be dismissed due to the lack of evidence in their case in chief, and the constitutional considerations that not only protect, but welcome defendants' conduct.

Respectfully submitted this 19th day of June, 2024.

THE REISCH LAW FIRM

*s/ Jessica L. Hays*
Jessica L. Hays, #53905
R. Scott Reisch, #26892
1490 W. 121st Avenue, Suite 202
Denver, CO 80234
(303) 291-0555
Scott@reischlawfirm.com
Jessica@reischlawfirm.com
*Attorneys for Defendant, Shawn Smith*

11

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2024, I electronically filed the foregoing **DEFENDANT SHAWN SMITH'S TRIAL BRIEF** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record and pro se parties.

*s/ Cassandra Long*
Cassandra Long, Paralegal

12