UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| COLORADO MONTANA WYOMING STATE AREA CONFERENCE OF THE NAACP, LEAGUE OF WOMEN VOTERS OF COLORADO, and MI FAMILIA VOTA<br><br>Plaintiffs,<br><br>-v-<br><br>UNITED STATES ELECTION INTEGRITY PLAN, SHAWN SMITH, ASHELY EPP, and HOLLY KASUN<br><br>Defendants. | Civil Action No. 1:22-cv-00581-CNS-NRN |

**DEFENDANT SHAWN SMITH'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

COMES NOW, Defendant Shawn Smith, by and through undersigned counsel, and pursuant to the Court's Standing Order, hereby submits his proposed findings of fact and conclusions of law.

## I. BACKGROUND

Plaintiffs, Colorado Montana Wyoming State Area Conference of the NAACP ("NAACP"), League of Women Voters of Colorado ("LWVCO"), and Mi Familia Vota ("MFV") (collectively "Plaintiffs"), filed their Complaint against United States Election Integrity Plan ("USEIP"), Shawn Smith, Ashley Epp, and Holly Kasun (collectively "Defendants") alleging violations of 52 U.S.C. § 10307(b) and 42 U.S.C. § 1985(3). In their Complaint, and throughout this litigation, Plaintiffs allege that USEIP engaged in a door-to-door campaign whereby

1

individuals would knock on the doors of voters in Colorado and ask questions regarding the voter's participation in the 2020 election. [ECF No. 1, p. 1-3]. Plaintiffs allege that through USEIP's canvassing efforts, voters across the state were intimidated or harassed in violation of 52 U.S.C. § 10307(b) and 42 U.S.C. § 1985(3). *Id.* At this juncture, Plaintiffs state that evidence will be presented at trial "that the Individual Defendants have made threatening and intimidating public statements, such as Defendant Smith's public exclamations that anyone involved in election fraud 'deserves to hang,' and have coordinated USEIP's door-to-door canvassing efforts in an attempt to and in a manner that, in fact, intimidated Colorado Voters." [ECF No. 95, p. 2]. Plaintiffs validate these claims by stating they have discovered "evidence demonstrating that USEIP and its members knocked on over 9,000 doors across Colorado and, in doing so, carried and potentially brandished firearms, took photographs of voters' home[s], and represented or implied to voters that they were associated with the government." *Id.* at 2-3.

During the course of litigation, Defendant USEIP was dismissed [*see* ECF No. 84], leaving only Defendants Shawn Smith, Holly Kasun, and Ashley Epp as individuals with potential liability for the alleged claims. The controlling issues at trial are condensed to: (1) whether the evidence shows the individual defendants intimidated, threatened or coerced any person for voting; (2) whether the evidence shows the individual defendants attempted to intimidate, threaten, or coerce any person for voting; (3) whether the individual defendants conspired for the purpose of intimidating or threatening individuals engaged in lawful activity related to voting; and (4) whether the relief sought violates the Defendants' constitutional rights. At trial, Defendant Smith believes that the Plaintiffs will fail to meet their burden on all claims due to the lack of evidence demonstrating that *any* voter, much less a voter of any Plaintiff organization, was threatened, intimidated, or coerced by Defendants.

## PROPOSED FINDINGS OF FACT

1. Portia Prescott is the State President of the Colorado Montana Wyoming State Area Conference of the NAACP. As its president, Ms. Prescott supported NAACP's involvement in this lawsuit, by initially, writing a declaration in support of Plaintiffs' request for a Temporary Restraining Order and Preliminary Injunction. Despite Ms. Prescott's declaration, NAACP is unable to identify any Colorado voter who claims they were intimidated, threatened or coerced by USEIP volunteers. Furthermore, NAACP is unable to demonstrate the resources which were diverted to combat USEIP's actions.

2. Salvador Hernandez is the Colorado State Director of Mi Familia Vota. As it's director, Mr. Hernandez supported MFV's involvement in this lawsuit by, initially, writing a declaration in support of injunctive relief. Although declaring diversion of resources and knowledge of USEIP voter intimidation, MFV is unable to identify any Colorado voter who claims they were intimidated, threatened or coerced by USEIP volunteers. Furthermore, MFV is only able to speculate its diversion of resources it claims were used to combat USEIP canvassing efforts.

