```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF COLORADO

 3   Civil Action No. 22-cv-00581-CNS-NRN

 4
      COLORADO MONTANA WYOMING STATE AREA        Pages 820 - 836
 5    CONFERENCE OF THE NAACP, et al.,

 6            Plaintiffs,

 7            vs.

 8    SHAWN SMITH, et al.,

 9            Defendants.

10   -----------------------------------------------------------
                          REPORTER'S TRANSCRIPT
11                         Bench Trial - Day 4
     -----------------------------------------------------------
12
       Proceedings before the HONORABLE CHARLOTTE N. SWEENEY, Judge,
13      United States District Court for the District of Colorado,
       commencing on the 18th day of July, 2024, in Courtroom A-702,
14            United States Courthouse, Denver, Colorado.

15                              APPEARANCES

16   For the Plaintiffs:
     AMY E. ERICKSON and BRIAN A. DILLON and KRISTIN M. STOCK,
17   Lathrop GPM LLP, 80 South Eighth St., Ste. 500, Minneapolis,
     MN 55402
18   COURTNEY M. HOSTETLER, Free Speech for People, 48 North
     Pleasant St., Ste. 304, Amherst, MA 01002
19   CASEY C. BREESE, Lathrop GPM LLP, 675 15th St., Ste. 2650,
     Denver, CO 80202
20
     For Defendant Smith:
21   R. SCOTT REISCH and JESSICA L. HAYS, Reisch Law Firm, LLC,
     1490 W. 121st Ave., Ste. 202, Denver, CO 80234
22   For Defendant Kasun:
     MICHAEL J. WYNNE and CAMERON C. POWELL, Gregor Wynne Arney
23   PLLC 4265 San Felipe St., Ste. 700, Houston, TX 77027
     For Defendant Epp:
24   PRO SE

25       Sarah K. Mitchell, RPR, CRR, 901 19th Street, Room A252,
                     Denver, CO 80294, 303-335-2108
             Proceedings reported by mechanical stenography;
                  transcription produced via computer.
```

22-cv-00581-CNS-NRN   Bench Trial - Day 4      07/18/2024    821

1                *        *        *        *        *

2           (The proceedings commenced at 9:12 a.m.)

3              THE COURT:  You will recall we left off yesterday
4    with defendants making a Rule 52(c) motion.  Let me just put
5    some standards on the record.  Rule 52(c) is the equivalent of
6    Rule 50(a) which is used in jury trials.  In a trial to the
7    Court we operate under Rule 52(c) which allows the Court -- if
8    a party has been fully heard on a particular issue during a
9    trial and the Court believes judgment is appropriate against
10   that party, the Court may issue that finding.  The standard is
11   similar, frankly, to a summary judgment standard in the sense
12   that it really requires the Court to look at whether or not
13   every piece of evidence presented by the plaintiffs is true,
14   and if it is, is judgment appropriate.

15             The parties know we are here based -- on the basis of
16   two claims.  The first is an alleged violation of Section
17   11(b) of the Voting Rights Act.  That section provides that no
18   person shall intimidate, threaten, or coerce, or attempt to
19   intimidate, threaten, or coerce any person from voting or
20   attempting to vote.  Courts have defined intimidate as making
21   timid or fearful, or to inspire or affect with fear,
22   especially to compel action or inaction as by threats.

23             To threaten means to utter threats against or to
24   promise punishment, reprisal, or other distress.  To coerce
25   means to restrain, control, or dominate, nullifying individual

