IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00581-CNS-NRN

Colorado Montana Wyoming
State Area Conference of the NAACP,
League of Women Voters of Colorado, and
Mi Familia Vota
    Plaintiff(s)

v.

United States Election Integrity Plan,
Shawn Smith, Ashley Epp,
and Holly Kasun
    Defendant(s)

_____

### ASHLEY EPP'S MOTION FOR PRO SE ATTORNEY'S FEES & COSTS
_____

COMES NOW, Pro Se Defendant Ashley Epp hereby submits the following *Motion For Attorney's Fees* pursuant to Fed. R. Civ. P. 54 and 28 U.S.C. § 1927.[1]

**CERTIFICATE OF CONFERRAL**

Pursuant to D.C. Colo. L. Civ. R. 7.1(a), Ms. Epp certifies that conferred with Plaintiffs' counsel regarding the relief sought through this motion. They oppose this motion.

**INTRODUCTION**

On March 9, 2022, Defendant Epp was falsely, forever linked to the Ku Klux Klan (hereinafter

---

[1] Given the Court's Final Judgement, Rule 11 sanctions would also be appropriate. Ms. Epp is precluded from bringing such a motion as she did not initiate the 21 Safe Harbor period prior to the Final Judgement. If the Court determines sanctions are warranted, Rule 11(c)(3) permits it to initiate sanctions proceedings *sua sponte;* the Court may impose sanctions without providing opportunity to withdraw the misstatement." (*Muhammad v. Walmart Stores* E., L.P., 732 F.3d 104, 108 (2d Cir. 2013) (*per curiam)*).

1

"KKK"), a vile, racist organization with an equally vile history dating back to the mid-1800's. The personal, professional, and financial consequences for Ms. Epp have been catastrophic. On that now infamously destructive day, Plaintiffs brought this lawsuit alleging that she and the other Defendants were engaged in a door-to-door campaign aimed at intimidating Colorado voters. A bench trial commenced on July 15, 2024. On day three, Defendant Epp made an Oral Motion for Judgement on Partial Findings under Fed. R. Civ. P. 52(c). The Court entered judgment in favor of the Defendants and awarded costs.

This case has been ongoing for 28 months. The presentation of evidence and examination of witnesses at trial demonstrated Ms. Epp's repeated contention that Plaintiffs – and, importantly, Plaintiffs' counsel – knew that (1) their allegations had no factual support and could not succeed on the merits, (2) their allegations resulted in *extreme* harm to the Defendants; (3) they had a duty to withdraw their claims per the Federal Rules of Civil Procedure and Rules of Professional Conduct, and (4) refusal to withdraw their claims would and did continue to unjustly harm Defendants. The absence of *any* factual support for the Plaintiffs' two plus years of harassment – both publicly and before this Court – affirms Ms. Epp's contention.

## **LEGAL STANDARD**

The Court's Final Judgment awarded costs to the Defendants to be taxed by the Clerk of the Court.[2] (ECF No. 185) Rule 54(d)(2) authorizes a prevailing party to move for an award of attorney's fees.

### i. **Pro Se Defendants are entitled to Attorney's Fees when they "substantially prevail" in cases comprising "extraordinary circumstances."**

This case's outcome may be unprecedented. Case law and legal precedent for a Pro Se Defendant substantially prevailing by Judgement on Partial Findings (Rule 52(c)) in a Civil Rights case appears nonexistent. Pro Se litigants "substantially prevailing" is rare, and a Pro Se Defendant "substantially prevailing" via Rule 52(c) may also be unprecedented. A Pro Se *Defendant* being awarded attorney's fees may also be unprecedented; Ms. Epp cannot find any such case.[3]

---

[2] Pursuant to Fed. R. Civ. P. 54(d)(1) and D.C. Colo. L. Civ. R 54.1."
[3] Ms. Epp identified *plaintiff* examples, as defined below. Though relevant case law may exist, after much effort Ms. Epp was unable to identify *any* case law about similarly situated *defendants* or other case law that would likely be helpful to the Court.

It is because of, not despite, the unprecedented nature of these proceedings, that the Court must exercise discretion in defining an award, guarding against inequitably disadvantaging Ms. Epp simply because she defended herself.

Because trial judges are entrusted with much discretion[4] in effectuating the underlying policy of the Federal Rules of Civil Procedure, "the Civil Rules place virtually no limits on judicial creativity." (See, *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 252 (2d Cir. 1985) ("declining to restrict a District Court's choice of sanctions"). District Judges are encouraged to consider many factors when sanctions are appropriate, as they are here, including weighing factors that do not necessarily reflect the expenses or fees incurred.[5][6] Equal treatment is critical to ensuring the proper administration of justice and is of heightened importance here given the insidiously libelous and harmful nature of Plaintiffs' allegations[7]; a District Court's finding of bad faith is a factual determination.[8] Whether Plaintiffs and their attorneys have brought this litigation in bad faith is a matter solely for the Court to determine. Courts have awarded attorney's fees to Pro Se *Plaintiffs* for both compensation and deterrent purposes. (See, *Rynkiewicz v. Jeanes Hosp.*, Civ. A. No. 86-5209, 1987 WL 7842 (E.D. Pa. Mar. 11, 1987) (awarding fees in light of Rule 11's goals).[9]

