# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, and Mi Familia Vota, | )<br>)<br>)<br>) |
| | ) Civil Action No. 1:22-cv-00581-CNS-NRN |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| United States Election Integrity Plan, Shawn Smith, Ashley Epp, and Holly Kasun, | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

**PLAINTIFFS' RESPONSE TO DEFENDANT ASHLEY EPP'S
MOTION FOR ATTORNEY'S FEES AND COSTS (ECF NO. 192)**

## INTRODUCTION[1]

In support of their motions for an award of attorneys' fees and costs, Defendants hang their hats on the declaration and testimony of Yvette Roberts. Defendants claim Ms. Roberts' testimony was "coerced" by Plaintiffs or their counsel, and thus Plaintiffs' claims were frivolous. Defendants' contention is without merit. In fact, Ms. Roberts repeatedly confirmed in her own trial testimony that her pre-trial declaration was true and accurate, and she was not coerced by anyone. Moreover, Ms. Roberts' testimony was by no means the only evidence Plaintiffs submitted in support of their claims. In fact, there is substantial evidence in the trial record demonstrating the three Defendants, as founders and leaders of USEIP, participated in and deployed an objectively intimidating canvassing campaign in Colorado. The Court's finding of no liability, which is now on appeal, is a far cry from frivolity.

Defendants cannot meet the incredibly high bar for an award of attorneys' fees and costs under the Voting Rights Act (52 U.S.C. § 10310(e)), the KKK Act (42 U.S.C. § 1988(b)), or 28 U.S.C. § 1927. Such an award under these statutes would require the Court to find Plaintiff's claims were frivolous, unreasonable, or vexatious—in conflict with its prior orders—or that Plaintiffs' counsel acted with an extreme disregard for the orderly process of justice. There is no basis for any such conclusion here. Moreover, rewarding a prevailing defendant with attorneys' fees under circumstances short of these incredibly high bars would chill the pursuit of civil rights claims by private plaintiffs and undermine the intent of the attorney fee recovery provisions included in the statutes at issue. Defendants' motions should be denied. In addition, Defendant

---

[1] Plaintiffs incorporate by reference their Response to Defendant Shawn Smith's Motion for Attorneys' Fees and Costs and their Response to Defendant Holly Kasun's Motion for Attorneys' Fees and Costs.

1

Epp's requests for the "attorneys' fees" she allegedly incurred while proceeding as a *pro se* Defendant should be denied because: (1) the law does not support an award of attorneys' fees to *pro se* parties; and (2) Defendant Epp's calculation of attorneys' fees and costs is unsupported and unreasonable. Defendants' motions for attorneys' fees and costs should be denied.

## ARGUMENT

### I. Defendants are Not Entitled to Attorneys' Fees Under the Voting Rights Act (52 U.S.C. § 10310(e)) or the KKK Act (42 U.S.C. § 1988(b)). [2]

Under the traditional "American Rule," parties must bear their own attorneys' fees absent statutory authority to the contrary. *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994); *Etherton v. Owners Ins. Co.*, 82 F.Supp.3d 1190, 1196 (D. Colo. 2015). A party seeking an award of fees must move the court under Fed. R. Civ. P. 54(d)(2), citing the specific statute or rule entitling the party to the requested award. Fed. R. Civ. P. 54(d)(2)(ii).

Here, Defendants seek an award of attorneys' fees under the Voting Rights Act and the KKK Act. Under the Voting Rights Act, "[i]n any action or proceeding to enforce the voting guarantees under the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fees, reasonable expert fees, and other reasonable litigation expenses as part of the costs." 52 U.S.C. § 10310(e). Likewise, under the KKK Act, "[i]n any action to enforce a provision of section . . . 1985 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b).

---

[2] To comply with page limitations, Plaintiffs have excluded certain legal citations in support of their arguments advanced herein. For a more robust recitation of legal authority, Plaintiffs' incorporate Section I of their Argument as set forth in their response to Defendant Smith's motion.

2

### a. Defendants' Request for an Award of Attorneys' Fees is Fundamentally at Odds with the Purpose of the Attorneys' Fees Recovery Provisions of the Voting Rights Act and KKK Act.

