IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00581-CNS-NRN

Colorado Montana Wyoming
State Area Conference of the NAACP,
League of Women Voters of Colorado, and
Mi Familia Vota

    Plaintiff(s)

v.

United States Election Integrity Plan,
Shawn Smith, Ashley Epp,
and Holly Kasun

    Defendant(s)

───────────────────────────────────────────────

**ASHLEY EPP'S REPLY TO PLAINTIFF'S RESPONSE (ECF NO. 205) TO EPP'S MOTION FOR PRO SE ATTORNEY'S FEES & COSTS (ECF NO. 192)**

───────────────────────────────────────────────

COMES NOW, Pro Se Defendant Ashley Epp hereby submits the following reply to Plaintiff's response to the Defendant's *Motion For Attorney's Fees* pursuant to Fed. R. Civ. P. 54 and 28 U.S.C. § 1927. In response to Defendant Epp's Motion for Attorney's Fees and Costs, Plaintiffs attempt to rewrite the history of this case and ignore the Court's findings. Ms. Epp stands on her motion (ECF No. 192) in reply to Plaintiffs' response, but she will briefly address Plaintiffs' arguments and ongoing misrepresentations, as they are a continuation of Plaintiffs' long history of misrepresentations before this Honorable Court.

    A.  **Plaintiff's Claims in These Proceedings Were Frivolous**

On page two of their response, Plaintiffs assert that, "The Court's finding of no liability, which is now on appeal, is a far cry from frivolity." (ECF No. 205 at 2 ¶ 1) This misrepresentation ignores the Court's findings: "In sum, Plaintiffs have failed to introduce any evidence that can remotely be perceived as intimidating or threatening on behalf of the three Defendants. The playbook, which has been discussed

1

extensively, is also not objectively intimidating." (Trial Day 4, Trans. 14:24-15:5)

Plaintiffs further claim that Ms. Epp is relying solely, or "hanging her hat," on Ms. Roberts' admissions on the stand for the argument that their claims are frivolous. As the Court knows, Ms. Roberts made her complaint in June 2021, was known to Plaintiffs in April 2022, and never mentioned the Defendants until December 2022 in a sworn declaration offered by Plaintiffs to beat a dispositive motion. And, as the Court found: "She had no basis or reason to conclude that these two were from USEIP and, in fact, did not know from which group they hailed. It was upon suggestion apparently from Plaintiffs' counsel that USEIP was the group canvassing in her county that she got -- at which point she adopted that position and included it in her affidavit." (Trial Day 4, Trans. 13:25-14:6). Plaintiffs ignore this finding from the Court in their response. Moreover, Ms. Epp is NOT solely relying on Ms. Roberts to conclude that Plaintiffs' claims were frivolous. In her motion, Ms. Epp laid out the record and timeline of the evidence, what Plaintiffs knew, when they knew it, and what they did to continue pursuing frivolous claims at the expense of Ms. Epp. (ECF No. 192 at pgs. 9-14).

Ms. Roberts' admissions reflect the apex of Plaintiffs' misrepresentations to this Court, and the moment they crossed an uncrossable line for an Officers of this Court. Indeed, "The Court denied Defendants' motion for summary judgment based almost exclusively on the affidavit provided by Ms. Roberts by Plaintiffs in this action," allowing the case to proceed for 208 more days. But the allegations in Plaintiffs' Complaint (ECF No. 1) never had merit, as Ms. Hendrix's testimony revealed on the stand. As the Court found, Ms. Hendrix "testified that she has no personal knowledge of any voter who felt intimidated by the defendants or USEIP's canvassing efforts." (Trial Day 4, Trans. 11:12-15). Plaintiffs claim that prevailing on prior dispositive motions proves the merit of their case (ECF No. 205 at p6), but this position ignores the reality of the record, and, that they prevailed only as a result of misrepresentations.

It's even more egregious that Plaintiffs now attempt to admit new evidence, in a response to a motion for attorney's fees of all things. (ECF No. 205, Exhibit A). Plaintiffs had the opportunity to proffer such evidence, twice, at trial and did not – but in an outrageous abuse of process, they now expect this Court to consider new evidence. Defendants have no ability to identify or authenticate Plaintiffs' exhibit, and it's

2

hardly timely for them to introduce "Exhibit A" at this stage in the proceedings. The Court should not consider this exhibit as anything other than further evidence of Plaintiffs' pervasive misconduct in this case and strike it from the record.

