IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-00581-CNS-NRN

COLORADO MONTANA WYOMING STATE AREA
CONFERENCE OF THE NAACP,
LEAGUE OF WOMEN VOTERS OF COLORADO, and
MI FAMILIA VOTA,

    Plaintiffs,

v.

SHAWN SMITH,
ASHLEY EPP, and
HOLLY KASUN,

    Defendants.

# ORDER

Defendants move for attorney fees pursuant to Federal Rule of Civil Procedure 54(d)(2). ECF Nos. 191, 192, 195.[1] For the reasons below, the Court DENIES both motions.

## I. SUMMARY FOR PRO SE DEFENDANT

The Court is denying your motion for attorney fees because the record does not support a finding that Plaintiffs' claims were frivolous, unreasonable, or groundless, or that Plaintiffs and their counsel unnecessarily multiplied the proceedings. As the Court

---

[1] Defendant Kasun included her request for attorney fees within her bill of costs. ECF No. 195. Plaintiffs filed one response to the bill of costs, ECF No. 197, and another to her request for attorney fees, ECF No. 207. Defendant Kasun did not reply to either response.

1

explains in more detail below, this was a close call. At trial, the Court determined that Plaintiffs failed to introduce any evidence that could be perceived as intimidating or threatening on behalf of you or your two co-Defendants, and in hindsight, Plaintiffs should have considered dismissing their claims prior to proceeding to trial. But the Tenth Circuit has counseled the Court to avoid viewing this issue through hindsight and instead requires the Court to determine whether Plaintiffs' factual contentions were clearly baseless. As prevailing defendants (as opposed to prevailing plaintiffs), the law requires the Court to apply this higher standard. This is only a high-level summary of the Court's order. The complete order and analysis is set forth below.

## II. BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are civil- and voting-rights organizations that filed a civil action against Defendants, alleging voter intimidation in violation of Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b), and the Ku Klux Klan Act, 42 U.S.C. § 1985(3). ECF No. 1 (Compl.), ¶¶ 39–51.

On April 4, 2022, Defendants moved to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), which Chief Judge Brimmer denied on April 28, 2022. ECF No. 39. Then on June 2, 2022, Plaintiffs moved to dismiss Defendants' counterclaims for defamation and abuse of process pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 49. The Court granted that motion and dismissed each of Defendants' counterclaims with prejudice. ECF Nos. 81, 87. For the defamation claim, the Court found that there was no dispute that the allegedly defamatory statements on which Defendants' counterclaim was based were made in Plaintiffs' complaint. *Id.* at 4.

2

Therefore, even if such statements were defamatory (an issue the Court did not reach), they were protected by absolute privilege. *Id.* For the abuse of process claim, the Court found that Defendants did not allege facts to show that Plaintiffs have used the judicial system improperly and therefore dismissed that counterclaim as well. *Id.* at 5–6.

Defendants also moved for judgment on the pleadings and summary judgment under Federal Rules of Civil Procedure 12(c) and 56. ECF Nos. 54, 70. The Court denied the motion for judgment on the pleadings, but it granted in part the motion for summary judgment. ECF No. 84. The Court denied the summary judgment motion with respect to voter intimidation, finding that Plaintiffs had barely met their burden of creating a genuine fact dispute. The Court relied on a declaration by Yvette Roberts, a registered Colorado voter and resident of Grand Junction, Colorado. *Id.* at 12. Her declaration stated that she felt intimidated by the members of Defendant United States Election Integrity Plan (USEIP) who visited her home after the 2020 election. *Id.* Ms. Roberts stated that a man and a woman affiliated with USEIP came to her home and asked invasive questions, told her that they had voting information from the state of Colorado, and wanted to know (1) how she had voted in the last election, (2) who in the household is a citizen, and (3) whether she was the only voter in her household. *Id.* Ms. Roberts stated that she felt intimidated and was concerned by Defendants' actions, so she lodged a complaint with the Office of the Colorado Secretary of State. *Id.*

Defendants denied that the voters identified by Plaintiffs, including Ms. Roberts, were contacted by USEIP members and argued that they did not conduct canvassing efforts in Mesa County. *Id.* Because of this genuine material fact dispute, the Court

determined that summary judgment on this issue was improper. The Court, however, dismissed USEIP, an unincorporated association, from the lawsuit. *Id.* at 12–16.