3. Beth Hendrix is the Executive Director of the League of Women Voters of Colorado. As its executive director, Ms. Hendrix supported LWVCO's involvement in this lawsuit by, initially, writing a declaration in support of injunctive relief. Ms. Hendrix has knowledge of the Defendants and USEIP's canvassing only through media outlets which brought USEIP to her attention. However, LWVCO cannot verify a Colorado voter who experienced intimidation, threats or coercion from USEIP or its volunteers.

4. Shawn Smith joined USEIP in December 2020 helping develop verification plans and training materials.

5. USEIP was developed as a grassroots organization where volunteers discussed election integrity prior to any canvassing efforts.

6. At no time did USEIP raise funds or seek donations.

7. USEIP volunteers initiated and coordinated door to door canvassing for the sole purpose of confirming the data contained in the Colorado Secretary of State voter rolls. These Secretary of State voter rolls are considered public record and may be obtained by any member of the public who requests it. The information in these public records includes the voter's full name, residential address, political party affiliation and date of affiliation, phone number (if provided by the voter), gender identity (if provided by the voter), birth year, and information about whether you have voted in prior elections. https://www.sos.state.co.us/pubs/elections/FAQs/VoterRegistrationData.html.

8. Mr. Smith participated in door-to-door canvassing efforts on three occasions in Weld and El Paso counties.

9. USEIP canvassing was designed to gather data and identify any inconsistencies between the Secretary of State's data and the individual voter's experience, to present this data to government entities, and encourage those entities to investigate and remedy the inconsistencies identified.

10. USEIP volunteers only used the publicly available information from the state's voter rolls to conduct canvassing. The data provided by the state, and therefore used by canvassers does not include information regarding the voter's race or how they voted on issues or candidates.

11. Mr. Smith, both through his experience canvassing, and his participation in developing USEIP materials, made sure that any canvassing was for the purpose of verifying the

State's published data. In his canvassing, Mr. Smith only asked whether a citizen voted in the 2020 election, if so, by what means did they vote, whether any extra ballots were received at that address, and whether the state's information is otherwise accurate. In his role helping develop USEIP material, Mr. Smith ensured that the information sought through canvassing was limited only to the publicly available State information, and to provide volunteers guidance so their interactions with voters were cordial and that no federal or state laws were violated.

12. Mr. Smith's interactions with voters were overwhelmingly positive and conducted in a cordial, professional manner. Mr. Smith does not recall taking photos of the residences he visited during his canvassing.

13. Plaintiffs allege USEIP volunteers brandished firearms during their canvassing efforts. There is no evidence that USEIP volunteers brandished firearms, nor are there witnesses who claim that USEIP volunteers had any visible weapons during canvassing.

14. Despite Plaintiffs' allegations, there is no evidence that the individual defendants or other USEIP volunteers made verbal or physical threats to voters.

15. There is no evidence that defendants intimidated voters by stating or insinuating that by voting they would have any legal, financial, physical or any other consequence.

16. There is no evidence that the defendants' goal was to create a campaign aimed at intimidating voters. To the contrary, there is evidence through testimony and USEIP materials that the defendants' goal was to only verify the State's data and would do so in a legal, professional, and respectful manner.

17. Plaintiffs derived the allegations of USEIP voter intimidation through articles published by media outlets in Colorado. These articles contain several levels of inadmissible

hearsay.

18. The allegations in these articles have never been independently verified by Plaintiffs or their representatives.

19. Plaintiffs' only admissible evidence of a voter feeling intimidated by USEIP canvassing is through Yvette Roberts, a registered voter in Mesa County.

20. Ms. Roberts initially voiced her concerns of potential voter intimidation on June 23, 2021, through an email to the Secretary of State election team. In this email, Ms. Roberts states that two individuals had the Mesa County registered voter roll and wore homemade badges reading "Colorado Election...something or other." She claims that these individuals, a man and a woman, began questioning her about the accuracy of the voter roll, but when asked about whether she was the only registered voter at the address and how she returned her ballot, she became uncomfortable and demanded that they leave her property. According to this email, she told these individuals that what they were doing was intrusive and could be considered illegal voter intimidation. She further notes that she "thinks the chances are high that they will harass those voters in the traditional ways used here in the past—anonymous vandalism, threats of violence, threating phone calls." She concludes her email by stating that she is interested in taking any legal action to prevent their behavior, including pressing charges.