                         Sarah K. Mitchell, RPR, CRR

22-cv-00581-CNS-NRN   Bench Trial - Day 4    07/18/2024    822

1    will or desire.
2            It is well settled that there's a private right of
3    action under Section 11(b), and it's also equally settled that
4    it does not require plaintiffs to establish that defendants
5    acted with specific intent to intimidate voters.  We must
6    focus on the acts of defendants directly or those of others
7    who they specifically directed or controlled.
8            The second claim is under the Ku Klux Klan Act, 42
9    U.S.C. Section 1985(3), which prohibits conspiring to prevent
10   by force, intimidation, or threat any citizen from giving
11   support or advocacy to a candidate, which simply means in this
12   context interfering with the right to vote.  Let me just
13   remind everyone here that the United States Election Integrity
14   Plan is not a defendant.  They were dismissed earlier in the
15   case because no action exists under the above statutes against
16   an unincorporated association, so that has left us with three
17   individual defendants.
18           Let me just note that it seems that all parties want
19   this case to be about something it is not about.  It's not
20   about the January 6th insurrection or the history of voter
21   intimidation in this country.  It's not about the defendants'
22   collective belief that there was election fraud.  It's not
23   about the security or lack of security of elections in
24   Colorado.  It's not about alleged vulnerabilities of voting
25   machines in Colorado, and it's not about the actions or

                    Sarah K. Mitchell, RPR, CRR

22-cv-00581-CNS-NRN   Bench Trial - Day 4        07/18/2024    823

1    inactions of the secretary of state in Colorado.  It's
2    certainly not about who is paying for this litigation for
3    either party -- any party.
4              These are all sideshows, and I was careful to try and
5    reel those sideshows in to focus us on the sole issue which is
6    before this Court which is did the plaintiffs prove that
7    defendants violated Section 11(b) of the Voter Rights Act or
8    42 U.S.C. Section 1985(3).  And for purposes of Rule 52, I am
9    now looking at whether or not there is any evidence to allow
10   the Court to find in the plaintiffs' favor on the issue of
11   voter intimidation.  For the following reasons, I find there
12   is not.
13             After consideration of the evidence, I make the
14   following findings of fact.  There's little dispute about each
15   defendants' role in forming or working with the USEIP,
16   including whether, where, and how often each defendant
17   canvassed Colorado voters.  The Court will briefly summarize
18   the testimony of the defendants, plaintiffs' one
19   representative called, and the remaining witnesses called by
20   the plaintiffs.
21             Mr. Smith testified as to his interest in the
22   integrity of elections.  Following the 2020 election, he set
23   about a course of conduct to conduct an investigation, in his
24   mind.  He shortly thereafter met Defendants Epp and Kasun, and
25   he was prompted to get involved with the USEIP at the end of

                       Sarah K. Mitchell, RPR, CRR

22-cv-00581-CNS-NRN   Bench Trial - Day 4   07/18/2024   824

1  February 2021.  He admits to being a member of the core team
2  of USEIP, along with Jeff Young, Ms. Kasun and Ms. Epp.  He
3  attended weekly meetings of the core team.  Mr. Smith believes
4  there's not enough information to verify the 2020 election and
5  believes there's been large-scale election fraud.  None of
6  that actually matters.  What matters is whether or not he
7  engaged in proven actions that can be said to objectively
8  intimidate voters.
9         Mr. Smith conducted three days of canvassing in Weld
10 and El Paso Counties as part of the voter verification effort
11 undertaken by USEIP.  Such effort was loosely designed to test
12 accuracy of voter registration and voter history.  This
13 occurred during the spring of 2021.  The testimony of all of
14 the defendants' witnesses indicate it was during April through
15 August.  The voter verification guide, which has been admitted
16 into evidence, is clear on how one must go about canvassing.
17        The guide makes perfectly clear that canvassers are
18 to be polite.  They may go two to a house. One should go to
19 the door.  One should stay back so as not to intimidate
20 people.  If there's a trespassing sign, they're advised not to
21 enter that property.  Mr. Smith was an integral part of
22 drafting that voter registration guide.
23        Throughout 2021, USEIP canvassed approximately 9,400
24 doors.  4,600 people were contacted.  Importantly, the
25 testimony reveals that other organizations may have been