Arguments against awarding Pro Se attorneys' fees largely have focused on Congress'

---

[4] The decision to award attorneys' fees is committed to the discretion of the trial court. (Ryan v. Hatfield, 578 F.2d 275, 277 (10th Cir. 1978))

[5] While FOIA is not a direct parallel to the matter before the Court, § 10307(b) and § 1985(3) the principles and legal rational for Pro Se awards in FOIA cases are relevant on the specific matter of Pro Se awards, and thus worthy of consideration. Anderson v. Beatrice Foods Co., 900 F.2d 388, 394 (1st Cir. 1990); see also *Donaldson v. Clark*, 819 F.2d 1551, 1557 (11th Cir. 1987) (en banc) (affirming that trial judges have discretion to select the type of sanction to be imposed). For examples of truly creative sanctions, see *Curran v. Price*, 150 F.R.D. 85, 87 (D. Md. 1993) (ordering attorney who blatantly disregarded requirements of the federal removal statute to copy out, by hand, the whole section on removal in Wright, Miller & Cooper's Federal Practice and Procedure); *Huettig & Schramm, Inc. v. Landscape Contractors Council*, 582 F. Supp. 1519, 1522-23 (N.D. Cal. 1984) (ordering counsel's law firm to pay the adversary's attorney's fees and to circulate the judge's order to that effect among all partners and associates in the firm), affd., 190 F.2d 1421 (9th Cir. 1986).

[6] Indeed, in Freedom of Information Act cases, Courts have confirmed that fairness and sound policy compel the same treatment of attorney and non-attorney plaintiffs (*Manos v. Dep't of the Air Force*, 829 F. Supp. 1191, 1193 (N.D. Cal. 1993) (stating that "fairness and sound policy" compel same treatment of attorney and non-attorney pro se plaintiffs); *Whalen v. IRS*, No. 92C 4841, 1993 WL 532506, at *11 (N.D. Ill. Dec. 20, 1993) (finding "no satisfactory distinction between pro se FOIA litigants who are lawyers and those who are not for the propose of awarding fees.").

[7] See also, *Rosenbloom v. Metromedia*, Inc., 403 US 29 - Supreme Court 1971, regarding Plaintiffs elevated liability in libel cases because of the harm of libel and its impact on self-censorship and the First Amendment.

[8] *Ford v. Temple Hosp*. 790 F. 2d 342 - Court of Appeals, 3rd Circuit 1986, citing *Baker v. Cerberus*, Ltd., 764 F.2d at 210; *Perichak v. International Union of Elec. Radio*, 715 F.2d 78, 79 (3d Cir.1983); Fed.R.Civ.P. 52(a).)

[9] See *Committe v. Dennis Reimer Co*., 150 F.R.D. 495 (D. Vt 1993) (denying fees, though conceding that an award would further the underlying policy of the rule); See also, see also, *Chemiakin v. Yefimov*, 932 F.2d 124 (2d Cir. 1991) (awarding attorney's fees to a pro se litigant under Federal Rule of Appellate Procedure 38)

understandable desire to disincentivize tortious abuse where an unentitled plaintiff pursues a "windfall" from a more financially well-off defendant. These arguments are irrelevant to this case. With the elemental factors of "substantially prevailing" in cases where there are "extraordinary circumstances," the denial of reasonable compensation to a pro se defendant – who is reacting to litigation rather than bringing it – creates untenable inequities in the ability of the accused to access their right to an effective and competent defense. Further, it encourages financially advantaged parties to intimidate and coerce an accused, forcing truly innocent defendants into settlements or other outcomes – completely in opposition to the defendants' best legal and personal interests. The limited available history of Pro Se attorney's fee awards suggests that, if a Pro Se litigant prevails, and the case was pursued in a manner similar to what would be expected of an attorney, then an award of fees is appropriate. In this case, it is essential; equality and justice demand it.

Thus, a Pro Se Defendant is entitled to attorney's fees, particularly when she "substantially prevails" in cases comprising "extraordinary circumstances," and has pursued her defense in a manner sufficiently similar to what would be expected of a lawyer.