District courts have discretion to award attorneys' fees to a prevailing party under the Voting Rights and KKK Acts in order to *promote* the enforcement of federally protected voting rights by private litigants. S. Rep. No. 94-285, at 40 (1975) ("Congress depends heavily upon private citizens to enforce the fundamental rights involved. Fee awards are a necessary means of enabling private citizens to vindicate these Federal rights.") Courts have consistently recognized the purpose of attorney fee awards under these statutes is to *incentivize* the private enforcement of federal voting rights. *See, e.g., King v. Ill State Bd. of Election*, 410 F.3d 404, 412-13 (7th Cir. 2005) (explaining that under Sections 10310(e) and 1988, "Congress hoped to encourage private citizens to initiate court action to correct violations of the Nation's civil rights statutes . . . ." (internal quotations omitted)). Awarding fees to Defendants in this case would be directly at odds with the fundamental purpose of the Voting Rights and KKK Acts, as confirmed by legislative history and a consistent line of cases interpreting these laws, and would have the opposite and improper effect of chilling civil rights litigation. *Coates v. Bechtel*, 811 F.2d 1045, 1049 (7th Cir. 1987) ("If prevailing defendants were routinely awarded attorneys' fees under §1988, civil rights plaintiffs would be extremely reluctant to initiate litigation for fear of being charged with a fee award vastly exceeding the expected recovery, and in some cases their ability to pay, thereby vitiating the underlying purpose of § 1988.").

Because Defendants' requests for an award of attorneys' fees is fundamentally at odds with the intent of the statutes at issue, it is no surprise Defendants have not a cited a single voting rights case in which a defendant received such an award. Plaintiffs are aware of no such case. In fact,

3

courts routinely deny these types of requests from prevailing defendants. *See, e.g.*, *Lopez v. Merced County, CA*, No. 1:06-cv-01526 OWW DLB, 2008 WL 4467383 (E.D. Cal. Sep. 29, 2008) (denying a request for defendants' attorneys' fees under Section 10310(e)).

### b. Plaintiffs' Position Was Neither Frivolous, Unreasonable, Nor Vexatious.

Because attorney fee awards under the statutes at issue are intended to *encourage* the prosecution of voting and other civil rights claims, the "standard for awarding attorney's fees to prevailing defendants . . . is difficult to meet and rightly so." *Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228 (5th Cir. 2010). A prevailing defendant is entitled to such an award only where the underlying claims were frivolous, unreasonable, or groundless. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978); *Lampkin v. Bryan*, 479 F.Supp. 172, 174 (N.D. Miss. 1979).

In determining whether a prevailing defendant has met this exacting standard, "the court must assess the claim at the time the complaint was filed and avoid the post-hoc reasoning that because a plaintiff did not ultimately prevail, the claim must have been frivolous or unfounded." *Tejada-Batista v. Fuentes-Agostini*, 267 F.Supp.2d 156, 159 (D. Puerto Rico 2003) (denying defendants' motion for attorneys' fees after finding plaintiff's claims were not meritless and survived motions to dismiss and for summary judgment). If the ultimate dismissal of a plaintiff's claims were sufficient justification for an award of fees to a prevailing defendant under the Voting Rights and KKK Acts, it would:

> discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success . . . no matter how meritorious one's claims may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or facts appear questionably or unfavorable at the outset, a party may have an entirely reasonably ground for bringing a suit.

*Christiansburg Garment Co.*, 434 U.S. at 422.

4

Plaintiffs' position on the merits was not frivolous, unreasonable, or vexatious. In fact, Defendants brought three dispositive motions in this case—a motion to dismiss (ECF No. 27), a motion for judgment on the pleadings (ECF No. 54), and a motion for summary judgment (ECF No. 70)—and all were denied. (*See* ECF Nos. 39, 84). *See Jones v. Tex. Tech. Univ.*, 656 F.2d 1137. 1145 (5th Cir. 1981) ("Critically, cases finding frivolity generally involve motions for summary judgment or motions for involuntary dismissal where the plaintiffs did not support their claims with any evidence. Where, however, plaintiffs introduce evidence to support their claims, 'findings of frivolity typically do not stand.'"). Defendants also repeatedly pursued counterclaims, arguing—as they do here—that Plaintiffs' claims were frivolous and lacked factual support. (ECF Nos. 48, 134.) These requests were also denied. (ECF No. 81.)