There was never evidence that supported Plaintiffs' inflammatory and defamatory claims, because Plaintiffs' allegations about the Defendants' conduct are false. They are and were always without merit, and Plaintiffs continued to pursue them to vexatiously multiply these proceedings, and "…no multiplication of proceedings would be more vexatious than one which gave a frivolous claim the appearance of trial-worthy merit." *Obeslo v. Empower Capital Management*, LLC., 85 F.4th 991, 1018 (10th Cir. 2023) (Tymkovich dissent). Plaintiffs' case is frivolous.

### B. Plaintiffs' Argument That Prevailing Defendants in Civil Rights Litigation Are Not Entitled to Fee Awards is Presumptively Invalid

Plaintiffs argue that "rewarding a prevailing Defendant with attorneys' fees…would chill the pursuit of civil rights claims by private plaintiffs and undermine the intent of the attorney fee recovery provisions included in the statutes at issue." (ECF No. 205 at 1 ¶ 2). What they do not say is how the abuse of civil rights litigation can destroy the lives of the innocent, because when one's name becomes attached to the insidiousness of the KKK, they can never fully recover. It is the most vile and destructive form of a character assassination imaginable. To grant Plaintiffs' position is to restrict civil rights *defendants'* access to due process and, worse, to incentivize suppression, intimidation, coercion, and threats in the name of prosecuting the very same. In fact, the Court in *Yalowizer v. Town of Ranchester* awarded attorney fees to the Town of Ranchester, Wyoming when it was revealed that the claim was premised only on speculation. (*Yalowizer v. Town of Ranchester*, Wyoming, 18 Fed. Appx. 745, 753-54 (10th Cir. 2001) (granting an award of attorney's fees to prevailing defendant in a 42 U.S.C. § 1983 case when it was revealed that the claim was premised only on speculation without any admissible evidence to support the civil rights claim.)). The suggestion that government defendants are entitled to awards for frivolous civil rights litigation, but private defendants – individuals without access to government resources – are not, is a puzzling assertion from civil rights organizations, defies basic common sense, and rewards that which should be condemned.

The Court will recall that this asymmetry has already arisen in these proceedings. Plaintiffs' counsel threatened Ms. Epp with substantial penalties in an attempt to coerce her into signing Plaintiffs' consent decree, "…if we prevail at trial, you, Holly, and Shawn will each be liable for all the attorneys' fees and costs incurred by our clients in connection with this action. That exposure is increasing daily as we prepare for trial and will be substantial six-figure number if we end up trying the case…From our perspective, there is little downside to you and your co-defendants entering into the Consent Decree as written, and substantial exposure (which is growing by the day) **if you do not**." (ECF No 114-3) (*emphasis* added). The Consent Decree was not a serious effort to resolve this matter. Plaintiffs effectively asked Ms. Epp to agree to their requests for relief, with the exception of a monetary exchange, in an effort to avoid trial. No serious attempt to resolve the matter was ever put forward.

The rights of the accused are of amplified importance in the vindication of civil rights, a value system and national ethos that must both ways. It is contrary to the ends of justice, and bad public policy, that a plaintiff can fabricate claims about their opposition, then bully and coerce them into outcomes they would otherwise not choose – with impunity – simply because they do so in the name of litigating civil rights. Therefore, Plaintiffs' argument that prevailing defendants are not entitled to fee awards is presumptively invalid.

### C. Ms. Epp is Entitled to Attorney's Fees as a Pro Se Defendant

Plaintiffs are correct that pro se litigants who have attempted to avail themselves of attorney fee shifting have met with limited success. This case, the record, and the Court's Final Judgement, however, are unprecedented; Ms. Epp cannot find any case where a Pro Se litigant, let alone a Pro Se Defendant, has prevailed on a Motion for Judgement on Partial Findings (Fed. R. Civ. P. 52(c)). The nature of Plaintiffs' frivolous claims, and their egregious misconduct in pursuit of those claims, warrant the Court's consideration. Further, conduct as egregious in this case should result in punitive consequences.