The case proceeded to trial. Following a three-day bench trial, after hearing Defendants' Rule 52(c) motions, the Court entered judgment in Defendants' favor. ECF No. 185. With respect to Ms. Roberts' testimony, the Court determined that "her testimony was wholly unhelpful to the plaintiffs." ECF No. 190 (Trial Tr.) at 831:22–22. Although she established that two individuals knocked on her door and asked her questions about the election, the Court found that they engaged in no conduct that could objectively be considered intimidating. The Court also found that she "had no basis or reason to conclude that these two were from USEIP and, in fact, did not know from which group they hailed," despite her affidavit to the contrary.[2] *Id.* at 832:21–833:2. The Court stated that, "it was upon suggestion apparently from plaintiffs' counsel that USEIP was the group canvassing in her county that . . . she adopted that position and included it in her affidavit." *Id.* at 833:3–6.[3]

The Court summed up its findings as follows:

> [P]laintiffs have failed to introduce any evidence that can remotely be perceived as intimidating or threatening on behalf of the three defendants. There's no evidence that any

---

[2] To be sure, Plaintiffs' counsel attempted to rehabilitate Ms. Roberts's testimony on redirect examination:
   Q. Is the declaration that you submitted accurate to the best of your knowledge?
   A. Yes.
   Q. Did anyone from the plaintiff group tell you what to say either in that declaration or today?
   A. No.
ECF No. 188 at 514:4–9.

[3] Even if she had established that these two individuals were from USEIP, Ms. Roberts testified that she did not suffer any threats of violence, threatening phone calls, or vandalism during or after the event, and testified that the single canvassing event would not affect her decision to vote in future elections. ECF No. 190 at 833:9–13.

4

defendant or even an agent of USEIP engaged in canvassing that objectively could rise to the level of voter intimidation. The playbook, which has been discussed extensively, is also not objectively intimidating.

The timing of the alleged canvassing efforts is important to the Court's analysis, although not discussed much by the parties. The canvassing efforts were after the election and well in advance of the next election. There was no indication or evidence offered that any of the canvassing attempted to assess a voter's intention to vote in the next election or even discussed an upcoming election. The questions concerned the prior election, and in this context, the evidence would be required to show an intent to interfere with the right to vote in a much more significant way, and no such evidence was presented.

Plaintiffs have made much of the fact that photographs were allegedly taken of some residences. There was no real evidence of this, but regardless, even if true, that would not rise to the level of surveillance that has been found to support a claim for voter intimidation. Such photos are available on Google maps, and there's no evidence presented in this case that any voter had such actions taken against them or that they found that action to be intimidating.

Sensing a lack of evidence to support their claims, plaintiffs attempted to broaden the theory of the case midstream. I did not allow that. The pretrial order controls the claims brought in a case, and that claim was not argued that way or asserted that way in the pretrial order. Even if it was, that would not have commanded a different result, as there was simply no evidence of sufficient voter intimidation here.

I will add that I found Professor Ellis's[4] testimony helpful and insightful as to the abstract issue of voter intimidation. The Court has no doubt that indirect voter intimidation efforts as described by the professor have occurred in this country and continue to occur in this country. Yet, the Court cannot infer that these defendants are part of that effort without credible evidence establishing that connection.

---

[4] Plaintiffs retained Professor Atiba Ellis, a law professor at Marquette University Law School, to discuss the history and effects of voter intimidation, especially concerning people of color.

> The alleged actions here are nothing like the cases referred to by Professor Ellis or plaintiffs in any of their briefs. I will simply note a couple of those. This is not akin to following Native American voters into polling places or recording license plate numbers of those who voted. It is similarly not threatening phone calls or asserting economic retaliation over folks. It is not blocking people from their polling stations. And it is also not indicating that the ballot drop box is under any type of surveillance and fraud will result in crimes being pursued. This is simply far too remote without any testimony of any voter who found any of these efforts to be intimidating.
>
> As a result, the Court finds that plaintiffs have failed to show any violation of Section 11(b) or Section 1985(3) by any of the named defendants in this case, and judgment shall enter in favor of the defendants.

*Id.* at 833:24–836:7.