21. Plaintiffs, through their testimony, never mentioned Yvette Roberts, nor any individual who expressed concerns with USEIP canvassing in Mesa County.

22. Over two years after Ms. Roberts sent her email to the Secretary of State, and in support of Plaintiffs' response to summary judgment, she signed a declaration memorializing different facts than were initially claimed in her email.

6

23. Ms. Roberts declared in 2023 that a man and woman affiliated with the group United States Election Integrity Plan visited her home asking invasive and personal questions. These individuals now had information from the state that was sent to them by the state and asked whether she was a United States citizen, who in the household is a citizen, and *how* she voted in the last election. She declared that as they left her property, after she asked them to, they continued to say things to her. She notes, however, that other canvassers have visited her home, but did not ask her questions that raised concern. She states that after this encounter, she has felt concerned about what these canvassers were going to do with the information, whether there would have been repercussions if she had just asked them to leave, and whether she might get a visit in the future if she spoke out about this interaction.

24. There is no evidence that the individuals who interacted with Ms. Roberts are associated with USEIP.

25. As part of USEIP's canvassing efforts, volunteers were required to document all interactions of homes that were visited. This included homes where no one answered, homes where the resident asked them to leave, and homes where the resident provided information.

26. All documentation of canvassing was memorialized and used in USEIP's Canvassing Report. This data was produced in this litigation by Jeffrey Young. This evidence can definitively confirm whether Ms. Roberts was canvassed by an individual associated with USEIP. Any person, including the Plaintiffs and Defendants, are able to cross-reference the Secretary of State data with the data obtained by USEIP canvassers to deduce whether an individual was canvassed or attempted to be canvassed.

27. The evidence shows that USEIP did not conduct *any* canvassing in Mesa County. There may have been other canvassing organizations with a similar goal, however, that canvassed voters in Mesa County.

28. Furthermore, the Secretary of State data provides that Yvette Roberts is a registered voter in Mesa County, including all other publicly available information about her that is accessible through the voter rolls, including her voter ID number, address, precinct, and county. USEIP compiled the information it collected during *all* canvassing which is organized by voter ID, precinct, and so on, which reflects the State's organization. Easily, the parties, court and witnesses can search through this data and confirm that no USEIP volunteer canvassed Yvette Roberts, anyone with a voter ID the same as Yvette Roberts', anyone in Yvette Roberts' precinct, or anyone in Yvette Roberts' County.

29. There is no evidence that a voter interpreted USEIP's efforts, including any USEIP written material, statement or door-to door canvassing as intimidating, threatening or coercive.

**PROPOSED CONCLUIONS OF LAW**

<u>DEFENDANT SMITH DID NOT INTIMIDATE, THREATEN, COERCE, OR ATTEMPT TO INTIMDIATE, THREATEN, OR COERCE IN VIOLATION OF THE VRA, 52 U.S.C. § 10307(b).</u>

30. The Voting Rights Act, 52 U.S.C. § 10307(b), provides that "No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote." Courts have construed the terms "threats" and "intimidation" to "include messages that a reasonable recipient familiar with the context of the message would interpret as a threat of injury tending to deter individuals from exercising their voting rights. The threatened injury need

8

not be one of violence or bodily harm. For example, threats of economic harm, legal action, dissemination of personal information, and surveillance can qualify depending on the circumstances." *National Coalition on Black Civic Participation v. Wohl,* 498 F.Supp.3d 457, 477 (S.D.N.Y. 2020).

31. In order to prevail on this claim, Plaintiffs must show that an individual was intimidated, threatened, or coerced by the defendants or that the defendants have attempted such intimidation, threat or coercion. *Id.* Plaintiffs have the testimony of a single witness, Yvette Roberts, to corroborate their claims.

32. Plaintiff's must prove by a preponderance of the evidence that the individual defendants, Shawn Smith, Holly Kasun, and Ashely Epp, violated Section 10307(b) of the Voting Rights Act ("VRA"). *See League of United Latin American Citizens #4552 v. Roscoe Independent School Dist.,* 123 F.3d 843, 846 (5th Cir. 1997).