Sarah K. Mitchell, RPR, CRR

22-cv-00581-CNS-NRN   Bench Trial - Day 4      07/18/2024    825

1  canvassing in Mesa County.  What is clear through the
2  testimony of defendants that has gone unrebutted is that USEIP
3  did not canvass in Mesa County.  The Court has reviewed the
4  playbook and the voter verification training guide in detail.
5  The parties highlighted some parts of those documents, but the
6  Court has thoroughly reviewed them all.  The Court finds
7  nothing in either document that is remotely or objectively
8  intimidating on its face.
9         The voter verification guide was provided to county
10 captains, as also a captain's manual was provided.  In
11 reviewing the history of Ms. Epp's contacts with county
12 captains, it appears that individual counties were somewhat
13 organized on their own.  The meetings held with captains were
14 primarily to get updates from individual county captains, and
15 that was the purpose of those meetings.  There was no evidence
16 of what canvassers in Mesa County were trained to do.
17 Apparently they did -- Mesa County canvassers or the captain
18 did receive a copy of an early version of the voter
19 verification materials of USEIP, but it is unclear to this
20 Court if they were actually using that manual or using a
21 manual of their own.
22        With respect to Mr. Smith, the most concerning action
23 was a speech he gave in February of 2022 at an event at a
24 church in Castle Rock.  Apparently Mr. Smith made a comment
25 about treason and the notion that anyone involved in election

                    Sarah K. Mitchell, RPR, CRR

22-cv-00581-CNS-NRN   Bench Trial - Day 4   07/18/2024   826

1   fraud is committing treason and deserves to hang.  This was
2   well after -- this comment was made well after canvassing had
3   ceased.  The Court, of course, does not condone this type of
4   language, nor the action it apparently elicited from folks in
5   the crowd, but that is certainly not the standard for voter
6   intimidation, and plaintiffs have established no connection
7   between this statement and an attempt to intimidate any
8   particular voter or group of voters, much less how the
9   statement in February 2022 can be used to prove that the
10  alleged intimidating nature of canvassing occurred back a full
11  six months prior.
12          Ms. Epp for her part was one of the founders of the
13  organization in November of 2020.  She testified that the
14  purpose of the organization was to verify the official record
15  to ensure the integrity of the elections.  She was a member of
16  the core team.  She herself canvassed three times, twice in El
17  Paso and once in Douglas County.  Never in Mesa or Weld
18  Counties.  There's no evidence that's been provided that she
19  did anything personally during canvassing to intimidate a
20  voter.
21          Again, it is worth highlighting that there is no
22  evidence that defendants canvassed in Mesa County where Grand
23  Junction sits.  Although there was some testimony about this
24  attenuated connection between the canvassing in Mesa County
25  and USEIP, the evidence does not establish that USEIP was

Sarah K. Mitchell, RPR, CRR

22-cv-00581-CNS-NRN   Bench Trial - Day 4   07/18/2024   827

1  controlling that canvassing or, frankly, had any part in
2  controlling the canvassers there or dictating what those
3  canvassers said to any individual voters.
4        The canvassers in Mesa County were apparently using
5  different datasets, specifically information that they had
6  received from the county clerk's office, whereas USEIP
7  canvassers were relying on information obtained from the
8  secretary of state.  Ms. Epp created the playbook.  She
9  testified it was not a training document, not used in
10 training.  It was for knowledge sharing.  In review of the
11 playbook, it is clear that it appears to be a playbook that
12 governs organizing for various groups that could be used by
13 groups to really get their own groups in order, and it, in
14 fact, did not really even address canvassing.
15       There is an appendix where apparently folks could ask
16 for more information on other training materials, but within
17 the playbook itself there was no guide for canvassing and no
18 guide on voter verification efforts.  The claims against
19 Ms. Epp appear to be based solely on her founding of USEIP
20 and/or her status as a member of the core team.  What is
21 notably lacking, however, is any evidence that she or anyone
22 under her direction attempted to intimidate a voter.  Did she
23 attempt to organize?  Yes.  Did she provide a manual for
24 organizing?  Absolutely.  Does the manual contain hyperbole or
25 false information?  Maybe.  But, again, that is not the issue