### ii. Attorney's Fees in this Action are Permitted Under "Rule 54. Judgment; Costs"

To seek attorney's fees under Rule 54, the movant must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." (Fed. R. Civ. P. 54(d)(2)(ii)). Plaintiffs brought three federal claims under two acts,[10] and both acts allow an award of attorneys' fees to the prevailing party.[11] [12] Existing precedent generally affords a presumption to plaintiffs "for what it cost him to vindicate civil rights." (*Fox v. Vice*, 563 U.S. 826, 833 (2011)), but "a defendant is not precluded from seeking attorney's fees" when she prevails[13], and "when a defendant is the prevailing party on a civil rights claim . . . district courts may award attorney's fees if the plaintiff's 'claim was *frivolous, unreasonable, or groundless*,' or if 'the plaintiff *continued to litigate after it clearly became so*.'" (*CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 422-23 (2016)(emphasis added). The rules, statutory provisions, and the case law clearly allow a

---

[10] Plaintiffs brought their claims under the Voting Rights Act, 52 U.S.C. § 10307(b) and the Civil Rights Act, 42 U.S.C. § 1985(3).
[11] "In any action or proceeding to enforce a provision of section . . . 1985, of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b)
[12] "In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee . . . and other reasonable litigation expenses as part of the costs." 52 U.S.C. § 10310(e)
[13] *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418-19 (1978)

fee shifting provision to "protect defendants from burdensome litigation having no legal or factual basis." (*Fox v. Vice*, 563 U.S. 826, 833 (2011)).[14] A claim is frivolous, unreasonable, or groundless "when a party utterly fails to produce any evidence in support of material issues." (*Twilley v. Integris Baptist Medical Center, Inc.*, 16 Fed.Appx. 923, 926 (10th Cir. 2001)).[15] [16]

To prevail under the fee shifting provision of 52 U.S.C. § 10310(e), a defendant must likewise demonstrate that the plaintiff's claim was frivolous, unreasonable, or groundless.[17]

### iii. Additional Sanctions are Permitted in this Action Under 28 U.S. Code § 1927

In addition to Rule 54, § 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the Court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct."[18] The purpose of § 1927 is to prevent the vexatious multiplication of proceedings. Here, Plaintiffs' misrepresentations to the Court unambiguously multiplied these proceedings.[19]

While both statutory provisions permit the award of attorney's fees to Defendants, the sanctions within each are independent of each other, allowing the Court broad discretion to determine the appropriate combination of compensatory - and deterrent-based sanctions.[20]

### ARGUMENT

Ms. Epp makes the following arguments for an award of attorney's fees in this case.

### i. **Plaintiff's Claims in These Proceedings Were Frivolous**

---

[14] This includes "claims that were meritless at the inception of the case and those that only were revealed to be meritless as the litigation developed." (*Shapiro v. Ryneck*, 250 F.Supp.3d 775, 780 (D. Colo. 2017).
[15] This standard is satisfied when a Plaintiff fails to produce evidence beyond mere speculation and conjecture, yet "continue[s] to litigate after it became clear during discovery that [their] claims lacked evidentiary support."
[16] See also *Yalowizer v. Town of Ranchester, Wyoming*, 18 Fed.Appx. 745, 753-54 (10th Cir. 2001) (granting an award… The Court noted that at summary judgment, the Plaintiff's evidence was weak, and in proceeding to trial on the merits, it was revealed that the claim was premised only on speculation without any admissible evidence to support the civil rights claim).
[17] The standard articulated for prevailing defendants under the Civil Rights Act in Christiansburg, has been adopted for prevailing defendants under the Voting Rights Act. *Vaughan v. Lewisville Independent School Dist.*, 62 F.4th 199, 203-204 (5th Cir. 2023); *Shelby County v. Holder*, 43 F.Supp.3d 47, 62 (D.D.C. 2014); *Matthews v. Leflore County Bd. Of Election Com'rs*, 477 F.Supp. 885, 889 (N.D. Miss. 1979).
[18] An award under this section may only include fees and costs associated with the prolonging of meritless claims, including "continuing to pursue claims after a reasonable attorney would realize they lacked merit and can warrant sanctions under § 1927." (*Frey v. Town of Jackson*, *Wyoming*, 41 F.4th 1223, 1245 (10th Cir. 2022)).
[19] "The purpose of § 1927 is to prevent the vexatious multiplication of proceedings, and no multiplication of proceedings would be more vexatious than one which gave a frivolous claim the appearance of trial-worthy merit." *Obeslo v. Empower Capital Management*, LLC., 85 F.4th 991, 1018 (10th Cir. 2023) (Tymkovich dissent)
[20] "the Civil Rules place virtually no limits on judicial creativity." (*Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 252 (2d Cir. 1985))

5

The standard in *Twilley* (above p 5 ¶ 1) is satisfied when a plaintiff fails to produce evidence beyond mere speculation and conjecture, yet "continue[s] to litigate after it became clear during discovery that [their] claims lacked evidentiary support."[21] This Court made such a finding, stating: "In sum, Plaintiffs have failed to introduce any evidence that can remotely be perceived as intimidating or threatening on behalf of the three Defendants. The playbook, which has been discussed extensively, is also not objectively intimidating." (Trial Day 4, Trans. 14:24-15:5)

Yet, Plaintiffs and Plaintiff Counsel made their allegations, both before this Court and even publicly, as assertions of fact, harming Defendant Epp's reputation in ways that words cannot sufficiently describe. The allegations were not just unfounded, they were factually untrue. Thus, *Twilley* is met; Plaintiffs' allegations are frivolous for the purposes of the Court's award and sanction calculations.

ii. **Ms. Epp "Substantially Prevailed" at Trial**

The outcome of these proceedings is appropriately and undoubtedly characterized as Ms. Epp and the other defendants having "substantially prevailed" for the purposes of the Court's award and sanctions calculations. Such calculus must also factor in attorney misconduct.