Contrary to Defendants' post-trial arguments, Plaintiffs relied on significantly more than news reports and Defendant Smith's purchase of voter rolls in filing their Complaint and pursuing their claims through trial. (*See* ECF No. 191.) Among other things, the evidence demonstrates:

- Defendants were founders and/or leaders of USEIP;

- USEIP's Playbook, which contains incendiary and violent rhetoric (Tr. Ex. 1);

- USEIP's Canvassing Report, which demonstrates USEIP agents knocked on over 9,000 doors across Colorado (Tr. Ex. 5);

- Defendants' participation in the January 6 insurrection and use of rhetoric identical to that which incited violence on January 6;[3]

- Defendant Smith's admitted public statement that *anyone* proven to have been involved in election fraud deserves to die by hanging;

---

[3] The Court denied Defendants pretrial motion to exclude evidence regarding their involvement in the January 6th insurrection—a pre-trial indication that the Court considered such evidence to be relevant and consequential.

5

- Defendant Smith's testimony that he probably carried a firearm with him when he canvassed searching for evidence of fraud, and that other volunteers also may have been armed (ECF No. 72 (citing Smith Dep. 218:19; 219:3-7));

- USEIP Basecamp posts encouraging canvassers to carry weapons (Tr. Ex. 25 at 63);

- Evidence that USEIP canvassers took photos of voters' homes;

- Defendants' admissions that USEIP canvassing was intended to develop evidence that could be provided to law enforcement (Tr. Trans. 120:5-14);

- Ms. Hendrix's testimony that members of LWVCO were visited by two USEIP representatives who asked questions about her voting record, wore lanyards she felt were intended to look governmental, took pictures of her home, and felt as though they could be intimidating (ECF No. 72 at 5; Tr. Trans. 584:2-11);

- Ms. Hendrix's testimony that she herself is a Colorado voter and is intimidated by USEIP's canvassing activity (Tr. Trans. 578:9-19);

- Ms. Roberts' testimony that she was visited at her home in Mesa County by USEIP representatives, that she felt their conduct was intimidating,[4] and that she had never before felt intimidated by other canvassers or solicitors. (Tr. Trans. 476:18 -477:1).

Defendants argue that Ms. Roberts' declaration or testimony was improper or coerced by Plaintiffs or their counsel. This baseless argument is categorically denied by Plaintiffs, their counsel, and Ms. Roberts' own trial testimony.  (Tr. Trans. 514: 4-9, affirming Ms. Roberts'

---

[4] Ms. Roberts explained that she was on alert and concerned not only because the canvassers were, as she described them, a "strong man . . . strange people," but also because "he said he was investigating things," (Tr. Trans. 472:1-8), wore badges, gave off an official appearance, and informed her that their documents were provided by the state. (Tr. Trans. 467:1-6, 468:1-9.) The canvassers did not provide Ms. Roberts with documents confirming who they were or how to contact them. (Tr. Trans. 473:12-17.) They asked specific questions that would reveal Ms. Roberts lived alone and demanded information about her citizenship and the citizenship of others in her household. (Tr. Trans. 471:19-12.) Ms. Roberts felt scared, realized after the canvassers left that she "just told that guy a whole lot of stuff I didn't want to," and was afraid she might face repercussions. (Tr. Trans. 469:4-21.) Ms. Roberts also testified that she had been visited by canvassers and solicitors before, but she had never felt intimidated by them. (Tr. Trans. 476:18.)

6

declaration was accurate to the best of her knowledge, and that no one "from the plaintiff group" told her what to say).

Defendants also argued that USEIP never canvassed in Mesa County and could not visited Ms. Roberts' home. This argument is contradicted by the substantial evidence in the record, including the following:

- Defendant Smith attempted to differentiate USEIP canvassers from others in Mesa County, suggesting USEIP relied exclusively on state data, whereas other canvassing groups in Mesa County relied on county data. (Tr. Trans. 107:5-25.)

- Ms. Roberts consistently testified the canvassers who visited her in Mesa County told her they were relying on state data (not county data), establishing a direct connection to USEIP. (Tr. Trans. 467:23-25 ("[H]e informed me that he has this information and that the state had sent it"); Tr. Tan. 470:10-15 (Q: How do you know that the document that he had were from the state? A: That's what he told me.")).

- The complaint Ms. Roberts' filed with the Colorado Secretary of State immediately after she ended the canvassing encounter confirms her canvassers were relying on data that "came from the state." (Tr. Ex. 50.) Deputy Secretary of State Christopher Beall testified that the Colorado Secretary of State's Office understood Ms. Roberts' complaint to be "in relation to USEIP canvassing." (Tr. Trans. 435:15-18.)