To dismiss Ms. Epp's argument for fees, Plaintiffs quote Ms. Epp's "unilateral" decision to defend herself and her argument as to why she did NOT include time estimates for learning the law and rules in her calculations. Ms. Epp's decision to defend herself was not random or without cause; it was due largely to

4

unresolved evidence issues that resulted in irreconcilable differences with her prior counsel. There were, in fact, unresolved evidence issues, which the Court resolved throughout these proceedings. These include Plaintiffs' failure to produce their Safety Plan, despite representing to the Defendants and the Court that they had; Plaintiffs withholding of Tara Menza and her emails with Beth Hendrix; and issues surrounding the redactions and disparities in the record regarding Ms. Roberts. As Ms. Epp worked in Professional Services for two decades, she understands and highly respects the ethics of client billing. As such, Ms. Epp only included an estimate of hours that would have been considered client billable in her professional services experience, or hours spent explicitly on the legal work of the case. Defendant Epp excluded hours that would have been considered professional development in any other setting, such as learning the law and the rules. In Ms. Epp's professional services experience, such hours would never – ethically – be client billable. As such, Ms. Epp did not include those hours in her estimate. Plaintiffs argue that Ms. Epp's transparency about her calculus and diligence – in determining which hours to ethically include and exclude in her fee estimate – is proof that she is NOT entitled to an award of appropriate fees and costs. The Court should reject Plaintiffs' argument.

Plaintiffs further contend that, "what Defendant Epp really requests is compensation for her efforts." (205 at 13 ¶ 1). Setting aside Plaintiffs' "agency relationship" argument and reliance on *Kay*, which is discussed below, attorney's fees at their core comprise billable hours and costs. When Ms. Epp terminated counsel and proceeded pro se, she assumed the responsibility – and level of effort – associated with her defense. There is value attached to Ms. Epp's time, and there is opportunity cost attached to the effort expended in defending against Plaintiffs' frivolous litigation. Importantly, Ms. Epp has been threatened with sanctions by Plaintiffs and is able to be sanctioned under the rules. It is contrary to the ends of justice that Ms. Epp can be penalized with sanctions if she violates the rules at the expense of Plaintiffs, but that she cannot be awarded the very same when Plaintiffs violate the rules at her expense.

For the bulk of their argument against Ms. Epp's entitlement to attorney's fees, Plaintiffs cite *Kay v. Ehrler,* as fatal to Ms. Epp's position, claiming, "Indeed, Defendant Epp's novel interpretation of 'attorneys' fees' has been squarely rejected by the United States Supreme Court" (Kay v. Ehrler, 499 U.S. 432 (1991))

5

(ECF No. 205 at 14 ¶ 1). The case law for Pro Se litigants prevailing in such a way to justify attorney's fees is extraordinarily limited, and in *Kay*, the Court did not examine the circumstances at issue here. "The question is whether an **attorney who represents himself** in a successful civil rights action may be awarded "a reasonable attorney's fee as part of the costs" under 42 U. S. C. § 1988." Further in the decision, they affirm the narrow matter they were deciding. "We granted certiorari, 498 U. S. 807 (1990), to resolve the conflict among the Circuits on the question **whether a *pro se* litigant who is also a lawyer** may be awarded attorney's fees under § 1988." Even deeper in the opinion, it becomes clear that the Court does not come close to considering the rights of pro se Defendants, stating "Although this section was no doubt intended to encourage litigation protecting civil rights, it is also true that its more specific purpose was to enable potential **plaintiffs** to obtain the assistance of competent counsel in vindicating their rights." (*Kay v. Ehrler*, 499 U.S. 432 (1991)) (emphasis added). No mention is made to a defendant's rights being vindicated after malicious misrepresentations were made by a vexatious plaintiff, as is the case here. As Ms. Epp argued in her motion, the Court's have overwhelmingly considered this issue as it pertains to pro se plaintiffs. The Supreme Court has not considered the rights of pro se litigants who are attorneys, or of pro se defendants, and much of the case law among the Circuit courts has affirmed the intention of the law to encourage pro se litigants to obtain counsel in their *prosecution* of civil rights. This is the explicit issue that was decided in *Kay*, and the foundation of Plaintiffs' "agency relationship" argument before this Court. Good public policy requires the same rights for the falsely accused in civil rights, criminal, or any other form of litigation.

From March 2022 through nearly all of December 2023, Ms. Epp was represented by counsel and in such an "agency relationship." In December 2023, Ms. Epp assumed the burden of her own legal defense, because she had to, and, she had cause. Most notably, there were evidence issues that Ms. Epp strongly felt needed to be resolved prior to trial. Ms. Epp made the difficult decision to assume this burden to vindicate *her* civil rights. In *Kay*, the Court reaffirmed that the award of attorney fees is in the statute is for the purpose of "relieving the *prevailing party* of the *burdens* of litigation." (emphasis added). Ms. Epp is not an attorney or a plaintiff – as was considered in *Kay*. She provided a competent defense in a manner similar to an attorney, she substantially prevailed, and there was a cost – a *burden* – of this investment of time and