Following the Court's entry of final judgment, Defendants moved to recover their attorney fees.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 54(d)(2) authorizes a prevailing party to move for an award of attorney fees no later than 14 days after the entry of judgment. Among other requirements, the movant must specify "the statute, rule, or other grounds entitling the movant to the award." *Id.* Plaintiffs brought their claims under 42 U.S.C. § 1985(3) and 52 U.S.C. § 10307(b), both of which allow for an award of attorneys' fees to the prevailing party. *See* 42 U.S.C. § 1988(b); 52 U.S.C. § 10310(e). Defendants argue that these two statutes entitle them to an award of attorney fees. ECF No. 191 at 2–5.

42 U.S.C. § 1988(b) provides that, "[i]n any action or proceeding to enforce a provision of sections . . . 1985, . . . the court, in its discretion, may allow the prevailing

6

party, other than the United States, a reasonable attorney's fee as part of the costs. . . ." Similarly, 52 U.S.C. § 10310(e) provides that, "[i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs."

As Defendants acknowledge, under § 1988(b), when plaintiffs prevail, there is a presumption that they "should ordinarily recover an attorney's fee from the defendant . . . [which] reimburses a plaintiff for what it cost him to vindicate civil rights." *Fox v. Vice,* 563 U.S. 826, 833 (2011) (internal citations and quotations omitted). But when "a defendant is the prevailing party on a civil rights claim, the [Supreme] Court has held, district courts may award attorney's fees if the plaintiff's 'claim was frivolous, unreasonable, or groundless,' or if 'the plaintiff continued to litigate after it clearly became so.'" *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 422–23 (2016) (quoting *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 422 (1978)). Although that same presumption does not apply when defendants prevail, defendants are not precluded from seeking attorney fees as the prevailing party. *See Christiansburg,* 434 U.S. at 418–19; *Thorpe v. Ancell*, 367 F. App'x 914, 919 (10th Cir. 2010) (stating that courts apply 42 U.S.C. § 1988(b) liberally to prevailing plaintiffs, but acknowledging that *Christiansburg* permits prevailing defendants in civil rights cases to recover attorney fees as well). A frivolous lawsuit is one "based on an indisputably meritless legal theory, . . .

7

[or] whose factual contentions are clearly baseless."[5] *Thorpe*, 367 F. App'x at 919 (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "[O]ne purpose of the fee-shifting provision is to 'deter the bringing of lawsuits without foundation.'" *Id.* at 432 (quoting *Christiansburg,* 434 U.S. at 422).

Defendants also invoke 28 U.S.C. § 1927, which provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Under § 1927, "any conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court, is sanctionable." *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008) (citation and quotation omitted). The purpose of § 1927 is to incentivize "attorneys to regularly re-evaluate the merits of their claims and to avoid prolonging meritless claims." *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1224 (10th Cir. 2006). The decision to award attorney fees in this situation is within the Court's discretion. *Ryan v. Hatfield*, 578 F.2d 275, 277 (10th Cir. 1978) (a trial court has discretion to award attorney fees "where the opponent in litigation has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" (quoting *Hall v. Cole*, 412 U.S. 1, 4-5 (1973)).

### IV.   ANALYSIS

Defendants argue that Plaintiffs' claims were frivolous, unreasonable, and groundless, and that Plaintiffs unreasonably multiplied proceedings after summary

---

[5] Defendants do not argue that Plaintiffs' case was based on a meritless legal theory. Rather, as explained, they argue that Plaintiffs lacked any factual basis to continue to trial.

judgment. ECF No. 191 at 5–12; ECF No. 192 at 5–15. They first argue that Plaintiffs lacked any evidence whatsoever that Defendants engaged in voter intimidation. They then zero in on Ms. Roberts' declaration and testimony, contending that Plaintiffs or their counsel coached her into mistakenly identifying Defendants as the canvassers and stating that she felt intimidated, which unnecessarily multiplied these proceedings.