33. The VRA provides "No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote . . ." 52 U.S.C. § 10307(b). First, the Court must consider, within the context of the VRA, what conduct is deemed intimidation, threats, or coercion. "[I]intimidation includes messages that a reasonable recipient, familiar with the context of the communication, would view as a threat of injury to deter individuals from exercising their right to vote." *National Coalition on Black Civic Participation v. Wohl,* 661 F.Supp. 3d 78, 113 (S.D.N.Y. 2023)(*Wohl II)* (citing *NCBCP II,* 512 F.Supp. 3d at 509). However, threats and intimidation may include actions beyond those that are violent or physical, "and may include communications inspiring fear of legal consequences, economic harm, dissemination of personal information, and surveillance." *Id.*

9

34. In cases where subtler forms of intimidation are found to be in violation of the VRA, the communications consist of some underlying consequence that instilled fear in the voter. *See e.g. U.S. v. Tan Duc Nguyen,* 673 F.3d 1259, 1265 (9th Cir. 2012) (distribution of letter among Latino immigrants warning "that if they voted in the upcoming election their personal information would be collected" and could be provided to anti-immigration organizations was intimidation); *Daschle v. Thune,* No. 04-CV-4177 (D.S.D. Nov. 2, 2004) (finding intimidation particularly targeted at Native Americans where defendants would follow Native American voters from polling locations or copying down license plates at polling locations); *Wohl,* 661 F.Supp.3d at 113-117 (robocall was considered intimidation under the VRA based on the message that voting by mail would collect the voter's information which could be sent to police to track down old warrants, credit card companies to collect outstanding debts, and to the CDC for mandatory vaccinations); *Council on American-Islamic Relations—Minnesota v. Atlas Aegis, LLC.,* 497 F.Supp.3d 371, 379 (D. Minn. Oct. 29, 2020) (the presence of armed guards at the polls was likely to intimidate voters where several residents expressed concern about voting in person based on the presence of these guards).

35. Plaintiffs' evidence of defendants' alleged intimidation, threats, or coercion fails to rise to the level of a violation under the VRA. Plaintiffs allegations have no supporting admissible evidence and appear to be completely derived from articles written by Eric Maulbestch about USEIP and its alleged intimidation campaign. These articles contain multiple levels of hearsay and cannot be used to prove the truth of the matter asserted. The author of these articles, Eric Maulbestch, was never endorsed as a witness. Even if he were endorsed, however, the claims made by Colorado voters create another level of inadmissible hearsay.

Mr. Maulbestch cannot testify as to what these voters said regarding their interactions with USEIP volunteers. This is true for all third-party media Plaintiffs introduce as exhibits. The articles themselves, and especially the contents of these articles are purely hearsay and cannot be used to prove Plaintiffs' case. F.R.E. 804; *New England Mut. Life Ins. Co. v. Anderson,* 888 F.2d 646, 650 (10th Cir. 1989).

36. Likewise, Plaintiffs seek to introduce records kept by local Colorado officials, including the Adams, Douglas, and El Paso County clerk and recorders. While the records documenting contact from citizens may be introduced under F.R.E. 803, the contents of the record must fall under a hearsay exception or be introduced by an individual with personal knowledge of its contents. "Any information provided by another person, if an outsider to the business preparing the record, must itself fall within a hearsay exception to be admissible." *U.S. v. Gwathney,* 465 F.3d 1133, 1141 (10th Cir. 2006). The records Plaintiffs seek to introduce through government officials contain statements of citizens, not statements of a clerk and recorder with personal knowledge of its contents. These statements do not fall under any other exception to hearsay and cannot be used to prove Defendants intimidated, threatened or coerced voters in violation of the VRA.

37. Having no evidence that a Colorado voter was intimidated, threatened, coerced or even received a visit from a USEIP canvasser is fatal to Plaintiffs' VRA claim.

38. Although it is true that subtle forms of intimidation may amount to a VRA violation, Plaintiffs cannot demonstrate through admissible evidence that the underlying tone, actions, or intent of defendants can arise to the level of subtle intimidation like those in *supra,* ¶ 34. The testimony of witnesses coupled with USEIP documents demonstrate that the Defendants, and USEIP as a whole, never communicated, insinuated, or created a fear

11

that voters would experience physical harm, legal consequences, economic harm, dissemination of personal information, or surveillance. *See Wohl II,* 661 F.Supp.3d at 113. Rather, the evidence is overwhelming that the defendants fostered a respectful and truthful environment within USEIP and to citizens who were canvassed.

39. While Plaintiffs may disagree with Defendants' political stance and the methods by which Defendants engage in the political process, their disdain cannot create liability under the VRA or KKK Act.

40. Courts must use caution when silencing speech, including political rhetoric, including when the speech is alleged to violate voter intimidation measures. *See Nat'l Coal. On Black Civic Participation v. Wohl,* 498 F.Supp.3d 457, 487 (S.D.N.Y. 2020). Only when speech crosses the line from political argument to a true threat will a statement lose First Amendment protection. *U.S. v. Viehaus,* 168 F.3d 392, 395-96 (10th Cir. 1999).

41. Plaintiffs' allegations of voter intimidation based on Defendants legal actions of obtaining State voter rolls, drafting innocuous materials for USEIP's efforts, and public statements which Plaintiffs consider threatening, cannot exceed the constitutional protections afforded to defendants. *See U.S. v. Wolff,* 370 Fed.Appx. 888, 893 (10th Cir. 2010).

42. Plaintiffs lack of evidence, coupled with the First Amendment protection afforded to the speech complained of, fails to establish a cause of action under the VRA.

<u>DEFENDANT SMITH DID NOT CONSPIRE TO PREVENT BY FORCE, INTIMIDATION, OR THREAT ANY INDIVIDUAL FROM GIVING HIS SUPPORT AND ADVOCACY IN VIOLATION OF THE KKK ACT, 42 U.S.C. § 1985(3)</u>

43. To prevail on a claim under the Support and Advocacy Clause of the KKK Act, a plaintiff must show: (1) a conspiracy of two or more; (2) to prevent by force, intimidation, or threat; (3) any citizen from giving his support or advocacy to a candidate for federal office, and

12

(4) an act in furtherance of that conspiracy. 42 U.S.C. § 1985(3); *See LULAC,* 2018 WL 3848404, at * 1, 5-6.

44. Similar to a claim under the VRA, a necessary element of the KKK Act is intimidation or threats in relation to a citizens' right to vote.

45. No evidence supports a finding that Defendants engaged in any type of intimidation or threats. Nor can Plaintiffs demonstrate that Defendants conspired to prevent an individual's right to vote by force, intimidation or threat. Rather, all evidence demonstrates that the Defendants acted with the purpose of ensuring election integrity through legal and respectful canvassing of willing Colorado voters. Having no evidence of intimidation or threats, coupled with a meeting of the minds to create a peaceful, lawful, and welcoming canvassing of Colorado voters, is detrimental to Plaintiffs' claim under the KKK Act.

46. Finally, Plaintiffs have offered no evidence to support their claim of diverted resources in order to support standing. Likewise, Plaintiffs fail to identify any member of Plaintiff organizations who was intimidated, threatened, or coerced in violation of the VRA and KKK Act. Having no cognizable injury to the organization itself and no member by which the organization can litigate on behalf of, Plaintiffs do not have standing to bring these claims against Defendants.

WHEREFORE, THE COURT DECLARES THAT:

A. There is no evidence that Shawn Smith carried out an unlawful campaign of voter intimidation in violation of Section 11(b) of the Voting Rights Act.

B. There is no evidence that through his involvement in the creation of USEIP materials, Shawn Smith encouraged USEIP volunteers to intimidate, threaten, or coerce voters during canvassing activities.

C. There is no evidence that Shawn Smith or any other Defendant conspired to carry out an unlawful voter intimidation campaign in violation of the KKK Act, 42 U.S.C.§ 1985(3).

D. There is no evidence that Shawn Smith or any other Defendant or volunteer associated with USEIP engaged in actual or attempted voter intimidation, threat, or coercion.

WHEREFORE, THE COURT ISSUES THE FOLLOWING ORDER:

A. The Court Denies Plaintiffs' requests for relief.

B. Plaintiffs are jointly and separately liable for Defendants' reasonable attorneys' fees.

C. This Court retains jurisdiction to ensure Plaintiffs' ongoing compliance with the foregoing orders.

Respectfully submitted this 19th day of June, 2024.

THE REISCH LAW FIRM

<u>s/ Jessica L. Hays</u>
Jessica L. Hays, #53905
R. Scott Reisch, #26892
1490 W. 121st Avenue, Suite 202
Denver, CO 80234
(303) 291-0555
Scott@reischlawfirm.com
Jessica@reischlawfirm.com
*Attorneys for Defendant, Shawn Smith*

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2024, I electronically filed the foregoing **DEFENDANT SHAWN SMITH'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record and pro se parties.

*s/ Cassandra Long*
Cassandra Long, Paralegal