Sarah K. Mitchell, RPR, CRR

22-cv-00581-CNS-NRN   Bench Trial - Day 4      07/18/2024    828

1  in front of this Court.  There is no objective effort to
2  intimidate voters through the creation of that document.  No
3  such evidence that that document was thereafter used by others
4  to intimidate voters has been presented to the Court.
5           Turning to Defendant Kasun, of the three defendants,
6  the least amount of information has been provided about her
7  alleged wrongdoing.  She testified that she too was a founding
8  member of USEIP, she helped form the organization in 2020,
9  and, like her codefendants, was a member of the core team.
10 She testified she was in charge of press for USEIP and handled
11 many press inquiries.
12          Defendant Kasun herself never canvassed, and there
13 are no allegations that she did individually engage in conduct
14 that was intimidating to any particular voter.  Her
15 involvement is apparently due to her being a spokesperson for
16 USEIP, but no language has been set forth for this Court that
17 could be construed as objectively intimidating.  The brief
18 excerpts of a radio interview that plaintiffs introduced
19 wholly fail to demonstrate any attempt to intimidate voters
20 and, in fact, reiterated the benign nature of the canvassing
21 that was ongoing.
22          Plaintiffs called Christopher Beall, or Chris Beall,
23 the Deputy Secretary of State in support of their claims.
24 Mr. Beall testified that the secretary of state's office
25 received two e-mails regarding alleged USEIP activities, one

                    Sarah K. Mitchell, RPR, CRR

22-cv-00581-CNS-NRN   Bench Trial - Day 4       07/18/2024    829

1    from Yvette Roberts and one from a Ms. Powell, both in Mesa
2    County.  Mr. Beall also claimed that county clerks received
3    complaint calls.  However, there was no admissible testimony
4    offered regarding those alleged complaints because those
5    complaints were never documented.
6              One would expect the county clerks and/or the
7    secretary of state's office to document official complaints in
8    some way, shape, or form, but no such documentation exists.
9    As such, the Court deemed that those complaints could not be
10   considered in this action.  There was no real investigation by
11   the secretary of state into the two e-mails received.  Those
12   were turned over to authorities, and no charges were filed.
13             A review of those e-mails simply does not support any
14   claim of voter intimidation.  There were no active threats, no
15   intimidating conduct revealed in those e-mails.  It was simply
16   reporting a matter of public concern, more as if to notify the
17   secretary of state's office that people were going door to
18   door.
19             Mr. Beall testified that the playbook instructs
20   people on how to canvass, and that was the source of his
21   concern.  As I've already indicated, it does not, however.  He
22   has not seen any training materials of USEIP.  Mr. Beall's
23   testimony revealed he's concerned about canvassing in general,
24   more along the lines of a statistician.  He thinks it must be
25   statistically relevant and utilize traditional survey

                           Sarah K. Mitchell, RPR, CRR

22-cv-00581-CNS-NRN   Bench Trial - Day 4    07/18/2024    830

1    techniques.  That is not a matter for this Court to determine.
2    The right of canvassing in this country is long and true, and
3    certainly does not require canvassing to have any statistical
4    significance to it, nor does it require folks to use
5    particular methods to canvass.
6           Importantly, his testimony was that with respect to
7    USEIP, and by extension these three defendants, there was no
8    effort of voter intimidation, but simply a risk of voter
9    intimidation.  This Court will not act on risks that have
10   proven unfounded.
11          Ms. Hendrix is the executive director of one of the
12   plaintiffs, the League of Women Voters of Colorado.  She
13   testified that she has no personal knowledge of any voter who
14   felt intimidated by the defendants or USEIP's canvassing
15   efforts.  Her organization decided to file this lawsuit in
16   large part based on numerous articles and media reports of
17   voter intimidation by defendants.
18          Some of those media reports were admitted into
19   evidence not for the truth of the complaints, but to establish
20   why the plaintiffs felt the need to file this action, so I
21   considered those in this context.  And while they may have
22   supported a need to file an action, it is certainly not
23   something that I can base a finding of liability on in the
24   sense that the reports contained in those media reports are
25   hearsay, and the actual complainants that the news journalists

                       Sarah K. Mitchell, RPR, CRR

22-cv-00581-CNS-NRN   Bench Trial - Day 4          07/18/2024    831

1     relied on did not come forward to offer any particular
2     testimony, and there was no abilities of the defendants to
3     cross-examine such witnesses.
4              There was a passing reference to Jean Coleman I
5     believe in Weld County as somebody who had contacted a board
6     member and relayed information as to intimidation.  However,
7     despite my belief that defendants opened the door to such
8     testimony being admitted, the plaintiffs did not offer that
9     testimony into evidence, so I have no idea what Ms. Coleman
10    reported, and I cannot rely on that either.  Surely the board
11    member who spoke to Ms. Coleman could have been called to
12    testify, even if Ms. Coleman did not wish to testify.  So with
13    respect to any possible evidence offered by Ms. Hendrix to
14    support a finding of liability, the Court finds there was
15    none.
16             So that would leave us with Ms. Roberts.  The Court
17    denied defendants' motion for summary judgment based almost
18    exclusively on the affidavit provided by Ms. Roberts by
19    plaintiffs in this action.  Yvette Roberts is from Grand
20    Junction.  The Court finds no ill will in her testimony, and
21    she seemed to be doing her best to recall the events as she
22    knew them.  However, her testimony was wholly unhelpful to the
23    plaintiffs.  She established that two people knocked on her
24    door during the middle of the day, one being a tall man.  As
25    an older woman living alone, she was fearful and, indeed, a

                    Sarah K. Mitchell, RPR, CRR

```
22-cv-00581-CNS-NRN   Bench Trial - Day 4      07/18/2024    832
```

1  bit intimidated right off the bat because of the tall man who
2  was at her door.
3              However, the two people simply introduced themselves
4  and the group they represented.  They were wearing some sort
5  of badge, and badge I shouldn't even say.  Some sort of name
6  tag that she described as an informal marking perhaps from
7  something you might get at Staples of a name label perhaps on
8  a lanyard that said something like Colorado election
9  intimidation, interrogation -- she wasn't sure, but she knew
10 the first two words were Colorado election.  The two
11 individuals, regardless, engaged in no conduct that could be
12 objectively considered intimidating.
13             She was apparently unsure if they were carrying voter
14 information from the state or from Mesa County.  In court she
15 indicated she believed it was from Mesa County, which would
16 support the notion that the Mesa County canvassers that were
17 unaffiliated with the USEIP were using Mesa County voter rolls
18 to canvass.  Regardless, the questions asked of her were not
19 intimidating and not improper.  When she asked them to leave,
20 they left with no trouble whatsoever.
21             Her sole regret seemed to be her own failure of
22 memory to remember their names or what organization they were
23 with, but that surely cannot be the fault of the canvassers
24 who actually introduced themselves and the organization with
25 whom they were with.  She had no basis or reason to conclude

                            Sarah K. Mitchell, RPR, CRR

22-cv-00581-CNS-NRN   Bench Trial - Day 4     07/18/2024    833

1    that these two were from USEIP and, in fact, did not know from
2    which group they hailed.
3             It was upon suggestion apparently from plaintiffs'
4    counsel that USEIP was the group canvassing in her county that
5    she got -- at which point she adopted that position and
6    included it in her affidavit.  The law, however, requires much
7    more than this.  We cannot act upon a suggestion from counsel
8    as to actual evidence in a case.
9             Ms. Roberts, regardless, even if these folks were
10   from USEIP, testified that she did not suffer any threats of
11   violence, threatening phone calls, vandalism during or after
12   the event, and that the single canvassing event would not
13   affect her decision to vote in future elections.
14            So with that, the Court finds that there is simply
15   insufficient evidence to proceed any further in this matter.
16   Normally I would have reviewed my prior conclusions on
17   standing as part of this analysis, but I find no need to do
18   that.  The conclusions of this Court would likely have
19   remained the same on that issue.  But since the issue of
20   liability was teed up through these witnesses, the Court felt
21   it was appropriate to entertain a Rule 52(c) motion on the
22   issue of voter intimidation itself in the interest of judicial
23   economy.
24            In sum, plaintiffs have failed to introduce any
25   evidence that can remotely be perceived as intimidating or

                         Sarah K. Mitchell, RPR, CRR

22-cv-00581-CNS-NRN   Bench Trial - Day 4      07/18/2024    834

1  threatening on behalf of the three defendants.  There's no
2  evidence that any defendant or even an agent of USEIP engaged
3  in canvassing that objectively could rise to the level of
4  voter intimidation.  The playbook, which has been discussed
5  extensively, is also not objectively intimidating.
6           The timing of the alleged canvassing efforts is
7  important to the Court's analysis, although not discussed much
8  by the parties.  The canvassing efforts were after the
9  election and well in advance of the next election.  There was
10 no indication or evidence offered that any of the canvassing
11 attempted to assess a voter's intention to vote in the next
12 election or even discussed an upcoming election.  The
13 questions concerned the prior election, and in this context,
14 the evidence would be required to show an intent to interfere
15 with the right to vote in a much more significant way, and no
16 such evidence was presented.
17          Plaintiffs have made much of the fact that
18 photographs were allegedly taken of some residences.  There
19 was no real evidence of this, but regardless, even if true,
20 that would not rise to the level of surveillance that has been
21 found to support a claim for voter intimidation.  Such photos
22 are available on Google maps, and there's no evidence
23 presented in this case that any voter had such actions taken
24 against them or that they found that action to be
25 intimidating.

                        Sarah K. Mitchell, RPR, CRR

22-cv-00581-CNS-NRN   Bench Trial - Day 4    07/18/2024    835

1              Sensing a lack of evidence to support their claims,
2    plaintiffs attempted to broaden the theory of the case
3    midstream.  I did not allow that.  The pretrial order controls
4    the claims brought in a case, and that claim was not argued
5    that way or asserted that way in the pretrial order.  Even if
6    it was, that would not have commanded a different result, as
7    there was simply no evidence of sufficient voter intimidation
8    here.
9              I will add that I found Professor Ellis's testimony
10   helpful and insightful as to the abstract issue of voter
11   intimidation.  The Court has no doubt that indirect voter
12   intimidation efforts as described by the professor have
13   occurred in this country and continue to occur in this
14   country.  Yet, the Court cannot infer that these defendants
15   are part of that effort without credible evidence establishing
16   that connection.
17             The alleged actions here are nothing like the cases
18   referred to by Professor Ellis or plaintiffs in any of their
19   briefs.  I will simply note a couple of those.  This is not
20   akin to following Native American voters into polling places
21   or recording license plate numbers of those who voted.  It is
22   similarly not threatening phone calls or asserting economic
23   retaliation over folks.  It is not blocking people from their
24   polling stations.  And it is also not indicating that the
25   ballot drop box is under any type of surveillance and fraud

                         Sarah K. Mitchell, RPR, CRR

```
22-cv-00581-CNS-NRN   Bench Trial - Day 4    07/18/2024   836
```

1  will result in crimes being pursued.  This is simply far too
2  remote without any testimony of any voter who found any of
3  these efforts to be intimidating.
4           As a result, the Court finds that plaintiffs have
5  failed to show any violation of Section 11(b) or Section
6  1985(3) by any of the named defendants in this case, and
7  judgment shall enter in favor of the defendants.
8           With that, I will thank counsel for their
9  professionalism, and we will be in recess.
10          THE COURTROOM DEPUTY:  All rise.  Court is in recess.
11     (The proceedings were concluded at 9:36 a.m.)

                        Sarah K. Mitchell, RPR, CRR

<u>REPORTER'S CERTIFICATE</u>

I, SARAH K. MITCHELL, Official Court Reporter for the United States District Court for the District of Colorado, a Registered Professional Reporter and Certified Realtime Reporter, do hereby certify that I reported by machine shorthand the proceedings contained herein at the time and place aforementioned and that the foregoing pages constitute a full, true and correct transcript.

Dated this 30th day of July, 2024.


/s/ Sarah K. Mitchell

SARAH K. MITCHELL
Official Court Reporter
Registered Professional Reporter
Certified Realtime Reporter


Sarah K. Mitchell, RPR, CRR