42 U.S. Code § 11113 provides that when "the defendant substantially prevails, the court shall, at the conclusion of the action, award to a substantially prevailing party defending against any such claim the cost of the suit attributable to such claim, including a reasonable attorney's fee, if the claim, or the claimant's conduct during the litigation of the claim, was *frivolous, unreasonable, without foundation, or in bad faith*. For the purposes of this section, a Defendant shall not be considered to have substantially prevailed when the plaintiff obtains an award for damages or permanent injunctive or declaratory relief. (42 U.S. Code § 11113 - Payment of reasonable attorneys' fees and costs in defense of suit)

Plaintiffs obtained neither damages nor temporary/permanent relief. By every identified definition of "substantially prevailing" Ms. Epp substantially prevailed in these proceedings.

iii. **Ms. Epp Pursued This Case In a Manner Similar to What Would Be Expected of a Lawyer**

---

[21] See also *Yalowizer v. Town of Ranchester, Wyoming*, 18 Fed.Appx. 745, 753-54 (10th Cir. 2001) (granting an award of attorney's fees to prevailing defendant in a 42 U.S.C. § 1983 case when it was revealed that the claim was premised only on speculation without any admissible evidence to support the civil rights claim).

6

Expectations of a Lawyer are governed by the Rules of Professional Conduct and apply to both professionalism and type of work and activity. Ms. Epp approached her defense with the same level of professionalism and commitment that would be expected of an attorney, to the advancement of justice on her own behalf, and took reasonable steps to protect the Court's interests as well. Indeed, this Honorable Court recognized Ms. Epp's competence during the Pre-Trial Conference, stating, *inter alia*, "Judging by [Ms. Epp's] writing, it strikes me as you know what you're doing and you're fairly advanced, so I expect [the trial] to go fairly smoothly." (PTC Trans. 14:20-22).

Ms. Epp was at an unimaginable disadvantage, having to learn legal concepts and principles on an expedited basis, and had to rely upon her own individualized professional skills and instincts in a manner that resulted in sufficiently competent advocacy similar or equal to that of attorneys for Plaintiffs in this case, and generally. Ms. Epp also took extraordinary efforts to learn the Rules of Professional Conduct for lawyers, in order to advance an ethical defense. In the most intimidating environment she has ever experienced – a United States District Court – Ms. Epp held her own. Finally, Ms. Epp made every effort to present proper legal arguments based on the facts, the law and the evidence, and always in accordance with this Court's instructions.

Importantly, Ms. Epp raised key arguments on which this Court relied. For example, Ms. Epp raised the unprecedented nature of Plaintiffs' allegations relative to the timing of canvassing in her Trial Brief (ECF No. 160). This was an important factor in the Court's findings: "The timing of the alleged canvassing efforts is important to the Court's analysis, although not discussed much by the parties. The canvassing efforts were after the election and well in advance of the next election." (Trial Day 4, Trans. 15:6-9). While the Court is correct that this topic was not discussed much at trial, Ms. Epp raised it as an important consideration in her Trial Brief, arguing that the timing makes this case an outlier in the history of 11(b) cases, and a much more expansive reading of the statute than has ever been litigated. (ECF No. 160, 9 ¶ 2)

During the pre-trial period, in which Ms. Epp was unrepresented, December 29, 2023 to July 14, 2024, Ms. Epp assumed sole responsibility of her legal defense, including the entirety of all motions

7

processes and trial documents,[22] all efforts of preparing for and representing herself during the Pretrial Conference (ECF No. 166), preparing for trial, and representing herself during the trial, during which Ms. Epp gave an effective opening statement, cross-examined witnesses, impeached witnesses, cured defects in her own testimony, and delivered an appropriate Rule 52(c) motion at the conclusion of the case – as would be expected of an attorney in similar circumstances.

More narrowly, albeit substantially disadvantaged as a civilian untrained in the law, Ms. Epp met the expectations of this Court and advocated for herself in a manner consistent with a lawyer by rapidly: (1) learning the FRCP, the FRE, and the RPC for this forum to proceed in good faith, (2) researched and synthesized the specific Civil Rights laws under which Plaintiffs' claims were alleged, (3) researched the existing case law and the burden of proof for each of Plaintiffs' charges, and (4) learned the process and expectations of trial, all while simultaneously (5) undertaking all of the activities described in (n.22). "Laying the road while running on it," is how this would be described in the corporate world, and Ms. Epp's effort to operate with the utmost respect for the process and for the Court is undeniable.

As a Pro Se Defendant, Ms. Epp faced off against three civil rights organizations, two law firms, and at least six attorneys in and during trial. Ms. Epp advanced an ethical and legally sound defense, and substantially prevailed as a direct result of her efforts, notwithstanding the monumental efforts necessary to fend for oneself in this matter. All Defendants at trial, as well as the Court in Final Judgement, relied upon evidence that was admitted as a direct result of Ms. Epp's good faith insistence on the resolution of evidentiary issues while she was representing herself (Trial Exhibit Nos. 50, 86, 90).

Ms. Epp operated competently, in good faith, with respect for the parties, witnesses, and this Honorable Court. Ms. Epp pursued her defense in a manner similar to what would be expected of a lawyer; she is entitled to compensation for efforts. See Exhibit 6 – Epp Affidavit for proposed fee calculations.

---

[22] This includes the processes for Continuance (ECF Nos. 107, 108, 114), the January Pretrial Witness List (ECF No 120), January Motion in Limine Response (ECF No. 111), preparing for and representing herself during the January 23, 2024 Status Hearing (ECF No. 126), Motion for Counterclaims (ECF Nos. 131, 132, 134, 138), Motion in Limine process (ECF No. 140, 146), the June Pretrial Witness List (ECF Nos. 153, 178, 179), the Exhibit List process, including activities under duty to confer (ECF Nos.157, 174), Ms. Epp's Trial Brief (ECF No. 160), Ms. Epp's Proposed Findings of Fact and Conclusions of Law (ECF Nos. 161), and preparing the glossary (in conference with Ms. Kasun's counsel).

    iv. **Plaintiff and Plaintiff Counsels' Unprecedented Allegations Combined with Their Pattern of Misconduct Constitute "Extraordinary Circumstances"**

As discussed in (i) above, Plaintiffs' allegations are frivolous, and unprecedented (see above p 7 ¶ 3) When these frivolous and unprecedented factors are combined with the documented pattern of misconduct (not merely creative lawyering), the court must consider there to be "extraordinary circumstances" for the purposes of award and the sanctions the Court will calculate.

According to the Department of Justice's Office of Professional Responsibility "A professional misconduct finding is appropriate when a preponderance of the evidence establishes that the attorney intentionally violated, or recklessly disregarded, a clear and unambiguous legal obligation or professional standard."[23] Both Plaintiffs and Plaintiffs' counsel engaged in a pattern of professional misconduct in this case, from its inception, and with reckless disregard for Ms. Epp and her livelihood and reputation.

    a) *Plaintiffs Engaged in Misconduct*

Plaintiff League of Women Voters Colorado retained counsel for this action on September 23, 2021, and brought this on March 9, 2022. The Complaint (ECF No. 1) was accompanied by a Declaration of Executive Director Beth Hendrix, asserted and signed under penalty of perjury, that "LWVCO members have reported concerns based on their own experience with visits from USEIP." (ECF No. 8, p. 3 at 7). Ms. Hendrix repeatedly published false allegations about USEIP to *all* of her subscribers on September 4, 2021, September 8, 2021, and September 10, 2021. Evidence at trial showed that Ms. Hendrix expanded on these false allegations in her discussions with concerned voters that responded to Ms. Hendrix, even suggesting that "often armed" canvassers were "asking people how they voted." (Exhibit 76). Critically, at trial, Ms. Hendrix "testified that she has no personal knowledge of any voter who felt intimidated by the defendants or USEIP's canvassing efforts." (Trial Day 4, Trans. 11:12-15). Moreover, Ms. Hendrix testified that she brought this case because of the information she received from her national organization and Free Speech for People, and because of news reports. More than any other Plaintiff, Ms. Hendrix is responsible for propagating the false allegations against Defendants, and this was in service of her frivolous claims.

---

[23] DOJ, Attorney Professional Misconduct Matters. https://www.justice.gov/opr/professional-misconduct. While OPR may not have jurisdiction over the attorney conduct in this case, ostensibly the standards would be consistent.

Defendant Mi Familia Vota joined this action at the beginning of October 2021 according to Plaintiffs' Privilege Log. Colorado State Director Sal Hernandez issued a declaration accompanying the complaint, under penalty of perjury. (ECF No. 10) Neither Plaintiff Mi Familia Vota, nor Mr. Hernandez produced any responsive documents or other evidentiary support for their claims. During depositions, Mr. Hernandez testified that he had no personal knowledge, and that he only joined this lawsuit because of the information he received from Ms. Hendrix. (Hernandez Dep. 22:13-15). Mr. Hernandez was present in the gallery during the trial, but he did not testify.

Plaintiff NAACP participated in these proceedings the least amount of any Plaintiff, despite the case being filed and reported as "NAACP et al v. USEIP et al." President Portia Prescott issued a declaration accompanying the complaint under penalty of perjury. (ECF No. 9) Neither NAACP, nor Ms. Prescott, produced *any* responsive documents or other evidentiary support for their claims. During their depositions, Ms. Prescott could not even recall why she brought this case.[24] **Even this trial was not a diversion of resources for Ms. Prescott or the NAACP.** Ms. Prescott was not present during the trial, but she was present for the reading of the verdict on July 18, 2024. After attaching Ms. Epp's name to the KKK publicly defaming, humiliating and dehumanizing her, as well as before *this* Court for more than two years, rather than attend the trial, Ms. Prescott was in Las Vegas at an NAACP Convention. We know this, because she was posting on the social media platform "X" about the wonderful experience she was having. Two days after trial, Ms. Prescott bragged about receiving "over 1 million views" on the content she generated while Ms. Epp was before this Court, in this case, defending her integrity with everything she had against Ms. Prescott's malicious and false allegations. (See Exhibit 2 – Prescott Tweets During Trial). Worse, when asked by reporters about this Court's decision, despite not ever being present for a single moment of the presentation of evidence and examination of witnesses, "Portia Prescott, President of the Colorado NAACP, called [the] outcome 'sad and scary.'"[25] Indeed, through her actions and words, Ms. Prescott showed an

---

[24] "I just became the president towards the end of February. I talk to literally hundreds of people, so I cannot -- and I work a full-time job and I'm a mom, and I'm a single mom, and I have my own house I have to maintain. I can't remember -- once I was elected, there was press, there was people, there was lawyers, there was -- I can't remember it all, and I -- I just can't. It was overwhelming." (Prescott Testimony, Prescott Dep. 67:22-68:5)
[25] Woodruff, Chase. Colorado Newsline. July 18, 2024. https://coloradonewsline.com/2024/07/18/judge-tosses-out-voter-intimidation-lawsuit-colorado/

intolerable level of disrespect and utter contempt for this Honorable Court, Ms. Epp, the other parties, the judicial process, and the truth itself.

### b) *Plaintiff Counsel Engaged in Misconduct*

Ms. Epp previously made the case for Plaintiff counsel abuses in her counterclaim (ECF No. 134) and, in the interest of efficiency, Ms. Epp hereby incorporates as if fully set forth herein the arguments made in the counterclaim, and respectfully requests that the Court consider such in deciding this issue. Thus, Ms. Epp will only briefly supplement those arguments here:

- May 22, 2022: Plaintiffs' counsel withdrew their TRO (ECF No. 45), ostensibly to avoid an evidentiary hearing. They had identified Ms. Roberts at this point, knew that her complaint did not implicate the Defendants, and rather than reevaluating the case and withdrawing the frivolous claims, they instead withdrew the TRO and continued this litigation. (ECF No. 134 at 6 ¶ 3).

- December 22, 2022: As revealed through sworn testimony at trial, to prevail on summary judgment, Plaintiffs' counsel unethically, perhaps illegally, coached Ms. Roberts to name the Defendants, multiplying these proceedings for 208 days. (Trial Day 4, Trans. 12:16-18,13:25-14:1-8).

- May 15, 2023: Plaintiffs' counsel removed their request for compensatory damages in the Pretrial Order (ECF No. 95) without giving notice to the Defendants, or even to this Court. In response to Ms. Kasun's sanctions motion, Plaintiffs asserted they didn't bring a claim for compensatory damages despite it being a part of their case prior to May 2023. (ECF No. 129 at 6 ¶ 3).

- December 24, 2023: Plaintiffs' counsel withheld the identity of and Ms. Hendrix's email communications with Tara Menza.[26] Ms. Hendrix testified at trial that she produced "everything" to her attorneys, and yet, this witness and relevant evidence were not produced.

- January 3, 2024: Plaintiffs' counsel ignored Ms. Epp's requests to discuss outstanding evidence issues, and instead attempted to intimidate and coerce Ms. Epp into sign their Consent Decree – despite knowing that their claims were frivolous, and they had a duty to withdraw them.[27]

---

[26] The Court addressed this evidence during the January 23, 2024 Status Hearing (ECF No. 127)
[27] See emails, (ECF. No 114 at 9 ¶ 3, ECF No. 114-2).

11

- January 8, 2024: Plaintiffs admitted that they withheld the LWVCO 2022 Safety Plan despite representing to the Court and the Defendants that it had been produced, assigning it a non-existent Bates ID for the May 2022 Pretrial Order, and misrepresenting that it was produced.[28]

- July 21, 2024: Plaintiffs admitted during the Pretrial Conference that they were training their attorneys during the trial, extracting even more value at Ms. Epp's expense. (PTC Trans. 15:10-12)

   c)  *Plaintiffs and their Counsel Engaged in Misconduct in Pursuit of a Novel Legal Theory*

Ms. Epp should not have to prove the intent of Plaintiffs and Plaintiff counsel's misconduct to prevail on this motion. However, to better discern what happened in this case, it is helpful to look at a 2015 publication from the NYU Social Justice Law Review titled: "Voters Strike Back: Litigating against Modern Voter Intimidation."[29] Directly relevant to these proceedings, Plaintiffs' Expert Witness relied on "Voters Strike Back" in his expert report. (ECF No. 71-1, p. 6 n.12). Further, Plaintiff organizations appear frequently in this article, particularly Plaintiff NAACP.

"Voters Strike Back" advances a novel theory that "section 11(b) was a deliberate attempt to expand the existing laws against voter intimidation, including by eliminating any legal requirement of racial targeting" and that "today…voters are deterred from voting through subtler tactics, such as aggressive poll-watching, anonymous threats of harm, frivolous and excessive voter registration challenges, and coercion by employers." While the merit of this theory is debatable, the tactics suggested within this article are objectively unethical and, importantly, closely mirror the conduct of Plaintiffs and Plaintiffs' counsel in *this* case. Consider these quotes from "Voters Strike Back":

- "…voting rights litigators should consider an impact litigation strategy…'cases in which the attorney's goals go beyond relief for the individual client and encompass some notion of effecting reform for all other [similarly situated] individuals.'"

- "Compensatory damages will generally be rare in voter intimidation cases, but are not impossible to imagine."

---

[28] The Court also addressed this evidence during the January 23, 2024 Status Hearing (ECF No. 127).
[29] Ben Cady & Tom Glazer, Voters Strike Back: Litigating against Modern Voter Intimidation, 39 N.Y.U. REV. L. & SOC. CHANGE 173, 185 (2015) (hereinafter, "Voters Strike Back")
(ECF No. 71-1, p. 6 at footnote 12)

12

- "…attorneys' fees are often a major source of revenue for nonprofit litigators, which could make it easier for civil rights organizations like the NAACP to justify filing suit."

- "Another reason to bring a KKK Act claim is for the purpose of *political messaging*. Liability under the Act *carries the additional stigma of conspiracy and its association with the KKK's legacy of politicalized racism.*" (Emphasis added).

- "…the [KKK] Act creates the opportunity to *brand* a particular ballot security group or party committee with these deeply embarrassing associations…*the threat of such associations* could strengthen the law's deterrent effect and help drive settlement." (Emphasis added).

- "…success is defined as stopping the defendant's conduct."

- "*Organizational plaintiffs must choose their defendants carefully*." (Emphasis added).

"Voters Strike Back" is a playbook providing "Practical Advice to Litigators" on "The Parties," "Claims to Bring," "Arguing a Claim," and more.[30] Whether the theories posited in this academic work are sound legal theories is not presently at issue; at issue is Plaintiffs outright fabrication of frivolous claims in pursuit of a novel legal theory that substantially harmed Ms. Epp and others – being linked to the KKK is a life changing assault on one's character not easily cured, if such a cure is even possible. Plaintiffs' theory of *this* case appears directly lifted from *this* playbook.

Plaintiffs did indeed "*stigmatize*" and "*brand*" Ms. Epp, the other named Defendants, and anyone associated with USEIP "with these deeply embarrassing associations." Plaintiffs' frivolous claims resulted in **"the additional stigma of conspiracy and its association with the KKK's legacy of politicalized racism."** (Emphasis added). Ms. Hendrix testified at trial that Plaintiffs' overriding goal was "stopping the Defendant's conduct," with no regard to whether the Defendants' conduct was lawful and protected under the law. These ethically dubious tactics may be legally appropriate in meritorious claims, but in this case, Plaintiffs' claims were utterly without merit. As the Court found "… Plaintiffs have failed to introduce *any* evidence that can remotely be perceived as intimidating or threatening…" (Trial Day 4, Trans. 14:24-15:1)

---

[30] It also provides resources, including an "Appendix: Voter Intimidation Case Law and Selected Unpublished Cases" with all the cases "in which plaintiffs brought section 11(b), section 131(b), and KKK Act claims" both alone and in any combination.

The pattern of conduct by both Plaintiffs and Plaintiffs' counsel presents a disturbing abuse of the justice system and of the FRCP, the RPC, and the standards and precedents that govern Sworn Officers of the Court, in service of preserving the public trust for the legal profession. The fact that Plaintiffs engaged in such abusive conduct, advancing frivolous claims in pursuit of a novel legal theory – at Ms. Epp's significant expense – cannot be tolerated by this, or any, Court.

v. **Plaintiffs and Plaintiffs' Counsel Vexatiously Multiplied These Proceedings**

The sanction of attorneys' fees under § 1927 incentivizes "attorneys to regularly re-evaluate the merits of their claims and to avoid prolonging meritless claims." (*Steinert v. Winn Group, Inc.,* 440 F.3d 1214, 1221-22 (10th Cir 2006) at 1224).[31] Without any doubt, at multiple points in these proceedings Plaintiffs became factually and/or constructively aware that their allegations were entirely without merit. Plaintiffs' failure to reevaluate their claims and act upon their duty to withdraw multiplied these proceedings exponentially, resulting in extreme harm to Ms. Epp's legal, personal, and professional interests.

With Ms. Roberts, Plaintiffs' Counsel crossed an uncrossable line. Discovery was closed, all the parties and witnesses deposed, and each Plaintiff representative had admitted having no personal knowledge of a voter being intimidated. Ms. Hendrix testified that she brought this case based on inflammatory media reports, Mr. Hernandez testified that he brought this case based on allegations of Ms. Hendrix, and Ms. Prescott testified that she couldn't recall specifically why she brought the case, besides Colorado being "an open carry state." Following the close of discovery, Ms. Epp's prior counsel informed Plaintiffs' counsel of the coming motion for summary judgment.[32] It was only then that Ms. Roberts, known to Plaintiffs since April 2022, named the defendants, upon the suggestion of counsel. The Court relied upon this misrepresentation "almost exclusively," denying summary judgement and allowing the case to proceed for 208 more days. Ms. Roberts may be the most egregious example of Plaintiff counsels' failure to re-evaluate and withdraw the meritless claims, but it is one of many examples of what may constitute professional

---

[31] Additionally, "there must be a causal connection between the objectional conduct of counsel and the multiplication of proceedings…the proceedings that would not have been conducted otherwise." (*Baca v. Berry*, 806 (10th Cir. 2015)).

[32] While usually defeating summary judgement implies that a case is meritorious, it does not preclude § 1927 sanctions when "the evidence supporting that claim actually was insufficient to go forward." *Danielson-Holland v. Standley & Assoc., LLC*., 512 Fed.Appx. 850, 854 (10th Cir. 2013) (unpublished). Certainly, this is the case when that "actually insufficient evidence" was an intentional misrepresentation by law trained professionals before this Honorable Court.

misconduct that multiplied the proceedings; in fact, misconduct may be the lone cause of these unnecessarily multiplied proceedings.[33]

Had Plaintiffs acted in accordance with their duties as attorneys admitted to practice before to this Honorable Court, Ms. Epp would not have endured the extraordinary time and expense necessary for a legal defense. Consequently, Plaintiffs' Counsel should bear most of the responsibility for the excess costs, expenses, and attorney's fees reasonably incurred by Ms. Epp.[34]

### REQUEST FOR ATTORNEY'S FEES

Ms. Epp is a Pro Se Defendant and is entitled to equal protection and equitable treatment. Ms. Epp proposes fee calculations for the Court's consideration in the attached affidivt. (Exhibit 6 – Epp Declaration) This Court enjoys extremely broad discretion in calculating sanctions and fees. Ms. Epp moves the Court to award:

(1) One third of costs and attorney's fees awarded to Defendant Shawn Smith for legal services from the Reisch Law Firm, prorated for the period of representation. (April 4, 2022 to December 29, 2023) Ms. Epp calculates 1/3 of the award, prorated for the period of representation, as $85,565.88 in fees and $4,416.47 in costs. (Exhibit 5 – Estimate of Reisch Fees and Costs for Ms. Epp), and

(2) Pro Se Attorney Fees as reasonable compensation for Ms. Epp's defense, reasonably estimated at 372 hours and $112,344 and incurred costs in the amount of $1,314.01, for the period of self-representation (December 30, 2023, to present), resulting in

(3) A total award of **$203,640.36**, and

(4) Any additional sanctions the Court deems appropriate as a deterrent against similar abuses, recognizing that, with deterrence, the actual amount of fees incurred becomes less important than the size of sanction required to send an effective message both to the offender and to the bar in general.[35]

### CONCLUSION

---

[33] Plaintiffs were denied their Temporary Restraining Order (ECF No. 30) and Motion for Limited Expedited Discovery (ECF No. 44). This pattern of misconduct continued through trial.
[34] Misrepresentations and other misconduct that unnecessarily multiplies proceedings are exactly the actions that § 1927 aims to sanction. This egregious misconduct vexatiously multiplied the proceedings, warranting sanctions under § 1927.
[35] For example, in evaluating an award of attorney's fees under Rule 11, deterrence, rather than the compensation of the pro se movant, should lead the Court's decision of what type of award to issue in the first place.

15

As Ms. Epp argued at trial, if the private right of action under civil rights laws is abused, without consequence, by the most revered and well-respected civil rights organizations in the world, it can and likely will be abused by anyone. The misconduct in the case by both Plaintiffs and Plaintiffs' counsel makes the unprecedented nature of these proceedings much more egregious, warranting strong and meaningful sanctions against the offending parties. Ms. Epp's life was turned upside down Plaintiffs' deception and creative lawyering, but these organizational Plaintiffs did not "choose" *this* Defendant "carefully."

WHEREFORE, Defendant Epp asks this Honorable Court to award her Attorney's Fees, and any other relief the Court feels just and appropriate in order to prevent similar abuses in the future.

Dated: August 1, 2024                                                                                   /s/*Ashley* Epp

                                                                                                      _____

                                                                                                                Ashley Epp
                                                                                                  asheinamerica@protonmail.com

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served through ECF this 1st day of August 2024, to all counsel of record.

                                                                                                        /s/*Ashley* Epp

                                                                                                      _____

                                                                                                                Ashley Epp
                                                                                                  asheinamerica@protonmail.com

16