- Defendant Epp testified the groups who canvassed in Mesa County did so in April 2021, and that USEIP did not begin canvassing until May 2021. (Tr. Trans. 329:22.) Ms. Roberts' canvassing encounter occurred in June 2021—at which point, according to Defendant Epp, the other group in Mesa County was done, but USEIP was just getting started. (Tr. Trans. 466:5-15).

- Defendants admit USEIP appointed a Mesa County "Captain" and gave that person access to USEIP's Basecamp and training materials. (Tr. Trans. 190:6-15, 191:25-193:12; 194:6-13; 315:17-21.)

- Ms. Roberts' testimony about the methods used and questions asked by the canvassers who visited her is entirely consistent with USEIP's training and methods. (*Compare* Tr. Trans. 469:23-470:6 *with* Tr. Trans. 160: 13-17 (discussing the fact that one canvasser would remain on the sidewalk while the other approached the house).)

- Records produced by Jeff Young—an architect of USEIP's canvassing efforts—also include numerous references to canvassing efforts in Mesa County. (*See, e.g.*, Tr. Ex. 25 at 47 ("Getting ready to begin VV in Mesa County.").) Ms. Roberts' name and address also

7

appears in documents produced by Mr. Young in response to a subpoena for USEIP records. Had Plaintiffs cross examined Mr. Young at trial, they would have introduced this evidence and, if necessary, impeached Mr. Young. (*See* Exhibit A.)

In short, Defendants may have prevailed at trial, but they have not come close to demonstrating Plaintiffs' claims were frivolous, unreasonable, or vexatious. Defendants' motions must be denied.

**II.    An Award of Attorneys' Fees Under 28 U.S.C. § 1927 is Unwarranted.**

An award of attorney's fees under Section 1927 should be made "'only in instances evidencing a serious and standard disregard for the orderly process of justice.'" *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015) (citing *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997)). The statute permits such a sanction only when an attorney's conduct multiplies the proceedings "unreasonably and vexatiously." 28 U.S.C. § 1927. "An award under § 1927 is appropriate when 'an attorney acts recklessly or with indifference to the law; is cavalier or bent on misleading the court; intentionally acts without a plausible basis; or when the entire course of the proceedings is unwarranted." *Live Face on Web, LLC v. Integrity Sols. Grp., Inc.*, No. 16-cv-01627, 2020 WL 1304553, *2 (D. Colo. Mar. 19, 2020). "Reckless conduct differs significantly from mere negligence." *McFadden v. Town of Meeker Colorado*, 2018 WL 508080, *2 (D. Colo. Jan. 23, 2018) (citation omitted). Courts tend to award attorneys' fees under Section 1927 only after finding an attorney acted intentionally and without any plausible basis in fact or law, or took other extreme measures to prolong or expand the litigation. *Dreiling v. Peugeot Motors of Am., Inc.,* 768 F.2d 1159 (10th Cir. 1985); *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214 (10th Cir. 2006); *Medtronic Navigations, Inc. v. BrainLab Medizinische Computersystems Gmbh*, No. 98-cv-01072, 2008 WL 410413 (D. Colo. Feb. 12, 2008).

Here, Defendants contend Plaintiffs' attorneys unreasonably proceeded to trial despite knowing Plaintiffs' claims "lacked merit." (*See* ECF No. 191 at 13). Nothing could be further from the truth. In fact, the evidence Plaintiffs' proffered at trial (described above in section II(b)) is precisely the evidence that caused the Court to deny Defendants' pretrial motions seeking judgment as a matter of law. The notion that Plaintiffs knew their claims "lacked evidentiary support and would be meritless at trial" is demonstrably false and is contradicted by this Court's pre-trial rulings. (ECF No. 191 at 10.) The conduct of Plaintiffs' counsel does not come close to the "serious and standard disregard for the orderly process of justice" that would warrant an award of attorneys' fees under Section 1927. *See Baca*, 806 F.3d at 1268.

In support of their claim for an award of attorneys' fees under Section 1927, Defendants argue "Ms. Roberts testified at trial that her declaration for summary judgment was curated by Plaintiffs' attorneys[.]" (ECF No. 191 at 10.) This is a false and misleading mischaracterization, which Ms. Roberts flatly denied on cross examination at trial:

> Q: Is the declaration that you submitted accurate to the best of your knowledge?
> A: Yes.
> . . .
> Q: Did anyone from the plaintiff group tell you what to say either in that declaration or today?
> A: No.

(Tr. Trans. at 508:13-22; 509:4-8; 514:4-9). In short, Ms. Roberts' own testimony confirms she was not improperly influenced, and that she based her testimony on her own personal knowledge, experience, and investigation into the events at issue.

The evidence supports the conclusion that the canvassers who visited Ms. Roberts were affiliated with USEIP (*see infra* II(b)), despite Defendants self-serving denials. Accordingly, there

9

was nothing "curated" about Ms. Roberts' testimony. Instead, by all accounts, her testimony was truthful, accurate, and consistent with the conclusion that USEIP canvassers visited her home (even if she did not know the specific name of the organization until further investigation took place).

At trial, the Court heard direct examination testimony from Ms. Roberts that was consistent with the testimony in her declaration and cross-examination by Defendants. The Court then evaluated Ms. Roberts' testimony, including as to its credibility, and it concluded there was "no ill will in her testimony, and she seemed to be doing her best to recall the events as she knew them," but that her testimony was "wholly unhelpful to the plaintiffs" because she "did not suffer any threats of violence, threatening phone calls, vandalism during or after the event, and that the single canvassing event would not affect her decision to vote in future elections." (Tr. Trans. 831:20-23; 833:9-13.)[5] After weighing the evidence presented up until that point in the trial, the Court then dismissed Plaintiffs' claims. This is the very purpose of a trial—parties have the opportunity to present witnesses, and the other side has the opportunity to cross-examine witnesses—exactly what occurred here. While the Court concluded that there is "insufficient evidence to proceed any further in this matter," this does not mean that Plaintiffs or their counsel acted improperly by presenting Ms. Roberts' testimony or proceeding to trial in the first place. (Tr. Trans. 833:14-15.)

In order to recover an award of attorneys' fees under section 1927, "'there must be a causal connection between the objectional conduct of counsel and the multiplication of proceedings,'

---

[5] Plaintiffs acknowledge that the Court suggested in its order that it found at least some portions of Ms. Roberts' testimony to not be credible, but maintain that—as set forth above—Ms. Roberts was clear that: (a) Plaintiffs' counsel did not tell her what to say in either her declaration or at trial; and (b) her declaration was true and accurate.

10

such that the conduct 'result[ed] in the proceedings that would not have been conducted otherwise.'" *Baca*, 806 F.3d at 1268 (citing omitted). Here, the alleged "objectional conduct" did not unreasonably or vexatiously multiply proceedings. To the contrary, Plaintiffs and their counsel followed the standard court process of defending against a summary judgment motion by presenting testimony from a witness and proceeding to trial when the motion was denied.

As Defendant Epp acknowledges in her motion, Plaintiffs on multiple occasions attempted to resolve this case prior to trial. Plaintiffs never received a substantive or reasonable response to their settlement offers. After summary judgment, Plaintiffs simply proceeded in the normal course, consistent with the Court's scheduling order and pretrial procedures. In contrast, Defendants multiplied and extended the proceedings. Although Plaintiffs were prepared to proceed to trial shortly after summary judgment, the trial was continued at Defendant Epp and Kasun's request.[6] Further, after the Court issued its summary judgment decision and through the first day of trial, Defendants collectively filed approximately 12 motions, which—among other things—sought to retry previously-dismissed counterclaims and reopen discovery, while Plaintiffs filed four—two seeking to appear remotely at hearings (ECF Nos. 88, 144), one motion *in limine* (ECF 141), and a Motion to Strike Certain Witnesses (ECF 168), which was granted by the Court. Finally, during trial, Plaintiffs abided by the Court's request to make offers of proof and, as a result, trial was expedited, not prolonged. Put simply, if anyone multiplied the proceedings after summary judgment it was Defendants, not Plaintiffs.

---

[6] Defendant Epp takes issue with the trial attendance of Ms. Prescott, the NAACP's representative. Due to the continuance requested by Defendant Epp, the rescheduled trial coincided with the NAACP's National Convention that mandated her attendance earlier in the week.

11

### III.     Defendant Epp Is Not Entitled to Attorneys' Fees as a Pro Se Defendant.

Defendant Epp argues that she should be awarded *pro se* "attorneys' fees" in the amount of $112,344.00. What Defendant Epp really requests is compensation for her efforts, as stated on Page 8 of her motion. Defendant Epp cites no supporting case law for this argument because none exists. Pro se litigants are not entitled to attorney fees. Defendant Epp's requests for attorney fees during the time that she proceeded as a *pro se* litigant should be denied.

In support of her request for *pro se* attorney fees, Defendant Epp advances a novel and groundless theory that because she has "substantially prevailed"[7] in a case that consisted of "extraordinary circumstances," the Court should award her attorney fees she did not incur. In her motion, Defendant Epp describes her "unimaginable disadvantage," her preparation for trial which included significant motion practice and drafting of an opening statement, cross-examinations questions, etc., and her pursuit of her defense "in a manner similar to what would be expected of a lawyer" as support for her argument that she should receive compensation in the form of an attorney fee award for attorney fees she did not incur. Defendant Epp's unilateral decision to proceed without counsel at trial does not permit the Court to compensate her for attorneys' fees she did not incur. (*See* Declaration of Defendant Epp, ¶ 15 ("[I]t was my choice to defend myself, and I knowingly assumed that responsibility").)

---

[7] In support of this argument, Defendant Epp mistakenly cites to 42 U.S.C § 11113. This statute is a product of the Health Care Quality Improvement Act of 1986 and entitles health care entities who have initiated a professional review of physicians pursuant to 42 U.S.C. § 11112 to their reasonable attorneys' fees if the physician later initiates litigation against them following the peer review process and the health care entity "substantially prevails" in such litigation. 42 U.S.C. § 11113 has no relevance here, as this case has nothing to do with the professional review of physicians. This argument should be rejected.

Indeed, Defendant Epp's novel interpretation of "attorneys' fees" has been squarely rejected by the United States Supreme Court. In *Kay v. Ehrler*, the Court confirmed the "proposition that a *pro se* litigant who is *not* a lawyer is *not* entitled to attorney's fees" requested under 42 U.S.C. § 1985.[8] 499 U.S. 432 (1991). In *Kay*, the Court reasoned that the term attorneys' fees "assumes an agency relationship," and that requiring such agency relationship to exist prior to making such an award encourages "potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights." *Id*. at 436-37. The precedent established in *Kay* has been applied by the 10th Circuit and other courts faced with similar issues. *See Debry v. Noble*, 1993 WL 300936, at *5 (10th Cir. Aug. 3, 1993) ("In light of *Kay*, it is clear that Thurgood and Bartle [as *pro se* litigants] are not entitled to receive attorney's fees under § 1988"); *see also Roberston v. Biby*, 2017 WL 1153237, at * 3 (D. Kan. Mar. 28, 2017) ("It is settled that a *pro se* litigant is not permitted to recover attorney fees under the Civil Rights Fee Awards Act, 42 U.S.C. § 1988").

While the robust volume of case law that explicitly forbids an award of attorney's fees for *pro se* litigants under 42 U.S.C. § 1988 does not appear to have been litigated for a request made under the Voting Rights Act, 52 U.S.C. § 10310, the same analysis applies here. *See Bly v. McLeod*, 605 F.2d 134, 138-39 (4th Cir. 1979) ("The subject matter of [attorney fee awards] has just been considered by us in the case of *Bonnes v. Long*, 599 F.2d 1316 (4th Cir. 1979), a claim under the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. 1988. 1973L(e)[9] and 1988 are phrased in identical terms, and we apply the same rule of decision under both of them."). Both statutes

---

[8] In *Kay*, the issue before the Supreme Court was whether to grant an award of attorney's fees for a *pro se* litigant *who was an attorney himself*. Even in that instance, the Supreme Court denied an award of attorney's fees.

[9] Former 42 U.S.C. § 1973*l* was renumbered in 2014, as 52 U.S.C. § 10310.

contain essentially identical language with regard to an award of attorney's fees to the "prevailing party" in an action brought under either statute. No controlling authority exists to distinguish either statute from the other with regards to a request for attorney's fees for a *pro se* litigant. Accordingly, no distinction should be applied in this instance, especially when the analysis in Defendant Epp's motion is so explicitly forbidden under 42 U.S.C. 1988.

Plaintiffs do not seek to diminish Defendant's Epp's efforts for proceeding to trial as a *pro se* litigant. But there is no law or precedent that would justify an award of attorneys' fees (or any other compensation) to a *pro se* defendant who did not incur attorneys' fees in the first place. Accordingly, for this additional reason, the Court must deny Defendant Epp's request insofar as it applies to the time period in which she proceeded in this action as a *pro se* litigant.

## IV. Defendant Epp's Calculation for "Attorneys' Fees and Expenses as a Pro Se Litigant" is Incoherent and Unreasonable.

Defendant Epp is not entitled to an award of attorneys' fees while acting as a *pro se* litigant, nor is she entitled to attorneys' fees under Sections 10310(e), 1988(b), or 1927. However, even if the Court were to entertain such an award, Defendant Epp's demand does not meet the mandatory standards for an award of attorneys' fees in the Tenth Circuit. This Circuit requires a request for attorneys' fees to be reasonable and supported by "meticulous, contemporaneous time records that reveal . . . all hours for which compensation is requested and how those hours were allotted to specific tasks."[10]  *Stroup v. United Airlines, Inc.*, 2018 WL 10613861 at * 2 (D. Colo. Dec. 5,

---

[10] In calculating an award of attorneys' fees, the Court typically will start by multiplying the number of hours "reasonably expended" by a "reasonable hourly rate." *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997). Even if Defendant Epp identified a reasonably hourly rate—which she did not—the Court has no way to determine whether her time was reasonably spent. It cannot be said, for example, that Ms. Epp "reasonably expended" time on duplicated work, frivolous motions, or dismissed counterclaims. *See Erickson v. City of Topeka, Kansas*, 239 F.

14

2018); *quoting Ramos v. Lamm*, 713 F.2d 546, 553-54 (10th Cir. 1983) (overruled on other grounds); *see also Santacruz v. Standley and Assoc., Inc.*, 2011 WL 3366428, at * 1 (D. Colo. Aug. 4, 2011) (reasoning that a court must look to whether "billing entries are sufficiently detailed" to determine if requests are reasonable). Ms. Epp's motion for $112,344 for 372 hours is neither.

Defendant Epp did not keep a *contemporaneous* record of her time, instead offering only an after the fact estimate as to the time she claims she spent on each task category. *See* Motion, p. 15 ("Pro Se Attorney Fees as reasonable compensation for Ms. Epp's defense *reasonably estimates* at 372 hours) (emphasis added); *see also* Declaration of Defendant Epp, ¶ 12 ("For calculating hours, I have made a good faith effort to estimate the hours spent on each deliverable"); *see also* at ¶ 16 ("I conservatively spent a total of 372 hours on my own defense").  Such estimates, as well as Defendant Epp's generalized "block-billing," hinder the Court's, as well as Plaintiffs', ability to understand and articulate what might have been "reasonable" and therefore compensable if Defendant Epp was entitled to attorneys' fees—which she is not.

## CONCLUSION

Plaintiffs respectfully request that this Court deny Defendant Ashley Epp's Motion.

---

Supp. 2d 1202 (explaining that prevailing plaintiff should omit "excessive, redundant, or otherwise unnecessary" hours from fee request, and the court has a "corresponding obligation to exclude hours not 'reasonably expended'" and may reduce the award if the sought fee includes hours that were "'unnecessary, irrelevant, and duplicative.'" (quoting *Carter v. Sedgwick County, Kan.*, 36 F.3d 952, 956 (10th Cir. 1994)).

15

Dated: August 27, 2024

LATHROP GPM LLP

By */s/Amy Erickson*
Casey Breese (#51448)
Casey.breese@lathropgpm.com
Jean Paul Bradshaw
Jeanpaul.bradshaw@lathropgpm.com
Kristin Stock
Kristin.Stock@lathropgpm.com
Brian A. Dillon
Brian.dillon@lathropgpm.com
Amy E. Erickson (#54710)
Amy.erickson@lathropgpm.com
1515 Wynkoop Street, Suite 600
Denver, CO 80202
Telephone: (720) 931-3200

Courtney Hostetler
chostetler@freespeechforpeople.org
John Bonifaz
jbonifaz@freespeechforpeople.org
Ben Clements
bclements@freespeechforpeople.org
Amira Marcella Mattar
amira@freespeechforpeople.org
FREE SPEECH FOR PEOPLE
48 N. Pleasant St.
Amherst, MA 01002
Telephone: (617) 249-3015

*Attorneys for Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, and Mi Familia Vota*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of August 2024, I caused a copy of the foregoing Plaintiffs' Response to Defendant Ashley Epp's Motion for Attorney's Fees and Costs to be filed with the Clerk of Court for the District of Colorado using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

By */s/Amy Erickson*
Attorneys for Plaintiffs

64312685v1