6

resources in her defense. Further, Ms. Epp *had* an agency relationship for the majority of these proceedings, but she was required to assume her defense pro se to fully apprise the Court of the facts of this case and ensure her best interests were being represented in her defense. The evidentiary issues that were resolved through the efforts of the pro se defendants, and admitted at trial, would NOT have been resolved prior to trial unless Ms. Epp had proceeded pro se. Put simply, the higher Courts have not yet considered the extraordinary circumstances before this Court, where a *previously represented* pro se *defendant* substantially *prevailed* on a "directed verdict," against three civil rights organizations, two law firms, and at least half a dozen attorneys. The Court should explicitly consider the facts and circumstances of *this* case to ensure the preservation of the rights of *pro se defendants* similarly situated with Defendant Epp.

Even if the Court's hands were truly tied under the statutes[1], trial judges are entrusted extraordinary discretion[2] in effectuating the underlying policy of the Federal Rules of Civil Procedure, and "the Civil Rules place virtually no limits on judicial creativity." (See, *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 252 (2d Cir. 1985) ("declining to restrict a District Court's choice of sanctions"). District Court Judges have the power and authority to do what is just and proper, so that the system under which we all function in these United States is fair, just and equitable for *all,* not just some, and certainly not just plaintiffs. To ensure an equitable outcome in this matter, the Court could, for example, decide to award pro se attorney fees under Rule 11, as noted in Ms. Epp's motion. (ECF No. 192 p1 at fn.).[3] District Judges are encouraged to consider many factors when sanctions are appropriate, as they are here, including weighing factors that do not necessarily reflect the expenses or fees incurred. Equal treatment under the law is a cornerstone right, and is critical to ensuring the proper administration of justice; it is of heightened

---

[1] The Court's hands are not tied. The law repeatedly refers to "prevailing party" not merely "prevailing plaintiffs." Plaintiffs brought their claims under the Voting Rights Act, 52 U.S.C. § 10307(b) and the Civil Rights Act, 42 U.S.C. § 1985(3)  "In any action or proceeding to enforce a provision of section . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b) "In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee . . . and other reasonable litigation expenses as part of the costs." 52 U.S.C. § 10310(e)
[2] The decision to award attorneys' fees is committed to the discretion of the trial court. (Ryan v. Hatfield, 578 F.2d 275, 277 (10th Cir. 1978))
[3] Jeremy D. Spector, "Awarding Attorney's Fees to Pro Se Litigants Under Rule 11," 95 MICH. L. REV. 2308 (1997). "Applying Rule 11 so as to deter future violative conduct…furthers the congressional objectives that Pavelic & LeFlore sought to protect and thus seems quite consistent with a 'natural' reading of the rule," citing, *Pavelic & LeFlore*, 493 U.S. at 126; cf. Watt v. Alaska, 451 U.S. 259, 266 (1981) (finding that the "plain-meaning rule is rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists")

importance here given the insidiously libelous and harmful nature of Plaintiffs' false, malicious and consequential allegations against Defendant Epp.

Pro se defendants should be entitled to equal protection and equitable treatment under the law. The Courts have not considered the circumstances like that before this Honorable Court, which unambiguously has broad discretion to ensure appropriate sanctions, including an award of attorney's fees, to ensure the appropriate deterrence and justiciable relief in the vindication of civil rights. Further, pro se defendants should be entitled to equitable relief of the burdens of litigation as the prevailing party in civil rights litigation, as in all cases.

## **CONCLUSION**

As Ms. Epp argued at trial, if the private right of action under civil rights laws is abused, without consequence, by the most revered and well-respected civil rights organizations in the world, it can and likely will be abused again and again. Plaintiffs' claims in this case were frivolous, and Ms. Epp is entitled to an award of attorney's fees having substantially prevailed. The misconduct in the case by both Plaintiffs and Plaintiffs' counsel makes the unprecedented nature of these proceedings much more egregious, warranting strong and meaningful sanctions against the offending parties. This Honorable Court *must* seek in its final resolution of this issue to deter others from similar misconduct in the future by Plaintiffs, counsel and others.

WHEREFORE, Defendant Epp asks this Honorable Court to award her Attorney's Fees, and any other relief the Court feels just and proper.

Dated: September 3, 2024                                                                                          /s/*Ashley* Epp

                                                                                                                         Ashley Epp
                                                                                                        asheinamerica@protonmail.com

8

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served through ECF this 3rd day of September 2024, to all counsel of record.

/s/*Ashley* Epp

Ashley Epp

asheinamerica@protonmail.com

9