In response, Plaintiffs argue that their position was not frivolous because the Court denied three of Defendants' dispositive motions. ECF No. 205 at 5 (citing *Jones v. Tex. Tech. Univ.*, 656 F.2d 1137. 1145 (5th Cir. 1981) ("Critically, cases finding frivolity generally involve motions for summary judgment or motions for involuntary dismissal where the plaintiffs did not support their claims with any evidence. Where, however, plaintiffs introduce evidence to support their claims, 'findings of frivolity typically do not stand.'"). They also argue that they had sufficient evidence to take this case to trial, citing the following:

- Defendants were founders and/or leaders of USEIP;

- USEIP's Playbook, which, they argue, contains incendiary and violent rhetoric;

- USEIP's Canvassing Report, which demonstrates USEIP agents knocked on over 9,000 doors across Colorado;

- Defendants' participation in the January 6 insurrection and use of rhetoric identical to that which incited violence on January 6;

- Defendant Smith's admitted public statement that anyone proven to have been involved in election fraud deserves to die by hanging;

- Defendant Smith's testimony that he probably carried a firearm with him when he canvassed searching for evidence of fraud, and that other volunteers also may have been armed;

9

- USEIP's Basecamp posts encouraging canvassers to carry weapons;

- Evidence that USEIP canvassers took photos of voters' homes;

- Defendants' admissions that USEIP canvassing was intended to develop evidence that could be provided to law enforcement;

- Ms. Hendrix's testimony that she and members of Plaintiff League of Women Voters of Colorado were visited by two USEIP representatives who asked questions about their voting record, wore lanyards that Ms. Hendrix felt were intended to look governmental, took pictures of her home, and felt as though they could be intimidating;

- Ms. Hendrix's testimony that she herself is a Colorado voter and is intimidated by USEIP's canvassing activity;

- Ms. Roberts' testimony that she was visited at her home in Mesa County by USEIP representatives, that she felt their conduct was intimidating, and that she had never before felt intimidated by other canvassers or solicitors.

ECF No. 205 at 5–6. Plaintiffs also argue that Defendants were to blame for prolonging the litigation by failing to reasonably respond to Plaintiffs' settlement demands. ECF No. 205 at 11 ("As Defendant Epp acknowledges in her motion, Plaintiffs on multiple occasions attempted to resolve this case prior to trial. Plaintiffs never received a substantive or reasonable response to their settlement offers."); ECF No. 206 at 13.[6]

After careful consideration of the parties' arguments and the relevant authority, the Court does not find that Plaintiffs' "factual contentions [were] so baseless that they are frivolous." *Rasmussen v. Thorne*, No. 13-CV-02557-CMA-CBS, 2015 WL 4652781, at *5

---

[6] The Court flatly rejects this argument. Defendants were under no obligation to accept Plaintiffs' settlement demands, and given the evidence in this case, the Court will not fault Defendants for not doing so.

(D. Colo. Aug. 6, 2015). Although the Court found at trial that many of the factual allegations Plaintiffs point to were either inadmissible, unpersuasive, or irrelevant, such findings do not necessarily mean that Plaintiffs' entire case was frivolous or clearly baseless.

The Court does not reach this conclusion lightly. There is no question that Plaintiffs' case-in-chief was very weak, and the Court strongly urges Plaintiffs and their counsel to reassess future cases, particularly those with tenuous claims that barely withstand scrutiny. That said, the Court recognizes two key guiding principles. First, it "must avoid '*post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Thorpe*, 367 F. App'x at 919 (quoting *Christiansburg,* 434 U.S. at 421–22). Second, the Tenth Circuit has said that "[r]arely will a case be sufficiently frivolous to justify imposing attorneys' fees on the plaintiff." *Id.*; *see also Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998) ("Sanctions are appropriate [under § 1927] when an attorney is cavalier or bent on misleading the court . . . . Because § 1927 is penal in nature, the award should be made only in instances evidencing serious and standard disregard for the orderly process of justice." (citations and internal quotation marks omitted)); *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 230 (2d Cir. 2004) (finding that the district court abused its discretion by awarding the defendant attorney fees, explaining that "[h]indsight proves that plaintiffs' allegation of state action was very weak, but it was not completely without foundation").

Accordingly, the Court will not apply *post hoc* reasoning to find that this is one of those rare cases that justify an award of attorney fees to prevailing defendants, especially

where there is no conclusive evidence that Plaintiffs or their counsel showed serious disregard for the orderly process of justice.

## V. CONCLUSION

Consistent with the analysis above, the Court DENIES Defendants' requests for attorney fees. ECF Nos. 191, 192, 195.

DATED this 28th day of February 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge